The Law Offices Of
# Douglas C. Anton, Esq.



Three University Plaza Drive
Suite Number 407
Hackensack, New Jersey 07601
Phone: (201)487-2055
Facsimile: (201)487-9698

Michigan Office:
33584 Harper Avenue
Clinton Township, MI 48035
(586)630-3211
† Also Admitted in MI

Email Address:
DougAnton@aol.com (Direct)
Douglasanton@gmail.com (Staff)
(NJ Atty. ID 016771995)

July 30, 2019

<u>Via ECF</u>
The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, N 415
Brooklyn, New York 11201

      RE:    <u>United States v. Robert Sylvester Kelly</u>
              <u>Criminal Docket No. 19-286 (S-1) (AMD) (E.D.N.Y.)</u>

Dear Judge Donnelly:

As the Court is aware, this office represents defendant Robert S. Kelly in the above referenced matter.

I am responding to the governments July 12, 2019 letter in support of pretrial detention of the Defendant. (ECF Doc. 5) While that letter sought for the defendant to be detained "pending his removal to the Eastern District of New York," and does not address pretrial detention specifically after being removed to EDNY, in my communications with AUSA Geddes over the last week, it is clear that despite the different underlying predicate facts in our NY matter, that is, only two (2) misdemeanors involving an alleged adult victim, her office is still seeking a denial of any bail.

While I agree with the government that the allegations that have been created for this "global" case contains charges that are serious, respectfully, each District Court is permitted to address the specific charges before it, when considering a fair and reasonable request to release a defendant pending trial so that he can participate in his defense, generate income to mount a proper defense, and enjoy the presumption of innocence until guilt is proven beyond a reasonable doubt by the government.

First, let me address what the government calls the "enterprise." As its existence, in the form the government is alleging, or really lack thereof, is a paramount, and some what controlling, dispute in this case. In short, the enterprise has been described by the government as the following, and I am paraphrasing and offering the real world description of what the government wrongly purports as its assumptive accusation in the indictment.

Superstar singer Robert Kelly is a touring, multi-million record selling musician, singer and



songwriter. He employs people and companies. Some of these employees are called managers, bodyguards, drivers, personal assistants and runners, as well as un-named and un-identified others. Some of these employees toured with the band from state to state. For example, lawyers and mangers wont, but roadies and bodyguards might.

While it is a "tour," per se, each show is an individual contract with a venue located within the state of performance, with no multi-state ties. The government has not identified any show venues, any employees or any specific locations so that we could make this solely "state specific contract" fact argument for each show, clear to the court at this time. Indeed, a rock and roll tour commonly uses in-State security, drivers, gaffers, technicians and other employees, making a tie to interstate commerce non-existent except that one show is lined up after another on a tour. We will address that more when substantively challenging the wrongful RICO and MANN ACT tie-ins, by way of motions. However, we trust that Your Honor, hailing from very near the Motor City, the birthplace Motown, Berry Gordy, Ted Nugent and eventually Kid Rock, Marshall Mathers, Curtis Jackson, etc... is all too familiar with how a rock and roll tour works and will leave it at that.

The government then correctly defines that the employees for Robert were employed to promote his music and his brand. This is the essence of the professionals obligation when working with a recording artist. This is done in the offices of record companies and the like, not on the road, as the government alleges.

Next, despite Robert being a world famous recording artist for the last thirty years, touring in every country on the planet, working with every major superstar from Michael Jackson to Lady GaGa and selling millions of records, the government feels comfortable to describe, what it has listed as only five (5) "Jane Does," not all of which are alleged to be minors, out of a public career of 30 years, as reasonably and legally fitting the description of a pattern of, with intended purpose to, "recruit women and girls to engage in illegal sexual activity." We offer, this description of intent and purpose, as proffered by the government, is an absurdity.

The indictment alleges, albeit in a different light, how these groupies sought out Robert's attention, even fought each other for it, voluntarily contacted him, came to his shows, pined to be with him and how Robert would spend his time and even become friends with, and care about these groupies and fans who were dying to be with him. Mind you, evidence will show that the Robert Kelly tours and shows would accommodate both male and female fans with access to the singer, picture taking, meet and greets, fan events, backstage passes and the like.

The indictment even alleges, just like some of my other touring musician clients do with the "Make-A-Wish" and other foundations, that staff would pay for travel or accommodations for his fans when they could not themselves afford to attend a performance. This is "touring" rock and roll, not a criminal enterprise.



Remember, the band gives out free passes at every show and comp's indigent travel at every show, for about 30 years. And the government says five "Jane Does" in 30 years create and encompass the definition of how Robert's tours and fan experience on hundreds of shows were run? The tie in to RICO is simply without merit.

The indictment later describes what seems like standard security protocols for securing the safety of visiting fans, groupies or the like. The security measures allegedly imposed seem more to: warn against "alone" travel throughout a hotel for the fan's own protection; caution that dressing too provocatively could cause attention to the band's presence in the hotel and cause problems with hotel management; protect a fan against ingesting a food or beverage that may not have been screened first, and other measures to assure the fan's protection and make for the safest, most enjoyable fan experience, rather than something more nefarious. Again, in 30 years of touring, and providing male and female fans with a fun and enjoyable fan experience, the government cites what amount to only five (5) "Jane Doe" alleged victims. The NY alleged victim we know, was adult when she met Robert for the first time, and never sought to file criminal charged on her own, but instead currently maintains a civil lawsuit against Robert seeking millions of dollars in money payoff.

If this was the "pattern" or "enterprise" the government seeks to make it out to be, is five (5) disgruntled groupies, not all of which are alleged to be under age, who now show groupie remorse so many years later, and only after a TV Show and an aggressive, vocal Cook County Prosecutor makes a public cry for "victims come forth," tell your story and be famous...really what the United States Government seeks to make into "racketeering activity?"

Finally, the government alleges that this enterprise only sought out real fans (from the word "Fanatic") who loved and were committed to the band, and did their best to pay for the fan to be well groomed, given show/tour T-shirts and the like, and be ready to enjoy the show. The Government also alleges that there were rules and regulations for fans to follow, such as disclose their name, age, address, phone number and personal information, so they could be best vetted out and put on future fan mailing lists, and that they be obedient to following rules, which were set up for their own protection.

As for the allegation that Robert ever sought to keep anyone locked away and/or away from their family, that repeated mantra has been beat to death as it relates to his two live-in girlfriends, who, after his recent incarceration, where, if captive, now free to run, but are instead found on line, and in person, supporting Robert. In fact, they are appearing in NY, of their own accord, on their own dime, to support the man they have loved for so many years. It's time for the rumors to stop making their way into the hollowed halls of the Federal Courts.

The government cites 18 U.S. Code § 1961.(4), for the legal definition of "enterprise" in order to make the stretch of all stretches, and define the rock and roll employment of professionals and mutually desired and competitive fan & groupie/celebrity experiences, as akin to criminal conduct,



for the sole purposed of brining same withing the purview of a "racketeering activity." This Court should not be fooled by the wrapper of the package, but recognize the contents for what it is.

While I don't think I have ever before quoted VanHalen's singer David Lee Roth in a legal writing, I urge the court to click this link[1] for a very brief overview of the industry accepted, understood and agreed upon, by consent, definition of the fan and celebrity groupie experience.

The Superceding Indictment (ECF Doc. 3) globally, for all five Jane Does, alleges over "two decades" of complained of conduct, where Robert was the "leader of the a racketeering enterprise" as described above. The government advises that this conduct effected <u>only</u> five (5) Jane Does in that 20 years and that they are spread out in Illinois, California, Connecticut and New York.

However, so that we are clear for this bail request and our EDNY matter as it moves forward, our case here in NY only involves only one (1) victim, Jane Doe #5 (hereinafter "JD#5"). JD#5 is NOT a minor, but alleges her first contact with Robert was when she was 19 and a fan trying to get with him and hook up.

<u>Relying on the governments recitation of alleged testimony and facts</u>, JD#5 testified that she took Robert's phone number and thereafter voluntarily communicated with Robert by phone of her own free will. JD#5 then testified that she contacted Robert's assistant to arrange for her own "free" travel and "free" accommodations, to come be a super fan/groupie and attend one of Robert's tour dates in Long Island, NY. JD#5, after enjoying the show and having a great time, returned to her hotel room by herself, with no one following her, watching her, pressuring her, etc... She went to sleep in her own private free luxury hotel room that night, safe and secure after enjoying a great show, without any interruptions from Robert or any one of his employees. There was no show the following night, nothing more to do before she was to return home on a free flight, therefore, JD#5 was free to leave any time she wanted. But alas, this 19 year old woman elected, of her own free will, to stay.

JD#5 says that the next day, Robert came to her hotel room. She does not allege Robert had the key, that he opened the door, or that she tried to keep him out or did not want him in the room. Instead, JD#5 made it clear that Robert came to the door, she freely and wantonly let him in and then she had sex with the same superstar musician that she, as a groupie, specifically intended to travel to NY to have sex with. She wanted him so much that she alleges that she did not require or even request that a condom be used. JD#5 did not complain to anyone thereafter that she was forced, raped or even upset about the encounter. How could she, it was exactly what this consenting adult woman wanted to do and was free to do without anyone judging her or telling her what to do with her own adult body.

---

[1] https://www.youtube.com/watch?v=CwS72f2gxmY  Begin at 6:20



JD#5 goes on to testify truthfully that she freely and voluntarily communicated with staff and/or Robert and voluntarily and intentionally boarded planes, got in vehicles and stayed at hotels, all so that she could continue to do what she wanted to do, which is to see Robert's shows and see and spend time, romantic time as well, with Robert. JD#5 swore under oath to the government that she voluntarily flew to see Robert, waited for him for hours some times, and then when she saw him, voluntarily engaged in mutually desired sexual acts with him to please herself and Robert, never once concurrently going to police or anyone and claiming she was forced, threatened, coerced or the like.

After this, JD#5 again swore that she voluntarily flew to New York to see and spend time, sexual time, with Robert, just like any adult groupie has the right to do. She advised that she again had consensual sex with him, of her own free will. Thereafter, JD#5 alleges, again, of her own free will, she chose not to see Robert anymore. Some time later, JD#5 claims that she contracted a sexually transmitted disease. With no examination of her sexual partners over her life, this otherwise voluntarily and admittedly promiscuous JD#5, who claims she had unprotected sex with this music superstar on only the second time they met, claims that the only person she could have contracted this STD from was Robert? The government seems to indicate that, even without a signed HIPAA release from Robert, they have some how obtained his medical records and that same show Robert had an STD, which they imply or claim, with enough certainty to charge him on , that they have done the necessary scientific analysis to find conclusively that both are the same scientific strain of virus and that they have done the necessary medical testing on both parties to prove an exact time line of who gave what virus to whom, and its viral life. Or have they? Has the government done any of the necessary scientific medical testing to prove such a correlation or causation in this case? Well, we don't know, but they certainly did not ask Robert for a blood sample, or even make any inquiry of any kind to confirm any of the allegations. They just made the allegations because JD#5 "said so."

An adult woman voluntarily met a rock star, eagerly and excitedly went to shows, hotels, recording studios and the like and engaged in sex with the rock star. Then she regretted it. Then she claimed that this rock star was the only person she had unprotected sex with for a period of about a year, and "he must have been the one to give me an STD?" Even if all that JD#5 otherwise says is true, does it seem realistic that any rock star would risk his own life and have unprotected sex with a groupie he just met?

The only criminal conduct that the government actually, factually alleges that Robert committed in NY is as follows:

1. **NYPL § 120:20. Reckless Endangerment**.
   A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person. Reckless endangerment in the second degree is a Class A misdemeanor.

   *A "Class A Misdemeanor" means an offense, "other than a traffic infraction," for which a*



*sentence to a term of imprisonment in excess of fifteen days may be imposed, but for which a sentence to a term of imprisonment in excess of one year cannot be imposed.*

2. **NYPL § 2307. Exposure of Infectious Venereal Disease.**
   Any person who, knowing himself or herself to be infected with an infectious venereal disease, has sexual intercourse with another shall be guilty of a misdemeanor.

Of course, the government then does that stretch of all stretches thing I discussed above and seeks to tie in this adult woman's repeated voluntary behavior as a "racketeering activity" or a violation The White-Slave Traffic Act, or the Mann Act, a United States federal law, passed June 25, 1910 which in its original form the act made it a felony to engage in interstate or foreign commerce transport of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose". Its primary stated intent was to address prostitution, immorality, and human trafficking, particularly where trafficking was for the purposes of prostitution. This is one of several acts of protective legislation aimed at moral reform during the Progressive Era. In practice, its ambiguous language about "immorality" has resulted in it being used to criminalize even consensual sexual behavior between adults.[2] It was amended by Congress in 1978 and again in 1986 to apply to transport for the purpose of prostitution or illegal sexual acts.[3]

Our argument for this bail hearing which will echo throughout this case is that Robert is charged with basically two (2) misdemeanor charges based on New York Law as proposed predicates to RICO and MANN ACT tie-ins.

There is no child pornography charge in NY. No under age sex charge in New York. And, no sexual exploitation of under age children charge in NY. It's about an adult woman who voluntarily engaged in a relationship, alleged by her to be sexual at times, on a few occasions over the course of about a year until she cut it off.

The fact allegation that she makes, without any scientific proof of any kind to support same, either in her civil case or this criminal case is that she had a sexual relationship with the superstar R. Kelly and he gave her an STD. That one lone alleged fact is the basis for both misdemeanor charges, which the government then uses to trigger the much more serious RICO and MANN ACT violations.

Your Honor, this NY case amounts to nothing more than groupie remorse and a misdemeanor YET unproven singular claim that during a completely voluntary consensual adult friend and sexual relationship, one party may have unknowingly given the other party an STD.

---

[2] "Mann Act", Dictionary of American History, Encyclopedia, October 21, 2013 [2003].

[3] Bell, Ernest Albert (1910), The War on the White Slave Trade (ebook), Chicago: GS Ball – via Archive.



# LEGAL ARGUMENT

**I. Proceeding on mere proffer alone**.

The government proposes that it is entitled to proceed on its proffer in this pre-trial detention hearing under United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). However, the facts in LaFontaine are completely different and offer no support to the governments current argument. LaFontaine dealt with a defendant already released and a re-hearing requested by the government to revoke bail, for what the government claims were violations of the conditions of said bail. While it is true that a district court may revoke an order of release under 18 U.S.C. § 3148(b), such a determination is not before us in our case. That case caused the court to determine "either that there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release," or that there is "clear and convincing evidence that the person has violated any other condition of release." None of that applies to us.

There are no violations in our case as Robert has been locked up since his arrest earlier this month. The government should not be permitted to proceed on just a proffer, which in this case is unproven, unsubstantiated, un-scientific allegations by a disgruntled adult groupie that during the same year time period that she completely and consensualy conducted a relationship she claims she had with a rock star, that she contracted an STD. Where is the proof that she had an STD? Where is the legally admissible proof that Robert had an STD? Where is the scientific proof that the two STD's, if they exist at all, are of the same strain? Where is the documentary evidence to show who possibly had the STD first, if at all, and who gave what to whom? Respectfully, case law provides that this court has a right to require more than the "he said, she said" rag tag completely unsupported allegations that are before the court at this time. I remind the court that JD#5 has filed a civil matter against Robert for the exact claims and has yet to produce even one scintilla of evidence to support he gave her an STD.

It is well established in this circuit that *proffers* are permissible both in the bail determination and bail revocation contexts. See id. (bail determination); United States v. Davis, 845 F.2d 412, 415 (2d Cir. 1988) (bail revocation). In Davis, this court stated that "it would [not] be an abuse of discretion for the district court to permit the government to proceed by proffer alone." Id. at 415.

As in the case of other pretrial proceedings such as arraignments and "probable cause" determinations for warrants, bail hearings are "typically informal affairs, not substitutes for trial or even for discovery. Often the opposing parties simply describe to the judicial officer the nature of their evidence; they do not actually produce it." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.); see also United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (bail hearing cannot become a "mini-trial" or "a discovery tool for the defendant").

Nevertheless, this court has also recognized that while the informality of bail hearings serves the demands of speed, the magistrate or district judge **must also ensure the reliability of the evidence**,



"by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." Martir, 782 F.2d at 1147 (emphasis omitted) (quoting Acevedo-Ramos, 755 F.2d at 207). In Martir, a case where the government argued that defendant posed a risk of flight and proceeded solely by proffer, we stated that "[i]n the informal evidentiary framework of a detention hearing, the methods used to scrutinize government proffers for reliability must lie within the discretion of the presiding judicial officer, informed by an awareness of the high stakes involved." Id. at 1147.

In that case, the court criticized the government's proffer for simply stating in "general and conclusory terms what it hoped to prove," for failing to refer to any "independent evidence, such as tapes, documents, or photographs," and for failing to furnish any testimony or affidavits. Id. However, because the defendant in Martir did not object to the proffer, we did not find that the district judge erred in relying on it.

We object to the proffer of the government. The government has not offered anything more than general and conclusory terms that it *hopes* to prove Robert gave an STD to JD#5. Truth is, medically, anyone who knows will tell you, including the experts we intend to retain, that the first lesson of herpes transmission is that there is pretty much no way to know who gave who herpes,[4] for a number of reasons. "The symptoms of a herpes infection vary widely from person to person, and most of the time there are no clinical manifestations," Kathleen Page, M.D., an associate professor in the department of medicine for the division of infectious diseases at Johns Hopkins University School of Medicine. The thing is, it's possible to transmit the virus whether you have symptoms or not. "In fact, most transmissions occur from people who don't have any symptoms and do not even know they are infected," says Dr. Page. (See Footnote 4 below, attached hereto).

This court can and should take into consideration that the government has no independent evidence of this alleged criminal conduct. It is wholly relying on the "word" of JD#5 so support each and every allegation made in her civil complaint and transferred to this criminal complaint/indictment. Thus it is no surprise that the government completely fails to refer the court's attention to any "independent evidence, such as tapes, documents, or photographs" as this court can preliminarily require the government to do. Otherwise, how can this court see this matter in any other way that if any one shouts "you gave me herpes" without any proof, that a US Citizen can be locked up and refused release, without any evidence? That is not how our judicial system works.

## II. Bail Reform Act.

Under the Bail Reform Act, 18 U.S.C. § 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the

---

[4] First Lesson of Herpes Transmission: There Is Pretty Much No Way to Know Who Gave You Herpes. https://www.self.com/story/who-gave-you-herpes



community or a risk of flight. See 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405. In addition, a court may order detention if there is "a serious risk that the [defendant] will . . . attempt to obstruct justice, or . . . threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). A finding of a risk of obstruction of justice must be supported by a preponderance of the evidence. United States v. Madoff,586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (preponderance of evidence standard applies to determination of both risk of flight and risk of obstruction of justice).

The Bail Reform Act lists four factors a court should consider in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, including the defendant's "character . . . [and] financial resources," (3) the seriousness of the danger posed by the defendant's release and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g).

In our instant case we look to see if there is even a slight amount of evidence to support a probable cause finding that Robert gave JD#5 herpes. The government has offered nothing other than JD#5's word that she has herpes and her allegation that she got it from Robert. The government alludes to having Robert's medical records that they believe may nor may not demonstrate that he too may have herpes, but they did not disclose if they properly and/or legally procured same, if they have factually and scientifically established it's the same strain of herpes, or who had it first. For example, if the government says that Robert's medical records suggest that he had herpes at a time that predates his meeting JD#5, do they also have JD#5's medical records that shows she was tested for and was herpes free prior to meeting Robert? And has the government confirmed it's the same herpes complex or strain by doing the necessary tests? Or again is it just a "She said, SHE said (again)" standard that the government wishes to follow, instead of the proper standards in law set forth above?

Under the analysis above, let's review:

(1) *the nature and circumstances of the crimes charged*. Who has and who gave who the same strain of herpes so that causation could be confirmed? And depending on the answer to that question, did the person giving the other herpes, *know* themselves that they even had herpes. Remember, the charged violation, "NYPL § 2307. Exposure of Infectious Venereal Disease" states that "*Any person who, **knowing himself or herself to be infected** with an infectious venereal disease, has sexual intercourse with another shall be guilty of a misdemeanor.*" So the law requires a specific knowledge that one be infected. Has the government even attempted to prove that? JD#5 has had her civil case pending for some months and she has not been able to prove a scintilla of her allegations and has offered no evidence to support her claims that Robert gave her herpes.



(2) *the history and characteristics of the defendant, including the defendant's "character . . . [and] financial resources*. The defendant has been law abiding citizen for his 52 years on this planet. He is loved by millions around the world and promotes love and peace through his music. He was accused and charged with criminal conduct in the past and was found *not guilty* by jury of his peers. Like anyone else in life, he has engaged in consensual conduct with various people throughout his life, possibly more than normal people because he is a rock star, but sheer numbers, if they be great, and the lack of any other similar claims akin to the ones in this case, only further support the defense's position that JD#5's claims are without merit. It is no secret that Robert is having financial problems. He has no money. Myself and other attorneys in this matter are working now without compensation. The breadth of unsubstantiated charges and the #metoo bandwagon movement had made it impossible for him to get paying gigs for the last several months and as a direct result of the injuries sustained by the unfounded, uncertified claims made in "Lifetimes: Surviving R. Kelly," none of which claims where made under oath of any kind and free from the laws of perjury, have rendered him without means. Robert surrendered his passport and has no money to go anywhere. In fact, even if a reasonable bail is set in this matter, with reasonable conditions, he is certain to remain in custody because there has been a denial of bail in the Illinois related case. But that should not stop this court from still properly and legally addressing the NY Bail application separate and distinct from the other charges when setting a bail and release conditions.

(3) *the seriousness of the danger posed by the defendant's release.* There is Zero danger posed by Robert's release. What is the claim in the NY case? That he will get out of jail and go randomly have unprotected sex with other consenting adult women who love him and are groupies? Really? Like they wont have heard about this case already and not engage in such conduct? Like he is a threat to JD#5? One woman in 30 years of being a rock star, and there is a concern that Robert poses a danger? Robert cannot write or read. To suggest that Robert wrote a letter to JD#5 or her lawyer is an absurdity. Again, no evidence, just assumptions based on no evidence. My office receives prank calls all day long from people claiming to know this or that about the case, or that they are victims and they want money, or calls advising that they have negative or derogatory information on every one from me, to other defense attorneys or even the AUSAs and "for a price" I can have the information. At first it was funny, but now I have instructed my staff to get names and phone numbers of these callers to address in the future. The lesson here is, "saying so" does not "make it so" under the law. There has to be some evidence that arises to the applicable standard of review.

(4) *the evidence of the defendant's guilt*. Zero. Currently there is zero evidence that Robert has herpes, knew he had herpes, or knew he could have herpes and recklessly conducted himself. ZERO evidence exists. All that exists is a disgruntled groupie who alleges she has herpes and got it from Robert. There isn't even testimony where she is asked if she had any other sexual partners over that same year period or any time thereafter, but before she was diagnosed with herpes. This is no evidence at all. An in fact, given the opportunity for the last several months in the civil case, she has not been able to provide one scintilla of evidence to support this same claim in that case. This court is rightful when it concerns itself with "will this defendant appear in court," "is he a danger to others" and "is he a flight risk." I have represented Robert in his pending matters in Illinois State



Court and in New York State court. There has never been a court date that he was aware of that he did not appear. He is always on time and fully compliant with the Court and his probation officers demands. Kindly be reminded he was permitted bail in the Illinois State Court criminal matter and is fully compliant at all times. Robert wants to address these matters to their conclusion. In fact, the defense had to fight the Marshall's Service last week in Federal Court in Illinois to make sure that Robert was allowed to appear in person in the EDNY for this weeks Arraignment. Not only can this court feel comfortable that Robert would appear in court, but it can rest assured that he will legally challenge anyone who tries to keep him from coming to court. Furthermore, Robert presents no danger to JD#5. They live in completely different states and she has never once even sought a restraining order of any kind, or even suggested the need for same, in the civil case or at any time during the relationship or since it ended. Lastly, as stated above, Robert does not have his passport, nor the means, nor the desire to run from these cases. He was wrongfully charged before and acquitted of all charges and fully expects to be again. More than his alleged victims, he wants these cases to move forward to their logical proper conclusion so that he can be vindicated once again and get on with the business of writing incredible music and performing same.

We proffer that under the facts that are before it, that is, the singular acts complained of by only JD#5 in this NY matter, this Court could **not** conclude that *"no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"* and therefore, a reasonable bail should be set, along with any conditions the court deem necessary, if ROR is not allowed.

In a case where the predicate conduct is two misdemeanors, that we are even having a discussion about whether or not there should be bail, should be offensive to the law. If these charges where brought where they rightfully should have been brought, in NY State Criminal Court, there would be no need for bail but an easy ROR release for two misdemeanors and a no victim contact order, so as not to deprive the accused of his Constitutional rights. *But for* the stretch of stretches the government is making, trying to tie two state misdemeanors into a RICO and MANN ACT conspiracy, this should be a no brainer. But the court has to now make determinations, which we understand is part of the process.

With respect, based on the underlying facts in our NY case, it is a misuse of the law and possibly inadvertent bullying by the government, to say that just because they *charge* RICO and MANN ACT violations, that our facts could be considered "racketeering acts" so as to be predicate acts alleged as part of a pattern of racketeering activity which can trigger a rebuttable presumption of dangerousness to community. That ship won't sail in our NY JD#5 case and we are confident that this Court won't be fooled by same.

In our case, we don't need elaborate bail packages, or to even argue for same. This is not a "dangerous defendant" who even requires home confinement, surveillance, electronic bracelet or other conditions. Robert goes five (5) places: Home, Studio, Gym, Church and the Cigar Lounge.



We have a defendant charged with two misdemeanors with no causal connection to any larger conspiracy. We ask the court to simply do what any NY State Court Judge would do and release Robert on his own recognizance with a standard no victim contact order, except obviously to defend himself through counsel in the bogus civil matter pending by JD#5. Why? Because it's the right thing to do under the law. In fact, there is really no other way to go, according to the law.

But the Court and the government can rest assured that Robert still will not be released because he still has some more serious charges pending out of Illinois. So by each Federal Judge following the applicable law and applying same to the specific, independent and unique facts in each case, these matters are assured to be properly and fairly addressed in each District.

As a result of the above, we respectfully request that Robert be released in this matter as he would on any matter involving two (2) misdemeanors, that is, on his own recognizance. Due to the pending other charges in Illinois, Robert will not be released of course. If, however, the court elects to set a bail and conditions regarding same, we ask that the court review our arguments above, the governments case, its ability to proffer anything other than a "SHE SAID" argument, and set bail and conditions for release to something reasonable. Perhaps concurrent to what his bail is in the State Court matter in Illinois. We do not in any way feel that this NY case warrants pretrial detention, as the government has requested, without evidence to support its reasoning in this specific NY allegation fact pattern.

For the foregoing reasons, we respectfully submit that the defendant should be released from custody on his own recognizance and in the strictest case, with a reasonable, possibly concurrent bail. We acknowledge that in either release scenario, Robert will still remain in custody unless and until such time as an Illinois District Judge orders his release, but we still request that a purely NY case determination is made as to pretrial release at his Arraignment on Friday, August 2, 2019.

Respectfully submitted,

Douglas C. Anton, Esq.
**LAW OFFICES OF DOUGLAS C. ANTON, ESQ.**
3 University Plaza Drive
Suite Number 407
Hackensack, New Jersey 07601
P: (201) 487-2055
F: (201) 487-9698
E: douganton@aol.com
Attorney for Defendant Robert Kelly