# GREENBERG TRIAL LAWYERS

ATTORNEYS AT LAW                                                                53 WEST JACKSON BOULEVARD, SUITE 1260
                                                                                                         CHICAGO, ILLINOIS  60604
                                                                                                                      (312) 879-9500
                                                                                                                Fax: (312) 650-8244
                                                                                                          Steve@GreenbergCD.com

September 30, 2019

Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                Re:     <u>United States v. Robert Kelly, 19-286 (S-1) (AMD)</u>

Dear Judge Donnelly:

      My firm, along with others, represents Robert Kelly in this matter. Pursuant to Magistrate Judge Steven L. Tiscione's August 2, 2019 Order, Mr. Kelly was denied pre-trial release as a risk of flight and because he believed there was a possibility of obstruction. (*See* August 2, 2019 Transcript, attached hereto as Exhibit A, at pp. 15-16). Mr. Kelly similarly remains incarcerated pursuant to a July 16, 2019 Order of detention entered by Judge Harry D. Leinenweber in the Northern District of Illinois. A request to reconsider that Order is pending. (A copy of the Motion to Reconsider is attached hereto as Exhibit B).

      We are respectfully asking this Court to review, *de novo*, Magistrate Tiscione's decision. The Government failed to prove by a preponderance of the evidence that Mr. Kelly poses a serious risk of flight or that he is a danger to commit obstruction. The Magistrate erred in concluding otherwise, based upon the applicable facts and the governing legal standard.[1] Mr. Kelly is presumed innocent, his case is defensible, and

---

[1] There are serious questions as to whether the present Indictment will even stand. As to the racketeering allegations, many of them arguably do not even fall within the definitions found at 18 U.S.C. 1961. The Indictment essentially alleges that Mr. Kelly's music career was a racketeering enterprise, designed to obtain sexual partners.  This ignores the fact that he actually made successful music and won several Grammy awards.  It suggests that things such as the issuance of backstage passes and engaging in meet-and-greets with fans

he does not have *any* criminal record.  The Government's argument that, given the "Defendant's lengthy and wide-ranging history of obstruction, there are no conditions that can overcome this presumption and mitigate the risk of danger, flight and obstruction," is predicated upon a presumption of guilt, and requires the absolute acceptance of every factual inference, without any consideration of the time period, prior testimony, lack of corroboration, or the adversary process.

The Government's argument for detention was also rooted in its claim Mr. Kelly has a "lengthy and wide-ranging history of criminal conduct." (*See* Ex. A, at p. 5).  This is unquestionably false and misleading, given the fact that Mr. Kelly has never been convicted of any crime. The Magistrate completely failed to consider this circumstance when Mr. Kelly was denied bail.² Equally important, he gave no meaningful discussion to "reasonable conditions."

In purporting to set forth the applicable law in its July 12, 2019 letter to the Court, the Government incorrectly conflated the various factors to be evaluated under the Act. In reality, the Act mandates a simple two-step inquiry, and a defendant may be detained pending trial *only* if both prongs are satisfied. *See* 18 U.S.C. §§ 3142(e), 3142(f).

First, the Government must demonstrate the defendant has been charged with one of the crimes enumerated in Section 3142(f)(l), or that he presents a *serious* risk of flight or of obstruction. *See* 18 U.S.C. § 3142(f); *see also United States v. Friedman*, 837 F.2d 48 (2d Cir. 1988). Thus, no matter how dangerous an individual may be, he cannot be detained unless one of these initial conditions is

---

constitute criminal activities. The Indictment further claims that role-playing is illegal on its face.

In the other counts, the Indictment alleges a violation of the Mann Act, based upon consensual sexual activities, because a willing partner claims to have caught a sexually transmitted disease.  It is a perversion of the purpose of the Act, and surely extends the "…or in any sexual activity for which any person can be charged with a criminal offense" (*see* 18 U.S.C.A. § 2421) language far beyond its intended use. *See also* <u>Gebardi v. United States</u>, 287 U.S. 112, 118 (1932) ("Transportation of a woman or girl whether with or without her consent, or causing or aiding it, or furthering it in any of the specified ways, are the acts punished, when done with a purpose which is immoral within the meaning of the law.").

² The Government advised the Magistrate that there was little, if any, overlap between Mr. Kelly's cases. To-date, the Government has not identified each of the individuals within its Indictment. However, considering the time period and the allegations, it appears that there is in fact a significant overlap between the two Federal Indictments, and the related State court Indictments. Of course, defense counsel cannot say this conclusively without knowing the identities of the individuals behind each of the alleged offenses – information that the Government thus far has been unwilling to share. If the Government does not identify these individuals, then there is no risk of tampering with these unidentified individuals.

satisfied. *See Friedman*, *supra*, 837 F.2d at 49. Here, the Government contended there was a presumption of both a serious risk of flight and a danger to the community. That is wrong; Mr. Kelly does not present a serious risk of either flight or obstruction.

Second, even where the Government satisfies its burden as to the first prong, detention may be ordered *only* if no condition or combination of conditions can reasonably assure the defendant's presence and the safety of the community. In this case, any alleged potential risks that could conceivably exist can be sufficiently addressed through detailed conditions of release.

In support of this application, we clarify and, in some cases correct, information that was presented or omitted, and then relied upon by Magistrate Tiscione as the basis for his detention Order. We also present new facts and additional legal arguments that we believe were not sufficiently addressed during Mr. Kelly's detention hearing.

To summarize, the Magistrate explained that a basis for his decision was that Mr. Kelly has access to financial resources and had engaged in frequent international travel "giving him an opportunity to flee." The Magistrate also opined that, given the serious nature of the charges, he had "a significant incentive to flee."

The fact is that Mr. Kelly possesses almost no financial resources, and no evidence was presented to the Court to the contrary. Indeed, there is nothing in the record to support such an inference. Likewise, Mr. Kelly is *not* a frequent international traveler. His passport is presently in the custody of authorities in Cook County, Illinois in connection with Illinois State court proceedings. That passport was issued approximately eight years ago and does not contain a single stamp for travel. Mr. Kelly does not travel outside of the United States. Further, whatever "incentive to flee" Mr. Kelly had existed during his previous trials and current State court charges – these charges, each of which carried a six-year mandatory minimum prison sentence, did not cause Mr. Kelly to flee; in fact, he showed up at each and every court date over a period of years.

Equally important, it is a "serious risk of flight," not an "incentive to flee" that is required to be considered. *See Friedman*, *supra* at 49 (rejecting a similar argument: "[T]he government contends that Friedman presents a serious risk of flight because of the nature of the charges against him, the strength of the government's case, the long sentence of incarceration he may receive, his age and the obloquy that he faces in his community").

The Magistrate also expressed concern about potential future obstruction, predicated upon the Government's allegations of past obstruction. If the Government was referring to the NDIL Indictment, the most recent alleged obstruction occurred nearly five years ago, and is plainly mischaracterized within the charge - it was a civil settlement with a former manager following a lawsuit.

- 4 -

Beyond that, those allegations are just that, allegations, and allegations not charged in the present Indictment. To give them credibility and to detain Mr. Kelly based upon them, is to incarcerate him for a different charge, without a trial.

More to the point, the law speaks to the future, i.e., "a serious risk that such person will…", *not* that they have been. *See* 18 U.S.C. 3142(2)(B). Regardless of the past, any evidence or concern of future obstruction is unsupported. Notwithstanding years of rumors that Mr. Kelly was being investigated, television shows dragging him through the mud, and the filing of serious charges earlier this year in Illinois State court, the Government cannot identify any instances where Mr. Kelly has tried to influence, intimidate, or tamper with a single witness or potential witness. To be sure, if there are any concerns about Mr. Kelly going forward, they can be addressed by way of conditions of release that bar Mr. Kelly from having contact with witnesses, either directly or through third parties.

Since Mr. Kelly poses neither a serious risk of flight nor of obstruction, he respectfully requests that the Court set bail and release him upon satisfying the conditions imposed by your Honor. Mr. Kelly is prepared to consent to conditions of release that would substantially mitigate any potential risk and "reasonably assure" his continued presence before the Court and the safety of the community. *See* 18 U.S.C. § 3142(e).

## I.    Mr. Kelly Is Well Outside the Class of Individuals for Whom Pretrial Detention Is Warranted

Courts should always "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189 (2d Cir.1987) (*quoting* S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in 1984 U.S.C.C.A.N. 3182, 3189 ("Senate Report"). The Bail Reform Act (hereinafter the "Act") was expressly *not* intended to apply to *all* defendants charged with serious crimes, but only to that "small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or of other persons." *Id.* at Senate Report, at 3189 (emphasis added). The Supreme Court has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, at 755.

Mr. Kelly's continued detention is not justified on the facts. It marks a substantial departure from the class of cases in which pretrial detention has been deemed necessary. To gather a sense of the type of "particularly dangerous" individuals whom Congress had in mind under the Act, one need look no further than the line of Second Circuit cases on pretrial detention, and contrast those with the facts here. These cases confirm that Mr. Kelly is clearly *not* the type of person

for whom pretrial detention was intended or is warranted.[3] Mr. Kelly is in his 50's, does not have any criminal history, has never missed a court date, could not hide or evade surveillance given his fame, now has no passport, has posted a substantial bond in State court, has voluntarily turned himself in on all charges, and made no attempt to flee in the face of imminent Federal charges, and is presumed innocent. He clearly is *not* within the "limited group of offenders" who should be denied bail pending trial.

## II. The Government Cannot Satisfy the First Requirement for Pretrial Detention Under the Bail Reform Act

### A. Mr. Kelly Presents No Risk of Flight

There is zero evidence from which this Court can infer that Mr. Kelly is a risk of flight, let alone the required "serious" risk. To the contrary, Mr. Kelly's history directly undermines the Government's unsupported assertions of flight risk. Perhaps most significant is Mr. Kelly's record of appearance. Mr. Kelly faced prior criminal

---

[3] *See, e.g., United States v. Ciccone*, 312 F.3d 535 (2d Cir. 2002) (denying bail for alleged organized crime boss charged with supervising multiple acts of extortion, loansharking, money laundering and witness tampering); *United States v. Ferranti*, 66 F.3d 540 (2d Cir. 1995) (reversing district court's order releasing defendant charged with arson resulting in death and witness tampering; defendant also allegedly shot a criminal associate and directed others to intimidate tenants at a building he owned and to terrorize and kill a tenants' rights activist who was later found murdered); *United States v. Millan*, 4 F.3d 1038 (2d Cir. 1993) (reversing district court's order releasing defendant who had ordered numerous shootings, beatings, and a contract murder, and had issued threats against the families of witnesses who testified adversely to him at trial); *United States v. Orena*, 986 F.2d 628 (2d Cir. 1993) (overturning district court order releasing alleged acting boss and captain of the Colombo crime family who were charged with murder, conspiracy to murder and illegal possession of weapons; evidence showed that plans existed for further murders); *United States v. Rodriguez*, 950 F.2d 85 (2d Cir. 1991) (vacating district court's order releasing defendant who was introduced to an undercover agent as a hitman, agreed to perform a murder in exchange for one kilogram of cocaine, and allegedly shot someone in the kneecap over a $60 debt); *United States v. Shakur*, 817 F.2d 189 (2d Cir. 1987) (reversing district court order releasing defendant charged with 19 separate predicate acts of racketeering, including three murders, two of which were murders of law enforcement officers, three armed robberies of armored trucks, one bank robbery, seven attempted armed robberies and two armed kidnappings); *United States v. Colombo*, 777 F.2d 96 (2d Cir. 1985) (overturning district court order releasing defendant who operated his own "crew" within the Colombo crime family and directed crew members to rob large-scale drug dealers and distribute narcotics, to abduct a drug dealer, assault the manager of a car dealership, to extort a restaurant owner, to attempt to murder a government informant, and to rob passengers on a flight to Atlantic City); *see also United States v. Gotti*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005) (affirming order of detention for alleged leader of Gambino crime family who was charged with three murder conspiracies and attempted murders, as well as extortion and other crimes).

- 6 -

charges in Illinois State court in the early-2000s for which he was released pending trial and never missed a single court appearance. He was acquitted by a jury on all charges, after weeks of trial. Mr. Kelly appeared dozens of times in that matter. He was never even late. Additionally, he was allowed to travel, always returning.

Here, the fact that he was being investigated by the federal government was well known. Certainly, he knew. In the face of that, Mr. Kelly went about his normal activities. There was never any concern that Mr. Kelly was going to flee, notwithstanding the swirl of rumors of investigation and looming indictment. When the agents arrested him, he was walking his dog. He was fully cooperative, and never attempted to flee.

Equally, or perhaps even more importantly, when he was indicted for very serious charges in Cook County, Illinois in the Spring of 2019, he voluntarily surrendered the same day.[4] When charges were added to that action, and he was told that he had to appear in court for an arraignment on those additional charges, he promptly and voluntarily did so. Notably, the Illinois prosecutors did not even ask to increase or change any condition of his bond at that time. Last, instead of using the last of his money to flee, Mr. Kelly posted a $100,000 bond in the case.

Additionally, it was misreported to the Magistrate that Mr. Kelly travels internationally. He does not. His last international travel was approximately eight years ago. Plus, because his passport has been surrendered, he cannot.

None of the typical indicia of flight risk exist in this case. Discussing the types of factors that might support a finding of flight risk, the Second Circuit in *Friedman* pointed to *United States v. Coonan*, 826 F.2d 1180, 1186 (2d Cir. 1987), where the defendant had been a fugitive for close to four months on the very charges for which he was incarcerated, and his fugitive status ended only by his capture, and *United States v. Jackson*, 823 F.2d 4, 6-7 (2d Cir. 1987), where the defendant had shown skill in avoiding surveillance, had lived from hotel to hotel, had hidden assets, and had used a number of aliases.[5] Neither of those cases bears even a remote resemblance to the facts presented in this case.

Finally, there are various levels of monitoring, or even home detention, that would ameliorate any conceivable risk.

---

[4] The Cook County, Illinois State court charges include what are referred to as class X felonies. These charges require a minimum sentence of six years in the Illinois Department of Corrections.

[5] *See also Shakur*, *supra*, 817 F.2d 189 (finding serious risk of flight where defendant, who was charged with multiple murders and armed robberies, had eluded capture for four years, despite being on the FBI's "Ten Most Wanted" list, by moving from city to city and living under a fictitious name).

### B. Mr. Kelly's Personal History and Characteristics

By way of further background, Mr. Kelly is a lifelong resident of Chicago. Prior to his detention, he resided in a one-bedroom (plus modest den) condominium with his two lady friends. The building in which he resided is the Trump International Tower, a highly secure building with a 24-hour doorman, and vast security.

Mr. Kelly has a number of health issues which need to be addressed and for which he is not presently receiving adequate medical care. This includes numbness in his hand, anxiety, and an untreated hernia. His conditions of confinement, even after he was moved out of the special housing unit, remain stifling. He is limited to 300 minutes on the telephone, per month. His visits are severely restricted; presently, he is only allowed one unrelated person to visit. In other words, although he lives and has lived with two lady friends, only one of them is allowed to be on his visiting list, and after 90 days he is required to switch. No other friends or professional colleagues are allowed to visit. That is not right.

### C. Mr. Kelly Presents No Genuine Risk of Obstruction

Despite the Government's burden of demonstrating that Mr. Kelly poses a "serious" risk of danger to the community, the Government relied upon just one alleged instance of obstruction in its July 12, 2019 letter that it submitted to this Court. The Government relied exclusively on a letter that is related to a civil case. If there is a letter, Mr. Kelly did not write it; he can only write phonetically (although he does not deny someone may have asked him to sign something, he does deny he ever intended to threaten anyone). Mr. Kelly has never knowingly expressed any anger towards the individual in those materials. Moreover, Mr. Kelly has never engaged in any threatening or violent conduct towards her.

One of the Jane Doe's named in the Indictment, number five, filed a civil suit against Mr. Kelly last year. Her original attorney was convicted of fraud and it appears at this point that Jane Doe is unrepresented. It is believed this is the individual who the Government claims Mr. Kelly threatened. More to the point, after he was served with the civil complaint, an individual he knows prepared a series of documents, had him sign them, and then filed them on his behalf with the court. To the extent the Government may have been referring to those documents, a copy is attached as Exhibit C. They are plainly nonsensical.[6]

---

[6] As to another Jane Doe, this appears to be one of Mr. Kelly's present lady friends. There is no suggestion that he has done anything to obstruct justice with respect to her and the Government has not otherwise expressed any concern. Beyond that, as previously indicated, the defense has been given virtually no materials regarding the remaining alleged victims, and their identities remain a secret, so there can be no concern of potential obstruction, serious or not.

In its presentation to the Magistrate, the Government referred to the potential that Mr. Kelly had potential witnesses or alleged victims write letters with false allegations that could be used against them. As with other allegations, no discovery has been produced that supports that claim, and thus it is difficult to respond to this alleged concern.[7] Nor is there any evidence that, if such letters in fact exist, Mr. Kelly has ever used them. In sum, the Government appears to claim that Mr. Kelly had people generate evidence to dissuade persons from cooperating with the Government, or to punish such persons if they cooperated with the Government, but that such materials were never actually used to dissuade them or punish them? Likewise, the Government claimed that Mr. Kelly threatened physical harm. However, again, there is no evidence of this nor is there evidence that anyone was ever physically harmed, or even any details providing the basis for such alleged threats. Lastly, the Government claimed that Mr. Kelly created numerous recordings of minors and kept them at his disposal so that he could release them to deter the witnesses from cooperating with law enforcement. Apparently, this argument is "so if you accuse me of doing something wrong, I will release the video evidence to prove it in order to punish you." This logic is nonsensical and has no basis in the record.

The Government also claimed that Mr. Kelly continued to commit crimes while he was released on bail in his 2002 Illinois case, referencing allegations of kidnapping and sexual assault. As support for those allegations, the Government references "Jane Doe Number Two" in the Indictment, who appears to be an adult. Notably, this individual never complained about her interactions with Mr. Kelly until quite recently, two decades after the conduct allegedly occurred. Given the secretive nature of the Government's disclosures to-date, defense counsel cannot further respond because they do not know the identity of this individual. But again, Mr. Kelly is presumed innocent of the charges in the Indictment, and such conduct cannot form the basis of his detention.

In the interest of full disclosure, the Illinois Federal court Indictment alleges that Mr. Kelly engaged in certain activities while he was previously out on bail in the Illinois State court case in the 2000's. An individual made a complaint against Mr. Kelly known during the pendency of that case. That complaint was, at that time, fully investigated by the Chicago police and Cook County prosecutors. Ultimately, no charges were ever brought against Mr. Kelly in response to those allegations. Those allegations, now being re-made some fifteen years later, do not appear to have any new or additional basis.

---

[7] There have been searches of Mr. Kelly's home and storage facility, and his phone and computers have been seized. Surely, if the evidence existed it would be known. To the extent the analysis of electronics is ongoing, it is not right to say "well we might find something so keep him detained in case we do."

- 9 -

Significantly, Mr. Kelly's co-defendants in the Illinois Federal case, who have also similarly been charged with the very same alleged obstruction activities as Mr. Kelly, have been released from custody. One is in Las Vegas.

In any event, to the extent the Court believes that a significant risk of obstruction exists, that risk can be adequately alleviated, as discussed below, through conditions of release, such as a prohibition on contacting co-defendants and potential witnesses, as well as tight restrictions on Mr. Kelly's travel.[8]

## II.  The Government Cannot Satisfy the Second Requirement for Pretrial Detention Under the Bail Reform Act

Even in cases in which the Government can demonstrate a serious risk of flight or danger to the community, the Act instructs courts to order pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(c)(l)(B). Pretrial detention is permitted only if the court finds that no "condition or combination of conditions" of release would "reasonably assure" the defendant's appearance and the safety of the community. *Id.* at 18 U.S.C. § 3142(e). This is plainly *not* such a case.  Ample conditions exist that would assure Defendants' appearance and Court and would mitigate whatever risk exists to the community.

In evaluating whether conditions exist to reasonably assure a defendant's presence and the safety of the community, the Act requires the Court to consider: (i) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (ii) the weight of the evidence against the person, (iii) the history and characteristics of the person, and (iv) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). These factors weigh heavily in favor of Mr. Kelly's release.

---

[8] Compare *United States v. Lafontaine*, 210 F.3d 125 (2d Cir. 2000) (finding a serious risk of obstruction where defendant lied to the court at her detention hearing, tampered with a witness and blatantly violated an express condition of her release by contacting a government witness she was prohibited from contacting); *United States v. Gotti*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005) (finding risk of obstruction where defendant ordered the attempted murder of Curtis Sliwa merely because he criticized the defendant's family); *United States v. Cantarella*, 2002 WL 31946862 (E.D.N.Y. 2002) (denying pretrial release for defendant who allegedly participated in the murder of a potential witness against his father); *Millan*, *supra*, 4 F.3d 1038 (denying pretrial release where defendant repeatedly threatened to harm any witnesses who might testify against him, and their families); *Ferranti*, 66 F.3d 540 (denying pretrial release where defendant tampered with a witness in the pending case and had a history of intimidating and terrorizing people).

First, since the July 12, 2019 detention hearing, no evidence has been disclosed to the defense showing that substantial evidence supports the Indictment. Defendant can only guess that the Indictment is merely a holding charge for a Pending Superseding Indictment charging an actual RICO conspiracy involving more than one person, and thus that the current Indictment was issued for the sole purpose of attempting to arrest Mr. Kelly prior to federal prosecutors in Chicago.

Second, with respect to the history and characteristics of Mr. Kelly, he has strong family ties in the community, has lived in the community for over 50 years, and has a perfect, unblemished "record concerning appearance at court proceedings." *See* 18 U.S.C. § 3142(g)(3)(A). Moreover, at the time of the current offense or arrest, he was not on probation. *See* 18 U.S.C.§ 3142(g)(3)(B).

Third, as to the nature and seriousness of the "danger" purportedly posed by his release, the Pretrial Services Department is perfectly capable of monitoring Mr. Kelly and preventing him from contacting alleged victims. Moreover, the Government likely has its witnesses tightly under wraps, being monitored closely by FBI agents and by victim specialists. Should Mr. Kelly even attempt to contact one of them, assuredly they would immediately tell the FBI or the coordinator, causing this Court to revoke his pretrial release.

Fourth, Pre-Trial Services in the NDIL recommended *release*, with conditions. While Pre-Trial in the EDNY did not, there does not appear to be any reason – they did not explain one and do not appear to have one.

Finally, because of the fundamental importance of Mr. Kelly's interest in liberty (*see Salerno*, *supra*, 481 U.S. at 750), this Court also should consider the anticipated length of his pretrial detention. *See United States v. Kashoggi*, 717 F. Supp. 1048 (S.D.N.Y. 1989); *United States v. El-Gabrowny*, 35 F.3d 63 (2d Cir. 1994) (noting that a substantial delay may require the Government to make a heightened showing of dangerousness or risk of flight). This too weighs strongly in favor of Mr. Kelly's release pending trial. Mr. Kelly already has been detained for approximately three months, and a trial, which will likely last more than one month, is unlikely to begin any sooner than sometime in early to mid-2020. Thus, if the Court continues to deny his pretrial release, Mr. Kelly undoubtedly will suffer a prolonged period of detention before a determination ever is made about his innocence or guilt. Notably, the Bail Reform Act is expressly *not* intended to affect the presumption of innocence. 18 U.S.C. § 3142G).

## III.  Conclusion

Fully consistent with the intent of the Bail Reform Act, as well as Constitutional limitations on the deprivation of an individual's liberty, pretrial detention is reserved only for those defendants who are particularly dangerous and who pose a serious, cognizable risk of flight or danger to the community. Mr. Kelly does not fall into this narrow category of people. Because conditions of release exist in this case that would realistically eliminate any purported risk of flight or danger to the community, the Court should release Mr. Kelly subject to whatever conditions it deems appropriate.

Thank you for your consideration of this application.

Respectfully submitted,

/s/ *Steve Greenberg*

Steven  A. Greenberg