1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF NEW YORK
 2

 3      UNITED STATES OF AMERICA,        ) Criminal
                                         ) No. 19-286 (AMD)
 4                    Government,        )
                                         ) ARRAIGNMENT
 5      vs.                              )
                                         ) Brooklyn, New York
 6      ROBERT S. KELLY,                 ) Date:  August 2, 2019
                                         ) Time:  10:30 a.m.
 7                    Defendant.         )

 8      ─────────────────────────────────────────────────────

 9                   TRANSCRIPT OF ARRAIGNMENT
                           HELD BEFORE
        THE HONORABLE MAGISTRATE JUDGE STEVEN L. TISCIONE
10                 UNITED STATES MAGISTRATE JUDGE

11      ─────────────────────────────────────────────────────

12                      A P P E A R A N C E S

        For the Government:       Elizabeth Geddes, AUSA
13                                Maria Cruz Melendez, AUSA
                                  Nadia Shihata, AUSA
14                                US Attorney's Office
                                  Eastern District of New York
15                                271 Cadman Plaza East
                                  Brooklyn, New York  11201
16                                718-254-6408

17      For the Defendant:        Douglas C. Anton, Esq.
                                  Three University Plaza Drive
18                                Suite 207
                                  Hackensack, New Jersey  07601
19                                201-487-2055

20      (Appearances continued on the next page)

21

22

23      Court Reporter:   Annette M. Montalvo
                          Office: 718-804-2711
24

25
```

Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter

2

APPEARANCES:   (Continued)


        For the Defendant:          Steven A. Greenberg, Esq.
                                    Greenberg Trial Lawyers
                                    53 W. Jackson Boulevard
                                    Suite 1260
                                    Chicago, Illinois  60604
                                    312-399-2711

                                      -and-

                                    Michael Leonard, Esq.
                                    Leonard Meyer LLP
                                    120 North LaSalle Street
                                    20th Floor
                                    Chicago, Illinois  60602
                                    312-380-6559


ALSO PRESENT:  Amina Adossa-Ali, US Pretrial Services
               Kathy Rodriguez, US Pretrial Services




Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
_____

Court Reporter:             Annette M. Montalvo, CSR, RDR, CRR
                            Official Court Reporter
                            United States Courthouse, Room N375
                            225 Cadman Plaza East
                            Brooklyn, New York  11201
                            718-804-2711

Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter

3

1          (WHEREUPON, commencing at 10:33 a.m., the following

2   proceedings were had in open court, to wit:)

3          THE COURTROOM DEPUTY:  Criminal cause for

4   arraignment, Case No. 19-CR-286, *United States of America v.*

5   *Robert Sylvester Kelly.*

6          Counsel, your names for the record.

7          MS. GEDDES:  Elizabeth Geddes, Nadia Shihata, Maria

8   Cruz Melendez, and Kyra Wenthen, for the government.  Good

9   morning, Your Honor.

10         THE COURT:  Morning.

11         MR. ANTON:  Good morning, Your Honor.  Douglas

12   Anton, Hackensack, New Jersey, on behalf of Mr. Kelly.

13         MR. GREENBERG:  Good morning, Your Honor.  Steve

14   Greenberg on behalf of Mr. Kelly.

15         MR. LEONARD:  Good morning, Judge.  Mike Leonard on

16   behalf of Mr. Kelly.

17         THE COURT:  Good morning.

18         Good morning, Mr. Kelly.

19         THE DEFENDANT:  Good morning.

20         THE COURT:  All right.  The purpose of the

21   proceeding is to make sure you understand the charges that

22   have been brought against you, to advise you of certain rights

23   that you have, and to address the questions of whether you can

24   be released on bail.

25         First, you have the right to an attorney in this

4

1  case.  If you cannot afford an attorney, the court will
2  provide one to you at no cost.
3          I assume you are all retained counsel in this case.
4          MR. ANTON:  Yes.
5          MR. GREENBERG:  Yes.
6          MR. LEONARD:  Yes.
7          THE COURT:  You have the right to remain silent.
8  You are not required to make any statements.  If you have made
9  any prior statements, you need not say any more.
10         If you decide to make a statement, you can stop at
11 any time.  But any statements you do make, aside from
12 statements you make to your attorney, can be used against you.
13         Do you understand that?
14         THE DEFENDANT:  Yes, sir.
15         THE COURT:  All right.  The grand jury in this
16 district has returned a superseding indictment against you.
17 Have you seen a copy of that, sir?
18         THE DEFENDANT:  Yes.
19         THE COURT:  Counsel, does your client waive a public
20 reading of the indictment?
21         MR. ANTON:  Yes, Judge.
22         THE COURT:  And is he prepared to enter a plea at
23 this time?
24         MR. ANTON:  Plead not guilty at this time, Judge.
25         THE COURT:  All right.

1          MS. GEDDES:  Your Honor, there's also an underlying

2   indictment that the defendant should be arraigned on as well.

3          THE COURT:  Okay.  Have you seen a copy of the

4   original indictment that was filed in this case?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  All right.  And how does your client

7   plead to those charges?

8          MR. ANTON:  Not guilty, Judge.

9          THE COURT:  All right.  Having seen the detention

10  letters on both sides, obviously, I know the government's

11  position with respect to detention here, but if there's

12  anything you want to add to the position expressed in your

13  letter, feel free to do so.

14          MS. GEDDES:  Yes, Judge.

15          The government does seek a permanent order of

16  detention in this case.  As set forth in our detention memo,

17  if the defendant were released, it is our position that he

18  poses both a risk of flight, a risk of danger, as well as the

19  fact that there's a serious risk that he will attempt to

20  obstruct justice.  The charges include certain offenses

21  involving minors, so there is a presumption of both a risk of

22  flight and danger here.  But regardless of the presumption,

23  given the defendant's lengthy and wide ranging history of

24  criminal conduct here, including obstruction, there are no

25  conditions that can overcome this presumption and mitigate the

6

1    risk of danger, flight, and obstruction.

2         THE COURT:  Let me ask you this, because it is not

3    quite clear from the indictment and from your letter.  What,

4    if any, overlap is there between this case and the other cases

5    that are in Chicago?

6         MS. GEDDES:  There is no overlap with the federal

7    case.  There may be some minor overlap with the state case,

8    however, there are at least four additional victims in our

9    case.

10         THE COURT:  So between those cases, how many total

11   victims are alleged to have --

12         MS. GEDDES:  13.

13         THE COURT:  13, okay.

14         The other thing that I am interested in, for

15   purposes of the bail determination, is the obstruction of

16   justice allegations, not, you know, the general arguments as

17   to why obstruction is an issue, but there were some

18   allegations about actual obstruction that the defendant was

19   involved in in prior cases.

20         Can you tell me a little bit more about that.

21         MS. GEDDES:  I can, Judge.

22         So with respect to the 2002 case, which the

23   defendant was acquitted of after trial in Chicago, the

24   defendant is charged in federal court in Chicago with

25   obstructing that investigation.  He is charged with paying off

7

1  witnesses, intimidating witnesses, such that they did not

2  appear and such that they falsely testified.

3            In addition to the --

4            THE COURT:  Intimidating how?

5            MS. GEDDES:  Well, let me speak specifically about

6  the government's evidence in this case.  The defendant had,

7  essentially, an inner circle who assisted him with a lengthy

8  attempt at obstruction by paying off witnesses who indicated

9  any interest in cooperating with law enforcement.  He

10 allowed -- or he had potential witnesses write letters

11 containing false allegations that he would have at his

12 disposal to use to embarrass witnesses who potentially turned

13 against him.  He told witnesses that they had the option of

14 choosing his side or the other side and made witnesses feel as

15 though if they did not -- if they were to cooperate against

16 him, they could be subject to physical harm, both themselves

17 and their family members.

18            He did this over a course of decades, and he did it

19 with many women and children.  He also created numerous

20 recordings of minors and kept them at his disposal, such that

21 they were available if he wanted to release them, and that

22 served as an additional mechanism to deter witnesses from

23 cooperating with law enforcement.

24            I would also note, when he was on bail in the 2002

25 case, the defendant continued to commit crimes,

8

1   notwithstanding the serious charges that were pending against

2   him.   In the indictment returned here in the Eastern District

3   of New York, the defendant, one of the allegations contained

4   in the racketeering charge, is kidnapping and sexual assault.

5        Those -- that conduct occurred while he was on bail.

6   So he has shown a history of not being able to comply with the

7   Court's conditions of release, and, you know, even more

8   significantly perhaps, he has engaged in this pattern of

9   obstruction by ensuring that witnesses would not be available

10  to testify and were not willing to testify.

11       THE COURT:   Thank you.

12       MR. ANTON:   Judge, with respect to counsel's

13  arguments, I'll start with the last one first.   Counsel

14  indicates that while out on another case, he committed crimes.

15       Well, he's been alleged to commit crimes, is what's

16  being said.   In fact, everything that makes up the predicate

17  for the proffer before the Court today are the allegations

18  that make up this indictment and/or -- and the superseding

19  indictment and/or the Chicago case.

20       We have to talk about whether he's a flight risk.   I

21  have known Mr. Kelly for a period of time.   We have gone to

22  court on a number of issues where he's been free to appear in

23  court.   I have never known him not to appear in court.   We do

24  not have his passport anymore, that's been turned over, so he

25  can't go anywhere out of the country, either to perform or to

9

1  flee the jurisdiction of this court, nor would it be his

2  intention.

3          Obstruction of justice.  We are dealing with an

4  issue where there was a trial by a court, jury of his peers,

5  and a lot of eyes on that case.  Not after the verdict came

6  back, not in the months or the years that followed did any of

7  these things rear their ugly head, as they do now, that there

8  was some level of obstruction of justice back then.

9          Now, along with this enterprise, which the Court

10  knows from my letter, knows my feeling on what the government

11  is calling an enterprise.  When the government states he did

12  these things, I don't know if the government is saying the

13  enterprise did these things and, therefore, it is attributable

14  to him, or that he specifically would say these things.

15          There is video that allegedly exists, but we don't

16  have it before the Court nor is it indicated in the

17  superseding indictment that the video exists as evidence in

18  this case, or that video allegedly was taken of certain acts

19  alleged to be committed by the defendant.

20          Danger to others.  Outside of the accusations that

21  exist here in this indictment and in the indictment in

22  Chicago, which are unproven accusations for which our client

23  has the right to remain not -- he's not convicted of.  So

24  there's nothing that can point the finger at him that should

25  be used against him.  Outside of allegations, we don't have

10

1    any obstruction of justice charge, we don't have any danger --

2            THE COURT:  But because it is just an allegation, he

3    hasn't been convicted of it yet, I should just ignore it for

4    purposes of dangerousness of the defendant?

5            MR. ANTON:  Definitely not.  But the Court has the

6    right to require a little more than just the government say so

7    that this exists.  And I ask the Court to look at the time

8    period between the alleged obstruction, the alleged danger to

9    others, the alleged issues in this case, and today, and look

10   at what's happened between that time period.

11           The allegations that are mostly contained in this

12   indictment date back some years.  Only one of which Jane Doe

13   No. 5 is a more recent thing, 2017 to '18.  And that issue has

14   different parts to it.  But the Court certainly can require,

15   if the government is going to say obstruction took place, for

16   some level of -- a document, some level of identification of

17   obstruction rather than videos were made and there was a

18   wink-wink and a, hey, if you don't say this or say this, this

19   is going to happen.  Otherwise, it is completely -- the entire

20   proffer then is based on just allegations, and not one piece

21   of evidence that this Court can rely on in taking away my

22   client's freedom and not letting him come out and cooperate

23   with counsel and be able to fully participate in his defense.

24           THE COURT:  I understand that this is a separate

25   case.  But when you talk about allowing your client his

11

1   freedom, as a practical matter, he's already in custody on

2   another case.  So even if I theoretically release him on a

3   bail in this case, he is not going anywhere.

4           MR. ANTON:  Without question.  However,

5   Mr. Greenberg has filed a motion for reconsideration yesterday

6   in the federal matter in Chicago, and that's going to be

7   addressed hopefully within the next couple of weeks.  I do

8   believe Mr. Greenberg can speak a little more intelligently

9   about this.  There are overlapping issues in this case and the

10  other case.  So that's another issue that would be addressed.

11          But we certainly don't want to have a situation

12  where -- we want -- we would ask this Court to make an

13  independent determination about his flight risk and about his

14  danger to society, based on -- or to others, based on the

15  presentation made by the government here, or, in our opinion,

16  lack thereof, outside of we say these things took place many

17  years after.

18          If there's jury tampering in the case, usually

19  somebody complains about it right after.  But in this case,

20  there was -- not that the victim -- alleged victim or the

21  person on the tape --

22          THE COURT:  I don't think there was an allegation of

23  jury tampering, was there?

24          MS. GEDDES:  There's not, Judge.

25          THE COURT:  There's an allegation of witness

12

1   tampering.

2          MR. ANTON:  Witness tampering.  That the witness was

3   not supposed to appear.

4          But the witness -- parents did communicate, they did

5   have communication with the parents of the witness.  It is not

6   like the witness just disappeared and then surfaced years

7   later.

8          So there was communication.  Prosecutor did have

9   access to the witness, and the parents, and the witness just

10  decided that they weren't going to testify because of their

11  opinion about what the video was.

12         So it is a long stretch from Mr. Kelly made a

13  witness disappear on threat of X, Y, Z.  And that, I think, is

14  what's trying to be proffered here, and it just is not true.

15         And this Court, as I stated in the letter I had

16  sent, this Court has the right to ask for independent evidence

17  that can be presented to it before it denies my client his

18  ability to get out of jail.  And, again, we'd like this Court

19  to make a determination here, because if Mr. Greenberg is

20  successful on that motion, we would then have to come back

21  here, and, certainly, Your Honor shouldn't be swayed one way

22  or another by what another court does, but do it independently

23  so then we can use that in the further case.

24         MR. GREENBERG:  Your Honor, may I just --

25         THE COURT:  Sure.  I mean, look.  I am going to

13

1   continue to consider this independently, notwithstanding the

2   fact that he's in custody on another case anyway.  So if

3   that's your concern, you don't have to spend more time arguing

4   it.

5           MR. GREENBERG:  No.  No, that wasn't what I was

6   going to argue.  But Mr. Anton, I just wanted to correct

7   something.  The young lady in the prior state case did testify

8   before the grand jury that it was not her in the video.  So

9   she did provide some level of cooperation.  We have not gotten

10  all the discovery in that matter.  We haven't gotten any, in

11  fact.

12          What I was perhaps going to suggest -- I filed this

13  motion yesterday when I was at the airport.  Mr. Anton brought

14  a hard copy.  I also have an additional copy of the

15  transcript, and I don't know if it would assist if I shared

16  that copy of the transcript.

17          THE COURT:  Transcript of what?

18          MR. GREENBERG:  Of the hearing in Chicago, the bail

19  hearing, and perhaps we took a few minutes, and the Court

20  could see the motion and reconsider, which we think -- we

21  think that the Judge -- the Judge never reached -- he said

22  that because the grand jury had found guilt, that Mr. Kelly

23  wasn't entitled to bail, and I think that was the wrong

24  analysis.  He never reached the point of conditions, which

25  were recommended in Illinois.  Release was actually

14

1    recommended by pretrial services there.

2           So I am making that offer --

3           THE COURT:  You have seen the addendum.  It is not

4    recommended in this district.

5           MR. GREENBERG:  Right.  I have seen that, just

6    before court this morning.  But if that would assist --

7           THE COURT:  I am happy to look at whatever you want

8    to submit, as long as you submit a copy to the other side.

9           MR. GREENBERG:  Sure.  Can I e-mail it?  Would that

10   be okay?  I only have one copy of the motion.

11          MS. GEDDES:  I have your motion.

12          MR. GREENBERG:  You do?

13          MS. GEDDES:  Yes.

14          MR. GREENBERG:  But the transcript I've got on my

15   computer, Your Honor.  Unless there's some way someone can

16   print it.  It is about 30 pages.  It is not very long.  Thank

17   you.

18          (WHEREUPON, said document was tendered to the

19   Court.)

20          (Short pause.)

21          MR. ANTON:  Judge, I have one thing to add that is

22   not an allegation, but is a fact that I think the Court would

23   be concerned with.  Although I wasn't a part of that earlier

24   case, it was a 2002 case that the government had referenced.

25   The case resolved itself in 2008, approximately, by way of

15

1    acquittal.  Mr. Kelly was free on bail that entire time, never

2    fled anywhere, and he could have.  He appeared at every one of

3    his court appearances.  And I think that history of this

4    defendant and how he addresses the legal matters before him,

5    as well as even his most recent stint that he's been doing in

6    the Cook County case, should speak volumes of his desire to

7    address issues, appear in court every time, and his lack of

8    desire to flee any jurisdiction, but to always live up to his

9    obligations with any court, and I believe that he will do so,

10   and his history shows that he will do so in this case,

11   Your Honor.  Thank you.

12          THE COURT:  Anything further?

13          MR. ANTON:  That's all.

14          MS. GEDDES:  No, Judge.

15          THE COURT:  All right.  Based on what I can

16   ascertain from the various indictments, the defendant's

17   accused of a multitude of crimes spanning the time period from

18   as early as 1997 through 2018, at the latest, and they're not

19   minor charges.  Many of them are incredibly serious charges of

20   sexual abuse of minors, coercion of minors, child pornography.

21   The defendant has a history of similar allegations, dating

22   back more than a decade.  The defendant has access to

23   financial resources.  It's not clear exactly what level of

24   financial resources, but he certainly has made a considerable

25   amount of money from his employment.  He's also had frequent

16

1    international travel, giving him an opportunity to flee, and

2    given the serious nature of the charges against him, both in

3    this indictment and in Chicago, he has a significant incentive

4    to flee, given the long prison term that he would be subject

5    to if he's convicted of any of these offenses.

6            I'm also extremely troubled by the issues of

7    potential obstruction in prior cases and the possibility --

8    strong possibility that there could be potential witness

9    tampering in this case if he's released.  And the fact that he

10   allegedly committed some of the charged offenses here while he

11   was on bail in another case strongly argues that the defendant

12   cannot be relied upon to comply with the conditions of

13   release.

14           Under the circumstances, I find that no condition or

15   combination of conditions will reasonably assure the

16   appearance of the defendant and the safety of the community.

17   So I am ordering him to be detained pending trial.

18           When's the next status conference before the

19   district judge?

20           MS. GEDDES:  Today at 1:00 p.m.

21           THE COURT:  If you want to appeal the decision, you

22   can certainly bring it up to the district judge at this

23   afternoon's conference.

24           MR. ANTON:  Thank you.

25           THE COURT:  Anything further from the other side?

17

1          MS. GEDDES:  No, Judge.  Thank you.

2          MR. ANTON:  Thank you, Your Honor.

3          THE COURT:  Thanks, everyone.

4          (WHEREUPON, at 10:57 a.m. the proceedings were

5     concluded.)

6

7

8

9                         *  *  *  *  *

10                   **REPORTER'S CERTIFICATE**

11
          I, ANNETTE M. MONTALVO, do hereby certify that the
12    above and foregoing constitutes a true and accurate transcript
      of my stenographic notes and is a full, true and complete
13    transcript of the proceedings to the best of my ability.

14          Dated this 29th day of August, 2019.

15    /s/Annette M. Montalvo
      Annette M. Montalvo, CSR, RDR, CRR
16    Official Court Reporter

17

18

19

20

21

22

23

24

25

*Annette M. Montalvo, CSR, RDR, CRR*
*Official Court Reporter*