

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EAG/NS/MCM
F. #2019R00029

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 2, 2019

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Robert Sylvester Kelly
                Criminal Docket No. 19-286 (S-1) (AMD)

Dear Judge Donnelly:

      Pursuant to the Court's September 30, 2019 Order, the government respectfully submits this letter in opposition to the defendant Robert Kelly's September 30, 2019 motion for pretrial release. For the reasons set forth herein and in the government's July 12, 2019 detention memorandum, a copy of which is attached hereto, the government respectfully submits that the order of detention issued by the Honorable Steven Tiscione should remain in place and the defendant's motion for pretrial release should be denied.

I.      Applicable Law

      As the defendant highlights, there are two steps in the detention inquiry. First, to hold a detention hearing, the Court must determine whether the defendant has been charged with a qualifying offense or if a qualifying circumstance exists. If a detention hearing is warranted, the Court must then determine whether any conditions or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

      The first step is easily satisfied here on three independent bases. First, the defendant is charged with a qualifying offense, namely a felony that involves a minor victim. See 18 U.S.C. § 3142(f)(1)(E). Indeed, the racketeering offense charged in Count One includes multiple racketeering acts involving three different victims who were minors when

the charged racketeering acts were committed: Jane Doe #1, Jane Doe #3 and Jane Doe #4.[1]  Second, two qualifying circumstances exist that warrant a detention hearing: (1) the case involves a serious risk that the defendant will flee if released, see id. § 3142(f)(2)(A); and (2) the case involves a serious risk that the defendant will obstruct, attempt to obstruct, threaten, intimidate or attempt to threaten or intimidate a prospective witness.  See id. § 3142(f)(2)(B).  Each of these factors serves as a stand-alone basis for the Court to hold a detention hearing.

Once the first step is satisfied, the Court must determine if, as the government submits, there are no conditions to mitigate the risks of flight, danger and obstruction if the defendant is released.  In addition, where, as here, there is probable cause to believe that the defendant committed offenses involving minor victims under 18 U.S.C. §§ 2251 (sexual exploitation of children), 2421 (transportation), 2422 (coercion and enticement) and 2423 (transportation of minors),[2] it shall be presumed, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.[3]  18 U.S.C. § 3142(e)(3)(E).  Indeed, "the presence of an

---

[1] The defendant appears to question the government's motivation for bringing the charges in this district and suggests that they may not be legally sound.  In fact, the defendant is facing serious charges in the Eastern District of New York for no reason other than there is significant evidence that he committed serious charges in this district.  A grand jury has returned an indictment charging the defendant with racketeering and other serious crimes relating to criminal activity committed over two decades.  Notwithstanding the defense's unsupported claim that many of the racketeering allegations "arguably do not even fall within the definitions found in 18 U.S.C. § 1961" (Def. Mem. at 1 n.1), each racketeering act squarely qualifies as a predicate racketeering act under that section.  The defendant also suggests that because the description of the enterprise and its means and methods includes some lawful behavior, "there are serious questions as to whether the present Indictment will even stand."  Id.  He is wrong.  Indeed, the enterprise could be wholly legitimate and still qualify as an enterprise for purposes of establishing that element of a racketeering offense.  See United States v. Turkette, 452 U.S. 576, 580-93 (1981) (holding that definition of RICO enterprise includes both legitimate and illegitimate enterprises within its scope).  Similarly, an enterprise can engage in both lawful and unlawful activity.  What renders the defendant's conduct racketeering, and therefore chargeable under § 1961, is that he conducted the affairs of the enterprise through a pattern of racketeering activity, namely the list of crimes described in racketeering acts one through eleven.

[2] See, e.g., Racketeering Acts One, Four, Six, Seven, and Eight of Count One of the Indictment, which each charge violations of the relevant subsections involving minor victims.  See United States v. Marino, 731 F. Supp. 2d 323, 326 (S.D.N.Y. 2010) (predicate acts alleged as part of a pattern of racketeering activity can trigger rebuttable presumption of dangerousness to community).

[3] The government's July 12, 2019 detention memorandum correctly set forth the racketeering acts in the indictment that trigger the presumption under 18 U.S.C.

indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the rebuttable presumptions set forth in § 3142(e)." United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985).

II.  Discussion

In accordance with the rebuttable presumption applicable here, no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community.

    A.  The Defendant Poses a Serious Risk of Flight

First, as the government argued in its July 12, 2019 detention memorandum, the defendant poses a serious risk of flight if released.

As an initial matter, the defendant's appearance at prior court proceedings in connection with his 2002 Cook County case is hardly indicative of whether, if released, he would appear in connection with this case. He is now facing charges in four different jurisdictions, including two in federal court: the charges in this district (the "EDNY Indictment") and the charges pending in the Northern District of Illinois (the "NDIL Indictment"). If convicted of certain of the charges in the NDIL Indictment, the defendant faces a minimum sentence of 10 years' imprisonment. Given the breadth and quantity of allegations in both federal districts, he is facing substantially more time in prison than he did in connection with his 2002 case, providing an increased incentive to flee. Moreover, in connection with his 2002 case, the defendant paid witnesses a substantial sum of money to ensure that they did not testify against him, greatly reducing the likelihood of a conviction and therefore his incentive to flee.

Second, the defendant's argument regarding his lack of international travel is misleading. While the defendant may not have traveled internationally in recent years, it is not true that he lacks the ability and desire to do so. Indeed, this year, after he had been released on bail in his current Cook County case, he sought to travel to Dubai with his two live-in girlfriends, each of whom took steps to accompany him by submitting applications to obtain their own passports. Indeed, his desire to travel abroad is likely even higher given his diminished stature here in the United States.[4] This is another factor that demonstrates his risk of his flight.

---

§ 3142(e)(3)(E), but (1) failed to list violations of 18 U.S.C. §§ 2421 and 2422 as charged violations that trigger the presumption when involving minor victims, and (2) mistakenly indicated that a violation of 18 U.S.C. § 2242 was alleged as a racketeering act in the indictment. See Gov't Detention Mem. at 6 and n.2.

    [4]    The government credits the defendant's claim that he surrendered his passport to authorities in connection with his release on his current Cook County case. This, however, does not prevent him from obtaining a duplicate passport and, as described below, his prior

Third, the defendant's contention that he has "almost no financial resources" (Def. Mem. at 3) is also misleading. In fact, the defendant continues to receive hundreds of thousands of dollars in connection with royalties he is owed for his music. The government's investigation has revealed that earlier this year, the defendant re-directed those royalties to the bank account of a childhood friend. Regardless of where those funds are being held, however, they belong to the defendant and, at any time, the defendant can redirect those funds - and future royalty proceeds earned - to an account in his name. His lack of candor with the Court regarding his financial resources is another factor that counsels against release.

In sum, as set forth herein and in the government's July 12, 2019 detention memorandum, the government has established by a preponderance of the evidence that there is a serious risk of flight if the defendant is released.

B. The Defendant Poses a Serious Risk of Obstruction

As the government also argued in its July 12, 2019 detention memorandum, if released, there is a serious risk that the defendant will obstruct, attempt to obstruct, threaten, intimidate or attempt to threaten or intimidate one or more prospective witnesses.

First, and significantly, the NDIL Indictment charges the defendant with obstruction related to the criminal charges initiated against him in Cook County in 2002. As such, given the NDIL grand jury's indictment, there is probable cause to believe the defendant has a prior history of committing obstruction when faced with serious criminal charges.

Second, as described in the government's initial detention memorandum, in 2018, the defendant, or individuals acting on his behalf and under his control, sent a typewritten letter to a lawyer then representing Jane Doe #5, threatening to release compromising and potentially embarrassing photographs of Jane Doe #5 if she pursued her civil lawsuit against the defendant.[5] The defendant appears to concede that he was asked to sign, and did sign, a series of documents and that those documents may have included the letter to Jane Doe #5's then-lawyer, but then denies any knowledge of the contents of that letter. (Def. Mem. at 7) The letter sent, which was provided to the defense as part of the government's discovery (i.e., Discovery Exhibit 72), includes certain photographs and screen shots of text message exchanges between the defendant and Jane Doe #5 taken from the defendant's phone. The defendant cannot credibly deny his role in intimidating witnesses by

---

actions have shown that he cannot be trusted to follow an admonition by the Court not to do so.

[5] The defendant notes without explanation that the lawyer to whom the letter was sent was subsequently convicted of fraud. (Def. Mem. at 7) To the extent the defendant suggests that no such letter was sent, records show that the letter was indeed sent from Chicago to New York, as reported by the lawyer.

4

claiming, self-servingly, that he could not have written the letter due to his allegedly limited reading and writing skills where he provided the material used to make the threats and signed his name to the accompanying documents.

Third, as described in the government's initial detention memorandum and detailed at the August 2, 2019 detention hearing before the Honorable Steven Tiscione, the government proffered evidence that the defendant has a history of coercing women to write letters containing false and embarrassing allegations, so that the defendant could use those letters as blackmail. Multiple witnesses have reported that the defendant directed them to write these embarrassing and false letters and the similarities among the accounts by multiple witnesses lends credence to their accounts.[6] In addition, at the August 2, 2019 hearing, the government proffered that, witnesses have advised that the defendant issued veiled threats designed to prevent witnesses from testifying against him. Specifically, with respect to multiple women, he directed the women, prospective witnesses against him, to pick a side, and strongly implied that choosing the wrong side - i.e., not his side - would result in harm to them or their families. Finally, the government has obtained records showing that, in at least one instance, a young woman reported to law enforcement criminal behavior by the defendant, and the defendant thereafter paid the woman hundreds of thousands of dollars to enter into a non-disclosure agreement thereby deterring future cooperation with law enforcement. Evidence supporting this allegation consists of police records documenting criminal allegations and bank records documenting the ensuing payoff.

In sum, the government has established by a preponderance of the evidence that the defendant's release presents a serious risk of obstruction of justice.

C.   There Are No Conditions Sufficient to Mitigate the Risks

There are no conditions that could effectively mitigate the risks of flight, obstruction and danger. As noted above, where, as here, there is probable cause to believe that the defendant committed offenses involving minor victims under 18 U.S.C. §§ 2251, 2421, 2422 and 2423, the Court shall presume, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E). The defendant has not rebutted the presumption here.

Conditions such as home detention and electronic monitoring are insufficient to mitigate the risks. Moreover, as the Second Circuit has explained, "[h]ome detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills." United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993). Such restrictions would not prevent the defendant from contacting and intimidating

---

[6]   The government is entitled to proceed by proffer concerning the charges at issue and pretrial detention. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).

5

witnesses over the telephone. Similarly, those restrictions would not prevent the defendant from directing the women with whom he lives and others (who are not subject to the Court's orders), from contacting witnesses electronically or in person.

The defendant suggests that the Court's Order setting forth conditions of release is sufficient to prevent him from violating the Court's restrictions. Not so. His past is a solid indicator, and it shows that he has a track record of non-compliance, a fact that weighs heavily against the notion that he will be complaint now, particularly under these circumstances where the stakes are even greater.

As counsel concedes, one of the crimes alleged in the EDNY Indictment against the defendant occurred while the defendant was on bail in connection with his 2002 case. While Jane Doe #2 did not report this conduct to law enforcement prior to the government's recent investigation, Jane Doe #2's account of having been held in a room for multiple days without her consent is corroborated by accounts made to others by Jane Doe #2 at the time of the crime's occurrence. In addition, as the defendant also concedes, the obstruction charged in the NDIL Indictment includes conduct that took place while the defendant was on bail in connection with his 2002 Cook County criminal case.





In sum, the defendant cannot overcome the presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(e)(3)(E), and the defendant's motion to be released should be denied.

III. <u>Sealing</u>

Because this letter potentially implicates one or more persons in uncharged criminal activity, the government respectfully requests that this letter be filed under seal. <u>United States v. Amodeo</u>, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason justifying sealing). Under these circumstances, the privacy interests of certain third parties outweigh the public's qualified right to access. As the facts set forth above provide ample support for the "specific, on the record findings" necessary to support sealing, <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110, 120 (2d Cir. 2006), the government

respectfully requests that the Court record those findings and file this letter under seal. The government will publicly file a redacted version of this letter, redacting those portions that potentially implicate the defendant and another individual in uncharged criminal activity.

>Respectfully submitted,
>
>RICHARD P. DONOGHUE
>United States Attorney

By:   /s/
      Elizabeth A. Geddes
      Nadia Shihata
      Maria Cruz Melendez
      Assistant U.S. Attorneys
      (718) 254-6430/6296/6408