

U.S. Department of Justice

United States Attorney
Eastern District of New York

EAG/NS/MCM
F. #2019R00029

271 Cadman Plaza East
Brooklyn, New York 11201

March 20, 2020

By ECF

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re:    United States v. Robert Sylvester Kelly
                Criminal Docket No. 19-286 (S-3) (AMD)

Dear Judge Donnelly:

      The government respectfully submits this letter in opposition to the defendant Robert Sylvester Kelly's motion to dismiss Count One of the second superseding indictment (the "Motion" or "Mot."). Since the filing of the Motion, a grand jury returned a third superseding indictment in this matter. As a result, the government construes the Motion to apply to Count One of the third superseding indictment. For the reasons set forth below, the Motion should be denied.

## BACKGROUND

      On June 20, 2019, a grand jury in the Eastern District of New York (the "EDNY grand jury") returned a five-count indictment charging the defendant Robert Sylvester Kelly with racketeering, in violation of Title 18, United States Code, Section 1962(c), among other crimes. On July 10, 2019, the EDNY grand jury returned a superseding indictment, adding a forfeiture allegation. On December 5, 2019, the EDNY grand jury returned a superseding indictment, adding an additional predicate racketeering act to the racketeering offense. On March 12, 2020, the EDNY grand jury returned a third superseding indictment (the "Indictment"), removing one predicate racketeering act (former racketeering act eight), adding three other racketeering acts, and adding four substantive counts.

      Count One of the Indictment, charging racketeering, alleges an enterprise consisting of the defendant Robert Sylvester Kelly, also known as "R. Kelly," and

individuals who served as managers, bodyguards, drivers, personal assistants and runners for Kelly, as well as members of Kelly's entourage. (Ind. ¶ 1).  The Indictment further alleges that this enterprise "constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise," and that the enterprise engaged in, and its activities affected, interstate and foreign commerce. (Id.). The purposes of the Enterprise were to promote R. Kelly's music and the R. Kelly brand, to recruit women and girls to engage in illegal sexual activity with Kelly and to produce pornography, including child pornography. (Id. ¶ 2). By promoting R. Kelly's music and the R. Kelly brand, the members of the Enterprise expected to receive financial opportunities and personal benefits, including increased power and status within the Enterprise. (Id.).

In connection with the Enterprise, Kelly and other members of the Enterprise traveled throughout the United States and abroad to perform at concert venues, to promote the R. Kelly brand and to recruit women and girls to engage in illegal sexual activity with Kelly. (Id. ¶ 3).  When Kelly attended and performed at concerts and other events, Kelly and/or members of the Enterprise on Kelly's behalf invited women and girls backstage and to other events following Kelly's live performances. (Id. ¶ 4). These women and girls were often offered wristbands that signified that they were authorized to attend an event. (Id.). There, Kelly relied upon members of the Enterprise to ensure that only those authorized to attend were allowed at the event and to manage the flow of women and girls who were directly interacting with Kelly. (Id.). When Kelly identified a woman or girl who he wished to see again, he either gave his contact information to the woman or girl or obtained her contact information or relied upon members of the Enterprise to do so. (Id. ¶ 5). Following these events, Kelly communicated with certain of these women and girls by telephone, including through the use of traditional telephone calls, text messages, iMessages and FaceTime. (Id.). As part of this communication, Kelly often requested that the women and girls provide him with photographs of themselves. (Id.).

Kelly and other members of the Enterprise also arranged for the women and girls to travel to see Kelly on occasion, including at concerts throughout the United States and related events. (Id. ¶ 6). To facilitate their travel, Kelly directed the women and girls to contact a member of the Enterprise, who then arranged travel for the women and girls. (Id.). When the women and girls arrived at the lodging, which was typically selected by a member of the Enterprise, a member of the Enterprise usually provided them with instructions. (Id.) In addition, members of the Enterprise took steps to ensure that the women and girls did not interact with other women and girls whom Kelly planned to see.  Members of the Enterprise then arranged for the women and girls to attend his concerts and positioned them such that Kelly could see them during his concerts. (Id.)

Kelly promulgated numerous rules that many of his sexual partners were required to follow, including the following:

- The women and girls were not permitted to leave their room without receiving permission from Kelly, including to eat or go to the bathroom;

- The women and girls were required to wear baggy clothing when they were not accompanying Kelly to an event or unless otherwise instructed by Kelly;
- The women and girls were not permitted to look at other men and instead were told to keep their heads down; and
- The women and girls were required to call Kelly "Daddy."

(Id. ¶ 7).

Among the means and methods by which Kelly and his associates participated in the conduct of the affairs of the Enterprise were the following:

- Committing, attempting and aiding and abetting the commission of crimes and conspiring to commit crimes, including but not limited to engaging in sexual activity with girls under 18 years old, engaging in and facilitating sexual activity without disclosing a sexually transmitted disease Kelly had contracted, producing child pornography, bribery, extortion, coercion and blackmail;
- Demanding absolute commitment to Kelly and not tolerating dissent;
- Obtaining sensitive information about sexual partners and members and associates of the Enterprise to maintain control over them;
- Creating embarrassing and degrading videos of sexual partners to maintain control over them;
- Recruiting and grooming sexual partners for Kelly; and
- Isolating women and girls from friends and family and making them dependent on Kelly for their financial wellbeing.

(Id. ¶ 9).

## DISCUSSION

As described below, the racketeering offense charged in Count One of the Indictment includes language tracking the racketeering statute, and it is therefore sufficient to defeat a motion to dismiss at this time. Furthermore, because the government has not set forth all of its evidence in support of the racketeering charges, Kelly's motion to dismiss based on insufficiency of the evidence also fails. In any event, although premature, Kelly's arguments are flawed and, even based on the allegations in the Indictment alone, the enterprise described in the Indictment is a valid one.

I. The Racketeering Offense in the Indictment Is Sufficient to Call Kelly to Trial on the Charge of Racketeering

    A. Applicable Law

        1. Legal Standard for Dismissal

The dismissal of an indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La

Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted); United States v. Walsh, 194 F.3d 37, 45 (2d Cir. 1999) (noting that courts should not dismiss an indictment for lack of specificity absent a showing of prejudice).  It is well-settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits."  Costello v. United States, 350 U.S. 359, 363 (1956).

To withstand a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (quoting United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998)) (affirming denial of motion to dismiss racketeering act); United States v. Price, No. 05-CR-492 (NGG), 2010 WL 1949361, at *5 (E.D.N.Y. May 11, 2010) (noting in context of ineffective assistance of counsel claim that motion to dismiss racketeering acts would have been denied where the indictment tracked the statute and stated the time and place of alleged crimes); United States v. Reale, No. S4 96-CR-1069 (DAB), 1997 WL 580778, at *6-7 (S.D.N.Y. Sept. 17, 1997) (denying motion to dismiss racketeering and racketeering conspiracy charges).

2.     Pleading Requirements for Indictments

Racketeering indictments, like all indictments, are governed by Rule 7(c)(1) of the Federal Rules of Criminal Procedure ("Rule 7(c)(1)"), which provides that an indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  As the Second Circuit has explained, Rule 7(c) "performs three constitutionally required functions: It fulfills the Sixth Amendment right to be informed of the nature and cause of the accusation; it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury."  Walsh, 194 F.3d at 44(citation and internal quotation marks omitted).

An indictment satisfies Rule 7(c)(1) – and therefore the requirements of the Fifth  and Sixth Amendments – if it "'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Hamling v. United States, 418 U.S. 87, 117-18 (1974)); Yannotti, 541 F.3d at 127 (rejecting argument that racketeering act was insufficiently pleaded).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [it] . . . fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offence intended to be punished."  Hamling, 418 U.S. at 117-18 (citations and internal quotations omitted); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992). When determining whether or not a count sufficiently alleges a violation, the indictment should be read "in its entirety."  United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992).

B. <u>Analysis</u>

The Indictment alleges each element of racketeering the government must prove at trial and it is therefore sufficient under Rule 7(c). <u>See, e.g.</u>, <u>United States v. Triumph Capital Grp., Inc.</u>, 260 F. Supp. 2d 444, 449 (D. Conn. 2002) (denying motion to dismiss RICO charge and explaining that "[t]o be sufficient, an indictment charging a violation of RICO must allege" the elements to be proven at trial); <u>United States v. Ganim</u>, 225 F. Supp. 2d 145, 161-62 (D. Conn. 2002) (denying motion to dismiss RICO charge in light of the government's allegations "that an enterprise existed and functioned, setting out the members, structure and goals of the enterprise"); <u>United States v. Marchese</u>, No. 89-CR-229 (7S)(PKL), 1991 WL 60338, at *3 (S.D.N.Y. Apr. 11, 1991 ) (denying motion to dismiss RICO charges on grounds that the indictment "contains all of the requisite elements of those counts"); <u>see also</u> <u>United States v. Cuong Gia Le</u>, 310 F. Supp. 2d 763, 774 (E.D. Va. 2004) (denying motion to dismiss substantive and conspiracy RICO charges because both "(i) allege each essential element of the charged offense, (ii) track the language of the statute, and (iii) provide [the defendant] with sufficient notice of the charged offenses").

In Count One, the Indictment properly and sufficiently alleges that the Enterprise existed (Ind. ¶ 1); the defendant was a member and leader of the Enterprise (¶¶ 1, 10); the defendant participated in the affairs of the Enterprise through a pattern of racketeering activity (¶¶ 12-38); the activities of the Enterprise affected interstate and foreign commerce (¶ 1); and the defendant committed at least two acts of racketeering in the conduct of the affairs of the Enterprise (¶¶ 12-38). These allegations are sufficient and the motion to dismiss should be denied. <u>See, e.g.</u>, <u>Triumph Capital Grp., Inc.</u>, 260 F. Supp. 2d at 449; <u>Cuong Gia Le</u>, 310 F. Supp. 2d at 774.

II. The Defendant's Motion to Dismiss Based on a Legally Insufficient Enterprise Is Premature

"An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956). <u>See also</u> <u>United States v. Blitz</u>, 533 F.2d 1329, 1344 (2d Cir. 1976). "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . , the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." <u>United States v. Alfonso</u>, 143 F.3d 772, 776-77 (2d Cir. 1998).

A defendant must wait until after the close of the government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence. <u>See</u> Fed. R. Crim. P. 29; <u>see also, e.g.</u>, <u>United States v. Elson</u>, 968 F. Supp. 900, 905 (S.D.N.Y. 1997) ("[I]t is well established that an Indictment that is valid on its face may not be dismissed on the ground that it is based on inadequate or insufficient evidence."). A defendant's factual arguments challenging facially valid pleadings do not justify pre-trial dismissal of the indictment. The government is entitled to marshal and present its evidence at trial and, if warranted, have its sufficiency tested by a motion for a judgment of acquittal pursuant to

Rule 29 of the Federal Rules of Criminal Procedure. See, e.g., Reale, 1997 WL 580778, at *6 ("As the Government aptly states in its opposition, 'while defendants' arguments may properly be considered on a motion under Rule 29 of the Federal Rules of Criminal Procedure after the Government presents its proof, they do not support dismissal of the Indictment at this stage of the proceedings.'"). A motion to dismiss a properly pleaded indictment "confuses standards of pleading with standards of proof." Id. at *7; see also, e.g., United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) ("The Defendants, however, had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004) ("Defendants will have other opportunities to contest the sufficiency of the Government's evidence, but a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion."); United States v. Cassese, 273 F. Supp. 2d 481, 484-85 (S.D.N.Y. 2003) (same and collecting cases).

Here, the government has not presented a full proffer of its evidence. Rather, the government has presented only a limited proffer of the evidence filed in support of its various motions for permanent orders of detention. Accordingly, the defendant's motion to dismiss the Indictment should be denied.

III. The Enterprise Is Sufficient for a Racketeering Offense

As described above, a motion to dismiss an indictment for its failure to describe a valid enterprise, as the defendant argues, is premature at this stage in the case. Even assuming arguendo that the motion was not premature (it is), the motion should be denied.

A. Applicable Law

The Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, was enacted on October 15, 1970 as Title IX of the Organized Crime Control Act of 1970. Section 1962(c), which is the offense charged in Count One of the Indictment, provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c). "[T]he RICO statute provides that its terms are to be 'liberally construed to effectuate its remedial purposes.'" Boyle v. United States, 556 U.S. 938, 944 (2009) (quoting § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961).

Under the RICO statute, an "enterprise" is defined to include "any . . . union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In

6

Boyle, a 2009 case rejecting a challenge to a substantive RICO conviction in this district, the Supreme Court held that to sustain a RICO conviction, an association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." 556 U.S. at 946; see also id. at 944 (observing that the statutory definition of "enterprise" in 18 U.S.C. § 1961(4) "does not specifically define the outer boundaries of the 'enterprise' concept," and that the definition is "obviously broad" and has a "wide reach"). An enterprise does not require a "hierarchy" or "regular meetings regarding enterprise affairs," id. at 948, or "a set membership" or "established rules," United States v. Krasniqi, 555 Fed. App'x 14, 17 (2d Cir. 2014) (summary order). An association-in-fact enterprise "is simply a continuing unit that functions with a common purpose." United States v. Pierce, 785 F.3d 832, 838 (2d Cir. 2015) (quoting Boyle, 556 U.S. at 948).

The enterprise may exist even if its membership changes over time. See United States v. Mauro, 80 F.3d 73, 77 (2d Cir. 1996) (existence of enterprise not defeated by "changes in membership"); United States v. Orena, 32 F.3d 704, 710 (2d Cir. 1994) (ruling that an internal dispute over control of the enterprise did "not signal the end of an enterprise"); United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991) (an association-in-fact enterprise continues to exist even though it undergoes change in leadership); United States v. Errico, 635 F.2d 152, 155 (2d Cir. 1980) (upholding instruction that membership in an enterprise may change over time).

Moreover, it is not necessary to prove "that every member of the enterprise participated in or knew about all its activities." United States v. Cagnina, 697 F.2d 915, 922 (11th Cir. 1983). Accord United States v. Rastelli, 870 F.2d 822, 827-28 (2d Cir. 1989); United States v. Hewes, 729 F.2d 1302, 1310-11 (11th Cir. 1984). Rather, "it is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." Rastelli, 870 F.2d at 828-9. Nor is it necessary to prove that the enterprise or its members acted with criminal intent. See, e.g., United States v. Cianci, 378 F.3d 71, 82-83 (1st Cir. 2005); United States v. Feldman, 853 F.2d 648, 657 (9th Cir. 1988). Rather, the government need only establish that the defendant acted with the requisite mens rea.

B. The Evidence Is Sufficient to Support the Racketeering Charge

Count One of the Indictment describes the Enterprise, its members, its purposes, and its methods and means in detail. The Indictment describes the members of the Enterprise as consisting of "individuals who served as managers, bodyguards, drivers, personal assistants and runners for [the defendant], as well as members of [the defendant]'s entourage." (Ind. ¶ 1). Accordingly, Kelly's claim that the Indictment is "silent as to the identity of any of the alleged members" is simply incorrect.

The Indictment alleges that the common purposes of the Enterprise include the following: (1) to promote the defendant's music and brand, and (2) to recruit women and girls to engage in illegal sexual activity with Kelly. Kelly suggests that the Enterprise as

7

alleged is thus deficient because its purposes include legitimate activity. (See Mot. at 7 (observing that "[i]t clearly is not unlawful to promote music or a brand" and suggesting that the Enterprise is deficient since one of its purposes is legitimate)). Of course, there is no requirement that the purposes of an enterprise be unlawful. See United States v. Turkette, 452 U.S. 576, 578 (1981) (the term enterprise encompasses both legitimate and illegitimate enterprises). Nor is there a requirement, as the incorrectly defendant suggests, that others benefit from the purposes of an enterprise. (Mot. at 7 ("the Superseding Indictment is silent on how any other individual benefited from Mr. Kelly alleged[ly] engaging in sexual activity")).

There is also no merit to Kelly's argument that the alleged enterprise is invalid because the Indictment "is completely silent regarding any acts taken by any other individual aside from Kelly." (Mot. at 5). The Indictment alleges that members of the Enterprise – other than Kelly – assisted with the operations of the Enterprise, including by helping to recruit women and girls and arrange their travel to spend time with Kelly.

It is true that Kelly is the only charged defendant, but that too is of no moment. There is no requirement either that multiple defendants be charged or that multiple individuals commit a pattern of racketeering. In fact, the requirement that the defendant be distinct from the enterprise "recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity." Bennett v. U.S. Trust Co., 770 F.2d 308, 315 (2d Cir. 1985). However, the Indictment actually makes clear that others were involved with the pattern of racketeering activity. Several predicate racketeering acts allege that Kelly acted "together with others" and cite the aiding and abetting statute, 18 U.S.C. § 2, meaning that there were both a principal and aiders and abettors.

Kelly is also wrong in his claim that the racketeering charge is defective because at best the members of the Enterprise consist solely of his employees. The Indictment makes clear that the Enterprise consists of more than simply employees of Kelly; it identifies members of the Enterprise as including "members of his entourage." Moreover, Kelly's reliance on the Second Circuit's decision in Cruz v. FXDirectDealer LLC, 720 F.3d 115 (2d Cir. 2013), is misplaced. The Court's holding in Cruz does not stand for the proposition that there is insufficient distinction between a defendant and an enterprise simply where the members of an enterprise consist of the defendant and his employees. In Cruz, reasoning that an enterprise cannot consist of merely a corporate defendant associated with its employees engaging in normal corporate business, the Court rejected a RICO claim because—among other reasons—the charging instrument alleged that the corporation itself was the RICO "person" that allegedly engaged in deceptive practices with the corporation's employees through the carrying on of regular day-to-day corporate affairs. Cruz, 720 F.3d at 121. As the Second Circuit has reasoned, "[b]ecause a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (cited favorably in Cruz, 720 F.3d at 121). But that is not the case here. Kelly (and not Kelly's corporate entity) has been named as the leader of the Enterprise, and, as described above, it is

8

evident from the Indictment itself that the Enterprise was comprised of employees and individuals who were not specifically employed by Kelly. The mere fact that Kelly engages employees is not a shield against a RICO prosecution, notwithstanding the fact that Kelly may use his employees to carry out some of the alleged conduct. The Indictment alleges that Kelly can and did, in fact, function separate and apart from his employees and agents. Accordingly, there is sufficient distinction between Kelly and the Enterprise alleged in the Indictment, and his motion to dismiss should be denied.

Finally, the Enterprise has sufficient longevity to qualify as an enterprise for purposes of the RICO statute. Kelly's suggestion that the members need to remain constant for the duration is wholly wrong. (Mot. at 8 ("It is inconceivable that the same members existed in both 1994 (the first predicate act) and 201[8] (the last predicate act)"). Indeed, binding precedent makes abundantly clear that the membership can change over time and that those changes do not defeat a racketeering violation. See, e.g., Rastelli, 870 F.2d 822, 827-28 (2d Cir. 1989).

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss should be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/
Elizabeth Geddes
Nadia Shihata
Maria Cruz Melendez
Assistant U.S. Attorneys
(718) 254-6430/6295/6408

cc:   Clerk of Court (AMD) (by ECF)
      All counsel of Record (by ECF)