IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 CR 286 – AMD |
| | ) | Judge Donnelly |
| ROBERT KELLY | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO STRIKE ALLEGATIONS FROM COUNT ONE OF INDICTMENT AND DISMISS THE REMAINING COUNTS**

Defendant, Robert Kelly, by and through his attorneys, respectfully submits this Reply in support of his Motion to Strike from Count One of the Superseding Indictment statutory allegations, and to dismiss the remaining Counts which rely upon an unconstitutional statute.[1] In support of this Reply, Kelly states as follows:

Kelly challenges Section 2307 of the New York Public Health Law because it is facially invalid, overbroad, and vague, and thus unconstitutional. This statute is a wholesale prohibition on sexual intercourse by anyone who is infected with an STD, regardless. The government tries to save the statute by arguing that Kelly cannot properly challenge it because the Indictment alleges that he had unprotected sex and failed to warn his partner that he was infected. Specifically, the Indictment alleges that, over the course of roughly one year, Jane Doe No. 6 and Kelly had

---

[1] As the government points out, the counts have been renumbered since the Motion was filed. Kelly ask that the request apply to any count where Section 2307 of the Public Health Law is cited.

unprotected sexual intercourse, and that he did not divulge to her, beforehand, that he had herpes. The Government fails to point out that during that timeframe, by her own admission, Jane Doe No. 6 also had unprotected sex with others, that she did not manifest any symptoms during the time she was with Kelly, and that she did not first get tested until months after the relationship ended.

The government's facts about how Jane Doe No. 6 may have become infected do not matter, nor does it matter for the analysis here whether she contracted herpes from Kelly or someone else. That is because the law does not punish the transmission of herpes, nor does it punish the failure to disclose to another that one has an STD. Instead, it prohibits *anyone* who has an STD from having sexual intercourse. It is this wholesale prohibition that the government does not even attempt to address – nor can it.

The statute is unconstitutionally overbroad. It is all-encompassing. It is a complete ban. It could be no wider. A statute cannot be narrowly drawn if it encompasses everyone. It cannot be narrowly drawn if there is nothing an individual can do to escape its clutches. It cannot be narrowly drawn if consent, suppression medications, and/or the use of a condom to prevent transmission do not save anyone from the law's grasp.

The statute was enacted at a time when the views of society were puritanical. It was enacted at a time when interracial sex was outlawed, extramarital sex was outlawed, and same-sex relationships were outlawed. At that time, a challenge to the statute would have been an abject failure. Society is far more progressive now.

Accordingly, the cases that formerly would have required a court to reject the challenge are no longer good law. "The Court, like many institutions, has made assumptions defined by the world and time of which it is a part. This was evident in *Baker v. Nelson,* 409 U.S. 810 (1972) a one-line summary decision issued in the early 1970's, holding that the exclusion of same-sex couples from marriage did not present a substantial federal question." *Obergefell v. Hodges*, 535 U.S \_\_\_ (2015).

The statute does not allow for sexual intercourse whether there has been disclosure and consent, or not. It is a strict liability statute, on its face. Nor does it matter if the State has a rational basis for the statute of this type: there can be a rational basis but that does not excuse a statue from being unduly and unconstitutionally restrictive. Kelly has no quarrel with the fact that the State has a legitimate and rational basis for wanting to prohibit the transmission of sexually transmitted diseases. Perhaps there is a proper way to do so – i.e., enact a law that requires disclosure and consent - rather than the strict liability law at issue here, but this is not the way.

To this end, the government cites three cases from other states, and their corresponding statutes, all of which actually *support* the argument Kelly makes here. (Dkt. 47, pg. 12). The first, *State v. Musser*, 721 N.W. 734 (Iowa 2006), upheld an Iowa statute that made it a crime to engage "in intimate contact with another person" when someone was knowingly infected with HIV. Unlike the New York statute, the Iowa statute provided for "knowing consent" as a defense, *within the text of the statute*. Notably, the Iowa statute has since been repealed and replaced

3

with the "Contagious or Infectious Disease Transmission Act" (The new statute requires an intent to transmit and again provides for defenses: either the person had taken practical means to prevent transmission (as is the case here where, as the government knows, Kelly was on a suppression drug, Valetrex, which prevents transmission) or there was consent.

The second, *People v. Jensen*, 586 N.W. 2d 748 (Mich. Ct. App. 1998), likewise concerned HIV, and penalized "sexual penetration with another person without having first informed the other person of the infection." Again, the statute permitted the consensual contact the New York statute does not, and thus it was found to be narrowly defined. Also, as with Iowa statute, the Michigan statute from *Jensen* has since been repealed.

The third, *State v. Gamberella*, 633 So. 2d 595 (La. Ct. App. 1993), likewise upheld a statute that prohibited exposing another to the AIDS virus through sexual contact, without knowing and lawful consent. It was not a wholesale prohibition. Rather, it was a narrowly drawn statute that required disclosure to one's partner so that he/she could make an informed decision, thus furthering the State's interest in preventing the spread of the virus.

Each of the State statutes which are now relied upon by the government were passed in the face of the HIV/AIDS epidemic. Each were then enacted to help deter the spread of a then deadly disease. Each of them addressed HIV, and not all sexually transmittable diseases. The New York statute, on the other hand, speaks of any STD; it is not narrowly drawn. It can be an STD that is

4

dormant or easily cured (such as HPV[2] or gonorrhea[3]), not just a deadly STD.[4] Moreover, it has no safety valve. While it is true that, in certain circumstances, one can be criminally liable for a failure to speak or an omission, here the law being challenged by Kelly's motion does not impose liability in the face of omission, commission or non-disclosure.

The government also cites two New York civil cases (*see* Response at fn. 6), arguing that they stand for the proposition there is a duty to disclose, and according to the cases it is arguably fraud or negligence to fail to do so. Notably, the government does *not cite to any* New York criminal case. *Fan v. Sabin*, 2015 WL 5547775, is a trial court's opinion denying summary judgment for the defendant in a case alleged that he fraudulently failed to disclose he had herpes, and negligently transmitted it. In *dicta*, the court commented that the statute (§2307) imposed a duty to disclose, before granting summary judgment to the defendant who had allegedly failed to disclose. The court's dicta in *Sabin* comment is of no value here

---

[2] https://www.cdc.gov/std/hpv/stdfact-hpv.htm,

[3] https://www.cdc.gov/std/gonorrhea/stdfact-gonorrhea.htm ("Gonorrhea is a sexually transmitted disease (STD) that can infect both men and women. It can cause infections in the genitals, rectum, and throat. It is a very common infection, especially among young people ages 15-24 years.").

[4] The New York law does not include HIV, which makes it's overreaching even more troubling. *Plaza v. Wisser*, 626 N.Y.S.2d 446 (N.Y. App. Div. 1995) ("HIV infection is not included within the category of venereal disease, especially in view of the entirely separate statutory schemes for HIV-related testing and for the examination of persons suspected of being infected with venereal disease."). *See also*, https://www.seroproject.com/states/new-york/

because the court in that case was not faced with any of the issues raised by Kelly's motion. The court was not asked to assess the constitutionality of the statute, and the defendant did not raise the argument as to whether he had a duty to disclose.

In the second civil case cited by the government, *Maharam v. Maharam*, 510 N.Y.S. 2d 104 (1997), the court found that a husband had a duty to his wife, "[A]s Special Term found, the 31-year marital relationship gave rise to an affirmative 'legal duty to speak.' and the allegation that the husband failed to disclose his condition adequately stated a cause of action for constructive, if not actual, fraud. A duty to speak in those circumstances, given the relationship of trust between the parties, can also be predicated upon Public Health Law § 2307..." *Maharam*, at 170. It seems the court in *Maharam* believed that, because of the length of the relationship at issue, there was a special duty.

According to the government, without citation to any legal support, there must be a wholesale judicial rewriting of the statute by this Court, where this Court can inject additional elements into the statute, those of disclosure and consent, in order to save the statute from constitutional challenge. The government claims if someone were to warn his/her partner, and the partner were to then consent, there would be no crime. But that strained interpretation ignores the plain wording of the statute, which does not provide for any exception to liability. It is a defense that could not be made at trial because the statute does not allow for it – the statute imposes a strict liability standard. This statute cannot be saved by factual nuances unique to the government's theory in this case. Regardless of whether "the

6

indictment makes clear that the defendant is alleged to have violated section 2307 by 'engag[ing] in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances'" (Dkt. 47, pg. 8), the fact of the matter is that a statute cannot be saved from its own illegality by the wording of an indictment.

Thus, appropriately, the government suggestion of an "as applied" test must fail. The statute unambiguously represents a wholesale prohibition on sexual intercourse. The fact that there may be a rational basis for a law that requires one to caution his/her partner and obtain consent is of no importance here because this law does not include that factual scenario. Moreover, the fact that the statute may advance a purportedly compelling State interest is likewise of no import because the means by which it does so is impermissible.

Frankly, the law at issue is unconstitutional for exactly all of the reasons the government offers here to save it. It is unconstitutional because the government has to offer reasons to try and save it. The government has to inject additional elements in order to limit the broad reach of this strict liability statute, which makes it plainly evident it cannot pass constitutional muster. The fact that these additional elements must be imported into the statute demonstrates that it is facially invalid. It is status driven, and courts no longer allow for status driven prosecutions: "[I]t seeks to punish what society regards as wrongful conduct, and in so doing deter such misconduct. But the criminal law does not punish mere disability or illness, 'in

7

the criminal law, both the culpable mens rea and a criminal actus rea are generally required for an offense to occur.' *United States v. Apfelbaum,* 445 U.S. 115, 131 (1980). The mental state here is knowing you have the disease. Prosecution for status has no place in our criminal jurisprudence.

The government claims that the First Amendment is not implicated here. That view is illogical and ignores the law's progression. While it is true the Supreme Court has not explicitly declared that to be the case, it is the only fair reading from its decisions, and their evolution:

> The *Casey* decision again confirmed that our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education. *Id.,* at 851, 112 S.Ct. 2791. In explaining the respect the Constitution demands for the autonomy of the person in making these choices, we stated as follows:
>
> These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State. *Ibid.*

*Lawrence v. Texas*, 539 U.S. 558, 573–74, (2003). According to the *Lawrence* majority, Justice Stevens' dissenting opinion in *Bowers* "should have been controlling." He explained, "[t]he essential 'liberty' that animated the development of the law in cases like *Griswold, Eisenstadt,* and *Carey* surely embraces the right to engage in nonreproductive sexual conduct that others may consider offensive or immoral." Logically, it must then follow that the means is an essential liberty.

The Court has recognized intimacy as a fundamental right.[5] That logically must encompass physical intimacy. Otherwise there would be no reason to explain in *Obergfell*: "[A]s this Court held in *Lawrence,* same-sex couples have the same right as opposite-sex couples to enjoy intimate association. *Lawrence* invalidated laws that made same-sex intimacy a criminal act. And it acknowledged that "[w]hen sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring." *Obergefell v. Hodges*, 539 U.S., at 567 (2015).

When the First Amendment is at all implicated - even though the statute may not violate the challenger's First Amendment rights - he may still raise an overbreadth challenge if it would affect the rights of a hypothetical third-party as applied to the third party. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). "A plaintiff claiming over breath need not show that the challenge regulation injured his or her First Amendment interest in any way in order to bring the overbreadth challenge." *Farrell v. Burke*, 449 F. 3d 470, 498 (2nd Cir.2006). Therefore, the question here

---

[5] "The rationale of *Bowers* does not withstand careful analysis. In his dissenting opinion in Bowers, Justice Stevens came to these conclusions:
> Our prior cases make two propositions abundantly clear. First, the fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice; neither history nor tradition could save a law prohibiting miscegenation from constitutional attack. Second, individual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. Moreover, this protection extends to intimate choices by unmarried as well as married persons." 478 U.S., at 216, 106 S.Ct. 2841 (footnotes and citations omitted).

Justice Stevens' analysis, in our view, should have been controlling in *Bowers* and should control here." *Lawrence, at* 577–78.

becomes not just how the statute is being applied to Kelly, but how it could be applied to anyone. It is of no significance that the government believes the facts of this case may make the statute applicable. The overbreadth challenge here has merit because the purpose of an overbreadth challenge is to prevent chilling constitutionally protected conduct. Here, the statute prohibits all sexual conduct.

The same is true with respect to Kelly's vagueness challenge. Again, we are dealing with fundamental rights. Unlike a law that that does not involve fundamental rights and therefore must be impermissibly vague in all its applications (*Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982)), "our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provisions grasp." *Johnson v. U.S.*, 135 S. Ct. 2551 (2015). Here, the statute is vague on two fronts, namely it fails to define what is meant by sexual intercourse, and what is meant by a sexually transmittable disease.

As to the former, the statute does not merely proscribe contact between a penis and vagina, which is certainly the traditional definition of sexual intercourse, nor does it prohibit all contact. It is unduly vague because, *inter alia*, it is not clear whether it permits one who has herpes on his/her mouth to kiss; or whether it permits one with anal herpes to have sexual intercourse, or anal intercourse for that matter; or whether it permits sexual contact when a prophylactic is used; or whether it permits sexual contact when consent has been obtained;  or whether it accounts for the fact that, even when protective measures are taken, an STD can

still be transmitted. All of these are subject to the whim of the prosecutor if the government's theory is to be embraced.

As to the latter, the statute fails to adequately define what constitutes an STD. While the traditional ones are certainly known, such as gonorrhea, syphilis, and herpes, it is unclear whether a person with Trichomoniasis, HPV, Hepatitis, or other STDs which can be dormant for years are encompassed within the statute's definition. Does the statute prohibit such individuals from having sexual intercourse? Some STDs, including some forms of herpes and HPV, are present in tens of millions of people. Are all these people prohibited from having sexual intercourse under the New York statute? It appears so. That is why this statute cannot survive this challenge.

In summary, the statute at issue calls for a complete and total prohibition on sexual intercourse, regardless of whether one is married or not, regardless of whether consent has been contained, and regardless of whether proactive measures have been taken to ensure a lack of transmission. he State of New York certainly has a rational reason to want to control the spread of STDs. However, the State cannot do so by completely banning sex - which is exactly what the statute achieves. Accordingly, for all the reasons stated in the original Motion and set forth herein, the statute must be found to be unconstitutional.

Respectfully submitted,

*/s/* Steven A. Greenberg
*Defendant's Attorney*

Steven A. Greenberg-
Greenberg Trial Lawyers
53 W. Jackson Blvd., Ste. 1260
Chicago, IL 60604
(312)879-9500
*Steve@GreenbergCD.com*

Mike Leonard
Leonard Meyer LLP
120 N. LaSalle Street
Suite 2000
Chicago, Illinois 60601
(312)380-6559 (direct)
*mleonard@leonardmeyerllp.com*

Thomas A. Farinella, Esq.
Law Office of Thomas A. Farinella, P.C.
260 Madison Avenue, 8th Floor
New York, NY 10016
*tf@lawtaf.com*