

U.S. Department of Justice

United States Attorney
Eastern District of New York

EAG/NS/MCM  
F. #2018R01021

*271 Cadman Plaza East*  
*Brooklyn, New York 11201*

March 30, 2020

**Submitted Under Seal**

<u>By Email and ECF</u>

The Honorable Ann M. Donnelly  
United States District Judge  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. Robert Sylvester Kelly  
              <u>Criminal Docket No. 19-286 (S-3) (AMD)</u>

Dear Judge Donnelly:

      The government respectfully submits this letter in opposition to defendant Robert Kelly's emergency motion for release on bail based principally on the existence of the COVID-19 pandemic. For the reasons set forth below, the motion should be denied.

I.   <u>The Defendant Poses a Serious Risk of Flight and Obstruction</u>

      As set forth extensively in prior detention memoranda and addressed during prior court hearings (ECF Docket Entry Nos. 5, 18, 27, 28), if released, there is a risk that the defendant will flee and that the defendant will obstruct, attempt to obstruct, threaten, intimidate or attempt to threaten or intimidate one or more prospective witnesses. Based on those risks, the Court previously entered a permanent order of detention. (ECF Docket Entry Nos. 18 and 19 and minute entry dated Oct. 2, 2019). The defendant has not – and cannot – assert that anything has changed to affect the Court's prior findings on those grounds.

II.   <u>Release Is Not Warranted Under the "Compelling Reason" Clause</u>

      The defendant argues that (1) his age and unspecified health history make him more susceptible to succumbing to COVID-19; (2) the conditions at the Metropolitan Correctional Center in Chicago, Illinois ("MCC Chicago") will result in the spread of COVID-19; and (3) the restrictions put in place by MCC Chicago to mitigate the spread of

COVID-19 will unduly impair his ability to prepare a defense. He claims these are "compelling reasons" justifying release under 18 U.S.C. § 3142(i).

The Bail Reform Act, 18 U.S.C. § 3142(i), provides that a "judicial officer may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." As Judge Garaufis recently noted in rejecting an application similar to the instant motion, "[t]his provision has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." United States v. Hamilton, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

The defendant argues "[t]he health risk to Mr. Kelly, because of his age and because of the multiple surgeries he has undergone - including a recent surgery while incarcerated - coupled with the conditions at the MCC as described below, necessitates his temporary release." (Mot. at 1). The defendant is currently 53 years old, well under the age of older adults (65 years and older) identified by the Centers for Disease Control and Prevention ("CDC") at higher risk for severe illness from COVID-19.[1] See https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html (last visited Mar. 27, 2020). Nor does anything in the defendant's submission suggest that the defendant's surgical history places him at higher risk of severe illness.[2] Indeed, MCC Chicago has clarified that (1) the surgery the defendant recently underwent was ▓▓▓▓▓▓, (2) the defendant has already had his post-surgery follow-up appointment and has been discharged from the doctor's care; and (3) he does not require any further follow-up care related to his surgery at this time. MCC Chicago has also made clear that the defendant continues to have access to soap and cleaning supplies at no cost. He may purchase additional soap from the commissary if he so chooses.

The defendant's argument that MCC Chicago presents unmanageable risks to his health is also unfounded. As an initial matter, at this time, no inmate at MCC Chicago has tested positive for COVID-19. In addition, MCC Chicago is currently accredited by Accreditation Association for Ambulatory Health Care, Inc. ("AAAHC") and has an in-house team of medically trained nurses, doctors, and mid-level providers. These medical staff are supported by community consultants and specialists on a contract basis. Moreover,

---

[1] Indeed, in his emergency motion for bail in his Northern District of Illinois case, filed simultaneously with the instant motion, the defendant acknowledges that he "is not within the highest risk age group," United States v. Robert Kelly, Docket No. 19 CR 567 (N.D. Il.), Docket Entry No. 107 at 3.

[2] Notably, the defendant does not even assert that his surgical history places him at a higher risk of severe illness from COVID-19 in his simultaneous emergency motion filed in the Northern District of Illinois.

the Bureau of Prisons ("BOP"), which operates MCC Chicago, has implemented national measures to mitigate the spread of COVID-19 within prisons. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. While the government recognizes the seriousness of COVID-19 and the increased risk to certain federal prisoners, a generalized risk alone does not justify releasing the entire Bureau of Prisons population, much less a prisoner being held for racketeering charges involving crimes against specified victims with a history of obstructing justice (and serious charges relating to his obstruction of justice currently pending in the Northern District of Illinois). Simply residing in MCC Chicago cannot be a basis for being released. The BOP's measures, which have been implemented in MCC Chicago, include the following:

- Suspension of all social and legal visits: Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and legal calls. Inmates will be provided additional inmate telephone minutes each month.

- Inmate movement: Most inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- Screening and testing of inmates: All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

- Modified Operations: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, as well as implementation of other modifications specific to each facility.

In addition, counsel at MCC Chicago, after consultation with the relevant staff, has advised the government that inmates incarcerated at MCC Chicago, including the defendant, are permitted to take additional steps to self-seclude by remaining in their cells. In short, the BOP is monitoring the status of the COVID-19 virus and is taking emergency steps to ensure the safety of its staff, inmates and the public.

Other lower court decisions easily can be distinguished from the defendant's situation. Unlike in United States v. Raihan, 20-CR-68 (BMC) (JO) (E.D.N.Y. Mar. 12, 2020), Bail Hearing Transcript (ECF No. 20), at 10, in which Judge Orenstein declined to incarcerate a defendant who had been on bond (Mot. at 7), Kelly has been incarcerated since his arrest in July 2019 so the government is not asking the Court to "increase[e] the population" of a prison facility; in any event, that defendant violated the bond issued by Magistrate Judge Orenstein within 24 hours and Magistrate Judge Bloom ordered him detained the next day. See id. ECF Docket Entry No. 22: Order of Detention. Moreover, there was no specific finding that being housed at a BOP facility – there, the Metropolitan

Detention Center in Brooklyn, New York – posed any risk that outweighed the operation of all other pertinent factors under the Bail Reform Act.

Finally, the defendant attempts to turn the tables and use the mitigation efforts put in place by BOP, principally the limitations on legal visits, to suggest they create circumstances that justify release. The defendant suggests these significant mitigation efforts create difficulty for the defendant to meet with his attorneys. In fact, the defendant has continued to meet with his attorneys, including as recently as March 18, 2020, and MCC Chicago continues to allow attorney visits on a case-by-case basis when approved by the Warden of the facility. Moreover, the defendant is represented by counsel and the defendant's access to his counsel by phone and email remains the same as prior to the COVID-19 outbreak. The defendant has not shown any significant infringement on his ability to consult with his attorney, much less provided a reason to believe the efficacy of his defense has been adversely impacted. He also has not demonstrated that the measures put in place by BOP do not serve and further a "legitimate penological interest[]." Cf. Overton v. Bazzetta, 539 U.S. 126, 131–32 (2003) (upholding restrictions on prison visitation rights). They do serve such an interest, which is protecting the health of people like the defendant and the many employees who work there. In these circumstances, the defendant's motion should be denied.

III. Conclusion

The defendant continues to pose both a flight risk and a serious risk of obstruction. His motion for emergency bail, based primarily on the generalized risks from COVID-19 and circumstances that are hardly unique to him, do not overcome the risks he poses if released. The defendant has not presented a "compelling reason" for his release under Section 3142(i). The permanent order of detention should remain in effect.

Because this letter references the defendant's medical history, the government respectfully requests that this letter be filed under seal. Under these circumstances, the privacy interests of the defendant outweigh the public's qualified right to access. As the facts set forth above provide ample support for the "specific, on the record findings" necessary to support sealing, Lugosch v. Pyramid Co., 435 F.3d 110, 120 (2d Cir. 2006), the government respectfully requests that the Court record those findings and file this letter

under seal. The government will publicly file a redacted version of this letter, redacting those portions that reference the defendant's medical history.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/                         
Elizabeth Geddes
Nadia Shihata
Maria Cruz Melendez
Assistant U.S. Attorneys
(718) 254-6430/6295/6408

cc: Defense Counsel (by ECF)
     Clerk of the Court (AMD) (by ECF)