# LEONARDMEYER

MIKE LEONARD
MLEONARD@LEONARDMEYERLLP.COM
O 312.380.6559

**BY ELECTRONIC FILING**

Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Robert Kelly*, Case No. 19-286 (S-1)(AMD)

Dear Judge Donnelly:

We respectfully submit this letter as Mr. Kelly's *Renewed* Emergency Motion for Release based upon changed circumstances.

As this Court will recall, at the time of the filing and briefing on Mr. Kelly's prior Emergency Motion for Release, both the MCC Chicago ("MCC") and the Government took the position that there were no known positive cases of COVID-19 within the inmate population at that institution.

As foreshadowed in that prior Motion, things at the MCC Chicago have since changed dramatically. That this change has occurred is no surprise; it was reasonably foreseeable; and quite frankly should have been expected. The Chicago MCC now admits that, as of yesterday, there at least 6 known and confirmed positive cases of COVID-19 amongst the population, where Mr. Kelly is being detained. There are likely already many more positive cases in light of the fact that, to-date, the Chicago MCC has not even engaged in any systematic testing of its detainees – unless and until they have exhibited symptoms of the virus – despite the well-known close and crowded conditions at that facility. That there are likely many more cases of COVID-19 amongst the Chicago MCC's detainee population is corroborated by the fact that those detainees who have already tested positive were apparently housed in three different levels of the MCC. In addition, as reported by the Federal Defender's Office in Chicago, one of the positive COVID-19 detainees is in a "precarious" health situation, i.e., apparently in danger of death.

This updated disclosure by the Chicago MCC regarding the 6 infected inmates is in *addition to 7 staff members* at that site who have also already tested positive for this highly contagious and deadly virus. As this Court will recall, during the briefing of Mr. Kelly's prior Motion for Release,

**Judge Donnelly**
**April 16, 2020**

the Chicago MCC was then reporting that only 1 of the jail's staff had tested positive for COVID-19,

In any event, according to figures provided by the BOP, as of April 15, 2020 there are now more than 500 COVID-19 positive inmates, 298 positive staff, and **17 deaths**. These numbers, which are illustrated by the graph below, are not getting any lower and will only continue to spiral.



Based on all of the above, that Mr. Kelly will be infected with this deadly disease, is now unfortunately an absolute probability.

Counsel for Mr. Kelly has also learned that the detainee population at the MCC, including but not limited to Mr. Kelly, is experiencing tremendous stress and anxiety in light of the recent COVID-19 developments. Inmates are reportedly banging on doors, walls, and windows begging for help. The only thing the MCC has done is lock things down, making conditions feel more like solitary confinement; and possibly, because of the nature of this virus, locking in healthy inmates with those who already have the virus but who may not yet be symptomatic. The virus has now more than "hit home" at the MCC Chicago.

This Court can clearly fashion terms of release, many of which were already detailed in Mr. Kelly's prior Motion, that will more than adequately assure that Mr. Kelly is neither a risk of flight, nor a danger to the community – or to anyone at all for that matter. Indeed, Mr. Kelly would be residing virtually within the sight line of the federal courthouse in Chicago. He could be on 24/7 electronic monitoring/home confinement. This Court could further Order that he not be allowed to use any form of electronic device, and severely limit (or bar) his conduct with those outside of his residence, with the exception of his attorneys. The Court has within its power to create, if you will, the same restrictions, if not more, in an alternate location, temporarily, for the reasons stated in this filing. With all of that in place, there seems to be no valid reason for this Court *not* to exercise its discretion for this presumed innocent Defendant, and simply "secure his detainment" in another location, as has been done all over the country for inmates within the federal system.

**Judge Donnelly**
**April 16, 2020**

Furthermore, Mr. Kelly poses no credible risk of flight. In the first instance, he has no means to go anywhere. If he ever tried to leave the confines of his residence, not only would his electronic monitoring (or GPS) make that entirely implausible, but he would be perhaps the most obvious and recognizable person on the streets of Chicago, or anywhere else in the country, in light of the severe stay-at-home restrictions that are and will continue to be in place and enforced. There are no flights for him; he is afraid to fly; and he has no passport or other identification to go anywhere.

Additionally, and possibly more importantly, Mr. Kelly's entire professional life depends on his exoneration from the current charges pending against him. His stated desire is to plan, prepare, and go to trial; to conclude with these court matters with a full acquittal; and continue to make music to the delight of millions of his fans. This court Cannot should also strongly weigh the fact that, years ago and prior to his acquittal on all then pending State charges, Mr. Kelly did exactly as he was ordered to do by that court while on bond, including but not limited to appearing for each and every court appearance. This Court should strongly consider that history of compliance by Mr. Kelly, particularly in light of the Government's repeated, wholly speculative, and standard mantra that this world-recognized defendant will run, when he has never run, ever before. In sum, this Court has within its power to provide more restrictions with Mr. Kelly's release than he currently has while in custody, where (prior to the Covid-19 lock down) he had access to emails, phone, non-lawyer visitors, etc. It is simply disingenuous for the Government, with all its resources, to take the position that there exists no place other than the now diseased Chicago MCC that is suitable for this presumed innocent Defendant.

Moreover, as previously explained to this Court, the conditions of Mr. Kelly's present confinement, when coupled with the dramatically changed circumstances a the MCC, make it virtually impossible for he and his counsel to prepare for trial in any meaningful way. Not only is he on virtual lockdown, Mr. Kelly now gets one phone call per week. His attorneys cannot visit him. It is presently unknown when will they be able to meet and prepare with Mr. Kelly in any meaningful manner. Certainly, counsel should not have to risk their own health to prepare for trial. But, at the present time, even that is not an option because they too cannot visit Mr. Kelly at the MCC Chicago.

Even if, in the coming months, things get better in terms of the pandemic, Mr. Kelly's ability to meet with his counsel at the MCC Chicago is still woefully inadequate to allow him to prepare his defense with the assistance of counsel. For example, the Government, by way of multiple Superseding Indictments, has produced *thousands* of pages of discovery, that, because of Mr. Kelly's limitation at the MCC Chicago, have not been shared with him. This is only exacerbated by Mr. Kelly's quite limited ability to read on his own. This is not a laughing matter and should be considered similar to a handicap and afforded at least some consideration so that a fair trial on the merits can be conducted. This inability to meaningfully prepare for trial is further exacerbated by the fact that the Government has not even completed its own investigation and production of documents and evidence. The Government possess thousands of additional

**Judge Donnelly**
**April 16, 2020**

documents to produce or make available, as well as dozens of devices to turn over to the defense. In fact, the Government apparently may even Supersede its Indictment – yet again. All of those facts and circumstances clearly deny Mr. Kelly Due Process, if he is not secured in an alternate, safe location, with a heavily conditioned release.

Finally, the federal courts have now awoken, and have repeatedly held that release from confinement is appropriate **because of** the COVID-19 pandemic, including in circumstances that are far less compelling than presented by those confronted by Mr. Kelly. This is likely in part because, to-date, there have been at least 14 detainee deaths at BOP facilities as a result of COVID-19, in addition to more than 700 COVID-19 positive cases of detainees and staff at BOP facilities. As one federal court recently noted, in granting release, that BOP facilities are "tinder boxes for infectious disease." *United States v. Rodriguez*, No. 2:03-cr-271-AB, Dkt. No. 135 (E.D. Pa. Apr. 1, 2020). The MCC has already proven that true, and will continue to prove that true.

The cases within the string cite set forth below make it quite evident that release is the appropriate course of action in this case. Those courts have wisely realized that there is no reason to wait to grant release until a detainee gets ill, or dies, from COVID-19. In fact, many of the cited cases deal with detainees who have already been found guilty. Mr. Kelly is innocent, and he is presumed innocent.

*See, e.g., United States v. Perez*, No. 1:17-cr-513-AT, Dkt. No. 98 (S.D.N.Y. Apr. 1, 2020) (granting release where "[t]he benefits of keeping [Perez] in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave"); *United States v. Zukerman*, No. 1:16-cr-194-AT, Dkt. No. 116 (Apr. 3, 2020) (granting immediate release in light of COVID-19 to defendant convicted in multi-million-dollar fraud scheme motivated by greed and stating: **"[T]he severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include a great and unforeseen risk of severe illness or death' brought on by a global pandemic"**) (emphasis added); *United States v. Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (releasing defendant serving 188-month sentence for drug conspiracy in light of vulnerability to COVID-19: **"[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."**) (emphasis added); *United States v. Colvin*, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (granting release where, *inter alia*, the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by Defendant will be minimized by her immediate release to home"); *United States v. Foster*, No. 1:14-cr-324-02, Dkt. No. 191 (M.D. Pa. Apr. 3, 2020) (noting the "unprecedented" circumstances facing "our prison system" and finding that COVID-19 is an extraordinary and compelling basis for release); *United States v. Edwards*, No. 6:17-cr-3-NKM,

**Judge Donnelly**
**April 16, 2020**

Dkt. No. 134 (Apr. 2, 2020) (granting release and stating: "[h]ad the Court known when it sentenced Defendant in 2018 that the final 18 months of his term in federal prison would expose him to a heightened and substantial risk presented by the COVID-19 pandemic on account of Defendant's compromised immune system, the Court would not have sentenced him to the latter 18 months"); *United States v. Williams*, No. 3:04-cr-95-MCR-CJK, Dkt. No. 91 (N.D. Fla. Apr. 1, 2020) (release in light of risk posed to defendant by COVID-19); *United States v. Gonzalez*, No. 2:18-cr-232-TOR, Dkt. No. 834 (E.D. Wash. Mar. 31, 2020) (releasing defendant one month into a 10-month sentence in light of medical issues; "ordinarily these conditions would be manageable but "these are not ordinary times""); *United States v. Bolston*, Case No. 1:18-cr-382-MLB, Dkt. No. 20 (N.D. Ga. Mar. 30, 2020) (releasing defendant in part because "the danger inherent in his continued incarceration . . . during the COVID-19 outbreak justif[y] his immediate release from custody"); *United States v. Powell*, No. 1:94-cr-316-ESH, Dkt. No. 98 (D.D.C. Mar. 28, 2020); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020).

For the all of the reasons set forth above, Mr. Kelly's Renewed Emergency Motion for Release should be granted immediately.

Sincerely,

Michael I. Leonard
MIL: bp
cc: All Counsel of Record (via ECF filing)