

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| EAG/NS/MCM | *271 Cadman Plaza East* |
| F. #2019R00029 | *Brooklyn, New York 11201* |

April 17, 2020

<u>By Email and ECF</u>

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Robert Sylvester Kelly
               <u>Criminal Docket No. 19-286 (S-3) (AMD)</u>

Dear Judge Donnelly:

Pursuant to the Court's April 16, 2020 Order, the government respectfully submits this letter in opposition to defendant Robert Kelly's Renewed Emergency Motion for Release based on "changed circumstances" related to the COVID-19 pandemic at the Metropolitan Correctional Center in Chicago, Illinois ("MCC Chicago"). (<u>See</u> ECF Docket No. 55 ("Mot.") at 1). For the reasons set forth below, the motion should be denied.

I.      <u>The Court's April 7, 2020 Order</u>

On April 7, 2020, the Court denied the defendant's March 26, 2020 emergency bail motion, finding, <u>inter alia</u>, that the defendant (1) "ha[d] not demonstrated that he is within the group of people the Centers for Disease Control and Prevention [("CDC")] has categorized as most at-risk for contracting COVID-19;" and (2) continues to pose a risk of flight and a danger to the community, "particularly to prospective witnesses." (ECF Docket No. 53 ("4/7/20 Order") at 2-4 (internal quotation marks omitted)). The Court further noted that the defendant is "fifty-three years old, twelve years younger than the cohort of 'older adults' defined by the CDC as at high risk for severe illness from COVID-19." (4/7/20 Order at 2-3). And, he suffers from no medical condition "that places him at higher risk of severe illness." (<u>Id.</u> at 3). Finally, the Court did not find that the protective measures put in place by the Bureau of Prisons ("BOP") sufficiently interfered with the defendant's ability to prepare for his defense with counsel to warrant his release. (<u>Id.</u>)

None of these circumstances have changed and the permanent order of detention should remain in place.

II.     The Defendant Remains a Flight Risk and a Danger to the Community

The defendant's renewed motion for bail does not credibly address the Court's finding that he continues to pose a flight risk and a danger to the community. The defendant simply repeats arguments he has made in prior bail applications – arguments that have been previously addressed by the government, as well as considered and rejected by the Court.[1]

Indeed, the defendant's assertion that he can be trusted to abide by any conditions of release set by the Court because he previously did so while awaiting his state court trial in Cook County, Illinois[2] is absurd and belied by the record. (See Mot. at 3 ("This Court should also strongly weigh the fact that, years ago and prior to his acquittal on all then pending State charges, Mr. Kelly did exactly as he was ordered to do by that court while on bond, including but not limited to appearing at each and every court appearance. This Court should strongly consider that history of compliance by Mr. Kelly . . . .")). The indictment the defendant currently faces in the Northern District of Illinois includes charges that the defendant participated in a long-running conspiracy to obstruct justice and a conspiracy to receive child pornography, including during the years that the defendant was on bail awaiting trial in his Cook County case. See United States v. Robert Kelly, 19-CR-567 (HDL) (N.D. Ill.), ECF Docket No. 93 (Superseding Indictment) at 5-16 (charging the defendant in Count Five with obstruction of justice conspiracy involving coercing, threatening and bribing potential witnesses who could testify against him); id. at 17 (charging the defendant in Count Six with conspiring to receive child pornography between 2001 and 2007). The Northern District of Illinois indictment also charges the defendant with receiving child pornography in 2007, while on bail awaiting trial. Id. at 19 (Count Eight). Likewise, the indictment in this District alleges crimes that occurred while the defendant was on bail awaiting trial in his Cook County case. See ECF Docket No. 43 (S-3 Indictment) at 6-8 (Racketeering Acts Three and Four of Count One, which allege kidnapping and Mann Act violations).

As a result, there is probable cause to believe that the defendant committed at least <u>five</u> serious crimes while on bail awaiting trial in Cook County. Far from suggesting the defendant should be released on bail, a consideration of the defendant's "history of compliance" leads to the inexorable conclusion already reached by the Court: the defendant is a danger to the community and his release presents a serious risk of obstruction. Indeed,

---

[1] The government will not repeat its arguments in this regard here and instead incorporates by reference its July 12, 2019 detention memorandum, its October 2, 2019 response to the defendant's motion for bail, and its March 27, 2020 response to the defendant's emergency motion for bail.

[2] On June 5, 2002, a grand jury in the Circuit Court of Cook County, Illinois returned an indictment charging the defendant with 21 counts of child pornography. Trial in the matter began on May 20, 2008, and concluded with the defendant's acquittal on June 13, 2008.

refraining from the commission of further crimes is perhaps the most basic condition of pretrial release. The defendant has shown a complete inability to abide by that condition.

Moreover, the Second Circuit has viewed measures suggested by the defendant, such as home detention and electronic monitoring, (see Mot. at 2-3), as insufficient to protect the community against dangerous individuals. In United States v. Millan, the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills. If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1039, 1048-49 (2d Cir. 1993) (citations and internal quotations omitted). See also United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks and citations omitted). And unlike a detention facility, the government would not have the means to effectively stop the defendant from obtaining and using an unauthorized cellular telephone or digital device to communicate with others and carry out additional crimes, including obstruction.

In recognition of the Second Circuit's dim view of the effectiveness of home detention and electronic monitoring, courts in the Eastern District of New York have denied dangerous defendants bail. See, e.g., United States v. Cantarella, 2002 WL 31946862, at *3-4 (E.D.N.Y. 2002) (Garaufis, J.) (adopting "principle" of "den[ying] bail to 'dangerous' defendants despite the availability of home detention and electronic surveillance and notwithstanding the value of a defendant's proposed bail package"); United States v. Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (Gershon, J.) ("[T]he protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility[.]"); United States v. Masotto, 811 F. Supp. 878, 884 (E.D.N.Y. 1993) (rejecting bail because "the Second Circuit appears to be saying to us that in the case of 'dangerous defendants' the Bail Reform Act does not contemplate the type of conditions suggested by this Court [including home confinement and electronic monitoring] and that, even if it did, the conditions would not protect the public or the community, given the ease with which many of them may be circumvented").

It is also disingenuous for the defendant to suggest that he has "no means to go anywhere." (Mot. at 3). He continues to have a significant network of individuals available to assist him. Indeed, many of those individuals attempt to do the defendant's bidding by regularly posting and appearing in videos on the internet and publishing on social media in support of the defendant and overtly trying to intimidate the defendant's accusers. Moreover, the defendant still has the financial means to flea and commit obstruction. In the first quarter of 2020 alone, the defendant received over $200,000 in royalty proceeds.

III.  Release Continues to Be Unwarranted Under the "Compelling Reason" Clause

The defendant argues that he should be released on bail because there are now inmates and staff at MCC Chicago who have tested positive for COVID-19. (Mot. at 1). He further asserts that he and rest of the inmate population at the facility are "experiencing tremendous stress and anxiety in light of" these developments. (Id. at 2). The government recognizes that the COVID-19 pandemic is serious and may cause inmates at MCC Chicago – and the public at large – stress and anxiety. Standing alone, however, these are not "compelling reasons" justifying the defendant's release under 18 U.S.C. § 3142(i).

The Bail Reform Act, 18 U.S.C. § 3142(i), provides that a "judicial officer may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." As Judge Garaufis recently noted in rejecting an application similar to the instant motion, "[t]his provision has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." United States v. Hamilton, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

While it is true that MCC Chicago now has inmates who have tested positive for COVID-19,[3] it remains the case that the defendant does not have any medical conditions that place him in a high-risk category should he contract COVID-19. Nor does his age or any other factor make him uniquely situated with respect to the risk of infection of COVID-19. Rather, the defendant argues that the general risks posed by COVID-19 to MCC Chicago inmates warrants his release.

As set forth in the government's response to the defendant's prior emergency motion for bail, the BOP has implemented national measures to mitigate the spread of COVID-19 within prisons. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. Over the past several weeks, the BOP announced the immediate implementation of additional phases of its COVID-19 Action Plan. Pursuant to Phase 4, on March 26, 2020, the BOP updated its quarantine and isolation procedures to require all newly admitted inmates to the BOP, whether in a sustained community transition area or not, be assessed using a screening tool and temperature check, and to require asymptomatic inmates be placed in quarantine for a minimum of 14 days or until cleared by medical staff.[4] Symptomatic inmates are placed in

---

[3] Based on information received from legal counsel at MCC Chicago, as of April 16, 2020, nine inmates had tested positive for COVID-19. None of these inmates were housed in the defendant's housing unit.

[4] See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited Apr. 17, 2020).

4

isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

On April 1, 2020, the BOP announced the immediate implementation of Phase 5 of its COVID-19 Action Plan, which included the following measures:[5]

- For a 14-day period, inmates in every institution will be secured in their assigned cells/quarters to decrease the spread of the virus. This modification to the action plan is based on health concerns, not disruptive inmate behavior.

- During this time, to the extent practicable, inmates should still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.

- In addition, the Bureau is coordinating with the United States Marshals Service to significantly decrease incoming movement during this time.

- Limited group gathering will be afforded to the extent practical to facilitate commissary, laundry, showers, telephone, and Trust Fund Limited Inmate Computer System access.

Further, as of April 10, 2020, all staff members and inmates at MCC Chicago are wearing face masks for further protection. Most recently, as of April 13, 2020, the BOP implemented Phase Six of its Action Plan. Phase Six extends until May 18, 2020 the previously-adopted limitations on inmate movement, the suspension of social and legal visits, and the requirement of a 14-day quarantine for all new intakes, detainees, writ returns, parole violators, and hospital returns (even if asymptomatic), in addition to any close contacts of a confirmed or suspected case of COVID-19.[6] Phase Six also provides that any inmate with COVID-19 symptoms or a fever shall be isolated in a single cell with specific test-based and symptom-based strategies for release from isolation; that all staff and contractors must wear personal protective equipment; and that all staff and inmates should wear face coverings. As a result of these provisions, in addition to inmates who have displayed symptoms of COVID-19 or who have tested positive for COVID-19 being placed in isolation, the units in which these inmates were housed have been quarantined.

In addition to implementing the various phases of the BOP Action Plan, MCC Chicago also has doctors and nurses who monitor and provide care onsite to inmates. They continue to make daily rounds should the defendant decide to seek medical assistance for

---

[5] See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited Apr. 17, 2020).

[6] See https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (last visited Apr. 17, 2020); https://prisonology.com/wp-content/uploads/2020/04/COVID-19-Phase-6-Plan-2020-04-13.pdf (last visited Apr. 17, 2020).

5

whatever reason. Inmates who need intensive treatment that cannot be provided inside the facility are transported to community hospitals in the event of an emergency. And in the unfortunate event that defendant becomes infected with COVID-19, he would be quarantined and monitored, and receive any needed treatment, consistent with the CDC's guidelines.

While the government recognizes the seriousness of COVID-19 and the increased risk to certain federal prisoners, a generalized risk alone does not justify releasing the entire BOP population, much less a prisoner being held for racketeering charges involving crimes against specified victims and with a history of obstructing justice and violating his bail conditions by committing serious crimes. Simply residing in MCC Chicago – even where a limited number of inmates have tested positive for COVID-19 – cannot be a basis for being released. Because the defendant is not uniquely situated with respect to the risk of infection of COVID-19, his general circumstances do not overcome the significant danger and flight risk he would pose if released.

Indeed, this is the conclusion reached by a growing body of decisions in this district and the Southern District of New York rejecting applications for bail in serious cases based on generalized assertions relating to COVID-19. See, e.g., United States v. Mattei, 19-CR-283 (WFK) (E.D.N.Y. Apr. 16, 2020), ECF Docket No. 22 at 7-8 (denying bail motion for defendant who posed flight risk and danger noting that defendant "fail[ed] to allege any unique factors or circumstances warranting his temporary release beyond general concerns and risks of the COVID-19 pandemic" and finding that "general concerns and risks related to the COVID-19 pandemic do not constitute a 'compelling reason' warranting release under 18 U.S.C. § 3142(i)"); United States v. Amador-Rios, 18-CR-398 (RRM) (E.D.N.Y. Apr. 12, 2020), ECF Docket No. 99 at 5 (denying bail motion for dangerous defendant who asserted generalized fear of COVID-19 at MDC Brooklyn, where inmates had tested positive, and noting that defense arguments did not account for "the *actual* steps that the Federal Bureau of Prisons has taken both nationally and locally to mitigate the spread of COVID-19 within all of its facilities, and specifically, within the MDC where [the defendant] is housed") (emphasis in original); United States v. Scorcia, No. 19-CR-442 (ILG), ECF No. 254 (E.D.N.Y. Mar. 27, 2020) (ruling that court had already determined defendant was a danger to the community and declining to release defendant based on COVID-19 pandemic for 54-year-old who cited poor health and claimed restrictions at MDC interfered with ability to prepare a defense); United States v. Lipsky, No. 19-CR-203 (NGG), Mar. 24, 2020 Order (E.D.N.Y.) (declining to release defendant, previously detained as a danger to the community, based on general risks of COVID-19 pandemic); United States v. Amato, No. 19-CR-442 (ILG), ECF No. 237 (E.D.N.Y. Mar. 20, 2020) (ruling that court had already determined defendant was a danger to the community and declining to release 61-year old defendant with asthma based on COVID-19 pandemic); United States v. Hamilton, No. 19-CR-54 (NGG) 2020 WL 1323036, at *1-2 (E.D.N.Y. Mar. 20, 2020) (declining to release defendant charged with two counts of murder while engaged in narcotics trafficking who had sought release due to the COVID-19 pandemic based on defendant's "advanced age and medical conditions," finding that defendant had not "met his burden to rebut the presumption of danger to the community that attaches based on" the charged acts of violence); United States v. Landji, 2020 U.S. Dist. LEXIS 59954, at *16-17 (S.D.N.Y. Apr. 5, 2020) (denying

6

bond for a 58-year-old non-violent defendant with certain medical conditions, noting there was no "basis for this Court to find that [the defendant] is more susceptible to COVID-19 than other inmates"); United States v. Marte, No. 19-CR-795 (SHS), 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020) (denying bond for a "long time smoker" defendant who was an "alleged leader of [an] oxycodone conspiracy," noting that "the community in its entirety" is facing the pandemic); United States v. Bradley, 19-CR-632 (GBD), ECF No. 25 (S.D.N.Y. Mar. 25, 2020) (denying bail application for inmate detained in MCC on controlled substances and firearm charges who had recently experienced a stroke and had high blood pressure); United States v. Rivera, 20-CR-6 (JSR), Mar. 25, 2020 Order (S.D.N.Y.) (denying bail application for inmate detained in MCC on controlled substance charge who had a childhood history of asthma); United States v. White, 19-CR-536 (KC), Mar. 25, 2020 Order (S.D.N.Y.) (denying bail application for inmate detained at Valhalla on controlled substance and Hobbs Act charges with history of whooping cough); United States v. Acosta, 19-CR-848 (NRB), ECF No. 14 (S.D.N.Y. Mar. 25, 2020) (denying bail application for inmate detained in MCC that "reli[ed] mainly on a form letter proffering general reasons to release inmates because of the spread of the COVID-19 virus).

Nor do the mitigation efforts put in place by BOP, principally the limitations on legal visits, justify the defendant's release. (See Mot. at 3-4). The defendant's trial has now been adjourned, with jury selection scheduled to commence on September 29, 2020. "[A]s conditions return to normal, the defendant and his lawyers will [now] have additional time to prepare for trial" and "the defendant can continue to contact his attorneys by phone and email during this crisis." (4/7/20 Order at 3). Indeed, given the restrictions in effect in Illinois limiting person-to-person contact even were the defendant no longer in custody, the defendant and his counsel would still be limited to communicating by telephone.

IV.     Conclusion

For the reasons stated herein and in the government's prior submissions related to the defendant's detention, the defendant's renewed emergency motion for release should be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Elizabeth Geddes
Nadia Shihata
Maria Cruz Melendez
Assistant U.S. Attorneys
(718) 254-6430/6295/6408

cc:     Defense Counsel (by ECF)
        Clerk of Court (AMD) (by ECF)