
# LEONARDMEYER

MIKE LEONARD
MLEONARD@LEONARDMEYERLLP.COM
O 312.380.6559

**BY ELECTRONIC FILING**

Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Robert Kelly*, Case No. 19-286 (S-1)(AMD)

Dear Judge Donnelly:

In accordance with this Court's Order of April 17, 20202, we respectfully submit this letter as a Reply in support of Mr. Kelly's Renewed Emergency Motion for Release based upon changed circumstances.

Things at the MCC Chicago have only gotten worse since the filing of Mr. Kelly's Motion several days ago. Indeed, in that short time period, the number of detainees stricken with COVID-19 has *doubled. See, e.g., Chicago Sun Times*, April 18, 2020 (Jon Seidel) (citing to statistics provided by the MCC Chicago, and to John Murphy, Executive Director of the Federal Defender Program for the Northern District of Illinois).[1] The number of personnel stricken with COVID-19 has also *doubled*. All of that was predictable to anyone who has read, or listened to, even a modicum of coverage of the COVID-19 pandemic. One can reasonable expect that the number of COVID-19 positive cases at the MCC Chicago will continue to increase exponentially over the coming weeks, with hundreds of more cases likely as well as some deaths. That is because, apart from a nursing home type setting, a jail or prison is perhaps the worst place to be during a pandemic. Even the courts have now recognized this unassailable fact. *See, e.g., United States v. Rodriguez*, No. 2:03-cr-271-AB, Dkt. No. 135 (E.D. Pa. Apr. 1, 2020); *United States v. Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (individuals housed within the BOP "remain particularly vulnerable to infection"); *see also Something is Going to Explode: When Coronavirus Strikes a Prison* (New York Time Magazine, April 18, 2020, Janet Reitman).

---

[1] *See* https://chicago.suntimes.com/coronavirus/2020/4/18/21225747/coronavirus-cases-rising-chicago-federal-jail.

**Judge Donnelly**
**April 19, 2020**

In any event, federal courts have long recognized that there is no greater necessity than that of keeping a defendant alive, no matter the charges he faces. As Judge Weinstein held, "[W]e do not punish those who have not been proven guilty. When we do punish, we do not act cruelly." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993).

Accordingly, the assertion offered by the Government in its Response that the MCC Chicago is doing all it can and is doing a credible job of combatting the spread of COVID-19 (*see* Response at pp. 4-7) – could not ring any more hollow. As previously pointed out, the MCC Chicago has done almost nothing that could legitimately curb the spread of COVID-19. It is simply not in a position to do much of anything. In fact, it has not even started testing detainees. Moreover, based upon the now wildfire pace of COVID-19 infection at the MCC Chicago, clearly whatever it was doing (or claiming to do) was completely ineffective.

Furthermore, to be crystal clear, Mr. Kelly's counsel is not asking this Court to "release the entire BOP population," as claimed by the Government in its Response. *See* Response, at p. 6. That is a false and straw man argument. Certainly, there are detainees at the MCC Chicago, or elsewhere, for whom a combination of conditions *cannot* be fashioned that will reasonably assure a court that they will appear, and that they will not pose a danger to the community. Mr. Kelly is *not* one of those individuals.

With respect to the issue of risk of flight, it bears repeating that, in Mr. Kelly's prior criminal case, he never once failed to appear for any of his court appearances – over a period of years. It likewise bears noting that, even though Mr. Kelly was on notice that his indictment and arrest on federal criminal charges was imminent, he made absolutely no attempt to flee. Nonetheless, in its Response, the Government once again makes the assertion that Mr. Kelly poses a substantial risk of flight and therefore must continue to be detained within the admittedly dangerous confines of the MCC Chicago. It similarly ignores the fact that the current environment of restricted travel and commercial activities would make it that much more difficult than before, and albeit impossible for a celebrity like Mr. Kelly, to flee from prosecution.

The "support" the Government offers for this theory is that Mr. Kelly allegedly has the financial means to flee. Although that argument at first has some surface level appeal, upon close analysis it is entirely disingenuous. The Government well knows that another governmental entity, the Department of the Treasury, Internal Revenue Service ("IRS"), has a valid and enforceable tax lien against Mr. Kelly in the amount of $1,878,737.43. *See* attached Notice of Federal Tax Lien. Moreover, the royalties to which Government refers are likely the gross amount, before monies are taken out by agents, managers, and all of the other people that have a piece of that pie. The monies the Government claims Mr. Kelly has access to are not the kind of funds that would present an opportunity to flee, let alone live a life covertly in exile. Equal to that point, this Court, as part of any release Order, can severely (or almost entirely) restrict Mr. Kelly's access to, and use of, funds.

**Judge Donnelly**
**April 19, 2020**

Additionally, the Government makes the bald and wholly unsupported assertion that there exists somewhere a "network of individuals" who purportedly stand ready to assist Mr. Kelly in his flight from justice. *See* Response, at p. 3. That one is a whopper. Who are these individuals? They do not exist. It is inexcusable for federal prosecutors to advance conspiracy theory arguments to this Court that have absolutely no basis in fact. If there are any facts to support this contention, this Court should demand that the Government immediately disclose and produce them. Moreover, Mr. Kelly and his counsel should be entitled to the immediate production of any materials that support this baseless contention.

It is unfair to argue that Mr. Kelly should remain in custody because people are posting things on social media. There is zero connection between Mr. Kelly and those postings, other than they are apparently from fans of his. Moreover, the Government is hardly in a position to criticize when their very own witnesses, both before and after this indictment was returned, have made an extraordinarily public effort to create the public perception that Mr. Kelly is a monster, through their own social media postings, by appearing on a second so-called documentary, and by going on the R Kelly "survivors tour."

With respect to the issue of danger to the community, Mr. Kelly is a non-violent offender. He is presumed innocent. To the extent this Court has any basis for believing that Mr. Kelly poses any conceivable risk to any member of the public, that can be entirely mitigated by the fact that any release Order it issues can include 24/7 electronic monitoring/home confinement; denial of access to Mr. Kelly of any computer usage; denial of access to Mr. Kelly of any social media usage; denial of contact by Mr. Kelly to any purported victims; and limited contact by Mr. Kelly with persons who are not his defense counsel or significant other - which has been done in numerous other cases in direct response to the pandemic for defendants who have already been convicted, and for defendants like Mr. Kelly who are awaiting trial.

In addition, the Government's argument for detention is rooted in its position that Mr. Kelly has a "lengthy and wide-ranging history of criminal conduct." That is unquestionably inaccurate and misleading given the fact that Mr. Kelly has never been convicted of any crime, and thus does not have a criminal record. That argument is also the antithesis of the presumption of innocence. Sure, the Government has its theory that Mr. Kelly obstructed justice years ago, but that is at this point simply a theory, and the law does not provide that the mere accusations of an indictment are sufficient to deny bail, particularly under the novel circumstances presented here.

The Government's only counter to the above-referenced effective measures to ensure Mr. Kelly's appearance and to address any alleged danger to the community is that, *according to it,* electronic monitoring and/or home confinement do not work and have been rejected by the federal courts. That is an archaic view. It fails to recognize the progression of technology, and appears not to fairly represent the current view. *See, e.g., United States v. Fellela*, No. 3:19-CR-79 (JAM), 2020 WL 1457877, at *1–2 (D. Conn. Mar. 20, 2020) ("In any event, Fellela's motion requires me to consider whether he has established by clear and convincing evidence that he will not flee or pose a danger to any other person or to the community. *See* 18 U.S.C. § 3143(a)(1);

**Judge Donnelly**
**April 19, 2020**

Fed. R. Crim. P. 32.1(a)(6). I conclude that he has done so, provided that he is subject to continuous home confinement with electronic monitoring . . . I have received adequate assurance including through inquiry of the U.S. Probation Office in Rhode Island that Fellela can be subject to 24-hour electronic monitoring if released to his home and custody of his spouse in Rhode Island. Fellela will be permitted to leave his home only for a health or medical emergency and for no other reason absent written permission of the U.S. Probation Office. Of course, if Fellela decides to disregard the conditions of electronic home confinement, then he should understand that he would likely be detained again and he would fully assume the risk to his health that may result.").

That claim is also false - at least with respect to Judges within the Northern District of Illinois ("Northern District") - where Mr. Kelly would be supervised by federal Pre-Trial Services. In fact, Judges within the Northern District routinely fashion pre-trial release Orders that call for electronic monitoring/home confinement. However, this Court need not take the word of Mr. Leonard and Mr. Greenberg - who are members of the Trial Bar and of the Federal Defender Panel for the Northern District - this Court can confirm those statements with Judge Leinenweber; with Pre-Trial Services for the Northern District, including the very individual who is assigned to Mr. Kelly;[2] and with John Murphy, the well-respected Executive Director of the Federal Defender Program for the Northern District; and even, if need be, with the United States Attorneys' Office for the Northern District.

Finally, the Government makes short shrift of defense counsel's need to meet with Mr. Kelly - for literally hundreds of hours - to prepare for his September 2020 trial. One short telephone call a week, or even a couple more than that (maybe) in the next month or two does not cut it. This is particularly true where, as here, Mr. Kelly has an extremely limited ability to read. Moreover, at present, it is not even clear when it will be safe for defense counsel to even enter the MCC, or for that matter when the MCC will once again allow attorney visits. It goes without saying that the Government would never, ever agree to the type of limited access to its own trial witnesses - for purposes of trial preparation - that Mr. Kelly's lawyers now face and will continue to face.

Further, any phone calls Mr. Kelly's counsel are allowed to have with him, unless specially arranged, are monitored and subject to the Government listening to them contemporaneously, or later. *United States v. Persico*, No. 10-CR-147 S-4 SLT, 2012 WL 1712520, at *12 (E.D.N.Y. May 15, 2012). Lastly, any phone calls are dependent upon Mr. Kelly being able to actually use the phone, with his attorneys having no control over when they speak, and presuppose that he would want to use the telephone - which may be one of the most infected items in the jail.

---

[2] That individual's name is not included in this publicly filed Motion, but can be provided directly by Mr. Kelly's counsel to your Honor, or to the Court's Courtroom Deputy.

**Judge Donnelly**
**April 19, 2020**

Based upon all of the foregoing, this Court should grant Mr. Kelly's Motion, and Order that he be promptly released with all such conditions that this Court finds are necessary and appropriate.

Sincerely,

*/s/ MLe*

Michael I. Leonard
MIL: bp
cc: All Counsel of Record (via ECF filing)