# GREENBERG TRIAL LAWYERS

ATTORNEYS AT LAW                                                53 WEST JACKSON BOULEVARD, SUITE 1260
                                                                            CHICAGO, ILLINOIS  60604
                                                                                       (312) 879-9500
                                                                                   Fax: (312) 650-8244
                                                                             Steve@GreenbergCD.com

May 1, 2020

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    <u>United States v. Robert Kelly, 19-286 (S-1)(AMD)</u>

Dear Judge Donnelly:

    We respectfully request that you revisit your decision denying Mr. Kelly bail. Doc. 61. For one, he has a legitimate health risk that was being secreted from him by the BOP, who failed for the past month to disclose that March testing revealed he is likely diabetic. In addition, the ruling unfairly skews things against Mr. Kelly, completely failing to recognize any of the facts that show, even more so now in the current quarantine environment, that he is neither a serious risk of flight nor a danger to the community.  The ruling does not appear to consider whether there are any set of conditions which could reasonably assure the court that he would appear and would not be a danger to the community.  We are again asking for release during the pending crisis, given the increased health risks in an incarcerated situation, i.e. being incarcerated creates its own "high risk".

    The Court previously noted that the information regarding Mr. Kelly's health and risk factors had not changed, or demonstrated he was high risk. Yesterday, during a court ordered telephone conference with Mr. Kelly, he explained to counsel that he had just been brought the results of medical tests that have been done in March, a month before. The BOP had the results on April 1, but did not share them with Mr. Kelly until yesterday, April 30. The information showing he may be high risk was withheld from him, and thus could not be shown to or considered by this Court.

    The test reveals that he is 1/10 of one point below diabetic, at the very top of the high risk category. It is a fact that people who are diabetic are at a much higher risk for serious complications should they be infected with Covid 19.

- 2 -

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. He also suffers from high blood pressure and cholesterol issues. These conditions also make him a higher risk for bridging the 1/10th and having diabetes, as does the fact he's overweight. A copy of the results is attached. In the current environment they are not taking any medical action to mitigate any of these conditions. They let a month pass before sharing the results. It only makes sense that given the absence of any knowledge on his part, or any mitigation, that he is likely now diabetic. And of course African-Americans are at higher risk when infected with Covid 19.

How risky it is within the correctional institution where he is housed is uncertain. The institution itself has either unintentionally miscounted or intentionally misrepresented the amount of cases they have. The numbers have swung wildly, up and down. They have been posting on the public website numbers that are significantly lower than prosecutors have announced in court. See Chicago Tribune, "Wild Swing in Coronavirus Numbers Reported at Chicago's Federal Jail Goes Unexplained, Leaves Lawyers Skeptical" https://www.chicagotribune.com/coronavirus/ct-coronavirus-mcc-chicago-response-20200429-e3crup5ifnatznwjm42fn7emre-story.html. Just days ago they claimed there were only six cases and now that number is at least 48. The number is also likely understated since many have gone untested. It has been reported that the rates within BOP facilities are artificially low because of a lack of testing, with 70% of those who are tested coming back as positive. See AP report titled "Over 70 percent of tested inmates in federal prisons have COVID-19". ("And even though officials have stressed infection and death rates inside prisons are lower compared with outside, new figures provided by the Bureau of Prisons show that out of 2,700 tests systemwide, nearly 2,000 have come back positive, strongly suggesting there are far more COVID-19 cases left uncovered"). https://www.pbs.org/newshour/nation/over-70-of-tested-inmates-in-federal-prisons-have-covid-19

The simple fact is that it appears that there is a serious spread within the BOP and this institution.

The Court's opinion refers to curtailed capabilities at oversight. If Mr. Kelly were released it would be in the Northern District of Illinois. To the best of counsel's understanding, no court in this district has denied release because it would be difficult to monitor an individual on bail. Indeed, in the wake of the pandemic, the Chief Judge for the Northern District of Illinois released a high-ranking gang member who had been held without bail as a danger to the community, noting that the world to which he was being released was far different from when he was first arrested, and notwithstanding the fact that he had already pled guilty to his offense.  https://www.chicagotribune.com/coronavirus/ct-coronavirus-mcc-conditions-update-20200421-rvxfpvb5fzer3mkd6wzs52c3ca-story.html.

- 3 -

Equally troubling is this Court's embrace of a belief that Mr. Kelly is a risk to flee and obstruct justice. Mr. Kelly must also present a *serious* risk of flight or of obstruction, not an ordinary risk. *See* 18 U.S.C. § 3142(f); *see also United States v. Friedman*, 837 F.2d 48 (2d Cir. 1988). To suggest that he is a "serious" risk of either with all due respect ignores the facts instead relies upon speculation, unsupported, at best.

As to the former, we have repeatedly pointed out to this court that Mr. Kelly has never missed a court date, either during his prior proceedings which lasted for years or during his current state case that preceded his arrest on federal charges. During the earlier state prosecution Mr. Kelly was allowed to travel out of the country and returned. The government keeps claiming that he obstructed justice in that case, implying that is the reason why he prevailed, but the fact is that there was a three-week trial with dozens of witnesses, including some of the same witnesses that are involved in the federal proceedings now pending. Mr. Kelly was very much at risk of going to jail during those proceedings and still he showed up. He did not flee when he was charged in state court in 2019, rather he turned himself in after he was asked to. And he would've done the same thing here had he been given the opportunity.

Further, the government has not presented evidence that Mr. Kelly has any resources to flee. Regardless of what he is receiving in royalties, that does not translate into resources. They cannot point to a single individual that would attest he is ever expressed any desire to flee. They cannot point to a single email or text message.. Where would he flee to? How would he go unnoticed? How would he have money to survive?

Courts routinely point to it defendant's failure to appear a prior proceeding as a reason why they should not be entitled to bail. If that is the case than the opposite should also be true, that a defendant's appearance the prior proceedings should count for something.

Any suggestion that he would flee also flies in the face of the reality that it is virtually impossible during this pandemic to fly anywhere, let alone to do it surreptitiously. Airports these days are completely deserted. He could not just walk through an airport undetected, or sit on an airplane unnoticed. He does not have a passport. https://www.businessinsider.com/coronavirus-haunting-photos-of-empty-airports-and-planes-2020-4. Certainly conditions could be found that would ensure against any risk, including GPS or electronic monitoring, which would give instant notification if he left any premises.

The fact that there is no evidence he would flee, and historically he has not should be contrasted with the speculation that he would obstruct justice. The government has repeatedly cited that factor, and the court has repeatedly embraced it, to deny relief. Mr. Kelly must present a *serious* risk of obstruction.

Mr. Kelly's past behavior *in this case* shows that he is unlikely to obstruct justice. One of the alleged Jane Doe's until recently was Mr. Kelly's girlfriend. Although completely out of the norm, even though she was a supposed victim, she was regularly allowed to visit with him while he was in jail, and correspond with him. It appears that during the approximately six months she regularly visited with him, corresponded via letters, shared emails, and spoke daily on the telephone, while he certainly knew that she was one of the Jane Doe's, he never did a single obstructive thing. Given that she is cooperating with the government one would think if there was any evidence of obstruction, the government would cite to it, and it has not.

Frankly, the idea that Mr. Kelly would now obstruct anyone is folly. The government has disclosed little evidence revealing the substance of their case. But what is known is that individuals are cooperating with the government and have absolutely no contact with Mr. Kelly or anyone associated with him.

That is not the case with respect to all of the Jane Does. The government has not disclosed the identity of two, one is his former girlfriend who is continually on social media, along with her parents (and there is no evidence that he or anyone on his behalf has reached out to her), another is represented by counsel, has sued Mr. Kelly, and has appeared in SRK2 telling her story, making it extraordinarily difficult to believe that even if he wanted to Mr. Kelly could change her narrative. Another is deceased, and he has not had contact with the others, if ever, for more than a decade. As for the now former girlfriend, she was still his girlfriend when he was arrested in this case and, although the norm is not to allow a federal criminal defendant to have any contact with witnesses in the case against him, she was allowed to have special visits with him while he was in the federal jail. They regularly communicated by phone and email. He knew that she was one of the Jane does. There is no evidence he ever tried to obstruct or influence with respect to her portion of the indictment. If he did not try to obstruct or influence his own girlfriend then how is it at all credible that he would do it to someone else in the future, which is where the focus is required to be.

Lastly, it should be noted that the two co-defendants in the NDIL, including the supposed mastermind, were both released on bail without objection. These co-defendants have the same criminal history as Mr. Kelly, face similar charges, and have far more money.

To the point, the law speaks to the future, i.e., "a serious risk that such person will…", *not* that they have been. *See* 18 U.S.C. 3142(2)(B). Regardless of the past, any evidence or concern of future obstruction is unsupported. Notwithstanding years of rumors that Mr. Kelly was being investigated, television shows dragging him through the mud, and the filing of serious charges earlier this year in Illinois State court, the Government cannot identify any instances where Mr. Kelly has

- 5 -

tried to influence, intimidate, or tamper with a single witness or potential witness to obstruct any current prosecution.

What is most troubling from the defense's perspective is that this court accepts the *allegations* regarding obstruction as true and as evidence that he would obstruct now if released, but completely discounts the *factual and historical evidence* of appearance. Accordingly, we ask that you reconsider because there are conditions that can be fashioned during this pandemic.

Mr. Kelly is presumed innocent, his case is defensible, and he does not have *any* criminal record. Even when the Government has satisfied its burden, detention should be ordered *only* if no condition or combination of conditions can reasonably assure the defendant's presence and the safety of the community. The question is whether there are any conditions that would permit release. Here, conditions can easily be fashioned. He can have restricted internet access and be required to wear an electronic monitoring bracelet. He can been denied a cell phone. Further, now that different jurisdictions are involved in prosecuting Mr. Kelly, it is safe to assume that any witness that Mr. Kelly would attempt to intimidate would immediate call whatever law enforcement arm has been working with them as part of these prosecutions.

In this case, any alleged potential risks that could conceivably exist can be sufficiently addressed through detailed conditions of release.

Thank you again for your consideration.

Respectfully submitted,

/s/ *Steve Greenberg*

On behalf of Mr. Kelly



**FMC Rochester**
2110 E. Center Street
Rochester, MN 55904
507-287-0674

*** Sensitive But Unclassified ***

**Name** KELLY, ROBERT
**Reg #**
**DOB**
**Sex** M

**Facility** MCC Chicago
**Order Unit** F03-020L
**Provider** Brij Mohan, MD, Clinical Director

**Collected** 03/31/2020 08:45
**Received** 04/01/2020 09:35
**Reported** 04/01/2020 10:44
**LIS ID**

## CHEMISTRY

| | | | | |
|---|---|---|---|---|
| Cholesterol | H | 280 | <200 | mg/dL |
| Triglycerides | | 108 | <150 | mg/dL |
| HDL Cholesterol | | 59 | 40-60 | mg/dL |
| LDL Cholesterol (calc) | H | 199 | <130 | mg/dL |
| Chol/HDL Ratio | H | 4.7 | 0.0-4.0 | |

## SPECIAL CHEMISTRY

## HEMOGLOBIN A1C

| | | | | |
|---|---|---|---|---|
| Hemoglobin A1C | H | 6.3 | <5.7 | % |

　5.7 - 6.4 Increased Risk
　> 6.4 Diabetes

✱

**FLAG LEGEND**   L=Low   L!=Low Critical   H=High   H!=High Critical   A=Abnormal   A!=Abnormal Critical

Page 1 of 1