UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                              :

**UNITED STATES OF AMERICA**,

                              :

                              :        **ORDER**

           **- against -**            :        19-CR-286 (AMD)

                              :

                              :

**ROBERT SYLVESTER KELLY**,

                              :

                              :

                   Defendant.      :

------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The defendant is awaiting trial on charges of racketeering in violation of 18 U.S.C.

§§ 1962(c) and 1963, three counts of Mann Act transportation to engage in illegal sexual activity

in violation of 18 U.S.C. § 2421(a), three counts of Mann Act coercion and enticement to engage

in illegal sexual activity in violation of 18 U.S.C. § 2422(a), one count of Mann Act coercion of

a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b), and one count of

Mann Act transportation of a minor with intent to engage in illegal sexual activity in violation of

18 U.S.C. § 2423(a).  (ECF No. 43.)  Currently before the Court are the defendant's motions to

dismiss the racketeering charge and to strike the allegations that cite Section 2307 of the New

York Public Health Law.  (ECF Nos. 41, 42).  The Government opposes.  (ECF Nos. 46, 47.)

For the reasons that follow, the motions are denied.

## BACKGROUND

The third superseding indictment,[1] returned on March 12, 2020, charges the defendant

with racketeering and violations of the Mann Act.  (ECF No. 43.)  The racketeering charge

---

[1]  The grand jury indicted the defendant in June of 2019 with racketeering and Mann Act crimes.  (ECF
No. 1.)  The Government has twice sought and obtained superseding indictments.  (ECF Nos. 30, 43.)

alleges an enterprise that includes the defendant and his managers, bodyguards, drivers, personal assistants, runners and members of his entourage.  (*Id.* ¶ 1.)  According to the indictment, the enterprise, which engaged in and affected interstate commerce, "constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the [e]nterprise."  (*Id.*)  The purposes of the enterprise were to promote the defendant's music and brand, to recruit women and girls to engage in illegal sexual activity with the defendant and to produce pornography, including child pornography.  (*Id.* ¶ 2.)  The defendant, through the means and methods of the enterprise (*see id.* ¶ 9), is alleged to have committed fourteen racketeering acts against six victims between January of 1994 and 2017.  (*Id.* ¶¶ 11-38.)

Two of the racketeering acts (twelve and fourteen) and four of the Mann Act counts (six through nine) involve allegations that the defendant had sexual intercourse with Jane Doe #6 in violation of Section 120.20 of the New York Penal Law—reckless endangerment in the second degree—and Section 2307 of the New York Public Health Law, which prohibits someone who knows that he is infected with "an infectious venereal disease" from having sexual intercourse with another person.  In particular, the indictment alleges that the defendant "engaged in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances."  (ECF No. 43 ¶¶ 33-34, 37-38, 43-46.)

## DISCUSSION

The defendant makes two challenges to the third superseding indictment.  First, he argues that the racketeering count must be dismissed because the indictment does not allege a legally cognizable enterprise within the meaning of 18 U.S.C. § 1962(c).  (ECF No. 41 at 5-10.)

2

Second, he moves to strike the charges that cite Section 2307 of the New York Public Health Law on the theory that the law is "facially invalid, overbroad, and vague." (ECF No. 49 at 1.) Neither claim is persuasive.

## I.   Motion to Dismiss Count One

"The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (citation and internal quotation marks omitted). Rule 7 of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment satisfies this rule if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotation marks and citations omitted)).

To withstand a motion to dismiss pursuant to Rule 12, an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (citation omitted); *see also Hamling*, 418 U.S. at 117 ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'") (citation omitted). Indictments do not "have to specify evidence or details of how the offense was committed," *United States v. Wey*, No. 15-CR-611, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017)

(citations omitted), and "[a] pretrial motion to dismiss an indictment must not weigh the sufficiency of the evidence," *United States v. Tucker*, No. 16-CR-91, 2017 WL 3610587, at *2 (S.D.N.Y. Mar. 1, 2017) (citing *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998)). Finally, "[w]hen considering a motion to dismiss, the Court must treat the indictment's allegations as true." *Wey*, 2017 WL 237651, at *5 (citing *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999), *cert. denied*, 531 U.S. 823 (2000)).

The first count of the third superseding indictment charges the defendant with racketeering in violation of 18 U.S.C. § 1962(c).  An indictment charging a violation of Section 1962(c) is sufficient if it alleges the following elements: "(1) that the defendant was employed by or associated with an enterprise; (2) that the defendant knowingly conducted or participated directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity; (3) that the defendant knowingly committed or aided and abetted the commission of at least two acts of racketeering; and (4) that the activities of the enterprise affected interstate or foreign commerce." *United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d 444, 449 (D. Conn. 2002) (citing *United States v. Long*, 917 F.2d 691, 696 (2d Cir. 1990) (citations omitted)).

The indictment alleges all four elements.  Count One charges that from 1994 to "present," the defendant was a member and leader of an enterprise, the activities and affairs of which affected interstate and foreign commerce.  (ECF No. 43 ¶ 12.)  It alleges that the defendant knowingly participated in "the conduct of the affairs of the [e]nterprise through a pattern of racketeering activity" which was designed to achieve the common purposes of the enterprise: to recruit women and girls for illegal sexual activity and to produce child pornography.  (*Id.* ¶¶ 1, 10, 11-38.)  Further, it alleges that the defendant and other members of the enterprise committed

4

fourteen separate acts consistent with the enterprise's purpose, and includes the approximate times and places of those acts.  (*Id.* ¶¶ 13-38.)  Accordingly, Count One states the elements of the offense of racketeering.  *See Alfonso*, 143 F.3d at 776 ("We have no doubt that Count One of the indictment in the instant case meets these basic pleading requirements by accurately stating the elements of the offense charged and the approximate time and place of the robbery that defendants allegedly conspired to commit . . . ."); *United States v. Cooper*, 17-CR-296, 2020 WL 2307646, at *3 (E.D.N.Y. May 8, 2020) ("Because the government's allegations in the superseding indictment clearly track and satisfy the elements, if proven, of the charged racketeering-related counts, they are sufficient under Rule 7(c).") (citation omitted).

Nevertheless, the defendant maintains that the allegations in the indictment do "not form a legally cognizable RICO enterprise under the law."  (ECF No. 41 at 5.)  First, citing *Boyle v. United States*, 556 U.S. 938 (2009), he argues that the Government does not sufficiently identify the enterprise's purpose, the identities of the enterprise's members, the members' relationships with the enterprise or the longevity of the enterprise.  (*Id.* at 7.)  Second, citing a host of civil cases, he argues that the indictment's description of the enterprise is flawed as a matter of law because "a party cannot be both the defendant 'person' and the 'enterprise.'"  (*Id.* at 8 (emphasis in the original).)  Neither argument is persuasive.

The essence of the defendant's first argument is that the "structural features" discussed in *Boyle* are sub-elements of an "enterprise" that also must be alleged in an indictment.  The Government responds that the *Boyle* features are not essential elements of a racketeering offense that need to be pleaded to satisfy Rule 7; it maintains that the allegation of an association-in-fact enterprise by itself is sufficient and that requiring it to plead an enterprise with the *Boyle* features is tantamount to challenging the evidentiary sufficiency of a properly pleaded indictment.  (ECF

5

No. 46 at 6 ("[A] motion to dismiss an indictment for its failure to describe a valid enterprise, as the defendant argues, is premature at this stage.").)

In *Boyle*, the Supreme Court defined the element of an "enterprise" not in the context of evaluating the sufficiency of an indictment, but in ruling on the trial judge's final instructions to the jury. 556 U.S. at 945-49. An indictment, by contrast, "do[es] not have to set forth evidence or details of how a crime was committed." *Triumph Capital Grp., Inc.*, 260 F. Supp. 2d at 448 (citing *United States v. Carrier*, 672 F.2d 300, 303-04 (2d Cir. 1982)). Because an indictment is "tested by its allegations, not by whether the government can prove its case," it is "not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *Id.* (quoting *Alfonso*, 143 F.3d at 776-77) (citation omitted).

Whether the Government can prove that the enterprise in this case had the structural hallmarks required by *Boyle* is a question of fact to be resolved by a jury at trial. In claiming that the indictment is insufficiently detailed in describing the enterprise, the defendant confuses the standards of pleading with the standards of proof at trial. *See, e.g.*, *Cooper*, 2020 WL 2307646, at *3 ("However, the arguments in support of their claim reveal that the true nature of Defendants' objections are not the sufficiency of the allegations, but rather the sufficiency of the factual and evidentiary support that the government will likely use to prove the existence of the Enterprise at trial."); *United States v. Raniere*, 384 F. Supp. 3d 282, 301 (E.D.N.Y. 2019) ("Raniere posits that an indictment must spell out why a RICO conspiracy's predicate acts are both horizontally and vertically related. These arguments confuse the standards of pleading with standards of proof.") (citation and internal quotation marks omitted); *United States v. Messina*, No. 11-CR-31, 2012 WL 463973, at *4 (E.D.N.Y. Feb. 13, 2012) (rejecting pretrial challenge to relatedness as "confus[ing] the standards of pleading with [the] standard[] of proof"); *Triumph*

6

*Capital Grp., Inc.*, 260 F. Supp. 2d at 449 (continuity is not an element of "a RICO offense that must be alleged with particularity to survive a motion to dismiss . . . the defendants' arguments conflate what the government must prove at trial with what it must allege in the indictment").

The Government is entitled to marshal and present its evidence at trial, and the defendant is entitled to challenge the sufficiency of that evidence pursuant to Rule 29 of the Federal Rules of Criminal Procedure. *See Raniere*, 384 F. Supp. 3d at 302 ("[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment, but rather on a post-trial motion for a judgment of acquittal pursuant to [Rule] 29.") (citations and internal quotation marks omitted); *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992) ("It is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence.  Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary insufficiency.") (citations omitted).  Accordingly, the motion to dismiss count one on this ground is denied.[2]

The defendant also argues that the description of the enterprise in the indictment is flawed because it does not distinguish between the defendant "person" and the "enterprise." (ECF No. 41 at 8-10.)  To support his claim, the defendant cites only civil RICO cases.  But unlike criminal RICO charges, civil RICO claims are governed by the heightened pleading standards in Rule 9 of the Federal Rules of Civil Procedure and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Criminal RICO charges, of course, are governed by Rule 7 of the Federal

---

[2] The indictment pleads the *Boyle* requirements in any event.  First, it alleges the enterprise's common purpose: to promote the defendant's music, to recruit women and girls to engage in illegal sexual activity with the defendant and to produce child pornography.  (ECF No. 43 ¶ 2.)  Second, it describes the relationships among the defendant and the other members of the enterprise, and alleges that the various members participated in the pattern of racketeering activity.  (*Id.* ¶¶ 1, 4-6.)  Finally, the indictment alleges that the enterprise operated for nearly twenty-four years, which is sufficient longevity to permit the members to pursue the enterprise's purpose.  (*Id.* ¶ 12.)

Rules of Criminal Procedure and are contained in an indictment returned by a grand jury.  *See United States v. Mavroules*, 819 F. Supp. 1109, 1118 (D. Mass. 1993) ("[A] criminal indictment containing a RICO charge is not subject to the same type of analysis to which a civil RICO complaint would be subject on a motion to dismiss pursuant to Rule 12(b)(6)."); *United States v. Marchese*, No. 89-CR-229, 1991 WL 60338, at *2 (S.D.N.Y. Apr. 11, 1991) ("The cases cited by the RICO Defendants in support of their motion . . . are inapposite, involving as they do motions to dismiss civil RICO complaints, and not criminal indictments."); *see also United States v. Vaughn*, 772 F.3d 918, 926 (7th Cir. 2013) (declining to apply *Iqbal*/*Twombly* pleading standard to a criminal indictment).  In other words, the enterprise/person distinction requirement from civil RICO cases is not relevant to the legal sufficiency of a properly pleaded criminal indictment.  *See United States v. Gatto*, 295 F. Supp. 3d 336, 347-48 (S.D.N.Y. 2018) ("Defendants' reliance on two civil RICO cases is confounding" in moving to dismiss a properly pleaded indictment).[3]

The indictment in this case contains a "plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), and makes out the offense of racketeering under Section 1962(c).  Accordingly, the motion to dismiss count one on this ground is also denied.

## II.   Motion to Strike

The indictment alleges that the defendant transported one of the victims in interstate commerce intending that she "engage in sexual activity for which a person could be charged with a criminal offense."  (ECF No. 43 ¶¶ 33-34, 37-38, 43-46.)  The indictment identifies two

---

[3]  The cases upon which the defendant relies are further distinguishable because they concern corporate defendants that were not sufficiently distinct from the alleged enterprise.  Here, the indictment charges that the defendant, an individual, was the leader of an enterprise comprised of other individual members.

offenses with which the defendant could be charged: Section 2307 of the New York Public Health Law, which makes it a misdemeanor for "[a]ny person who, knowing himself or herself to be infected with an infectious venereal disease, has sexual intercourse with another," and Section 120.20 of the New York Penal Law, reckless endangerment in the second degree, which is "recklessly engag[ing] in conduct which creates a substantial risk of serious physical injury to another person," a class A misdemeanor.  The defendant argues that the racketeering acts and the Mann Act counts that incorporate the violation of Section 2307 must be dismissed because Section 2307 is "facially unconstitutional," and "facially invalid, overbroad, and vague."  (ECF Nos. 42, 49.)  According to the defendant, the statute is overbroad because it bans people with infectious venereal disease from having consensual sex, and is vague because it "fails to define what is meant by sexual intercourse, and what is meant by a sexually transmittable disease." (ECF No. 49 at 10.)

Even if the defendant were to succeed on his challenge to Section 2307, his motion to dismiss would fail, because the indictment also alleges that he could be charged with violating the reckless endangerment statute, the constitutionality of which he does not challenge.  In any event, his challenge to Section 2307 is meritless in the context of this case.

a.  *Facial vs. As-Applied Challenges*

"A facial challenge is an attack on a statute itself as opposed to a particular application."[4] *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015).  Such challenges are "generally disfavored" because they assert the legal rights and interests of third parties.  *Dickerson v.*

---

[4]  *See generally* Alex Kreit, *Making Sense of Facial and As-Applied Challenges*, 18 Wm. & Mary Bill Rts. J. 657 (2010) (citations omitted) ("A facial attack is typically described as one where no application of the statute would be constitutional.  In contrast, courts define an as-applied challenge as one under which the plaintiff argues that a statute, even though generally constitutional, operates unconstitutionally as to him or her because of the plaintiff's particular circumstances.") (citations and internal quotation marks omitted).

*Napolitano*, 604 F.3d 732, 741-42 (2010) (listing the four rationales for limiting third-party, or *jus tertii*, standing); *see also Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties.").

Nevertheless, courts permit facial challenges in First Amendment cases in which "the plaintiff is allowed to challenge a law that may be legitimately applied to his or her own expressive conduct if the law has the potential to infringe unconstitutionally on the expressive conduct of others." *Dickerson*, 604 F.3d at 742 (citing *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992) ("It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable.")). Facial challenges to laws implicating First Amendment rights "may go forward only if the challenged regulation 'reaches a substantial amount of constitutionally protected conduct.'" *Farrell*, 449 F.3d at 496 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (citation omitted)).

Facial challenges outside the First Amendment context are different.  First, the challenged law must infringe on a constitutionally-protected right.  *See Patel*, 135 S. Ct. at 2449 ("[T]he Court has allowed [facial] challenges to proceed under a diverse array of constitutional provisions.") (citations omitted); *Dickerson*, 604 F.3d at 744 ("*Morales* does suggest that facial challenges are permissible outside of the First Amendment context, but that case only permitted such a challenge in the presence of a constitutionally-protected right.") (citing *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999) (Stevens, J., plurality opinion)); *Farrell*, 449 F.3d at 496 ("When fundamental rights are implicated," the rules against *jus tertii* standing "are different.").

Second, the complainant must demonstrate that "no set of circumstances exists under which the [law] would be valid."  *United States v. Salerno*, 481 U.S. 739, 746 (1987); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) ("To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications.").  This has been described as "the most difficult challenge to mount successfully" because the fact that the law "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."  *Salerno*, 481 U.S. at 745 (citation omitted).

As the Second Circuit has recognized, the *Salerno* standard "effectively eliminates facial challenges outside of the First Amendment context that could not also be brought as an as-applied challenge, since any law that is unconstitutional in every set of circumstances is also necessarily unconstitutional when applied to any plaintiff."  *Dickerson*, 604 F.3d at 743-44; *see also United States v. Rybicki*, 354 F.3d 124, 129-30 (2d Cir. 2003) (en banc) (collecting cases that have "held that when . . . the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' i.e., in light of the specific facts of the case at hand and not with regard to the statute's facial validity").

The defendant is claiming a violation of his right to substantive due process.[5]  As the defendant explains in his opening brief:

> As written, [Section 2307] is an improper invasion of the right to privacy because it makes it illegal to have private, consensual, sexual intercourse.  Substantive Due Process prohibits the government from limiting the right to engage in private, consensual, sexual intercourse without fear of criminal liability.

(ECF No. 42 at 4.)

---

[5]  The defendant does not specify whether he is asserting a right to substantive due process under the Fifth Amendment or the Fourteenth Amendment.  In any event, the same analysis applies to substantive due process claims under either amendment.  *Molina-Aviles v. District of Columbia*, 824 F. Supp. 2d 4, 9 n.8 (D.D.C. 2011) (citation omitted).

Accordingly, the defendant cannot succeed on a facial challenge to Section 2307 unless he can establish that there is no set of circumstances under which it would be valid.

There are factual circumstances—including the conduct ascribed to the defendant—in which the statute is neither unconstitutionally vague nor infringes on substantive due process rights. Indeed, the defendant's claim that the law sweeps too broadly and captures some constitutionally protected conduct is fatal to his argument that the statute is facially unconstitutional. Under *Salerno*, a defendant lodging a facial challenge to a law that does not implicate the First Amendment must establish "that no set of circumstances exists under which the [law] would be valid." 481 U.S. at 745. That Section 2307 "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.*

  b. *As-Applied Substantive Due Process Challenge*

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has interpreted the due process clause to include a "substantive component guarding the individual against 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective.'" *Lombardi v. Whitman*, 485 F. 3d 73, 79 (2d Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).

In assessing whether a government law impinges on a substantive due process right, "the first step is to determine whether the asserted right is 'fundamental.'" *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003). "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Id.* (quoting *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460-61 (2d Cir. 1996)) (citations and internal quotation marks omitted), *cert. denied*, 519 U.S. 813 (1996). "Where the right infringed is

fundamental, strict scrutiny is applied to the challenged governmental regulation." *Leebaert*, 332 F.3d at 140 (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)). "Where the claimed right is not fundamental, the governmental regulation need only be reasonably related to a legitimate state objective." *Immediato*, 73 F.3d at 461 (citing *Reno*, 507 U.S. at 303-06).

The defendant argues that he is asserting a fundamental liberty interest established by *Griswold v. Connecticut*, 381 U.S. 479 (1965), *Lawrence v. Texas*, 539 U.S. 558 (2003) and *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). According to the defendant, these cases "stand for the proposition that private sexual decisions made by consenting adults invariably involve a fundamental liberty interest protected by the Due Process Clause . . . one that absolutely shields private sexual conduct from the reach of government intervention." (ECF No. 42 at 5; *see also id.* at 4 ("Private sexual contact between consenting adults involves a fundamental liberty interest that triggers a non-deferential review whenever the government seeks to proscribe such conduct."); ECF No. 49 at 9 ("The Court has recognized intimacy as a fundamental right.").)

The defendant's reliance on the lofty principles enunciated in *Griswold* and its progeny is misplaced. The charges against him are not, as he claims, premised on his "private sexual decisions" or "private sexual conduct." (ECF No. 42 at 5.) Rather, the allegation is that the defendant knew that he had herpes and engaged in sexual activity without telling the victim that he was infected. And, the liberty interest enshrined in *Lawrence* was not, as the defendant claims, the right to make "private sexual decisions," but the "liberty of persons" to form personal relationships that find expression in intimate conduct. 539 U.S. at 567; *see also United States v. Stagliano*, 693 F. Supp. 2d 25, 38 (D.D.C. 2010) ("What is evident from the Supreme Court's decision [in *Lawrence*] is its intent to prevent the state from burdening certain intimate, consensual relationships by criminalizing the private sexual acts that are instrumental to those

13

relationships."); *Seegmiller v. LaVerkin City*, 528 F.3d 762, 770 (10th Cir. 2008) ("A broadly-defined 'right to private sexual activity' will clearly not suffice . . . the Court has never endorsed an all-encompassing right to sexual privacy under the rubric of substantive due process.") (citation omitted); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 745 n.32 (5th Cir. 2008) ("*Lawrence* did not categorize the right to sexual privacy as a fundamental right, and we do not purport to do so here."); *Muth v. Frank*, 412 F.3d 808, 817 (7th Cir. 2005) ("*Lawrence* also did not announce, as Muth claims it did, a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct, specifically in this case, incest."); *Williams v. Att'y Gen. of Ala.*, 378 F.3d 1232, 1236 (11th Cir. 2004) ("Although many of the Court's 'privacy' decisions have implicated sexual matters . . . the Court has never indicated that the mere fact that an activity is sexual and private entitles it to protection as a fundamental right.") (internal citation omitted).  Accordingly, the defendant has not asserted a fundamental liberty interest that warrants the highest and most stringent standard of judicial review.

Section 2307 survives rational basis review as applied to the defendant's conduct.  Public health is a legitimate state interest, *see Gary D. Peake Excavating Inc. v. Town Bd. of Town Hancock*, 93 F.3d 68, 76 (2d Cir. 1996) ("Legislation pertaining to public health and safety consistently has been recognized as an important local interest.") (citation omitted), and Section 2307 rationally serves that interest by penalizing those who, like the defendant, have unprotected sex knowing they are infected with venereal disease.  *See Grattan v. People*, 65 N.Y.2d 243, 245 (1985) ("Article 23 of the Public Health Law . . . was enacted for the protection of the public.  To promote the detection and eradication of sexually communicable diseases, the statute requires certain examinations, provides for isolation and treatment, and includes criminal penalties," including Section 2307.).  In other words, Section 2307 is rational as applied to the defendant.

14

Section 2307 might very well be unconstitutional if it were enforced against someone who informed his sexual partner of his diagnosis before sexual contact, and obtained consent. That prospect seems unlikely, as New York courts have construed Section 2307 to include a disclosure element. *See Fan v. Sabin*, Index No. 158780/2012, 2015 WL 5547775, at *6 (N.Y. Sup. Ct. Sept. 21, 2015) ("Public Health Law § 2307 also imposes a duty to disclose."); *Maharam v. Maharam*, 510 N.Y.S.2d 104, 107 (1st Dep't 1986) ("A duty to speak in the circumstances, given the relationship of trust between the parties, can also be predicated upon Section 2307 of the Public Health Law.").

In any event, the defendant is not charged with having consensual sex with an informed partner. As explained above, the defendant cannot allege an infringement of the rights of third parties. "[T]he courts of the United States are not often willing to hear claims based on third-party or *jus tertii* standing, in which litigants argue the unconstitutionality of hypothetical enforcements of the law rather than the actual enforcement that triggered the litigation . . . This means, of course, that there will be some situations in which an unconstitutionally vague regulation is allowed to stand because the enforcement of that regulation caused no direct constitutional injury to the parties before the court—an unfortunate but necessary consequence of courts' reluctance to adjudicate broad constitutional challenges." *Farrell*, 449 F.3d at 482. Thus, the defendant must show that the application of Section 2307 to *his* conduct—having unprotected sex knowing he had herpes and without informing his partner—violated *his* substantive due process rights. As explained above, he cannot do so.

c. *As-Applied Vagueness Challenge*

The Due Process Clause of the Fourteenth Amendment requires that every criminal statute "(1) give the person of ordinary intelligence a reasonable opportunity to know what is

prohibited, and (2) provide explicit standards for those who apply the statute." *Dickerson*, 604

F.3d at 741 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (alterations and

citation omitted)). "A plaintiff making an as-applied challenge must show that the statute in

question provided insufficient notice that his or her behavior at issue was prohibited." *Id.* at 745

(citation omitted). The standard, however, is an objective one: "whether the law presents an

ordinary person with sufficient notice of or the opportunity to understand what conduct is

prohibited or proscribed, not whether a particular plaintiff actually received a warning that

alerted him or her to the danger of being held to account for the behavior in question." *Id.* at

745-46 (internal citation and quotation marks omitted).

"Even if a person of ordinary intelligence has notice of what a statute prohibits, the

statute nonetheless may be unconstitutionally vague 'if it authorizes or even encourages arbitrary

and discriminatory enforcement.'" *Id.* at 747 (quoting *Hill v. Colorado*, 530 U.S. 703, 732

(2000). Nevertheless, a law need not "achieve meticulous specificity, which would come at the

cost of flexibility and reasonable breadth." *Id.* (citations and internal quotation marks omitted).

"Moreover, a statute that provides what may be unconstitutionally broad discretion if subjected

to a facial challenge may still be upheld as constitutional on an as-applied challenge if the

particular enforcement at issue is consistent with the core concerns underlying the statute such

that the enforcement did not represent an abuse of the discretion afforded under the statute." *Id.*

at 748 (citation, alterations and internal quotation marks omitted).

Section 2307 of the New York Public Health Law provides that "[a]ny person who,

knowing himself or herself to be infected with an infectious venereal disease, has sexual

intercourse with another shall be guilty of a misdemeanor." A person of ordinary intelligence

16

would understand that he could be charged under Section 2307 for engaging in sexual intercourse knowing himself to be infected with herpes.

The defendant argues that the law is vague because it does not define "sexual intercourse" or "what constitutes an STD." (ECF No. 49 at 10, 11.) According to the defendant, it is not clear to an ordinary person that "sexual intercourse" means sexual intercourse—and not kissing or anal intercourse—or that venereal disease includes herpes. (*Id.*) "Even if there is ambiguity as to the margins of what conduct is prohibited under the statute," *Dickerson*, 604 F.3d at 747, it is clear to an ordinary person that Section 2307 prohibits him from having sex knowing that he is infected with herpes.[6]

Finally, the conduct alleged in the indictment falls within the "core concern" of the statute—to protect the public from the spread of infectious diseases.

---

[6] The defendant does not argue that Section 2307 authorizes arbitrary or discriminatory enforcement, a challenge reserved for statutes that authorize law enforcement to make subjective determinations in enforcing the statute. *See, e.g.*, *Dickerson*, 604 F.3d at 747 (statute criminalizing possession of articles "in any way resembling" those worn by police officers); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 134 (D. Conn. 2011) (statute requiring a discretionary "suitability" determination before issuing a pistol permit in order to determine whether the applicant possesses the "essential character and temperament necessary to be entrusted with a weapon") (citation omitted).

## CONCLUSION

The defendant's motion to dismiss and motion to strike are denied.

**SO ORDERED.**

s/Ann M. Donnelly
_____

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
       May 22, 2020

18