UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

**UNITED STATES OF AMERICA**,

      - against -

**ROBERT SYLVESTER KELLY**,

      Defendant.

**\*SEALED ORDER\***
19-CR-286 (AMD)

---------------------------------------------------------------X

**ANN M. DONNELLY**, United States District Judge:

    Before the Court is the government's motion for an anonymous and partially sequestered jury. (ECF No. 71.) For the reasons that follow, the government's motion is granted.

## BACKGROUND

    The government requests that "the identities of all prospective jurors, including their names, addresses and places of employment, not be revealed to either party or their attorneys," and that "from the time each juror is empaneled until the conclusion of the trial, the jurors eat lunch together and be accompanied in and out of the courthouse by members of the United States Marshals Service each day." (ECF No. 71 at 2.) These measures are necessary, the government argues, because the trial is expected to garner overwhelming media attention, the defendant has both the incentive and the means to interfere with the jury though bribery or intimidation, the defendant and his associates have attempted to obstruct justice in the past, and the jury will likely perceive the defendant as dangerous based on the evidence presented at trial. (*Id.* at 9-13.)

    The defendant responds that the facts of this case do not warrant empaneling an anonymous jury, and asserts that the government has offered no evidence that the jurors are at any risk from him or his associates. (ECF No. 73 at 1-3.) Moreover, he argues that withholding

the jurors' name, addresses, and employers limits his ability to conduct a fair and meaningful *voir dire*. (*Id*. at 3-6.)[1]

## DISCUSSION

### I. The Government has Established the Need for an Anonymous Jury

A district court, in the exercise of its discretion, may order the empaneling of an anonymous jury when it concludes that there is "strong reason to believe that the jury needs protection," and if it takes "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *United States v. Stewart*, 590 F.3d 93, 124 (2d Cir. 2009) (quoting *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir. 1991), *cert. denied*, 505 U.S. 1220 (1992)); *see also United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012); *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985). In making its determination, the court considers: "(1) the dangerousness of the defendants, demonstrated by the seriousness of the crimes charged and whether defendants are charged with participating in a large-scale criminal enterprise; (2) whether the defendants or their associates have engaged in past attempts to interfere with the judicial process; (3) whether the defendants have the ability to interfere with or intimidate the jury; and (4) whether the trial is likely to attract media attention and publicity." *United States v. Ashburn*, No. 13-CR-0303, 2014 WL 5800280, at *3 (E.D.N.Y. Nov. 7, 2014) (listing cases).

The government has established that empaneling an anonymous and partially sequestered jury is warranted. First, the defendant is charged with serious crimes, both here and in Illinois. A court can empanel an anonymous jury based solely on the "demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf." *Pica*, 692

---

[1] The defendant also seeks the names of the jurors' employers as well as their neighborhoods and zip codes. (ECF No. 73 at 5-6.)

F.3d at 88 (quoting *United States v. Vario*, 943 F.2d 236, 241 (2d Cir.1991)); *see also United States v. Dervishaj*, No. 13-CR-668, 2015 WL 13842838, at *1 (E.D.N.Y. Mar. 19, 2015) ("[w]itness intimidation believed to have been perpetrated by a defendant or associates of that defendant will suffice" to empanel an anonymous jury). The indictment charges that for almost twenty-four years the defendant headed up an enterprise, the purposes of which were to promote the defendant's music, to recruit women and girls to engage in illegal sexual activity with the defendant and to produce child pornography. (ECF No. 43 ¶¶ 2, 12.) The defendant is charged in the Northern District of Illinois with participating in a long-running conspiracy to obstruct justice and receive child pornography. (*United States v. Kelly et al.*, No. 19-CR-567, ECF No. 93 at 5-17.) In particular, the defendant is alleged to have secured witnesses' silence, and in at least one instance to have suborned perjury, through bribes, blackmail, threats and intimidation. (*Id.*)

In addition to the pending charges, the government cites the defendant's alleged personal involvement in attempts to influence the jury during his 2008 trial in Chicago, which ended in an acquittal. (ECF No. 75 at 2.) According to the government, one of the defendant's associates contacted him to let him know that the associate had "access to a juror;" the defendant asked the associate to "make contact with the juror and tell the juror that the defendant was a 'good guy.'" (*Id.*) Equally significant is the evidence of obstructive conduct by others, including the defendant's associates. The government recently arrested three men in connection with attempts to intimidate, harass, and bribe government witnesses to prevent them from testifying at trial. (ECF No. 75.) One of these men, who describes himself as the defendant's "advisor, friend and consultant," is charged with harassing government witnesses and threatening to "shoot-up" a

3

Manhattan movie theatre if it screened a film about the defendant; another is accused of setting a witness's car on fire.  (*Id.* at 1-2.)[2]

Moreover, the defendant has both the incentive and the means to influence jurors.  He is charged with leading a criminal enterprise that paid out large sums over the past two decades to bribe witnesses and cover up his misconduct, and he faces a significant prison term if convicted. *See United States v. Antico*, No. 08-CR-559, 2010 WL 2545877, at *1 (E.D.N.Y. June 11, 2010), *aff'd sub nom. United States v. Pica*, 692 F.3d 79 (2d Cir. 2012).  It is also clear that he has supporters who are willing and able to commit crimes and exert influence on his behalf, as evidenced by the recent arrests of his associates.  *See Ashburn*, 2014 WL 5800280, at *11 ("a defendant with former leadership status in a criminal organization has the standing and potential ability to influence and exercise control over its members to a more significant extent") (internal quotations and citations omitted); *United States v. Herron,* 2 F. Supp. 3d 391, 397 (E.D.N.Y. 2014), *aff'd*, 762 F. App'x 25 (2d Cir. 2019) (despite the defendant's pretrial detention, his "alleged role as the leader of a criminal enterprise enables him to corrupt the judicial process through his associates, and . . . some followers may feel compelled to act on his behalf even without any direction from [the] [d]efendant").

Finally, this case has already drawn significant media attention (*see, e.g.*, ECF No. 71 at 4-6 (listing a sample of the news articles, television interviews, and twitter posts discussing the defendant's arrest)), attention that is sure to intensify once the trial gets underway.  The media attention has in turn engendered public interest in this case, which is another factor for the Court

---

[2] The fact that there is currently no evidence that the defendant was involved in these acts does not mean that the Court cannot consider them.  The Court has a duty to protect the jurors from harm, regardless of the source, when, as here, the threats and violence have a clear connection to and are directed at preventing the investigation and prosecution of one of the crimes for which the defendant is on trial.  *See United States v. Napout*, 963 F.3d 163, 189-90 (2d Cir. 2020).

4

to consider.³  *See United States v. Kadir*, 718 F.3d 115, 121 (2d Cir. 2013) ("extensive media coverage" is a "significant" factor in the decision to empanel an anonymous jury); *United States v. Wong*, 40 F.3d 1347, 1377 (2d Cir. 1994) ("The prospect of publicity militates in favor of jury anonymity to prevent exposure of the jurors to intimidation or harassment."); *Vario*, 943 F.2d at 240 ("Pre-trial publicity may militate in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public.") (internal quotations and citations omitted).⁴

In short, empaneling an anonymous jury is appropriate given the seriousness of the charges, the defendant's history of obstructing the judicial process, the potential for juror intimidation and the intensity of media attention given to this case.

Having determined that an anonymous jury is appropriate and necessary, I plan to take "reasonable precautions to minimize any prejudicial effects to the defendant and to ensure protection of his fundamental rights." *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994), *cert. denied*, 513 U.S. 977 (1994); *see also Kadir*, 718 F.3d at 121.  First, the parties have jointly prepared a comprehensive questionnaire that explores prospective jurors' backgrounds, experiences and potential biases.  In that questionnaire, the Court will explain that anonymous

---

³ The concern about fall-out from the public interest in this case is not theoretical, as evidenced by the recent attempt to pass off a false motion to dismiss and for new counsel as a filing by the defendant and his lawyers.

⁴ As the government points out, the prevalence of social media poses a special threat to the jurors' safety and impartiality, especially in light of posts seeking to "intimidate, threaten and denigrate individuals perceived to be cooperating with the government's investigation or potential witnesses at trial." (ECF No. 71 at 12 n.2.)  The fact that there may not be evidence linking the defendant to these posts does not alleviate the risk to jurors or the threat to the judicial process.  I must take seriously the possibility that social media will become a tool for the harassment and intimidation of the jurors should their identities be made public.

jurors are commonplace in high profile cases because of media interest, and that anonymity will protect the jurors' privacy and to enable them to discharge their responsibilities as jurors in an independent, impartial and fair manner. *See, e.g.*, *Kadir*, 718 F.3d at 121 (courts can minimize prejudicial effects to defendants by "giving the jurors a plausible and nonprejudicial reason for not disclosing their identities and the court's conduct of a *voir dire* designed to uncover bias") (internal quotations omitted); *United States v. Galestro*, No. 06-CR-285, 2008 WL 2783359, at *3, n.3 (E.D.N.Y. July 15, 2008) ("Jurors are generally told that such steps are not unusual and are taken to ensure their privacy and impartiality in light of the media and public attention the trial is expected to receive."). The Court will also seek the parties' input on any additional questions they want to be put to the panel at the in-person inquiry, and will give both sides an opportunity to strike jurors for cause, and to exercise peremptory challenges.[5] These measures will ensure the jurors' safety without burdening the defendant unduly. *See United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995) ("[T]he use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a careful *voir dire* designed to uncover any bias as to the issues or the defendants and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities.").

---

[5] I am unpersuaded by the defense claim that it needs not only the prospective jurors' names but the names of their employers, so that counsel can run what amounts to background checks on the prospective jurors in order to "test the veracity" of their answers. The defense cites no authority, and the Court is not aware of any, for the proposition that background investigations are a necessary component of jury selection in a criminal case. In the great majority of criminal cases in this district, the parties do not have the opportunity to do such investigations, because they get the prospective jurors' names immediately before jury selection, a process that is typically completed in less than a day. Moreover, as the Second Circuit observed in *United States v. Barnes*, prospective jurors might be "less than willing to serve if they know that inquiry into their essentially private concerns will be pressed." 604 F.2d 121, 140 (2d Cir. 1979).

**II.     The Government Has Established a Need for a Partially Sequestered Jury**

The government also requests that the jury be partially sequestered, a request to which the defendant does not object.  In particular, the government proposes that the Marshals escort the jury in and out of the courthouse each day and that they be sequestered during any breaks in the trial, including lunch.  (ECF No. 71 at 2, 15-16.)  I find that these measures are warranted based on both privacy and safety grounds.

A court's decision to sequester a jury often accompanies the decision to make a jury anonymous.  *United States v. Rivera*, No. 13-CR-149, 2015 WL 630242, at *8 (E.D.N.Y. Feb. 13, 2015) ("the same reasons that warrant the use of an anonymous jury also warrant partial sequestration of the jury") (citation omitted).  Partial sequestration will keep members of the media and the general public from following jurors as they enter and leave the courthouse, protect the jurors from inappropriate and potentially harassing or intimidating contact, and prevent jurors from obtaining information that is not in the record.  *See United States v. Gotti*, No. 02-CR-743, 2004 WL 2274712, at *3 (S.D.N.Y. Oct. 7, 2004) (granting partial sequestration and explaining that "[t]here is strong reason to believe that the likely media attention to the trial will potentially expose the jurors to harassment and intimidation"); *United States v. Wiley*, 846 F.2d 150, 157 (2d Cir. 1988) ("[E]xtra-record information that comes to the attention of a juror is presumptively prejudicial.") (internal quotations omitted).  Therefore, I adopt the government's proposal to sequester the jury during lunch and other breaks and to have the U.S. Marshals escort the jurors into and out of the courthouse each day.

## CONCLUSION

The government's motion to empanel an anonymous and partially sequestered jury is granted.

**SO ORDERED.**

                                                                                                             s/Ann M. Donnelly
                                                                                                             ANN M. DONNELLY
                                                                                                             United States District Judge

Dated: Brooklyn, New York
        October 8, 2020