# GREENBERG TRIAL LAWYERS
ATTORNEYS AT LAW　　　　　　　　　　　　　　　　　　　　　53 WEST JACKSON BOULEVARD, SUITE 1260
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　CHICAGO, ILLINOIS  60604
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(312) 879-9500
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Fax: (312) 650-8244
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Steve@GreenbergCD.com

January 26, 2021

Honorable Ann M. Donnelly
United States District Court for the
　　Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *United States v. Robert Kelly*, **Case No. 19-286 (S-1)(AMD)**
Motion to Reconsider a Portion of This Court's Order for an Anonymous and Partially Sequestered Jury (Dkt. 79)

Dear Judge Donnelly:

On October 8, 2020, this Court granted the Government's motion to impanel an anonymous and partially sequestered jury ("Motion"). Limited portions of that Motion were agreed to by Mr. Kelly and his counsel. But the Court went beyond what was needed and Mr. Kelly now has serious concerns regarding the scope of *voir dire*.

Relevant here, pursuant to its Order, the Court intends to keep the jurors' identities completely anonymous, concealing them from not only the Defendant but also from his counsel. Thus, it appears that social media information, the names of

1

the jurors' employers, and even the jurors' neighborhoods will remain secret. Mr. Kelly asks the Court to revisit those portions of its Ruling.[1]

To be clear, what Mr. Kelly and his counsel are requesting is that the Court provide *counsel* with the jurors' social media, employment, and neighborhood information. This information is essential to any effective and meaningful *voir dire*.

It is hard to imagine that there is a case pending that has had more pretrial publicity. These allegations were the subject of two multipart so-called documentaries, watched by tens of millions of people. The allegations continue to be the subject of endless online commentaries. Indeed, some of the alleged victims, and some of the Government's other witnesses, have extraordinarily active social media profiles. There might be more material in the public domain via social media than what will be contained within the Government's still forthcoming production.

Both the defense and prosecution should be allowed to explore whether perspective jurors have commented about the allegations or have social media connections with alleged victims or witnesses. The limitations here place far too much weight on the juror's self-reflection, and raise serious concerns:

> And that is because prospective jurors 'may have an interest in concealing [their] own bias' or 'may be unaware of it." Smith v. Phillips, 455 U.S. 209, 221-22, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring); see also Sampson v. United States, 724 F.3d 150, 164 (1st Cir. 2013) ("Sampson II") (emphasizing that 'a person

---

[1] Mr. Kelly and his counsel still maintain that there is absolutely no reason for the jury to be sequestered at all, or for the jury to remain anonymous – except with respect to the media during the trial. Accordingly, this Motion does not waive or change Defendant's prior position in opposition to the Government's Motion, but simply seeks a modification to the Ruling this Court already entered in which it rejected Defendant's position.

> who harbors a bias may not appreciate it and, in any event, may be reluctant to admit her lack of objectivity'). So asking them only 'whether they had read anything that might influence their opinion' does not suffice, for that question 'in no way elicit[s] what, if anything," they have "learned, but let[s] [them] decide for themselves the ultimate question whether what they [have] learned had prejudiced them.' Rhodes, 556 F.2d at 601.

*United States v. Tsarnaev*, 968 F.3d 24, 58 (1st Cir. 2020).

A defendant has Fifth and Sixth Amendment rights to a fair and impartial jury. Admittedly, that does not mean that the defendant has the right to know each and every detail of the jurors' lives. The District Court certainly has the authority to impanel an anonymous jury. *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013) (citing *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994). Here, although the defense disagrees with this Court's decision to impanel one, the defense respects the Court's Order. Nonetheless, the Court has gone too far by concealing certain information, not just from the public and the defendant, but also from counsel.

Considering a recent challenge to an anonymous jury, the Second Circuit, after discussing the typical protections taken to ensure fundamental rights are safeguarded, noted "most importantly, the district court protected the appellant's fundamental rights by ensuring that the jury was not anonymous with respect to any of the parties. While the jurors' identities were kept from the public, the appellants and their counsel (and the government, too) were provided with the names of the prospective jurors during jury selection and were free to investigate any of them for potential bias." *United States v. Napout*, 963 F.3d 163, 189 (2d Cir. 2020) (cited by this Court for a different proposition in its Order).

In footnote 2, this Court relied upon *Napout* for a different proposition; that the jurors' identities should remain anonymous because of an alleged potential threats, citing the actions of a third-party unrelated to Mr. Kelly. The Court's reliance on wholesale anonymity is misplaced. The *Napout* court relied upon cases where threats to cooperating witnesses had been made by apparently unindicted co-conspirators. In the case at bar, there is no evidence that Mr. Kelly had any involvement in what others had done, i.e., if it happened it was not a co-conspirator. at *9 (W.D.N.Y. July 16, 2019).

This Court also wrote in a footnote "I am unpersuaded by the defense claim that it needs, not only the prospective jurors' names, but the names of their employers, so that counsel can run what amounts to background checks on the prospective jurors." Perhaps the Court is correct, both names and employers are not necessary to enable a background check, which can be done with just the name. The real issue is, however, whether what this Court calls a "background check" needs to be run on the jurors. The defense would like to be able to conduct an internet search, running the jurors' names through Google, Twitter, and Facebook, to learn what they can. That cannot be done if the jurors' names are concealed. To deny Mr. Kelly and his counsel that opportunity simply ignores the present reality of the social media world in which we all live.

Not long ago, there was great upheaval in connection with the Roger Stone case because of information learned during post-trial internet searches. *United States v. Stone*, 2020 WL 1892360, at *34-35. Likewise, although she was seated, a

4

juror in the Harvey Weinstein case answered a question truthfully on her questionnaire, i.e., that she was a novelist, but it was only through doing online research that the defense learned the subject of her book was predatory men. https://pagesix.com/2020/01/17/novelist-who-wrote-book-about-predatory-men-on-weinstein-jury/. Both instances demonstrate the need for adequate information.

Furthermore, it is malpractice for an attorney *not* to engage in social media research of the type requested in the present case. "But while the dangers of inadvertent contact with jurors, violating juror privacy, and risking revelations of an improper basis for peremptory strikes are genuine, these concerns are outweighed by the dangers of not conducting online research." *Voir Dire Becomes Voir Google: Ethical Concerns of 21st Century Jury Selection* (2016), at https://www.americanbar.org/groups/tort_trial_insurance_practice/publications/the_brief/2016_17/winter/voir_dire_becomes_voir_google_ethical_concerns_of_21st_century_jury_selection/.

To these points, even the slow to change ABA has issued Formal Opinion 14-466, "Lawyer Reviewing Jurors' Internet Presence," opining that it is not unethical for a lawyer to review the internet information for a juror so long as the lawyer refrains from communicating, either directly or indirectly, with the juror. The New York State Bar likewise has an Ethical Guideline (Guideline 6), which provides for social media research, and has issued two Ethics Opinions approving of the process. The reason for that is that much can now be learned about someone through that

kind of research, and it is <u>expected</u> that lawyers will do that research, ethically and properly.

In 2012, the New York State Bar Journal published an extensive article regarding social media searches, including discussing its benefits. [https://nys-fjc.ca2.uscourts.gov/programs/10-23-19%20-%20NYSBA%20Journal%20-%20Researching%20Jurors%20on%20the%20Internet.pdf](https://nys-fjc.ca2.uscourts.gov/programs/10-23-19%20-%20NYSBA%20Journal%20-%20Researching%20Jurors%20on%20the%20Internet.pdf). See also, [https://www.google.com/search?q=THE+REAL+SOCIAL+NETWORK%3A+HOW+JURORS%27+USE+OF+SOCIAL+MEDIA+AND+SMART+PHONES+AFFECTS+A+DEFENDANT%27S+SIXTH+AMENDMENT+RIGHTS&oq=THE+REAL+SOCIAL+NETWORK%3A+HOW+JURORS%27+USE+OF+SOCIAL+MEDIA+AND+SMART+PHONES+AFFECTS+A+DEFENDANT%27S+SIXTH+AMENDMENT+RIGHTS&aqs=chrome..69i57.890j0j4&sourceid=chrome&ie=UTF-8](https://www.google.com/search?q=THE+REAL+SOCIAL+NETWORK%3A+HOW+JURORS%27+USE+OF+SOCIAL+MEDIA+AND+SMART+PHONES+AFFECTS+A+DEFENDANT%27S+SIXTH+AMENDMENT+RIGHTS&oq=THE+REAL+SOCIAL+NETWORK%3A+HOW+JURORS%27+USE+OF+SOCIAL+MEDIA+AND+SMART+PHONES+AFFECTS+A+DEFENDANT%27S+SIXTH+AMENDMENT+RIGHTS&aqs=chrome..69i57.890j0j4&sourceid=chrome&ie=UTF-8);.

Here, counsel is not asking that this information be made publicly available, nor that the information be shared with Mr. Kelly. Instead, counsel requests that all of this information be made available for use by the attorneys only - both the Government and the defense. Unless the Court can point to something specific, there should be no concern with the *attorneys* keeping the information confidential. Indeed, to the extent anyone wishes to raise an issue with any social media posting, if the public disclosure is of concern, the line of questioning can be flagged for the Court in advance and done securely. The jurors themselves could also be made aware of the potential for these searches in advance.

In a similar vein, the identity of an employer, and not just the chosen line of work is important for *voir dire* purposes. Two people may engage in the same profession, but differ greatly in how they view their work and how their profession shapes their views. One only need to look at the differences in this case: we are all lawyers, but certainly the prosecution has different viewpoints than the defense, not only about this case but likely across the board in many matters of life. The same would be true of a plaintiff's personal injury lawyer versus an insurance defense lawyer. A police officer working in the heart of the Bronx may have a different perspective than an officer working in the Hamptons. Someone working for FoxNews likely possesses different views than someone employed by CNN. The examples that the defense could provide are too numerous to list. Each have the same profession, but likely vastly different views.

The examples already provided illustrate the larger point, which is that people's viewpoints, how they view the events of life, and how they will view the evidence in this case, are shaped by their everyday experiences. Those experiences include where they work, not just what they do. It is no more and no less important than where they obtain their news, what their hobbies are, any other of the areas that this Court is permitting inquiry into. It is just a larger piece of the pie.

Similarly, although the Court may have reservations about providing specific addresses, it should - at a minimum - provide zip code and neighborhood identifying information. Such information does not prejudice or put at risk anyone. More importantly, this information is extremely relevant to the parties' assessment

Mr. Kelly understands the Court's concerns about keeping the identities of the jurors concealed from the public. But to not prohibit *counsel* from knowing other basic, necessary, and crucial information underlying their voir dire assessments is not only unnecessary and without basis, but denies Mr. Kelly the opportunity to conduct full and fair *voir dire* and violates his Constitutional rights.

Sincerely,

*Steve Greenberg*

Steven A. Greenberg