

120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602
312.380.6559 (Direct)
312.363.7895 (Cell)

February 2, 2021


**BY ELECTRONIC FILING**

Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


     Re:    *United States v. Robert Kelly*, Case No. 19-286 (S-1) (AMD)


Dear Judge Donnelly:

We respectfully submit this letter on Mr. Kelly's behalf in partial Opposition to the
Government's Motion for an Order "requiring the defendant to preserve, to not disseminate and,
at the conclusion of trial in the above-referenced matter, to return all material produced pursuant
to 18 U.S.C. § 3500," and for a Protective Order. S*ee* Dkt. at No. 88. Here, as set forth below,
after refusing to produce documents, including witness statements that it has possessed for
months, and even years, the Government now attempts to double down by seeking to block Mr.
Kelly from having complete and meaningful access to those critical trial preparation materials -
which the Government is now begrudgingly producing on February 5.

To be clear, Mr. Kelly and his counsel have no objection to preserving, not disseminating, and
returning all 3500 material.[1] However, by way of its Motion the Government also attempts to
over-reach, and thus simultaneously seeks to bar Mr. Kelly himself from having paper copies of
these discovery materials. As set forth below, the Government's continued attempts to thwart
and micro-manage Mr. Kelly and his counsel's ability to prepare for trial should be rejected
outright.

As an initial matter and by way of background, Mr. Kelly's counsel attempted to resolve these
narrow remaining issues by way of a meet and confer telephone conference with counsel for the

---

[1] Consistent with prior Orders of this Court, and understandings between counsel, any Order entered by
this Court with respect to these issues should also allow for the sharing and dissemination of all 3500
materials to all of Mr. Kelly's counsel in any of his pending cases.

Government this morning (February 2). That effort failed, and the Government immediately filed its Motion. Notably, during the course of that meet and confer, the Government acknowledged: 1) that it has no basis for contending that Mr. Kelly has engaged in any recent conduct that could in any way be considered even an attempt at a witness intimidation or tampering; 2) that the information contained within the Government's expected February 5 production of 3500 material is already widely known on the internet and throughout social media. Indeed, with regard to that latter point, the Government indicated during the parties' meet and confer that, if someone were to somehow obtain these witness statements with the names therein redacted, that it would be easy to match up that information with what is already publicly available. The Government's admission only underscores the point that there is no legitimate basis to attempt to "safeguard" - including at the expense of Mr. Kelly's undeniable right to meaningfully participate in his own trial preparation process - information and identities that are already part of the public domain and widely discussed.

More importantly, the Government's Motion wholly ignores the circumstances of Mr. Kelly's confinement, as well as Mr. Kelly's own limitations. As the Government well knows, Mr. Kelly has been in near lockdown conditions at virtually all times during the COVID-19 pandemic. Those conditions continue today. Therefore, the proposal put forth by the Government with regard to its February 5 production is entirely unrealistic. Mr. Kelly, like all other detainees, does not have unfettered access to view discovery materials on a computer. At best, Mr. Kelly might be allowed a couple hours per week to engage in that process – while in competition with several hundred other detainees at the MCC Chicago who likewise need access to the limited terminals in which to view discovery materials. Therefore, it is even more important that Mr. Kelly be allowed to possess paper copies of these discovery materials to allow for meaningful review and participation in his own defense. In short, the bulk of his review time will be in his cell. Furthermore, in light of Mr. Kelly's shortcomings in reading, it will clearly take him longer to review these materials. As disclosed today by the Government during the above-referenced meet and confer, these discovery materials will be voluminous.

Moreover, the Government's insinuation in its Motion that certain of the materials in the February 5 production will somehow allow Mr. Kelly to engage in interference with witnesses is entirely baseless and speculative, and is directly contrary to the admissions of Government counsel during the parties' meet and confer – i.e., that Mr. Kelly has done nothing to suggest that he is a threat to tamper with anyone. Practically speaking, the notion that Mr. Kelly would attempt to engage in, much less get away with, any form of witness contact, interference, or intimidation on the eve of trial, is frankly absurd. As the Government itself has acknowledged to defense counsel, the entire internet and social media world is watching – in addition to the Government.

These alleged concerns of the Government make even less sense in light of the fact that it has agreed that Mr. Kelly can receive a disc containing the bulk of its February 5 production. In other words, one way or another, Mr. Kelly will know the identities of the witnesses, either from that disc or from his counsel. Mr. Kelly poses no greater alleged "threat" if he has paper copies of discovery materials in his cell. And if the Government is truly worried that someone will find their way into Mr. Kelly's cell and abscond with these materials, Mr. Kelly would be more than happy to allow the MCC Chicago to take them from him at the end of each night, and then return them to him in the morning.

The denial of paper copies, or any other discovery materials, to Mr. Kelly in his cell is entirely inconsistent with the Second Circuit's admonition that, "[W]e assume that adequate opportunity for consultation with counsel will be assured as a matter of trial administration by the judges who will preside over the two trials." *See United States v. Kelly*, No. 20-1729, 2020 WL 7019289 at *2 (2d Cir. 2020). Mr. Kelly cannot adequately consult with his counsel under the circumstances presented, or under the circumstances that the Government is attempting to dictate by way of its Motion. He should be allowed to thoroughly review the 3500 and other discovery materials, including in his cell, and not under the terms and conditions of his accuser. Only then will Mr. Kelly be able to, in turn, meaningfully engage and consult with his counsel regarding these critical materials on the eve of trial.

Finally, in *Garcia*, 406 F.Supp.2d 403 (S.D.N.Y. 2005), cited by the Government in its Motion, the paper copies of the 3500 materials at issue for review by the defendant in his cell were *not* being produced on the very eve of trial; they were *not* being produced to a defendant with reading limitations; they were *not* being produced during a pandemic; and they were *not* being produced to a defendant who, because of a pandemic and lockdown conditions, otherwise had limited access to those materials. Accordingly, *Garcia* does not advance the Government's position, nor do any of the other cases cited by the Government for those very same reasons.

Even if this Court were to follow *Garcia*, however, the Government's request is still too broad. The proposed Order would preclude Mr. Kelly from taking *any* 3500 material into a place of detention except under the direct supervision of his attorneys. As found by the *Garcia* court, that is unnecessary:

> In one respect, however, the Government's request is over broad. The proposed order precludes the defendants from taking *any* 3500 material into the prisons except under the direct supervision of their attorneys. As noted, the rationale for this restraint is to protect against the intimidation of lay witnesses. Not all such material presents such danger. There is, for example, *no need to grant such protection to statements that reveal only the testimony and activities of law enforcement officers. Permitting the defendants to review such material poses no danger, and promotes the efficient preparation defendants seek.*

      employed by the Government. Of course, such material includes statements of police
      witnesses that incorporate or refer to the identity or testimony of lay witnesses.

*Id.* at 307.

For all of those reasons, this Court should grant, in part, the Government's Motion, but deny it to the extent that it seeks to bar Mr. Kelly from receiving and possessing paper copies of the 3500 materials, or any other discovery materials.

Sincerely,

Michael I. Leonard

MIL:bp
cc: All Counsel of Record (via ECF filing)