```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA              19 CR 286(AMD)

versus

ROBERT SYLVESTER KELLY,               U. S. Courthouse
also known as R. Kelly,               Brooklyn, New York
           DEFENDANT.                 February 9, 2021
---------------------------------X    11:30 AM

  TRANSCRIPT OF TELEPHONIC CRIMINAL CAUSE FOR STATUS CONFERENCE
               BEFORE THE HONORABLE ANN DONNELLY
                 UNITED STATES DISTRICT JUDGE

                          APPEARANCES

Representing the Government:

SETH DUCHARME
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK
271 CADMAN PLAZA EAST
BROOKLYN, NEW YORK 11201
BY:  ELIZABETH GEDDES, ESQ.
     NADIA SHIHATA, ESQ.
     MARIA CRUZ MELENDEZ, ESQ.

Representing the Defendant:

GREENBERG TRIAL LAWYERS,
53 West Jackson, Suite 1260
Chicago, Illinois 60604
ATTN:  STEVEN GREENBERG, ESQ.

LEONARD MEYER, LLP
120 North LaSalle, 20th Floor
Chicago, Illinois 60602
BY:  MICHAEL LEONARD, ESQ.


Reported by:
LISA SCHMID, CCR, RDR
OFFICIAL COURT REPORTER
225 Cadman Plaza East, Room N377
Brooklyn, New York 11201
Proceedings recorded by mechanical stenography. Transcript
produced by Computer-Aided Transcription.
```

```
 1              THE CLERK:  This is Criminal Cause for a Telephone
 2   Status Conference, Docket Number 19 CR 286, USA versus Robert
 3   Kelly.
 4              Before asking the parties to state their appearance,
 5   I would like to note the following: persons granted remote
 6   access to proceedings are reminded of the general prohibition
 7   against photographing, recording, and rebroadcasting of court
 8   proceedings.  Violation of these prohibitions may result in
 9   sanctions, including removal of court-issued media
10   credentials, restricted entry to future hearings, denial of
11   entry to future hearings or any other sanction deemed
12   necessary by the court.
13              Would the parties please state their appearance,
14   Government first?
15              MS. GEDDES:  Elizabeth Geddes, Nadia Shihata, and
16   Maria Cruz Melendez for the Government.  Good morning, Your
17   Honor.
18              THE COURT:  Good morning.
19              MR. GREENBERG:  Good morning, Your Honor.  Steve
20   Greenberg on behalf of Mr. Kelly.
21              THE COURT:  Good morning.
22              MR. LEONARD:  Good morning, Your Honor.  Mike
23   Leonard on behalf of Mr. Kelly.
24              THE COURT:  Good morning.
25              And is Mr. Kelly on also?
```

1       THE DEFENDANT:  Yes, ma'am.

2       THE COURT:  Good morning, Mr. Kelly.

3       THE DEFENDANT:  Good morning.

4       THE COURT:  All right.  We have a couple things to
5  accomplish today.

6       The first issue is the question of the trial date,
7  and then we can talk also about this Motion to Compel
8  Discovery, but I think it sounds like you all are on the road
9  to resolving that on your own.

10      But let me first talk about the trial date.  We're
11 scheduled for an April trial date, but I suspect it's not
12 going to come as a surprise to anyone that that is not a date
13 that is going to work, given the current conditions in New
14 York.

15      There are -- there's currently a travel advisory --
16 I think that there was the last time we spoke -- that requires
17 quarantining and testing.  So this is a concern, obviously, as
18 we have discussed before.  We have to ensure that we can get a
19 jury, and in New York, most of our jurors or a good portion of
20 them take public transportation to the court.

21      I'm also concerned about, you know, moving Mr. Kelly
22 to MDC.  There's currently a COVID outbreak at that facility,
23 and that would require some quarantining.

24      And just in terms of a vaccine, although there
25 are, you know, there is now a vaccine -- which there wasn't

```
 1   the last time we talked -- it's not at all clear where federal
 2   court personnel fit into the prioritization.  As far as I'm
 3   aware, there is no provision for court staff, clerks and
 4   court -- other court personnel, to get the vaccine.  We're
 5   certainly not a priority as far as I'm aware.
 6            I'm also aware that you're set to begin a trial in
 7   Chicago in September.  And so, but -- I am also assuming that
 8   you're using a jury questionnaire in that case.
 9            So these are all concerns that make that April trial
10   date just not realistic as all.
11            Now, if we were to schedule a trial in the summer to
12   accommodate your Chicago date, it would have to end, I think,
13   by August 27th.  And so -- but we could set a trial date for
14   July, in the hope that our situation has improved by then.
15            So let me hear first from Mr. Kelly's counsel to see
16   what your thoughts are on that.
17            MR. GREENBERG:  Sure.  Your Honor, this is Steve
18   Greenberg.  We have been speaking with the Government quite
19   extensively about this.  And I think we all anticipated that
20   an April date -- for all the reasons you've stated plus more,
21   just the logistics of having people come in two weeks before
22   they have to testify -- possibly wasn't going to work.  We had
23   discussed an August 6th trial date, and that worked, I think,
24   for everyone's schedule, if that works for the Court.
25            THE COURT:  Yes.  That does work.
```

```
 1              You know, I have not even been able to touch base
 2   with Judge Leinenweber, but I know you had a conversation -- I
 3   know you had a conference with him.  And I think -- and I
 4   think as I said before, in order to accommodate the jury
 5   process in that case, our trial would have to finish here by
 6   August 27th.  And I know -- I'm assuming you would like
 7   some -- maybe some downtime between the trial, Mr. Greenberg,
 8   but maybe not.
 9              MR. GREENBERG:  No, I don't, Judge.
10              Your Honor, I don't know -- I think that's a very
11   tentative date.  There's some severance issues, and I also --
12   just in Chicago, our courts aren't slated -- our order that
13   was already in place much longer than the New York order.  Our
14   vaccine rollout has been a disappointment.  They have the same
15   problem with -- the federal court personnel are not
16   prioritized, although apparently some state court people are.
17   And I think that is a highly tentative date, in any event.
18              THE COURT:  All right.  Well, then why don't we --
19   and I'm assuming this date is good for the Government, too, is
20   that right, Ms. Geddes?
21              MS. GEDDES:  That is correct.
22              I believe, though, counsel misspoke.  We were
23   actually talking about Monday, August 9th.  The August 6th is
24   a Friday.
25              MR. GREENBERG:  Oh, I'm sorry.  Was it the 9th?
```

```
 1                THE COURT:  Okay.  That's all right.
 2                So that is the date that we will put in the
 3   calendar.  And you know, hopefully by that point, we'll
 4   have -- they'll be an improvement in the pandemic situation.
 5                Just so I don't forget to do that before, that
 6   period is excludable, obviously, given the pandemic situation,
 7   given the concerns with out-of-state witnesses getting to New
 8   York, as well as ensuring that Mr. Kelly can get to New York
 9   and be able to confer with his counsel.  So that time is
10   excludable.
11                The next question I want to address is the extent to
12   which you have been able to work out a discovery dispute.  I
13   know that there was going to be some production on
14   February 5th, and I'll hear from the Government about that
15   process.
16                MS. GEDDES:  Yes, Your Honor.  The Government did
17   provide a production of 3500 material for approximately 50
18   witnesses.  On Friday, defense counsel picked it up.  So I
19   don't want to speak for them, but I believe that issue has
20   been resolved or is now mooted.
21                THE COURT:  Okay.
22                Mr. Greenberg?
23                MR. GREENBERG:  Mr. Leonard, Judge, is handling this
24   issue.
25                THE COURT:  Sorry.
```

```
 1              MR. GREENBERG:  Thank you.
 2              MR. LEONARD:  Mr. Greenberg gives me the hard stuff.
 3              No, Judge.  We're 95 percent resolved.  There is one
 4   remaining issue in terms of the parties' interpretation of the
 5   protective order and how it applies to the 3500 materials.
 6              Defense counsel's understanding, our understanding,
 7   is that of course, when we give them to our follow attorneys,
 8   paralegals, et cetera, we know they can't disseminate them to
 9   anybody else, nor do we have any intention to do that.  But
10   the Government's counsel takes the position that if an
11   attorney's working with us on the case, they have to have an
12   appearance of record on file to see the 3500 material.
13              We don't view the order as requiring that, nor do we
14   think that, from a common sense standpoint, it makes sense to
15   say that my associate couldn't see the materials or
16   Mr. Greenberg's or any other attorney who is working on the
17   case whether they have appeared or not, it shouldn't, in our
18   view, be the standard.
19              But I've talked to Ms. Geddes about that yesterday
20   and I don't want to speak for her, but I think their position
21   is that that's what it requires.
22              THE COURT:  Let me just ask you, how many people are
23   we talking about, potentially?  How many other lawyers?
24              MR. LEONARD:  I think would be just be three, Judge:
25   The associate in my office, the associate in Mr. Greenberg's
```

```
 1   office, and then counsel who is not of record, who works
 2   essentially full time on the case from --
 3              THE COURT:  Okay.
 4              MR. LEONARD:  -- who is a Michigan lawyer, who has
 5   appearances in some of the other cases.
 6              THE COURT:  Okay.  I mean, I'm assuming -- I'll hear
 7   from you, Ms. Geddes, but I'm assuming you just are interested
 8   in knowing what the universe of people is who are going to
 9   have access to this material, is that correct?
10              MS. GEDDES:  Well, Your Honor, the Government has no
11   objection to the associates in counsel of record's office
12   having access to that, because the firm itself has entered a
13   Notice of Appearance.  So there's certainly no objection to
14   counsel providing the 3500 material to their associates.
15              The issue is, there is another lawyer who is working
16   on -- who I understand is working separately, representing
17   Mr. Kelly in the state, but is not representing him federally.
18   She has not filed a Notice of Appearance.  She is not subject
19   to the Court's orders, and would not be subject to sanctions
20   by the Court were she to violate them.  And so we have no
21   objection to her receiving the material if she, in fact, files
22   a Notice of Appearance in this matter.
23              But given that she hasn't so far and she remains
24   only counsel of record in the state proceeding, we do not
25   think there's any reason to provide this material, which was
```

1   designed to allow counsel to prepare a defense in this case
2   and not in the state case.
3           THE COURT:  Is there any -- I mean -- I mean, is
4   there anything wrong with just asking her to put a Notice of
5   Appearance in, Mr. Leonard?  Doesn't seem like it's heavy
6   lift.
7           MR. LEONARD:  I don't think it's a heavy left.  I
8   mean, she would certainly be willing to sign whatever the
9   Protective Order demands, that she wouldn't disseminate the
10  materials, just like our associates would have to do, Judge.
11  I mean, she's an attorney who works, you know, for a good
12  portion of this case with us.  She just doesn't happen to be
13  an attorney of record.
14          THE COURT:  Okay.  Well, I think -- see if you can
15  figure out a way to work it out.  Maybe I'm missing something
16  about the significance of putting an appearance on the record,
17  but that seems like a logical solution to me, since she's not
18  affiliated with your firm.  If you can get her to file a
19  Notice of Appearance, I think that would solve everything, but
20  if there is another way around it, you know, you all can work
21  that out.  You can do that, too.
22          I'm also told that there's another lawyer who wants
23  to put an appearance on the record, Mr. Farinella.
24          (No response.)
25          THE COURT:  Well, he might have muted himself.

1  Okay.
2              MR. GREENBERG:  Judge, this is Greenberg.
3              THE COURT:  Okay.
4              MR. GREENBERG:  This is Greenberg.
5              There is one other issue with the Protective Order,
6  which I don't think the Government has any objection to, and I
7  missed when we did it.
8              The first paragraph says that we'll return all of
9  the 3500 material within ten days of the conclusion of the
10 trial.
11             THE COURT:  Uh-hum (affirmative response).
12             MR. GREENBERG:  They don't have any objection to
13 that being modified -- and we can send language to the Court
14 that we've agreed on to say that we can retain it until any
15 appeals are done, if there are any appeals, or retain it in
16 our files as with the other materials.  Under our rules here,
17 we're supposed to keep a copy of our file, under our own rules
18 in Illinois.
19             THE COURT:  Well, Ms. Geddes, do you have a response
20 to that?
21             MS. GEDDES:  Yes.  And I'm happy to try to work this
22 out with defense counsel.
23             We had previously advised that we don't have any
24 objection to their retaining the 3500 material until the
25 conclusion of any direct appeal in this case.  We hadn't

1    discussed their intention or any requirement that they
2    maintain it in their files.  But let me talk with
3    Mr. Greenberg offline, if that's okay with the Court and
4    counsel --
5              THE COURT:  Sure.
6              MS. GEDDES:  -- and we will see if we can work that
7    out.
8              THE COURT:  Okay.  The one other thing that I don't
9    think I have done in this case yet is in connection with the
10   Amendment to Rule 5 of the Rules of Criminal Procedure.  It
11   was amended late in 2020.  And so, if I did it already, well,
12   I'm repeating it now.
13             But this is in connection with the prosecution's
14   obligations pursuant to Brady against Maryland.  And that
15   obligation requires the prosecution to disclose to the defense
16   all information, whether it's admissible or not, that is
17   favorable to the defendant, material either to guilt or to
18   punishment and known to the prosecution.
19             Possible consequences for noncompliance may include
20   dismissal of individual charges or the entire case, exclusion
21   of evidence, and professional discipline or court sanctions on
22   the lawyers responsible.
23             I'll also enter a written order that describes this
24   obligation more fully, as well as the possible consequences of
25   failing to meet the obligation, and that the prosecution will

```
 1   review it and comply with the order.
 2              Ms. Geddes, does the prosecution confirm that it
 3   understands its obligations and will fulfill them?
 4              MS. GEDDES:  It does, Your Honor.
 5              THE COURT:  I should also say parenthetically that
 6   the obligation applies and always has applied regardless of
 7   whether the judge reads this order, but as I say, this is a
 8   new amendment to the rule, so I'm complying with it.
 9              All right.  Is there anything else that anybody
10   wants to put on the record?
11              MS. GEDDES:  Yes, Your Honor.
12              MR. GREENBERG:  Go ahead.
13              THE COURT:  Okay.
14              MS. GEDDES:  This is Liz Geddes for the Government.
15   I just wanted to address a couple of additional scheduling
16   matters.
17              I believe that Your Honor has scheduled the jury
18   selection to begin on -- or our agreement among counsel is
19   that is jury selection would begin on August 9th, and that the
20   distribution of jury questionnaires will occur at a date
21   prior.  We previously had discussed distributing the
22   questionnaires three weeks in advance of jury selection, which
23   would allow for --
24              THE COURT:  July 12th?  July 12th or -- hold on one
25   second.  Probably a little later.
```

```
 1                    That's okay.  Go ahead.
 2                    MS. GEDDES:  Yes, July 19th, it would be.
 3                    And that would allow for the distribution of 30
 4     questionnaires a day, assuming that that's how the Court would
 5     proceed in light of the pandemic, and also allow for review.
 6                    THE COURT:  Okay.
 7                    MS. GEDDES:  And then two other quick scheduling
 8     matters.  Would Your Honor like the defendant and counsel
 9     present for the distribution of jury questionnaires?
10                    THE COURT:  Well, I think that's the way we have
11     envisioned it.  I would have to say, it is -- and I am sure
12     they would want to be there.
13                    Is that correct, Mr. Greenberg?
14                    MR. GREENBERG:  Your Honor -- Your Honor, this is
15     Greenberg.
16                    I guess it depends on how you're going to do it.
17     When I have been involved in federal cases with jury
18     questionnaires, they have in the past just handed them out to
19     the people in the jury room, had them fill them out, and then
20     distribute them to us, and we have not been present.
21                    But if Your Honor wants us to be present, we will be
22     present.  We have no preference.
23                    THE COURT:  Well, we can work out the details of
24     this later, but I believe -- and I haven't actually reviewed
25     this recently -- but I believe that the presiding judge
```

1  usually speaks to the jurors before, just about what their
2  obligations are, and introduces the parties.  But that part,
3  the introduction of the parties, does not have to occur until
4  we have -- we've winnowed down the, you know, we have gone
5  through the process of elimination of jurors that can't sit.
6        So you know what we can do though, just so I'm not
7  speaking off the cuff here?  We will let you know the
8  procedure that we intend to follow.  And we have got a little
9  time before that happens.  Okay?
10       MS. GEDDES:  Thank you, Judge.
11       And then one last thing from the Government -- and
12 this is something that I didn't have a chance to address with
13 defense counsel -- but in light of the difficulties in
14 arranging travel and the ongoing pandemic, we would request
15 that the Court schedule a date certain or a date more certain
16 for openings, and propose that we do that on August 11th,
17 which would allow two days for jury selection after the
18 perspective jurors have been winnowed down through this
19 questionnaire process.  And that would allow the Government
20 to, I think, better arrange for travel with its witnesses.
21       THE COURT:  That makes sense to me.
22       Mr. Greenberg or Mr. Leonard, how about to you?
23       MR. GREENBERG:  That's fine, Judge.  This is
24 Greenberg again.  I'm sorry.
25       If we pick faster, then we'll just have a little bit

```
 1   of a break, and if we pick slower, we'll go on it.  I mean,
 2   that's perfectly fine.
 3              THE COURT:  All right.  I mean, usually, in the
 4   ordinary case, obviously, we would have other considerations
 5   here, just given the type of a case and the pandemic.
 6              Jury selection usually goes pretty quickly once
 7   we've -- once we have the process of elimination due to
 8   questionnaires.  So if anything, you'll have a little extra
 9   time to prepare.
10              So -- all right.  Anything else anybody wants to put
11   on the record?
12              MR. GREENBERG:  No, Judge.
13              Ms. Geddes raised what we were going to raise.  This
14   is Greenberg again.  I'm sorry -- which was the being there
15   for the questionnaires.
16              The only other thing is, does Your Honor want to
17   schedule a status maybe in April, just so we can all see where
18   we're at?
19              THE COURT:  Yes, I think we will.  I just have not
20   looked at the calendar to see what a good day is.  Let me
21   just -- I know --
22              MR. GREENBERG:  My April is now open.
23              THE COURT:  Okay.  Hold on.  Let me just check with
24   my courtroom deputy, who I think we -- what if we pick
25   something mid-April?  Does that sound like a good plan?
```

```
1                MS. GEDDES:  Yes, Your Honor.
2                MR. GREENBERG:  Yes, Your Honor.
3                MR. LEONARD:  This is Mr. Leonard.
4                If we could pick before the April 19th, because in
5    light of this trial going away, I may have a trial April 19th.
6    So if we could do that, that would be great.
7                THE COURT:  Sure.
8                THE CLERK:  April 15th?
9                MR. LEONARD:  That's great.
10               THE COURT:  And what time works, Donna?
11               THE CLERK:  11:30?
12               THE COURT:  Okay.  11:30 on April 15th.  That's
13   good for everybody?  Government, too?
14               MS. GEDDES:  It is, Your Honor.
15               THE COURT:  All right.  Great.
16               So as I said before, that's an excludable
17   adjournment in the interest of justice, given the
18   circumstances that we find ourselves in.
19               Anything else that anybody wants to put on the
20   record?
21               MS. GEDDES:  Not from the Government.  Thank you,
22   Judge.
23               MR. GREENBERG:  Not from the defense, Your Honor.
24   Thank you.
25               THE COURT:  Okay.  All right.  Thanks so much,
```

```
 1   everyone.  I'll talk to you in April.
 2              MR. GREENBERG:  Thank you.  Stay healthy.
 3              THE DEFENDANT:  Thank you.
 4              THE COURT:  Bye-bye.
 5              (Proceedings concluded.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```