EAG/NS/MCM
F. #2019R00029

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

    - against -                         19 CR 286 (S-3) (AMD)

ROBERT SYLVESTER KELLY,

             Defendant.

– – – – – – – – – – – – – – – – – X


## THE GOVERNMENT'S REQUESTS TO CHARGE



                         JACQUELYN M. KASULIS
                         Acting United States Attorney
                         Eastern District of New York
                         271 Cadman Plaza East
                         Brooklyn, New York 11201


Elizabeth A. Geddes
Nadia I. Shihata
Maria Cruz Melendez
Assistant U.S. Attorneys
     (Of Counsel)

PRELIMINARY STATEMENT

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government respectfully requests that the Court include the following instructions in its charge to the jury.  In addition, the government requests leave to offer additional instructions as they become necessary during the course of the trial.

The government respectfully requests that copies of the third superseding indictment (the "Indictment") and the jury instructions be provided to the jurors during their deliberations.

<u>REQUEST NO. 1</u>
<u>General Requests</u>

The government respectfully requests that the Court charge the jury in its usual manner on the following subjects:

a.      The Role of the Court and the Duties of the Jury;

b.      Equality of the Parties Before the Court;

c.      Jury Communications with Lawyers and the Court;

d.      Presumption of Innocence;

e.      Burden of Proof and Reasonable Doubt;

f.      Circumstantial Evidence and Direct Evidence;

g.      Function of the Indictment and What Is Not Evidence;

h.      Permissible Inferences Drawn from the Evidence;

i.      Stipulations and Objections;

j.      Charts and Summaries;

k.      Testimony of Law Enforcement Witnesses;

l.      Discrepancies in Testimony;

m.      No Inference to Be Drawn from Defendant's Failure to Testify (if applicable);

n.      Testimony of the Defendant (if applicable);

o.      Dates Approximate;

p.      Deliberations;

q.      "And" means "Or" in Indictment;

r.      Right to See Exhibits and Have Testimony Read During Deliberations;

s.      Questioning Wisdom of Law and Basing Verdict on Sympathy or Prejudice

        Prohibited; and

s.      Verdict must be unanimous.

## REQUEST NO. 2
### Indictment

The defendant is formally charged in an indictment.  As I instructed you at the outset of this case, an indictment is a charge or accusation.  The Indictment in this case contains nine separate counts, on each of which you will be called upon to render a separate verdict.

<u>REQUEST NO. 3</u>
<u>Knowingly and Intentionally</u>

All of the charges implicate the concepts of knowledge and intent.  As a general rule, the law holds individuals accountable only for conduct in which they intentionally engage.  Thus, before you can find the defendant guilty of the crimes charged, you must be satisfied he was acting knowingly or intentionally.

A person acts knowingly if he acts voluntarily and intentionally, not because of ignorance, mistake, or accident.  A person acts intentionally if he acts with the specific intent to do something the law forbids.  The person need not be aware of the specific law or rule that his conduct may be violating.  But he must act with the specific intent to do whatever it is the law forbids.

These issues of knowledge and intent require you to make a determination about a defendant's state of mind, something that rarely can be proved directly.  A wise and careful consideration of all the circumstances before you, however, may permit you to make a determination as to a defendant's state of mind.  Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from his words and actions in given circumstances.  You are asked to do the same here.

<u>Authority</u>

Charge of the Hon. Sterling Johnson, <u>United States v. Scalisi</u>, 10 CR 46 (SJ); charge of the Hon. Nicholas G. Garaufis, <u>United States v. Price</u>, 05 CR 492 (NGG).

<u>REQUEST NO. 4</u>
<u>Aiding and Abetting and Willful Causation</u>

Many of the racketeering acts in Count One and certain of the other counts charge the defendant with aiding and abetting or willfully causing certain crimes.  It is not necessary to find that the defendant personally committed those crimes as long as the government proves that he "aided and abetted" or "willfully caused" another person to do so.  This is so because, under the law, a person who aids or abets or willfully causes another to commit an offense is just as guilty of that offense as if he committed it himself.

With regard to aiding and abetting under federal law, the aiding and abetting statute is Title 18 of the United States Code, Section 2(a), which provides that:

> Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal.

Therefore, you may find the defendant guilty of an offense charged if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

In order to find the defendant guilty of aiding and abetting a crime, you must first find that some person did actually commit the crime charged.  Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, and that he participate in

7

the crime by doing some act to help make the crime succeed.  To establish that the defendant knowingly associated himself with the crime, the government must establish that the defendant knew and intended that the crime charged would be committed.  To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of the defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting.  One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor.  An aider and abettor must know that the crime is being committed and act in a way that is intended to bring about the success of the criminal venture.

To determine whether the defendant aided and abetted the commission of particular crimes or caused the commission of them, ask yourselves these questions:

> First: Did he participate in the crime charged as something he wished to bring about?
>
> Second: Did he associate himself with the criminal venture knowingly and willfully?
>
> Third: Did he seek by his actions to make the criminal venture succeed?

If the defendant did all of these things, then he is an aider and abettor, and is therefore guilty of the offense.  If, on the other hand, your answer to any of these questions is "no," then the defendant is not an aider and abettor, and you must not find him guilty.

With regard to willful causation under federal law, Section 2(b) of Title 18 of the United States Code provides that:

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In order to find a defendant guilty of an offense charged under this statute, you must <u>first</u> find that another person has committed the acts constituting the offense charged. <u>Second</u>, you must find that the defendant had the mental state required to violate the offense charged. <u>Third</u>, you must find that the defendant intentionally caused another to commit the requisite act.

I further instruct you that to convict a defendant of aiding and abetting or willfully causing an offense under federal law, you must unanimously agree that the government has proven, beyond a reasonable doubt, either that the defendant aided and abetted the commission of the offense or that the defendant willfully caused the commission of the offense. In other words, all twelve of you must agree on either aiding and abetting or willfully causing. It is not sufficient that some of you find that a defendant aided and abetted the commission of the offense while others find that a defendant willfully caused the commission of the offense.

<u>Authority</u>

Adapted from the charge of the Hon. Sterling Johnson, <u>United States v. Scalisi</u>, 10 CR 46 (SJ); Sand, Modern Federal Jury Instructions, Instr. 1-11; <u>see also</u> <u>Nye & Nissen v. United States</u>, 336 U.S. 613, 618-19 (1949) (discussing the standard for aiding and abetting culpability); <u>United States v. Hamilton</u>, 334 F.3d 170, 180 (2d Cir. 2003) (discussing the standard for aiding and abetting under 18 U.S.C. § 2).

REQUEST NO. 5
All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned during the course of the trial.

Authority

Adapted from E. Devitt & C. Blackmar, Federal Jury
Practice and Instructions, Instruction No. 72.11 (3d ed. 1977).

REQUEST NO. 6
Interviews of Witnesses

There was testimony at trial that attorneys for the government and the defendant interviewed witnesses when preparing for trial.  You should not draw any unfavorable inference from that testimony.  To the contrary, the attorneys were obligated to prepare this case as thoroughly as possible and might have been derelict in the performance of their duties if they failed to interview witnesses before this trial began and as necessary throughout the course of the trial.

Authority

Adapted from the charge of the Hon. Sterling Johnson, United States v. Scalisi, 10 CR 46 (SJ); charge of the Hon. Kiyo A. Matsumoto, United States v. Barret, et al., 10 CR 806 (KAM).

11

<u>REQUEST NO. 7</u>
<u>Uncalled Witness Equally Available to Both Sides</u>

Both the government and the defense have the same power to subpoena witnesses to testify on their behalf.  If a potential witness could have been called by the government or by the defendant and neither called the witness, then you may draw the conclusion that the testimony of the absent witness might have been unfavorable to the government or to the defendant or to both.

On the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness.

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence.

<u>Authority</u>

Adapted from L. Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 6-7; <u>see</u> <u>generally</u> <u>United States v. Erb</u>, 543 F.2d 438, 444-45 (2d Cir.) (discussing propriety of missing witness charges), <u>cert. denied</u>, 429 U.S. 981 (1976)).

<u>REQUEST NO. 8</u>
<u>Opinion of Defendant's Character</u>
(If Applicable)

The defendant has called witnesses who have given their opinion of his good character. This testimony is not to be taken by you as the witness's opinion as to whether the defendant is guilty or not guilty. That question is for you alone to determine.

You should, however, consider this character evidence together with all the other facts and all the other evidence in the case in determining whether the defendant is guilty or not guilty of the charges.

Accordingly, if after considering all the evidence including testimony about the defendant's good character, you find a reasonable doubt has been created, you must acquit him of the charges.

On the other hand, if after considering all the evidence, including that of defendant's character, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should not acquit the defendant merely because you believe him to be a person of good character.

<u>Authority</u>

Adapted from L. Sand, <u>et</u> <u>al.</u>, <u>Modern Federal Jury Instructions</u>,
Instruction No. 5-15.

13

<u>REQUEST NO. 9</u>
<u>Uncharged Acts Considered for a Limited Purpose</u>
(If Applicable)

You have heard evidence that the defendant engaged in conduct, including crimes, other than the crimes charged in the Indictment.  The defendant is not on trial for committing any acts not charged in the Indictment or for acts committed outside the time periods charged in each count of the Indictment.  Consequently, you may not consider evidence of those other acts as a substitute for evidence that the defendant committed the crimes charged in this case.  Nor may you consider evidence of those other acts as proof that the defendant has a criminal propensity; that is, you may not conclude that he likely committed the crimes charged in the Indictment because he was predisposed to criminal conduct.

Instead, you may consider evidence of uncharged conduct by the defendant for limited purposes, and you may consider it only for the following limited purposes, which I will now describe. You may only consider evidence of uncharged conduct:

- As evidence of the existence of the charged enterprise and as evidence that the enterprise engaged in racketeering activity;

- As evidence of the Defendant's position or role within the enterprise;

- As evidence of the development of relationships of mutual trust between the defendant and others with whom he is charged with carrying out the charged crimes;

- As evidence of conduct that is inextricably intertwined with evidence of the charged crimes;

- As evidence enabling you to understand the complete story of the charged crimes;

14

- As evidence of a modus operandi formed by the defendant and his accomplices to commit the charged crimes; and

- As evidence corroborating the testimony of other government witnesses.

      Evidence of uncharged conduct by the defendant may not be considered by you for any purpose other than the ones I have just listed.

<u>Authority</u>

Adapted from the charge of the Hon. Kiyo A. Matsumoto, <u>United States v. Rivera, et al.</u>, 13 CR 149 (KAM); Hon. Nicholas G. Garaufis, <u>United States v. Raniere</u>, 18 CR 204 (NGG).

REQUEST NO. 10
Impeachment by Prior Inconsistent Statement
(If Applicable)

You have heard evidence that a witness made a statement on an earlier occasion which counsel argues is inconsistent with the witness's trial testimony.  Evidence of the prior inconsistent statement was placed before you for the limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself.  If you find that the witness made an earlier statement that conflicts with his/her trial testimony, you may consider that fact in deciding how much of his/her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any weight should be given to the inconsistent statement in determining whether to believe all, part, or none of the witness's testimony.

REQUEST NO. 11
Jury to Consider Only Defendant on Trial

You have heard evidence about the involvement of certain other people in the crimes charged.  You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons are not on trial before you. That these other individuals are not on trial before you is not your concern.  You should neither speculate as to the reason these other people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case.  Nor should you draw any inference from the fact that any other person is not present at this trial.  Your concern is solely the defendant on trial before you.

Authority

Adapted from the charge of the Hon. Kiyo A. Matsumoto, United States v. Rivera, et al., 13 CR 149 (E.D.N.Y.); L. Sand, et al., Modern Federal Jury Instructions, Instruction 2-18.

17

<u>REQUEST NO. 12</u>
<u>Expert Testimony</u>

You have heard the testimony of what we call expert witnesses in this case. Ordinarily, witnesses are restricted to testifying concerning matters of fact. There are occasions, however, when there is some technical or other specialized area of knowledge that will assist the jury in deciding a disputed fact. On those occasions, a witness who is specially qualified by training, knowledge, experience, or education may be called to testify about some evidence or facts in issue in the form of an opinion.

In weighing expert testimony, you may consider the expert's qualifications, the opinion given, the witness's reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether or not to believe a witness. You may give expert testimony whatever weight, if any, you find it deserves in light of all the other evidence before you. You should not, however, accept a witness's testimony merely because he or she is an expert in a field. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

In short, the opinion of an expert witness is in all respects the same as the testimony of any other witness. Give it such weight as you think it deserves.

<u>Authority</u>

Adapted from the charge of the Hon. David G. Trager, <u>United States v. McKenzie</u>, 94 CR 469 (E.D.N.Y.); L. Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 7-21.

REQUEST NO. 13
Particular Investigative Techniques Not Required

You have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by the government. There is no legal requirement, however, that the government prove its case through any particular means. While you are to carefully consider the evidence adduced by the government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques. The government is not on trial. Law enforcement techniques are not your concern.

Your concern is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

Authority

Adapted from charge of Hon. Joseph Bianco, United States v. Kwame Richardson, 09 CR 874 (E.D.N.Y.).

REQUEST NO. 14
Venue

Venue refers to the location of the charged crimes.  Each count of the

indictment alleges that the crime charged occurred in whole or in part in this judicial district,

which is the Eastern District of New York.  This district includes Brooklyn, Queens, Staten

Island, Nassau and Suffolk counties on Long Island, and the waters surrounding Manhattan.

To establish a venue for a crime in this district, the government must prove that some act in

furtherance of the crime happened in the Eastern District of New York.  With respect to

Count One, the racketeering count, the government need only prove that some act in

furtherance of the racketeering offense happened in the Eastern District of New York, and

need not prove that any or all of the alleged racketeering acts happened in the Eastern

District of New York.

Unlike the other elements, the government must prove venue only by a

preponderance of the evidence, that is, it is more likely than not that some act in furtherance

of the crimes occurred in Brooklyn, Queens, Staten Island, Long Island, or the waters

surrounding Manhattan.

<u>REQUEST NO. 15</u>
<u>Count One: Racketeering</u>

Count One of the Indictment charges the defendant with violating the

Racketeer Influenced and Corrupt Organizations Act.  Count One reads as follows:

> In or about and between January 1994 and the present, both
> dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendant ROBERT
> SYLVESTER KELLY, also known as "R. Kelly," together with
> others, being a person employed by and associated with the
> Enterprise, an enterprise that engaged in, and the activities of
> which affected, interstate and foreign commerce, did knowingly
> and intentionally conduct and participate, directly and indirectly,
> in the conduct of the affairs of the Enterprise through a pattern
> of racketeering activity, as defined in Title 18, United States
> Code, Sections 1961(1) and 1961(5), consisting of the
> racketeering acts set forth below.

The relevant provision of the racketeering statute reads as follows:

> It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate,
> directly or indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity . . . .

To prove this crime, the government must prove five elements beyond a

reasonable doubt.

<u>First,</u>    An enterprise, as described in the Indictment, existed
on or about the time alleged in the Indictment;

<u>Second,</u>    The enterprise engaged in, or its activities affected,
interstate or foreign commerce;

<u>Third,</u>    The defendant was employed by or was associated
with the enterprise;

<u>Fourth,</u>    The defendant knowingly conducted or participated,
either directly or indirectly, in the conduct of the
affairs of the enterprise; and

Fifth,      The defendant knowingly participated in the conduct
of the affairs of the enterprise through a pattern of
racketeering activity, as described in the Indictment;
that is, through the commission of at least two of the
charged racketeering acts, the last of which must
have occurred within ten years after the commission
of a prior racketeering act, or through causing or
aiding and abetting the commission of two such
racketeering acts.

I will now explain each of these elements in greater detail.

I.      First Element: The Existence of the Enterprise

The first element the government must prove beyond a reasonable doubt is that

an enterprise existed.  The Indictment alleges the existence of the following enterprise:

The Enterprise

1.      The defendant ROBERT SYLVESTER KELLY, also known as
"R. Kelly," and individuals who served as managers, bodyguards, drivers,
personal assistants and runners for KELLY, as well as members of KELLY's
entourage, comprised an enterprise (the "Enterprise") within the meaning of
18 U.S.C. § 1961(4), that is, the Enterprise constituted a group of individuals
associated in fact that was engaged in, and the activities of which affected,
interstate and foreign commerce.  The Enterprise constituted an ongoing
organization whose members functioned as a continuing unit for a common
purpose of achieving the objectives of the Enterprise.

2.      The purposes of the Enterprise were to promote R. Kelly's
music and the R. Kelly brand, to recruit women and girls to engage in illegal
sexual activity with KELLY and to produce pornography, including child
pornography.  By promoting R. Kelly's music and the R. Kelly brand, the
members of the Enterprise expected to receive financial opportunities and
personal benefits, including increased power and status within the Enterprise.

3.      In connection with the Enterprise, KELLY and other members
of the Enterprise traveled throughout the United States and abroad to perform
at concert venues, to promote the R. Kelly brand and to recruit women and
girls to engage in illegal sexual activity with KELLY.

4.      When KELLY attended and performed at concerts and other
events, KELLY and/or members of the Enterprise on KELLY's behalf invited
women and girls backstage and to other events following KELLY's live

22

performances. These women and girls were often offered wristbands that signified that they were authorized to attend an event. There, KELLY relied upon members of the Enterprise to ensure that only those authorized to attend were allowed at the event and to manage the flow of women and girls who were directly interacting with KELLY.

5.  When KELLY identified a woman or girl who he wished to see again, he either gave his contact information to the woman or girl or obtained her contact information or relied upon members of the Enterprise to do so. Following these events, KELLY communicated with certain of these women and girls by telephone, including through the use of traditional telephone calls, text messages, iMessages and FaceTime. As part of this communication, KELLY often requested that the women and girls provide him with photographs of themselves.

6.  KELLY and other members of the Enterprise also arranged for the women and girls to travel to see KELLY on occasion, including at concerts throughout the United States and related events. To facilitate their travel, KELLY directed the women and girls to contact a member of the Enterprise, who then arranged travel for the women and girls. When the women and girls arrived at the lodging, which was typically selected by a member of the Enterprise, a member of the Enterprise usually provided them with instructions. In addition, members of the Enterprise took steps to ensure that the women and girls did not interact with other women and girls whom KELLY planned to see. Members of the Enterprise then arranged for the women and girls to attend his concerts and positioned them such that KELLY could see them during his concerts.

7.  KELLY promulgated numerous rules that many of his sexual partners were required to follow, including the following:

(a)  The women and girls were not permitted to leave their room without receiving permission from KELLY, including to eat or go to the bathroom;

(b)  The women and girls were required to wear baggy clothing when they were not accompanying KELLY to an event or unless otherwise instructed by KELLY;

(c)  The women and girls were not permitted to look at other men and instead were told to keep their heads down; and

(d)  The women and girls were required to call KELLY "Daddy."

8.  The Enterprise operated within the Eastern District of New York and elsewhere, including overseas.

23

<u>Methods and Means of the Enterprise</u>

9.      Among the means and methods by which KELLY and his associates participated in the conduct of the affairs of the Enterprise were the following:

(a)      Committing, attempting and aiding and abetting the commission of crimes and conspiring to commit crimes, including but not limited to engaging in sexual activity with girls under 18 years old, engaging in and facilitating sexual activity without disclosing a sexually transmitted disease KELLY had contracted, producing child pornography, bribery, extortion, coercion and blackmail;

(b)      Demanding absolute commitment to KELLY and not tolerating dissent;

(c)      Obtaining sensitive information about sexual partners and members and associates of the Enterprise to maintain control over them;

(d)      Creating embarrassing and degrading videos of sexual partners to maintain control over them;

(e)      Recruiting and grooming sexual partners for KELLY; and

(f)      Isolating women and girls from friends and family and making them dependent on KELLY for their financial wellbeing.

The term "enterprise" as used in these instructions may include any group of people associated in fact, even though this association is not recognized as a legal entity. Thus, an enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of individuals.  The term enterprise includes legitimate and illegitimate enterprises.[1]  An enterprise can be a vehicle used by a defendant to commit crimes.[2]

The "enterprise" does not have to have a particular name, or, for that matter, any name at all.  Nor must it be registered or licensed as an enterprise, or be a commonly

---

[1]      <u>United  States v. Turkette</u>, 452 U.S. 576, 585 (1981).

[2]      <u>Nat'l Org. for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 259 (1994).

24

recognized legal entity such as a corporation, a partnership, a business, or the like.  A group

or association of people can be an "enterprise" if these individuals have "associated together

for a common purpose of engaging in a course of conduct."[3]  Mere similarity of conduct or

the fact that individuals may have assembled together and discussed common aims and

interests does not necessarily establish proof of the existence of an enterprise, though you

may consider such factors.   Such an association of persons may be established by evidence

showing an ongoing organization, formal or informal, and by evidence that the people

making up the association functioned as a continuing unit.

      The government must prove an association-in-fact enterprise existed by

evidence of an ongoing organization, formal or informal, and by evidence that the various

associates functioned as a continuing unit.  The enterprise must have the three following

structural features: (1) a purpose; (2) relationships among those associated with the

enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's

purpose.[4]

      It is not necessary that the enterprise have any particular or formal structure,

but it must have sufficient organization that its members functioned and operated in a

coordinated manner in order to carry out the alleged common purpose or purposes of the

enterprise.  Such a group need not have a hierarchical structure or a "chain of command";

decisions may be made on an *ad hoc* basis and by any number of methods – by majority

vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles;

---

[3]    Turkette, 452 U.S. at 583.

[4]    Boyle v. United States, 556 U.S. 938, 945-46 (2009).

different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or initiation procedures.[5]

While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding the existence of a group whose associates engage in spurts of activity punctuated by periods of inactivity.[6]

Thus, an enterprise need not have role differentiation, a unique *modus operandi*, a chain of command, sophistication of organization, diversity and complexity of crimes, uncharged or additional crimes aside from the alleged racketeering activity, or an enterprise name.  Moreover, an enterprise is not required to be "business-like" in its form or function, and it may, but need not, have an economic or profit-seeking motive.  Indeed, RICO is not limited to groups whose crimes are sophisticated, diverse, complex, or unique.[7]

Such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes over time by adding or losing individuals during the course of its existence.  The existence of the enterprise continues even if there is a gap or interruption of the enterprise's racketeering activities.[8]

---

[5]   See id. at 945-46.

[6]   Id. at 948.

[7]   Id.

[8]   United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010); see also United States v. Olson, 450 F.3d 655, 668 (7th Cir. 2006); United States v. Perholtz, 842 F.2d 343, 362-63 (D.C. Cir. 1988).

Although whether an enterprise existed is a distinct element that must be proved by the government, common sense dictates that the existence of an enterprise is oftentimes more readily proven by what it does rather than by an abstract analysis of its structure.  Thus, the evidence used to prove the pattern of racketeering and the enterprise may coalesce.  Therefore, you may consider proof of the racketeering acts to determine whether the evidence establishes the existence of an enterprise, and further, you may infer the existence of an enterprise from evidence of the pattern of racketeering activity.[9]

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated.  The enterprise proved, however, must be essentially the one alleged in the Indictment.

II.      The Second Element: Effect on Interstate or Foreign Commerce

The second element that the government must prove beyond a reasonable doubt is that the enterprise was engaged in or had an effect on interstate or foreign commerce, even if it was only a minimal effect.

Interstate commerce means trade or conducting business or travel between one state and another state or the District of Columbia; and foreign commerce means such trade, business or travel between the United States and another country.  Therefore, interstate and foreign commerce may include the movement of money, goods, services or persons from one state to another state or the District of Columbia or between the United States and another country.  This may include, among other matters, the purchase or sale of goods or supplies from outside the United States, the use of interstate or international mail or wire facilities, or

---

[9]      Boyle, 556 U.S. at 951; Turkette, 452 U.S. at 583.

the causing of any of those things.  The government need not prove that the acts of the defendant affected interstate commerce or that the defendant knew he was affecting interstate commerce.

Regarding that alternative method of satisfying this element, to establish the requisite effect on interstate or foreign commerce, the government is not required to prove a significant or substantial effect on interstate or foreign commerce.  This element, which simply ensures federal jurisdiction over the conduct, is satisfied if even a minimal effect on interstate or foreign commerce is shown.  The effect need not be direct.  Any effect, even if it is postponed, indirect, or slight, is sufficient to satisfy the interstate commerce element.  It does not matter whether the effect is harmful or beneficial to interstate commerce. Moreover, it is not necessary for the government to prove that the defendant knew that the enterprise would affect interstate or foreign commerce, that the defendant intended to affect interstate or foreign commerce, or that the defendant engaged in, or his activities affected, interstate or foreign commerce.

I instruct you that it makes no difference whether the type of interstate commerce affected is legal or illegal.

It is not necessary for the government to prove that the individual racketeering acts themselves affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have had that effect.  On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual racketeering acts.

III.   Third Element: Association with or Employment by the Enterprise

   The third element that the government must prove beyond a reasonable doubt is that the defendant was associated with or employed by the enterprise at some time during the period charged in the Indictment.  "Associated with" should be given its plain meaning. "Associate" means "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another."  Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise.  The defendant need not have been a member of or associated with the enterprise for the entire period of its existence, but the defendant must have been associated with the enterprise at the time he allegedly committed the crimes charged.  That is, the government must prove that the defendant was connected to the enterprise in some meaningful way and that he knew of the existence of the enterprise and of the general nature of its activities.  A person cannot be associated or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities.

IV.   Fourth Element: Participation in Enterprise through Pattern of Racketeering

   The fourth element that the government must prove is that the defendant knowingly conducted or participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

   This means that the defendant must have played some part in the operation or management in the enterprise and that the defendant intentionally performed acts, functions or duties that are necessary to, or helpful in, the operation of the enterprise.  Thus, if the defendant participated in the operation or management of the enterprise itself or he had some

part in directing the enterprise's affairs, that would satisfy this element.  In other words, all who participate in the conduct of the enterprise, whether they are generals or foot soldiers, are responsible for the affairs of the enterprise.

V.      Fifth Element: Pattern of Racketeering Activity

The fifth element the government must prove beyond a reasonable doubt is that the defendant engaged in a pattern of racketeering activity.  The term "racketeering activity" is defined to mean the commission of certain crimes.  A "pattern of racketeering activity" generally means the following:

First, the defendant intentionally committed, or caused, or aided and abetted the commission of, two or more of the racketeering acts alleged in the Indictment, the last of which must have occurred within ten years after the commission of a prior racketeering act. Your verdict must be unanimous as to which specific racketeering acts you find that the defendant committed, caused, or aided and abetted.  Shortly, I will instruct you on the elements regarding each of the alleged racketeering acts.

Second, the racketeering acts must have a "nexus" to the enterprise and the racketeering acts must be "related."  A racketeering act has a "nexus" to the enterprise if it has a meaningful connection to the enterprise.  To be "related," the racketeering acts must have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events. Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise. For example, for both "nexus" and "relatedness" purposes, the requisite relationship between the RICO enterprise and a predicate racketeering act may be established by evidence that the

defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the defendant's position in the enterprise facilitated his commission of the racketeering act, or by evidence that the racketeering act benefitted the enterprise, or by evidence that the racketeering act was authorized by the enterprise or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

Third, the racketeering acts themselves either extended over a substantial period of time or posed a threat of continued criminal activity.  The government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways.  For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendant; rather, in addition to considering such acts you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

I will now explain the law governing the eleven racketeering acts that the government has alleged. As a reminder, you must render separate verdicts of proven or not proven with regard to each of these alleged racketeering acts on the verdict sheet under Count One.

Authority

Adapted from the charges in United States v. Herron, 10-CR-615 (NGG) (E.D.N.Y.); United States v. Napout, 15-CR-252 (PKC) (E.D.N.Y.); and United States v. Coppola, 08-CR-763 (JG) (E.D.N.Y.); Boyle v. United States, 556 U.S. 938, 945-46 (2009); Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994); United States v. Turkette, 452 U.S. 576, 585 (1981); see also United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010); see also United States v. Olson, 450 F.3d 655, 668 (7th Cir. 2006); United States v. Perholtz, 842 F.2d 343, 362-63 (D.C. Cir. 1988).

REQUEST NO. 16
Racketeering Act One

Racketeering Act One charges defendant with bribery.  It reads:

On or about August 30, 1994, within the Northern District of Illinois, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally cause another individual to promise and tender to a public officer and public employee property, to wit: Unites States currency, that such public officer and public employee was not authorized by law to accept, with the intent to influence the performance of an act related to the employment and function of a public officer and public employee, to wit: the creation of a fraudulent identification document for Jane Doe #1, an individual whose identity is known to the Grand Jury, in violation of Illinois Criminal Code Sections 5/33-1(a) and 5/5-1.

Illinois Criminal Code Section 5/33-1(a) provides, in pertinent part, that:

A person commits bribery when . . . with intent to influence the performance of any act related to the employment and function of any public officer [or] public employee . . . , he promises or tenders to that person any property which he is not authorized by law to accept.

The government must prove beyond a reasonable doubt each of the following

elements:

First, That the person the defendant sought to influence was a public officer or public employee;

Second, That the defendant caused another person to promise or tender property to the person the defendant sought to influence; and

Third, That the defendant did so with the intent to influence the performance of any act related to that person's employment or function as a public officer or public employee.

The term "public officer" means a person who is appointed to an office which is established,

and the qualifications and duties of which are prescribed by statute, to discharge a public

33

duty for any political subdivision of the State of Illinois.  The term "public employee" is a person who is authorized to perform an official function on behalf of, and is paid by the State of Illinois or any political subdivision thereof.  The term "tender" means any delivery or proffer made with the requisite intent.  A mere offer or promise with the requisite intent is sufficient to constitute bribery under Illinois law.  I instruct you that United States currency constitutes property under Illinois law.

### Authority

Illinois Pattern Jury Instructions – Criminal 21.11 and 21.12;
United States v. Genova, 167 F. Supp. 2d 1021, 1040-41 (N.D. Il. 2001) ("A mere offer or promise with requisite intent is sufficient to constitute bribery under Illinois law.").

34

<u>REQUEST NO. 17</u>
<u>Racketeering Act Two</u>

Racketeering Act Two charges defendant with sexual exploitation of a child.

It reads:

> In or about and between May 1999 and October 15, 1999, both dates being approximate and inclusive, within the Northern District of Illinois, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally employ, use, persuade, induce, entice and coerce a minor, to wit: Jane Doe #2, an individual whose identity is known to the Grand Jury, to engage in sexually explicit conduct for the purpose of producing one or more visual depictions of such conduct, which visual depictions were produced using materials that had been mailed, shipped and transported in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) … and 2.

Title 18, United States Code, Section 2251 provides, in pertinent part, that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished . . . , if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

To prove the defendant committed this racketeering act, the government must prove the following three elements beyond a reasonable doubt:

<u>First</u>,    that Jane Doe #2 was under the age of 18 at the time of the acts alleged in the Indictment;

<u>Second</u>,    that the defendant used, employed, persuaded, induced, or enticed Jane Doe #2 to take part in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of that conduct; and

35

> <u>Third</u>,     that the visual depiction was to be mailed or
> transported or transmitted in or affecting interstate or
> foreign commerce or using a facility of interstate and
> foreign commerce or produced using materials that
> had been mailed, shipped, or transported in and
> affecting interstate and foreign commerce.

As to the first element, the government must prove beyond a reasonable doubt that Jane Doe #2 was less than 18 years old at the time of the acts alleged in the Indictment. The government does not need to prove that the defendant knew that Jane Doe #2 was less than 18 years old.

As to the second element, I instruct you that the words "used," "employed," "persuaded," "induced," and "enticed" are words of common usage, and I instruct you to interpret these words by using your own common sense. The words "persuade," "induce" and "entice" are, in effect, synonyms that convey the idea of leading or moving another person by persuasion as to some action, state of mind, etc., or to bring about, produce or cause.

A "visual depiction" includes any photograph, film, video or picture, including undeveloped film and videotape, data stored on computer disc or by electronic means which is capable of conversion into a visual image or data that is capable of conversion into a visual image that has been transmitted by any means. A visual depiction includes a digitally recorded photograph or video.

"Sexually explicit conduct" means, among other things, actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; masturbation; or lascivious exhibition of the genitals or pubic area of any person.

The term "lascivious exhibition" means a depiction that displays the genitals or pubic area of a child in order to excite lustfulness or sexual stimulation in the viewer.  Not every exposure of the genitals or pubic area constitutes lascivious exhibition.  In deciding whether a particular visual depiction constitutes a lascivious exhibition, you should consider the following questions:

- whether the focal point of the visual depiction is of the child's genitals or pubic area or whether there is some other focal area;

- whether the setting of the visual depictions makes it appear to be sexually suggestive, for example, in a place or pose generally associated with sexual activity;

- whether the child is displayed in an unnatural pose or in inappropriate attire, considering the age of the child;

- whether the child is fully or partially clothed or nude, although nudity is not in and of itself lascivious;

- whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

- and whether the visual depiction was intended or designed to elicit a sexual response from the viewer.

It is not required that a particular visual depiction involve all of the factors that I have just listed for you.  The importance you give to any one factor is up to you to decide.

While the government must prove that the defendant acted with the purpose of producing a sexually explicit visual depiction, the government does not need to prove that a visual depiction of sexually explicit conduct was actually produced.  In deciding whether the government has proven that the defendant acted for the purpose of producing or transmitting a visual depiction of sexually explicit conduct, you may consider all of the evidence concerning the defendant's conduct.

Whether or not a minor consented to engage in sexually-explicit conduct is irrelevant, as the consent or voluntary participation of a minor is not a defense to the charge.

As to the third element of the underlying crime, I will further define what it means for a depiction to be transported or transmitted in or affecting interstate or foreign commerce or using a facility of interstate and foreign commerce or produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce.  If a visual depiction of sexually explicit conduct, as I have defined that term, is recorded or stored on a device that was made either outside the state where the visual depiction was made or in a foreign country, then that is sufficient to satisfy the interstate commerce element.  It is not necessary for the government to prove that the defendant knew that that the device had been made outside of the state where the visual depiction was made or in a foreign country.

Authority

Adapted from the charges in United States v. Price, 17-CR-301
(NGG) (E.D.N.Y.); United States v. Pattee, 820 F.3d 496, 511
(2d Cir. 2016) (holding that the interstate commerce nexus of
§ 2251(a) is met when the pornography is produced with
equipment manufactured outside of the state of the production
of the pornography).

<u>REQUEST NO. 18</u>
<u>Racketeering Act Three: Kidnapping</u>

Racketeering Act Three charges defendant with kidnapping.  It reads:

In or about and between 2003 and 2004, both dates being
approximate and inclusive, within the Northern District of
Illinois and elsewhere, the defendant ROBERT SYLVESTER
KELLY, together with others, did knowingly and intentionally
secretly confine an individual, to wit: Jane Doe #3, an individual
whose identity is known to the Grand Jury, against her will, and
induce Jane Doe #3 by deceit and enticement to go from one
place to another with intent secretly to confine her against her
will, in violation of Illinois Criminal Code Sections 5/10-1….

Illinois Criminal Code Section 5/10-1 provides, in pertinent part, that:

Kidnap[p]ing occurs when a person knowingly: (1) [a]nd
secretly confines another against his will, or . . . (3) [b]y deceit
or enticement induces another to go from one place to another
with intent secretly to confine h[er] against h[er] will.

The government must prove beyond a reasonable doubt each of the following

elements:

<u>First</u>,    That the defendant acted knowingly; and

<u>Second</u>, That the defendant (i) secretly confined, or caused
another to secretly confine, Jane Doe #3 against her
will, or (ii) by deceit or enticement, induced
Jane Doe #3 to go from one place to another place, and
that when the defendant did so, he intended secretly to
confine Jane Doe #3 against her will.

Confinement is established where the victim has been clearly enclosed within something,

most commonly, a house or a car.  The secret confinement element of kidnapping may be

shown by proof of the secrecy of either the confinement or the place of confinement.  Put

another way, confinement is secret where it serves to isolate or insulate the victim from

meaningful contact or communication with the public, that is, when the confinement is in a

place or in a manner which makes it unlikely that members of the public will know or learn

of the victim's unwilling confinement within a reasonable period of time.

Authority

     Illinois Pattern Jury Instructions – Criminal 8.02; People v.
Gonzalez, 239 Ill. 2d 471, 479 (2011) ("Although the statute
does not define secret confinement, this court has defined the
term 'secret' as concealed, hidden, or not made public.  In turn,
the term "confinement" is defined as the act of imprisoning or
restraining someone.  It is settled that the secret confinement
element of kidnapping may be shown by evidence of the secrecy
of the confinement or the secrecy of the location of the
confinement."); People v. Quintana, 332 Ill. App. 3d 96, 104
(1st Dist. 2002) ("'Secret' denotes concealed, hidden, or not
made public.  Confinement is established where the victim has
been clearly enclosed within something, most commonly, a
house or a car."); 3 Wayne R. LaFave, Substantive Criminal
Law § 18.1(c), at 17 (2d ed. 2003) (confinement is "secret
where it serves to isolate or insulate the victim from meaningful
contact or communication with the public, that is, when the
confinement is in a place or in a manner which makes it unlikely
that members of the public will know or learn of the victim's
unwilling confinement within a reasonable period of time").

<u>REQUEST NO. 19</u>
<u>Racketeering Act Four: Mann Act</u>

Racketeering Act Four alleges that the defendant committed two separate violations of the Mann Act, one related to transportation and the other involving coercion or enticement.  Thus, Racketeering Act Four has two parts, and you will render separate verdicts on each part.  If you find that the defendant committed either or both of these two crimes, you must find that the government has proven Racketeering Act Four.

A.   <u>Racketeering Act 4A</u>

The first part, which is referred to on the verdict sheet as Racketeering Act 4A, alleges that the defendant transported Jane Doe #3 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 4A, the Indictment reads as follows:

> In or about and between 2003 and 2004, both dates being approximate and inclusive, within the Northern District of Illinois and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally transport an individual, to wit: Jane Doe #3, in interstate commerce, with intent that such individual engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of Illinois Criminal Code Sections 5/12-16(a)(6) (effective 2002) (aggravated criminal sexual abuse), 5/12-16(a)(7) (effective 2002) (aggravated criminal sexual abuse) and 5/12-15(a)(2) (effective 2000) (criminal sexual abuse), in that KELLY engaged in sexual conduct with Jane Doe #3, to wit: directly touching and fondling Jane Doe #3's sex organs for the purpose of his sexual gratification, (i) during the commission of a kidnapping of Jane Doe #3, knowing that Jane Doe #3 was unable to give knowing consent; (ii) as part of the same course of conduct as delivery of a controlled substance to Jane Doe #3, knowing that Jane Doe #3 was unable to give knowing consent; and (iii) knowing that Jane Doe #3 was unable to give knowing consent, in violation of Title 18, United States Code, Sections 2421 (effective 1998) and 2.

The Indictment charges the defendant with violating section 2421 of Title 18 of the United States Code. That section provides in relevant part:

> Whoever knowingly transports any individual in interstate . . . commerce . . . with intent that such individual engage … in any sexual activity for which any person can be charged with a criminal offense . . . shall be [guilty of a crime].

In order to prove the defendant guilty of transporting an individual for the purpose of engaging in illegal sexual activity, the government must prove each of the following elements beyond a reasonable doubt:

> First,    That the defendant knowingly transported, or caused the transportation of, Jane Doe #3 in interstate commerce as alleged in the Indictment; and

> Second,    That the defendant transported Jane Doe #3 with the intent that he would engage in sexual activity with Jane Doe #3 and that for that sexual activity, a person can be charged with a criminal offense.

The first element that the government must prove beyond a reasonable doubt is that the defendant knowingly transported, or caused the transportation of, Jane Doe #3 in interstate commerce, as alleged in the Indictment. This means that the government must prove that the defendant knew both (i) that he was transporting, or causing the transportation of, Jane Doe #3 and (ii) that he was transporting Jane Doe #3, or causing the transportation of, in interstate commerce. To act knowingly means to act voluntarily and intentionally and not because of accident, mistake or other innocent reason.

"Interstate commerce" means simply movement between one state and another. The government does not have to prove that the defendant personally transported Jane Doe #3 across a state line. It is sufficient to satisfy this element that defendant was

42

actively engaged in or caused the making of the travel arrangements, such as by purchasing, or causing the purchase of, the ticket necessary for the individual to travel as planned.[10]

The second element that the government must prove beyond a reasonable doubt is that defendant transported, or caused the transportation of, Jane Doe #3 with the intent that he would engage in sexual activity with Jane Doe #3 and that a person could be charged with a criminal offense for that sexual activity.  Direct proof of a person's intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time he committed an act with a particular intent.  Such direct proof is not required.  The ultimate fact of intent, though subjective, may be established by circumstantial evidence, based upon the defendant's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

In order to establish this element, it is not necessary for the government to prove that engaging in illegal sexual activity was the sole purpose for crossing the state line. A person may have several different purposes or motives for such travel, and each may prompt in varying degrees the act of making the journey.  The government must prove beyond a reasonable doubt, however, that a significant or motivating purpose of the travel across a state line was that the defendant would engage in illegal sexual activity with Jane Doe #3.  In other words, that illegal activity must not have been merely incidental to the trip.

---

[10]    United States v. Holland, 381 F.3d 80, 86-87 (2d Cir. 2004) ("We cannot agree with the proposition that an operator of a prostitution ring may escape liability by accepting a bus company's offer to "Leave the Driving to Us."  Inviting travel, purchasing tickets, and accompanying individuals on trips is more than sufficient to establish that a defendant 'transport[ed]' the individuals within the meaning of Section 2421.").

The Indictment alleges that "KELLY engaged in sexual conduct with Jane Doe #3, to wit: directly touching and fondling Jane Doe #3's sex organs for the purpose of his sexual gratification, (i) during the commission of a kidnapping of Jane Doe #3, knowing that Jane Doe #3 was unable to give knowing consent; (ii) as part of the same course of conduct as delivery of a controlled substance to Jane Doe #3, knowing that Jane Doe #3 was unable to give knowing consent; and (iii) knowing that Jane Doe #3 was unable to give knowing consent" and that this conduct violated Illinois Criminal Code Sections 5/12-16(a)(6) (effective 2002) (aggravated criminal sexual abuse), 5/12-16(a)(7) (effective 2002) (aggravated criminal sexual abuse) and 5/12-15(a)(2) (effective 2000) (criminal sexual abuse).  The Indictment alleges that the defendant violated three different state laws.  If you find that the conduct for which the defendant transported, or caused the transportation of, Jane Doe #3 violated any of these three laws, then you must find that this element is satisfied, but you must be unanimous as to which law was violated.

Illinois Criminal Code Section 5/12-15(a)(2) provides that a person commits criminal sexual abuse, a crime, if he "commits an act of sexual conduct and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent."  To provide a violation of Section 5/12/-15(a)(2), the government must prove the following two elements beyond a reasonable doubt.

> First,    That the defendant committed an act of sexual conduct upon Jane Doe #3; and

> Second,   That the defendant knew that Jane Doe #3 was unable to understand the nature of the act or give knowing consent to the act.

44

"'Sexual conduct' means any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, . . . or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused."  (ILCS 5/12-12(e)).

Illinois Criminal Code Section 5/12-16(a)(6) provides that a person commits aggravated sexual abuse, also a crime, if he commits criminal sexual abuse, as I just explained to you, and "the criminal sexual abuse was perpetrated during the course of the commission or attempted commission of any other felony by the accused."  I instruct you that kidnapping is a felony and you should apply those instructions here.

Illinois Criminal Code Section 5/12-16(a)(7) provides that a person commits aggravated sexual abuse, also a crime, if he commits criminal sexual abuse, as I just explained to you, and "the accused delivered (by injection, inhalation, ingestion, transfer of possession, or any other means) to the victim without his or her consent, or by threat or deception, and for other than medical purposes, any controlled substance."

B.    Racketeering Act 4B

The second part, which is referred to on the verdict sheet as Racketeering Act 4B, alleges that the defendant enticed or coerced Jane Doe #3 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 4B, the Indictment reads as follows:

> In or about and between 2003 and 2004, both dates being approximate and inclusive, within the Northern District of Illinois and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally persuade, induce, entice and coerce an individual, to wit: Jane Doe #3, to travel in interstate commerce, to engage in sexual activity for which a person can be charged with a criminal

45

offense, to wit: violations of Illinois Criminal Code Sections 5/12-16(a)(6) (effective 2002) (aggravated criminal sexual abuse) 5/12-16(a)(7) (effective 2002) (aggravated criminal sexual abuse) and 5/12-15(a)(2) (effective 2000) (criminal sexual abuse), in that KELLY engaged in sexual conduct with Jane Doe #3, to wit: directly touching and fondling Jane Doe #3's sex organs for the purpose of his sexual gratification, (i) during the commission of a kidnapping of Jane Doe #3, knowing that Jane Doe #3 was unable to give knowing consent; (ii) as part of the same course of conduct as delivery of a controlled substance to Jane Doe #3, knowing that Jane Doe #3 was unable to give knowing consent; and (iii) knowing that Jane Doe #3 was unable to give knowing consent, in violation of Title 18, United States Code, Sections 2422(a) and 2.

Section 2422(a) of Title 18 of the United States Code provides in relevant part:

Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate . . . commerce . . . to engage . . . in any sexual activity for which any person can be charged with a criminal offense . . . shall be [guilty of a crime].

In order to prove the defendant guilty of persuading or inducing or enticing or coercing an individual to travel for the purpose of engaging in illegal sexual activity, the government must prove each of the following elements beyond a reasonable doubt:

First, That the defendant knowingly persuaded, induced, enticed or coerced Jane Doe #3 to travel in interstate commerce, as alleged in the Indictment;

Second, That Jane Doe #3 traveled in interstate commerce; and

Third, That the defendant acted with the intent that the defendant would engage in illegal sexual activity with Jane Doe #3.

With respect to the third element, the Indictment alleges that the defendant acted with the intent to engage in illegal sexual activity in violation of three different state laws. I have already instructed you regarding the provisions of Illinois Criminal Code Sections 5/12-15(a)(2), 5/12-16(a)(6), and 5/12-16(a)(7). You are to apply those instructions

46

here.  If you find the defendant acted with the intent that he would engage in conduct that violated <u>any</u> of these three laws, then you must find that this element is satisfied, but you must be unanimous as to which law he acted with the intent to violate.

REQUEST NO. 20
Racketeering Act Five: Mann Act

Racketeering Act Five alleges that the defendant, using an interstate facility,

enticed or coerced Jane Doe #4 to engage in illegal sexual activity, in violation of the Mann

Act.  The Indictment reads as follows:

> In or about and between May 2009 and January 2010, both dates
> being approximate and inclusive, within the Northern District of
> Illinois and elsewhere, the defendant ROBERT SYLVESTER
> KELLY, together with others, did knowingly and intentionally
> persuade, induce, entice and coerce an individual who had not
> attained the age of 18 years, to wit: Jane Doe #4, an individual
> whose identity is known to the Grand Jury, to engage in sexual
> activity for which a person can be charged with a criminal
> offense, to wit: violations of Illinois Criminal Code Section
> 5/12-16(d) (effective 2002) (aggravated criminal sexual abuse),
> in that KELLY engaged in sexual penetration of Jane Doe #4
> who was under 17 years of age, while he was more than five
> years older than Jane Doe #4, using one or more facilities and
> means of interstate commerce, in violation of Title 18, United
> States Code, Sections 2422(b) and 2.

The Indictment charges the defendant with violating section 2422(b) of Title

18 of the United States Code.  That section provides in relevant part:

> Whoever, using . . . any facility or means of interstate . . .
> commerce, … knowingly persuades, induces, entices, or coerces
> any individual who has not attained the age of 18 years, to
> engage in . . . any sexual activity for which any person can be
> charged with a criminal offense . . . shall be [guilty of a crime].

In order to prove the defendant guilty of using a facility of interstate

commerce to persuade or induce or entice or coerce an individual to engage in illegal sexual

activity, the government must prove each of the following elements beyond a reasonable

doubt:

First,      The defendant used a facility of interstate commerce;

48

Second,   That the defendant knowingly persuaded or induced or enticed or coerced Jane Doe #4 to engage in sexual activity;

Third,   That this sexual activity would violate Illinois law; and

Fourth,   That Jane Doe #4 was less than eighteen years old at the time of the acts alleged in the Indictment.

The first element that the government must prove beyond a reasonable doubt is that the defendant used a facility of interstate commerce. Transmission of communications by means of the telephone constitutes the use of a facility of interstate commerce regardless of whether the communication actually crossed a state line. However, you must find beyond a reasonable doubt that the specific communication in question was actually transmitted by means of the telephone.

The second element that the government must prove beyond a reasonable doubt is that the defendant knowingly persuaded or induced or enticed or coerced Jane Doe #4 to engage in sexual activity. The words persuade or induce or entice or coerce should be given their ordinary meanings.

The third element that the government must prove beyond a reasonable doubt is that this sexual activity would violate Illinois law. The Indictment alleges that defendant persuaded Jane Doe #4 to engage in sexual activity, which constitutes Aggravated Criminal Sexual Abuse, in violation of Illinois law. To sustain the charge of Aggravated Criminal Sexual Abuse, the government must prove the following three elements beyond a reasonable doubt:

First,   That the defendant committed an act of sexual penetration with Jane Doe #4;

49

Second,   That Jane Doe #4 was at least 13 years of age but
under 17 years of age when the act was committed;
and

Third,   That the defendant was at least 5 years older than Jane
Doe #4.

The term "sexual penetration" means any contact, however slight, between the

sex organ or anus of one person by an object, the sex organ, mouth or anus of another person,

or any intrusion, however slight, of any part of the body of one person or of any animal or

object into the sex organ or anus of another person, including but not limited to cunnilingus,

fellatio or anal penetration.  Evidence of emission of semen is not required to prove sexual

penetration.[11]

The fourth element that the government must prove beyond a reasonable doubt

is that Jane Doe #4 was less than eighteen years old at the time of the acts alleged in the

Indictment.   The government does not need to prove that the defendant knew that Jane Doe

#4 was less than 18 years old.

Authority

L. Sand, et al., Modern Federal Jury Instructions, Instruction 64-03;
Illinois Pattern Jury Instructions – Criminal 11.61 and 11.62A; People
v. Chromik, 408 Ill. App. 3d 1028 (App. Ct. Il 3rd Dist. 2011)

---

[11]   IL ST CH 720 § 5/12-12(f).

REQUEST NO. 21
Racketeering Act Six: Forced Labor

Racketeering Act Six alleges that the defendant committed forced labor of

Jane Doe #4.  The Indictment reads as follows:

> In or about and between May 2009 and January 2010, both dates
> being approximate and inclusive, within the Northern District of
> Illinois and elsewhere, the defendant ROBERT SYLVESTER
> KELLY, together with others, did knowingly and intentionally
> obtain the labor and services of a person, to wit: Jane Doe #4, by
> means of force, threats of force, physical restraint and threats of
> physical restraint to that person or another person; by means of
> serious harm and threats of serious harm to that person or
> another person; and by means of a scheme, plan and pattern
> intended to cause such person to believe that, if that person did
> not perform such labor and services, such person would suffer
> serious harm and physical restraint, and a combination of such
> means, in violation of Title 18, United States Code, Sections
> 1589(a) and 2.

> The relevant statute reads as follows:

> Whoever knowingly obtains the labor or services of another
> person— (1) by means of force, threats of force, physical
> restraint, or threats of physical restraint to that person or another
> person (2) by means of serious harm or threats of serious harm
> to that person or another person; [or] (3) by means of any
> scheme, plan, or pattern intended to cause the person to believe
> that, if the person did not perform such labor or services, that
> person or another person would suffer serious harm or physical
> restraint [shall be guilty of a crime.]

To prove that the defendant committed this racketeering act, the government

must prove three elements beyond a reasonable doubt:

> First,   The defendant obtained the labor or services of Jane
> Doe #4;

> Second,  The defendant did so through one of the following
> prohibited means: (a) through threats of serious harm
> to, or physical restraint against, Jane Doe #4 or any
> other person; or (b) through a scheme, plan or pattern

51

intended to cause Jane Doe #4 to believe that non-performance would result in serious harm to, or physical restraint against, Jane Doe #4 or any other person; and

Third,    The defendant acted knowingly.

The first element the government must prove is that the defendant obtained the labor or services of another person, in this case, Jane Doe #4. To "obtain" means to acquire, control, or possess, even if only for a short period. "Labor" means the expenditure of physical or mental effort. "Services" means conduct or performance that assists or benefits someone. The government does not have to prove that Jane Doe #4 performed "work" for the defendant in the economic sense, although that would satisfy this element. Labor or services can include, but is not limited to, sexual services. All the government must prove is that Jane Doe #4 provided labor or services as I just defined them.

As to the second element, if you find that the defendant obtained the labor or services of Jane Doe #4, then you must determine whether the defendant did so through one of the two prohibited means, that is, either through threats of serious harm to, or physical restraint against, a person, or through a scheme, plan or pattern intended to cause the person to believe that serious harm would result if she did not perform the labor or services required of her. In order to find that the second element has been satisfied, you must find beyond a reasonable doubt that at least one of the prohibited means I just mentioned was used to obtain Jane Doe #4's labor or services.

I now want to define for you some of the terms you will be considering in determining whether this second element of Racketeering Act Six has been satisfied. The term "serious harm" includes both physical and non-physical types of harm, including

psychological, financial, or reputational harm.  A threat of serious harm, therefore, need not involve any threat of physical violence.  It includes improper threats of consequences, whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person of the same background and in the same circumstances as Jane Doe #4 to provide, or to continue providing, labor or services, in order to avoid that harm.  In considering whether a threat of harm would be sufficient to compel or coerce an alleged victim's services, you may also consider the defendant's conduct as well as Jane Doe #4's special vulnerabilities, if any.  In this regard, you may find that not all persons are of the same courage or firmness.  You may consider, for example, Jane Doe #4's age, background, physical and mental condition, experience, education, socioeconomic status and any inequalities between Jane Doe #4 and the defendant with respect to these considerations, including their relative stations in life, among other things.  Simply put, you may ask whether Jane Doe #4 was vulnerable in some way so that the actions of the defendant, even if not sufficient to compel another person to provide labor or services, were enough to compel Jane Doe #4 to provide labor or services.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings.  The scheme, plan or pattern need not involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion, used to cause the victim to reasonably believe that she, her family, or any other person would suffer serious harm if she refused to continue providing labor or services.

If you find that any of the two prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause Jane Doe #4 reasonably to believe that she had no choice but to provide labor or services to the defendant.  In making

53

that determination, you may consider the cumulative effect on Jane Doe #4 of the defendant's conduct.

A few final things about this second element of the offense of forced labor: To prove forced labor, the government does not need to link each of the threats allegedly made or actions allegedly taken against Jane Doe #4 to particular labor or service tasks performed by her. If Jane Doe #4 was threatened with or suffered certain consequences in connection with the services she rendered, either as punishment or as part of a climate of fear that overcame her will and compelled her service, that is sufficient to establish the second element of the offense of forced labor.

The government also need not prove physical restraint, such as the use of chains, barbed wire or locked doors, in order to establish the offense of forced labor. The fact that Jane Doe #4 may have had an opportunity to escape is irrelevant if the defendant placed Jane Doe #4 in such fear or circumstances that she did not reasonably believe she could leave. A victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape.

Finally, in considering whether service performed by someone was involuntary, you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the labor. If a person willingly begins service or labor, but later desires to withdraw, and is then forced to remain and perform the labor or services against her will by threats of serious harm, or by a scheme, plan or pattern, intended to cause her to believe that non-performance will result in serious harm to her or another person, then her service becomes involuntary. Also, whether a person is paid a salary or a wage is not determinative of the question of whether that person

54

has been held in forced labor.  In other words, if a person is compelled to labor against her

will by any one of the means prohibited by the forced labor statute, such service is

involuntary even if she is paid or compensated for the labor or services.

        With regard to the third element, the government must prove that a defendant

acted knowingly, a concept that I have already explained to you.

<u>Authority</u>

Adapted from the charges in <u>United States v. Marcus</u>, 05-CR-457 (ARR) (E.D.N.Y.);<u>United States v. Raniere</u>, 18-CR-204 (NGG) (E.D.N.Y.); L. Sand, <u>et</u> <u>al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 47A-02; <u>See also</u> <u>United States v. Kaufman</u>, 546 U.S. 1242, 1261-62 (10th Cir. 2008) (forced labor statute applies to coerced acts other than "work in an economic sense").

REQUEST NO. 22
Racketeering Act Seven: Sexual Exploitation

Racketeering Act Seven alleges that the defendant sexually exploited Jane Doe

#4.  The Indictment reads as follows:

> In or about and between May 2009 and January 2010, both dates
> being approximate and inclusive, within the Northern District of
> Illinois and elsewhere, the defendant ROBERT SYLVESTER
> KELLY, together with others, did knowingly and intentionally
> employ, use, persuade, induce, entice and coerce a minor, to wit:
> Jane Doe #4, to engage in sexually explicit conduct for the
> purpose of producing one or more visual depictions of such
> conduct, which visual depictions were produced using materials
> that had been mailed, shipped and transported in and affecting
> interstate and foreign commerce, in violation of Title 18, United
> States Code, Sections 2251(a), 2251(e) and 2.

I have already instructed you on the law that applies to sexual exploitation and

you should apply that here.

REQUEST NO. 23
Racketeering Act Eight: Mann Act Violations – Jane Doe #5

Racketeering Act Eight alleges that the defendant committed two separate violations of the Mann Act, one related to transportation and the other involving coercion or enticement.  Thus, Racketeering Act Eight has two parts, and you will render separate verdicts on each part.  If you find that the defendant committed either or both of these two crimes, you must find that the government has proven Racketeering Act Eight.

A.      Racketeering Act 8A: Transportation

The first part, which is referred to on the verdict sheet as Racketeering Act 8A, alleges that the defendant transported Jane Doe #5 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 8A, the Indictment reads as follows:

> On or about and between April 28, 2015 and May 1, 2015, both dates being approximate and inclusive, within the Central District of California, the Northern District of California and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally transport an individual, to wit: Jane Doe #5, an individual whose identity is known to the Grand Jury, in interstate commerce, with intent that such individual engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of Cal. Health and Safety Code § 120290 (effective 1998) (willful exposure of a communicable disease), in that KELLY engaged in unprotected sexual intercourse with Jane Doe #5 without first informing Jane Doe #5 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances, in violation of Title 18, United States Code, Sections 2421(a) and 2

The Indictment charges the defendant with violating section 2421 of Title 18 of the United States Code.  That section provides in relevant part:

> Whoever knowingly transports any individual in interstate . . . commerce . . . with intent that such individual engage . . . in any

57

sexual activity for which any person can be charged with a
criminal offense . . . shall be [guilty of a crime].

In order to prove the defendant guilty of transporting an individual for the

purpose of engaging in illegal sexual activity, the government must prove each of the

following elements beyond a reasonable doubt:

> First,     That the defendant knowingly transported, or caused
>            the transportation of, Jane Doe #5 in interstate
>            commerce as alleged in the Indictment; and
>
> Second,    That the defendant transported, or caused the
>            transportation of, Jane Doe #5 with the intent that he
>            would engage in illegal sexual activity with Jane Doe
>            #5.

The first element that the government must prove beyond a reasonable doubt is

that the defendant knowingly transported, or caused the transportation of, Jane Doe #5 in

interstate commerce, as alleged in the Indictment.  "Interstate commerce" means simply

movement between one state and another.  The government does not have to prove that the

defendant personally transported Jane Doe #5 across a state line.  It is sufficient to satisfy

this element that defendant was actively engaged in or caused the making of the travel

arrangements, such as by purchasing, or causing the purchase of, the tickets necessary for the

individuals to travel as planned.[12]

The defendant must have knowingly transported, or caused the transportation

of, Jane Doe #5 in interstate commerce.  This means that the government must prove that

---

[12]    Holland, 381 F.3d at 86-87 ("We cannot agree with the proposition that an operator of
a prostitution ring may escape liability by accepting a bus company's offer to "Leave the
Driving to Us."  Inviting travel, purchasing tickets, and accompanying individuals on trips is
more than sufficient to establish that a defendant 'transport[ed]' the individuals within the
meaning of Section 2421.").

defendant knew both that he was transporting Jane Doe #5 as I just defined that term, and that he was transporting Jane Doe #5 in interstate commerce.  To act knowingly means to act voluntarily and intentionally and not because of accident, mistake or other innocent reason.

The second element that the government must prove beyond a reasonable doubt is that the defendant transported, or caused the transportation of, Jane Doe #5 with the intent that he would engage in illegal sexual activity with Jane Doe #5.  Direct proof of a person's intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time he committed an act with a particular intent.  Such direct proof is not required.  The ultimate fact of intent, though subjective, may be established by circumstantial evidence, based upon the defendant's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

In order to establish this element, it is not necessary for the government to prove that engaging in illegal sexual activity was the sole purpose for crossing the state line.  A person may have several different purposes or motives for such travel, and each may prompt in varying degrees the act of making the journey.  The government must prove beyond a reasonable doubt, however, that a significant or motivating purpose of the travel across a state line was that Jane Doe #5 would engage in illegal sexual activity.  In other words, that illegal activity must not have been merely incidental to the trip.

Under California law, specifically Cal. Health and Safety Code § 120290 (effective 1998), "any person afflicted with any contagious, infectious, or communicable

disease who willfully exposes himself or herself to another person . . . [shall be punished.]"

The government must prove beyond a reasonable doubt:

> First, That the defendant knew that he was afflicted with any contagious, infectious, or communicable disease;
>
> Second, That the defendant exposed himself to Jane Doe #5 by engaging in unprotected sexual activity with Jane Doe #5;
>
> Third, That the defendant acted willfully; and.
>
> Fourth, That the defendant did not inform Jane Doe #5 that he had a contagious, infectious, or communicable disease and obtain her consent to expose himself in these circumstances prior to engaging in the exposure.

With respect to the first element, "communicable disease" means any disease that was transferable through the exposure incident.[13]  With respect to the third element, the term willfully means with knowledge of the consequences or purposefully.[14]  It does not require that the defendant intended to expose another to a contagious, infectious, or communicable disease.

B.    Racketeering Act 8B: Coercion or Enticement

The second part, which is referred to on the verdict sheet as Racketeering Act 8B, alleges that the defendant enticed or coerced Jane Doe #5 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 8B, the Indictment reads as follows:

---

[13]    CA HLTH & S § 120261(c) ("'Communicable disease' means any disease that was transferable through the exposure incident, as determined by the certifying physician.").

[14]    Cal. Penal Law 7(1) (effective until 2016) ("The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to.  It does not require any intent to violate law, or to injure another, or to acquire any advantage."). See People v. Valdez, 27 Cal. 4th 778, 787-788 (2002); cf. People v. Atkins, 25 Cal. 4th 76, 85 (2000) ("willfully" implies no evil intent).

On or about and between April 28, 2015 and May 1, 2015, both dates being approximate and inclusive, within the Central District of California, the Northern District of California and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally persuade, induce, entice and coerce an individual, to wit: Jane Doe #5, to travel in interstate commerce, to engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of Cal. Health and Safety Code § 120290 (effective 1998) (willful exposure of a communicable disease), in that KELLY engaged in unprotected sexual intercourse with Jane Doe #5 without first informing Jane Doe #5 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances, in violation of Title 18, United States Code, Sections 2422(a) and 2.

Section 2422(a) of Title 18 of the United States Code provides in relevant part:

Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate . . . commerce . . . to engage … in any sexual activity for which any person can be charged with a criminal offense . . . shall be [guilty of a crime].

In order to prove the defendant guilty of persuading or inducing or enticing or coercing an individual to travel for the purpose of engaging in illegal sexual activity, the government must prove each of the following elements beyond a reasonable doubt:

First,    That the defendant knowingly persuaded, induced, enticed or coerced Jane Doe #5 to travel in interstate commerce, as alleged in the Indictment;

Second,   That Jane Doe #5 traveled in interstate commerce; and

Third,    That the defendant acted with the intent that Jane Doe #5 would engage in illegal sexual activity.

I have already instructed you regarding the elements of a violation of Cal. Health and Safety Code § 120290 (effective 1998).  You should apply those instructions here.

<u>REQUEST NO. 24</u>
<u>Racketeering Act Nine: Mann Act Violations – Jane Doe #5</u>

Racketeering Act Nine alleges that the defendant committed four separate violations of the Mann Act, two related to transportation and the other two involving coercion or enticement.  Thus, Racketeering Act Nine has four parts, and you will render separate verdicts on each part.  If you find that the defendant committed any one or all of these four crimes, you must find that the government has proven Racketeering Act Nine.

A.    <u>Racketeering Act 9A: Transportation</u>

The first part, which is referred to on the verdict sheet as Racketeering Act 9A, alleges that the defendant transported Jane Doe #5 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 9A, the Indictment reads as follows:

> In or about and between September 2015 and October 2015, both dates being approximate and inclusive, within the Eastern District of New York, the Northern District of California and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally transport an individual, to wit: Jane Doe #5, in interstate commerce, with intent that such individual engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of California Penal Law Sections 261.5(a) and 261.5(b) (unlawful sexual intercourse with a person under 18 years old), in that KELLY engaged in sexual intercourse with Jane Doe #5 who was under 18 years old, while he was more than three years older than Jane Doe #5, in violation of Title 18, United States Code, Sections 2421(a) and 2.

I have already instructed you on the elements of transportation in violation of the Mann Act and you should apply those instructions here.

The Indictment provides that the defendant violated California Law by engaging in sexual intercourse with Jane Doe #5 who was under 18 years old, while he was more than three years older than Jane Doe #5.  California law provides that "[a]ny person

who engages in an act of unlawful sexual intercourse with a minor who is not more than

three years older or three years younger than the perpetrator, is guilty of [a crime]."

"Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who

is not the spouse of the perpetrator, if the person is a minor."  For the purposes of this

section, a "minor" is a person under the age of 18 years and an "adult" is a person who is at

least 18 years of age.

>   B.   Racketeering Act 9B: Coercion or Enticement

The second part, which is referred to on the verdict sheet as Racketeering Act

9B, alleges that the defendant coerced and enticed Jane Doe #5 to travel for the purpose of

engaging in illegal sexual activity.  With respect to Racketeering Act 9B, the Indictment

reads as follows:

> In or about and between September 2015 and October 2015,
> within the Eastern District of New York, the Northern District
> of California and elsewhere, the defendant ROBERT
> SYLVESTER KELLY, together with others, did knowingly and
> intentionally persuade, induce, entice and coerce an individual,
> to wit: Jane Doe #5, to travel in interstate commerce, to engage
> in sexual activity for which a person can be charged with a
> criminal offense, to wit: violations of California Penal Law
> Sections 261.5(a) and 261.5(b) (unlawful sexual intercourse
> with a person under 18 years old), in that KELLY engaged in
> sexual intercourse with Jane Doe #5 who was under 18 years
> old, while he was more than three years older than Jane Doe #5,
> in violation of Title 18, United States Code, Sections 2422(a)
> and 2.

I have already instructed you on the elements of coercion or enticement in violation of the

Mann Act and you should apply those instructions here.

C.  Racketeering Act 9C: Coercion of a Minor

The third part, which is referred to on the verdict sheet as Racketeering Act 9C, alleges that the defendant, using an interstate facility, coerced or enticed Jane Doe #5 to engage in illegal sexual activity.  With respect to Racketeering Act 9C, the Indictment reads as follows:

> In or about and between September 2015 and October 2015, within the Eastern District of New York, the Northern District of California and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally persuade, induce, entice and coerce an individual who had not attained the age of 18 years, to wit: Jane Doe #5, to engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of California Penal Law Sections 261.5(a) and 261.5(b) (unlawful sexual intercourse with a person under 18 years old), in that KELLY engaged in sexual intercourse with Jane Doe #5 who was under 18 years old, while he was more than three years older than Jane Doe #5, using one or more facilities and means of interstate commerce, in violation of Title 18, United States Code, Sections 2422(b) and 2.

The Indictment charges the defendant with violating section 2422(b) of Title 18 of the United States Code.  That section provides in relevant part:

> Whoever, using . . . any facility or means of interstate . . . commerce, … knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense . . . shall be [guilty of a crime].

In order to prove the defendant guilty of using a facility of interstate commerce to persuade or induce or entice or coerce an individual to engage in illegal sexual activity, the government must prove each of the following elements beyond a reasonable doubt:

First,      The defendant used a facility of interstate commerce;

Second,   That the defendant knowingly persuaded or induced or enticed or coerced Jane Doe #5 to engage in sexual activity;

Third,   That this sexual activity would violate California law; and

Fourth,   That Jane Doe #5 was less than eighteen years old at the time of the acts alleged in the Indictment.

The first element that the government must prove beyond a reasonable doubt is that the defendant used a facility of interstate commerce.  Transmission of communications by means of the telephone constitutes the use of a facility of interstate commerce regardless of whether the communication actually crossed a state line.  However, you must find beyond a reasonable doubt that the specific communication in question was actually transmitted by means of the telephone.

The second element that the government must prove beyond a reasonable doubt is that the defendant knowingly persuaded or induced or enticed or coerced Jane Doe #5 to engage in sexual activity.  The words persuade or induce or entice or coerce should be given their ordinary meanings.

The third element that the government must prove beyond a reasonable doubt is that this sexual activity would violate California law.  And I instructed you about the relevant California law as to Racketeering Act 9A and you should apply that here.

The fourth element that the government must prove beyond a reasonable doubt is that Jane Doe #4 was less than eighteen years old at the time of the acts alleged in the Indictment.   The government does not need to prove that the defendant knew that Jane Doe #4 was less than 18 years old.

D.      Racketeering Act 9D: Transportation of a Minor

The fourth part, which is referred to on the verdict sheet as Racketeering Act 9D, alleges that the defendant transported a minor, Jane Doe #5, for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 9D, the Indictment reads as follows:

> In or about and between September 2015 and October 2015, within the Eastern District of New York, the Northern District of California and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally transport an individual who had not attained the age of 18 years, to wit: Jane Doe #5, in interstate commerce, with intent that such individual engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of California Penal Law Sections 261.5(a) and 261.5(b) (unlawful sexual intercourse with a person under 18 years old), in that KELLY engaged in sexual intercourse with Jane Doe #5 who was under 18 years old, while he was more than three years older than Jane Doe #5, in violation of Title 18, United States Code, Sections 2423(a) and 2.

> Section 2423(a) of Title 18 of the United States Code provides in relevant part:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in . . . any sexual activity for which any person can be charged with a criminal offense, shall be [guilty of a crime].

The elements of this crime are as follows:

> First,      That the defendant knowingly transported, or caused the transportation of, a minor in interstate or foreign commerce;

> Second,   That the defendant transported, or caused the transportation of, the minor with the intent that she would engage in any sexual activity for which a person can be charged with a criminal offense; and

66

> <u>Third</u>,    That the defendant was less than eighteen years old at
> the time of the acts alleged in the Indictment.

The first element requires that the defendant knowingly transported, or caused the transportation of, a minor in interstate and foreign commerce. I have previously defined the term "knowingly," and you should follow that instruction here. "Interstate or foreign commerce" means simply movement between one state and another or between the United States and a foreign country. The government does not have to prove that the defendant personally transported Jane Doe #5 across a state line. It is sufficient to satisfy this element that defendant was actively engaged in or caused the making of the travel arrangements, such as by purchasing, or causing the purchase of, the ticket necessary for the individual to travel as planned.[15]

The second element requires that the defendant transported, or caused the transportation of, the minor with the intent that she would engage in sexual activity for which a person can be charged with a criminal offense. In order to establish this element, it is not necessary for the government to prove that engaging in criminal sexual activity was the sole purpose for crossing the state line or foreign border. A person may have several different purposes or motives for such travel, and each may prompt in varying degrees the act of making the journey. The government must prove beyond a reasonable doubt, however, that a significant or motivating purpose of the travel across a state line was that the minor would

---

[15]    <u>Holland</u>, 381 F.3d at 86-87 "We cannot agree with the proposition that an operator of a prostitution ring may escape liability by accepting a bus company's offer to "Leave the Driving to Us." Inviting travel, purchasing tickets, and accompanying individuals on trips is more than sufficient to establish that a defendant 'transport[ed]' the individuals within the meaning of Section 2421.").

engage in criminal sexual activity.  In other words, that illegal activity must not have been merely incidental to the trip.

Now, direct proof of a person's intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time he committed an act with a particular intent.  Such direct proof is not required.  The ultimate fact of intent, though subjective, may be established by circumstantial evidence, based upon a defendant's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

The third and last element that the government must prove beyond a reasonable doubt is that the minor was less than eighteen years old at the time of the acts alleged in the Indictment.  The government need not prove that the defendant knew the minor was less than eighteen years old.

<u>Authority</u>

L. Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instructions 64-15, 64-16, 64-17, 64-18, 63-19.

<u>REQUEST NO. 25</u>
<u>Racketeering Act Ten: Sexual Exploitation</u>

Racketeering Act Ten alleges that the defendant committed sexual exploitation

of Jane Doe #5.  The Indictment reads as follows:

> In or about and between September 2015 and December 30,
> 2015, both dates being approximate and inclusive, within the
> Northern District of California, the Northern District of Illinois
> and elsewhere, the defendant ROBERT SYLVESTER KELLY,
> together with others, did knowingly and intentionally employ,
> use, persuade, induce, entice and coerce a minor, to wit: Jane
> Doe #5, to engage in sexually explicit conduct for the purpose
> of producing one or more visual depictions of such conduct,
> which visual depictions were produced using materials that had
> been mailed, shipped and transported in and affecting interstate
> and foreign commerce, in violation of Title 18, United States
> Code, Sections 2251(a), 2251(e) and 2.

I have already instructed you on the law that applies to sexual exploitation and you should

apply that here.

69

<u>REQUEST NO. 26</u>
<u>Racketeering Act Eleven: Forced Labor</u>

Racketeering Act Eleven alleges that the defendant committed forced labor of

Jane Doe #5.  The Indictment reads as follows:

> In or about and between April 2015 and December 2018, both dates being approximate and inclusive, within the Northern District of Georgia, the Northern District of Illinois and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally obtain the labor and services of a person, to wit: Jane Doe #5, by means of force, threats of force, physical restraint and threats of physical restraint to that person or another person; by means of serious harm and threats of serious harm to that person or another person; and by means of a scheme, plan and pattern intended to cause such person to believe that, if that person did not perform such labor and services, such person would suffer serious harm and physical restraint, and a combination of such means, in violation of Title 18, United States Code, Sections 1589(a) and 2.

I have already instructed you on the law that applies to forced labor and you should apply

that here.

70

<u>REQUEST NO. 27</u>
<u>Racketeering Act Twelve: Mann Act Violations</u>

Racketeering Act Twelve alleges that the defendant committed two separate violations of the Mann Act, one related to transportation and the other involving coercion or enticement.  Thus, Racketeering Act Twelve has two parts, and you will render separate verdicts on each part.  If you find that the defendant committed either or both of these two crimes, you must find that the government has proven Racketeering Act Twelve.

A.    <u>Racketeering Act 12A: Transportation</u>

The first part, which is referred to on the verdict sheet as Racketeering Act 12A, alleges that the defendant transported Jane Doe #6 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 12A, the Indictment reads as follows:

> On or about May 18, 2017, within the Eastern District of New York and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally transport an individual, to wit: Jane Doe #6, an individual whose identity is known to the Grand Jury, in interstate commerce, with intent that such individual engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), in that KELLY engaged in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances, in violation of Title 18, United States Code, Sections 2421(a) and 2.

I have already instructed you on the elements of transportation in violation of the Mann Act and you should apply those instructions here.

71

B.      Racketeering Act 12B: Coercion or Enticement

The second part, which is referred to on the verdict sheet as Racketeering Act 12B, alleges that the defendant coerced or enticed Jane Doe #6 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 12B, the Indictment reads as follows:

> On or about May 18, 2017, within the Eastern District of New York and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally persuade, induce, entice and coerce an individual, to wit: Jane Doe #6, to travel in interstate commerce, to engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), in that KELLY engaged in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances, in violation of Title 18, United States Code, Sections 2422(a) and 2.

I have already instructed you on the elements of coercion or enticement in violation of the Mann Act and you should apply those instructions here.

The Indictment provides that the defendant violated two different state laws. Either or both is sufficient to find that his conduct amounted to illegal sexual activity, but you must be unanimous as to which law was violated.  Specifically, the Indictment alleges that "KELLY engaged in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances," in violation of New York Penal Law 120.20 and New Your Public Health Law 2307.  I'll explain each of those.  To prove a violation of New York

Penal Law Section 120.20, the government must prove the following elements beyond a

reasonable doubt.

> First,    The defendant recklessly engaged in conduct; and
>
> Second,  The reckless conduct must create a substantial risk of
>          "serious physical injury".

A person recklessly engages in conduct which creates a substantial risk of

serious physical injury to another person: (i) when he engages in conduct which creates a

substantial and unjustifiable risk of serious physical injury to another person, (ii) when he is

aware of and consciously disregards that risk, and (iii) when that risk is of such nature and

degree that disregard of it constitutes a gross deviation from the standard of conduct that a

reasonable person would observe in the situation.[16]    The defendant's subjective intent is

irrelevant.

Serious physical injury means impairment of a person's physical condition that

creates a substantial risk of death, or which causes death, or serious and protracted

disfigurement, or protracted impairment of health or protracted loss or impairment of the

function of any bodily organ.[17]

---

[16]    See N.Y. Penal Law § 15.05(3).
[17]    See N.Y. Penal Law § 10.00(10).

Under New York Public Health Law Section 2307, "[a]ny person who, knowing himself or herself to be infected with an infectious venereal disease, has sexual intercourse with another shall be [punished]."  To prove a violation of Section 2307, the government must prove the following elements beyond a reasonable doubt:

First,    that the defendant engaged in unprotected sexual intercourse with Jane Doe #6;

Second,   that the defendant knew himself to be infected with an infectious venereal disease, here herpes, at the time he had sexual intercourse with Jane Doe #6; and

Third,    that the defendant did not inform Jane Doe #6 that he had herpes and obtain her consent to engage in sexual intercourse with him in these circumstances prior to engaging in sexual intercourse with her.

## Authority

New York Pattern Jury Instructions, available at http://www.nycourts.gov/judges/cji/2-PenalLaw/120/120-20.pdf. See People v. Bryant, 445 N.Y.S.2d 711, 713 (1st Dep't 1981) ("Reckless endangerment in the second degree requires proof of (1) reckless conduct which (2) creates a substantial risk of 'serious physical injury.'"); In re Kysean D.S., 728 N.Y.S.2d 323 (4th Dep't 2001) ("subjective intent is irrelevant"); Winn v. McQuillan, 390 F. Supp. 385, 390 (S.D.N.Y. 2005) ("The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."); ECF Docket No. 69 (Court's Order dated May 22, 2020 denying defendant Robert Kelly's Motions to Dismiss and Strike) at 13-17; Maharam v. Maharam, 510 N.Y.S.2d 104, 104 (1st Dep't 1986) (Section 2307 provides basis for valid civil claim where husband failed to disclose to his wife that he had herpes before sexual intercourse); Fan v. Sabin, 2015 WL 5547775, at *6 (N.Y. Sup. Ct. Sep. 21, 2015) (in civil case where plaintiff alleged that defendant who was plaintiff's ex-boyfriend had unprotected sexual intercourse with plaintiff knowing he had herpes and without first informing her of same, Section 2307 "imposes a duty to disclose").

<u>REQUEST NO. 28</u>
<u>Racketeering Act Thirteen: Forced Labor</u>

Racketeering Act Thirteen alleges that the defendant committed forced labor

of Jane Doe #6.  The Indictment reads as follows:

> On or about January 13, 2018, within the Central District of
> California and elsewhere, the defendant ROBERT
> SYLVESTER KELLY, together with others, did knowingly and
> intentionally obtain the labor and services of a person, to wit:
> Jane Doe #6, by means of force, threats of force, physical
> restraint and threats of physical restraint to that person or
> another person; by means of serious harm and threats of serious
> harm to that person or another person; and by means of a
> scheme, plan and pattern intended to cause such person to
> believe that, if that person did not perform such labor and
> services, such person would suffer serious harm and physical
> restraint, and a combination of such means, in violation of Title
> 18, United States Code, Sections 1589(a) and 2.

I have already instructed you on the law that applies to forced labor and you should apply

that here.

<u>REQUEST NO. 29</u>
<u>Racketeering Act Fourteen: Mann Act Violations</u>

Racketeering Act Fourteen alleges that the defendant committed two separate violations of the Mann Act, one related to transportation and the other involving coercion or enticement.  Thus, Racketeering Act Fourteen has two parts, and you will render separate verdicts on each part.  If you find that the defendant committed either or both of these two crimes, you must find that the government has proven Racketeering Act Fourteen.

A.     <u>Racketeering Act 14A: Transportation</u>

The first part, which is referred to on the verdict sheet as Racketeering Act 14A, alleges that the defendant transported Jane Doe #6 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 12A, the Indictment reads as follows:

> On or about February 2, 2018, within the Eastern District of New York and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally transport an individual, to wit: Jane Doe #6, in interstate commerce, with intent that such individual engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), in that KELLY engaged in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances, in violation of Title 18, United States Code, Sections 2421(a) and 2.

I have already instructed you on the elements of transportation in violation of the Mann Act, as well as the elements of violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), and you should apply those instructions here.

76

The Indictment provides that the defendant violated two different state laws. Either or both is sufficient to find that his conduct amounted to illegal sexual activity, but you must be unanimous as to which law was violated.

B.     Racketeering Act 14B: Coercion or Enticement

The second part, which is referred to on the verdict sheet as Racketeering Act 14B, alleges that the defendant coerced or enticed Jane Doe #6 for the purpose of engaging in illegal sexual activity.  With respect to Racketeering Act 14B, the Indictment reads as follows:

> On or about February 2, 2018, within the Eastern District of New York and elsewhere, the defendant ROBERT SYLVESTER KELLY, together with others, did knowingly and intentionally persuade, induce, entice and coerce an individual, to wit: Jane Doe #6, to travel in interstate commerce, to engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), in that KELLY engaged in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances, in violation of Title 18, United States Code, Sections 2422(a) and 2.

I have already instructed you on the elements of coercion or enticement in violation of the Mann Act, as well as the elements of violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), and you should apply those instructions here.

The Indictment provides that the defendant violated two different state laws.  Either or both is sufficient to find that his conduct amounted to illegal sexual activity, but you must be unanimous as to which law was violated.

REQUEST NO. 30
Count Two: Mann Act Transportation of Jane Doe #5

Count Two alleges that the defendant transported Jane Doe #5 in violation of

the Mann Act.

The Indictment reads as follows:

In or about and between September 2015 and October 2015,
both dates being approximate and inclusive, within the Eastern
District of New York, the Northern District of California and
elsewhere, the defendant ROBERT SYLVESTER KELLY,
together with others, did knowingly and intentionally transport
an individual, to wit: Jane Doe #5, in interstate commerce, with
intent that such individual engage in sexual activity for which a
person can be charged with a criminal offense, to wit: violations
of California Penal Law Sections 261.5(a) and 261.5(b)
(unlawful sexual intercourse with a person under 18 years old),
in that KELLY engaged in sexual intercourse with Jane Doe #5
who was under 18 years old, while he was more than three years
older than Jane Doe #5.

I have already instructed you on the elements of transportation in violation of the Mann Act

and you should apply those instructions here.

REQUEST NO. 31

Count Three: Mann Act Coercion or Enticement of Jane Doe #5

Count Three alleges that the defendant coerced or enticed Jane Doe #5 in

violation of the Mann Act.

The Indictment reads as follows:

In or about and between September 2015 and October 2015,
within the Eastern District of New York, the Northern District
of California and elsewhere, the defendant ROBERT
SYLVESTER KELLY, together with others, did knowingly and
intentionally persuade, induce, entice and coerce an individual,
to wit: Jane Doe #5, to travel in interstate commerce, to engage
in sexual activity for which a person can be charged with a
criminal offense, to wit: violations of California Penal Law
Sections 261.5(a) and 261.5(b) (unlawful sexual intercourse
with a person under 18 years old), in that KELLY engaged in
sexual intercourse with Jane Doe #5 who was under 18 years
old, while he was more than three years older than Jane Doe #5.

I have already instructed you on the elements of coercion or enticement in violation of the

Mann Act and you should apply those instructions here.

<u>REQUEST NO. 32</u>
<u>Count Four: Mann Act Coercion or Enticement of Jane Doe #5</u>

Count Four alleges that the defendant coerced a minor, Jane Doe #5, in

violation of the Mann Act.  The Indictment reads as follows:

> In or about and between September 2015 and October 2015,
> within the Eastern District of New York, the Northern District
> of California and elsewhere, the defendant ROBERT
> SYLVESTER KELLY, together with others, did knowingly and
> intentionally persuade, induce, entice and coerce an individual
> who had not attained the age of 18 years, to wit: Jane Doe #5, to
> engage in sexual activity for which a person can be charged with
> a criminal offense, to wit: violations of California Penal Law
> Sections 261.5(a) and 261.5(b) (unlawful sexual intercourse
> with a person under 18 years old), in that KELLY engaged in
> sexual intercourse with Jane Doe #5 who was under 18 years
> old, while he was more than three years older than Jane Doe #5,
> using one or more facilities and means of interstate commerce.

I have already instructed you on the elements of coercion of a minor in violation of the Mann

Act and you should apply those instructions here.

REQUEST NO. 33
Count Five: Mann Act Transportation of A Minor - Jane Doe #5

Count Five alleges that the defendant transported a minor, Jane Doe #5, in

violation of the Mann Act.

The Indictment reads as follows:

In or about and between September 2015 and October 2015,
within the Eastern District of New York, the Northern District
of California and elsewhere, the defendant ROBERT
SYLVESTER KELLY, together with others, did knowingly and
intentionally transport an individual who had not attained the
age of 18 years, to wit: Jane Doe #5, in interstate commerce,
with intent that such individual engage in sexual activity for
which a person can be charged with a criminal offense, to wit:
violations of California Penal Law Sections 261.5(a) and
261.5(b) (unlawful sexual intercourse with a person under 18
years old), in that KELLY engaged in sexual intercourse with
Jane Doe #5 who was under 18 years old, while he was more
than three years older than Jane Doe #5.

I have already instructed you on the elements of transportation of a minor in violation of the

Mann Act and you should apply those instructions here.

82

REQUEST NO. 34
Count Five: Mann Act Transportation - Jane Doe #6

Count Five alleges that the defendant transported Jane Doe #6, in violation of

the Mann Act.

The Indictment reads as follows:

On or about May 18, 2017, within the Eastern District of New
York and elsewhere, the defendant ROBERT SYLVESTER
KELLY, also known as "R. Kelly," together with others, did
knowingly and intentionally transport an individual, to wit: Jane
Doe #6, in interstate commerce, with intent that such individual
engage in sexual activity for which a person can be charged with
a criminal offense, to wit: violations of New York Penal Law
Section 120.20 (reckless endangerment) and New York Public
Health Law Section 2307 (knowing exposure of infectious
venereal disease), in that KELLY engaged in unprotected sexual
intercourse with Jane Doe #6 without first informing Jane Doe
#6 that he had contracted herpes and obtaining her consent to
sexual intercourse in these circumstances.

I have already instructed you on the elements of transportation in violation of the Mann Act,

as well as the elements of violations of New York Penal Law Section 120.20 (reckless

endangerment) and New York Public Health Law Section 2307 (knowing exposure of

infectious venereal disease), and you should apply those instructions here.

The Indictment provides that the defendant violated two different state laws.

Either or both is sufficient to find that his conduct amounted to illegal sexual activity, but

you must be unanimous as to which law was violated.

<u>REQUEST NO. 35</u>
<u>Count Seven: Mann Act Transportation - Jane Doe #6</u>

Count Seven alleges that the defendant transported Jane Doe #6, in violation of the Mann Act.

The Indictment reads as follows:

On or about May 18, 2017, within the Eastern District of New York and elsewhere, the defendant ROBERT SYLVESTER KELLY, also known as "R. Kelly," together with others, did knowingly and intentionally persuade, induce, entice and coerce an individual, to wit: Jane Doe #6, to travel in interstate commerce, to engage in sexual activity for which a person can be charged with a criminal offense, to wit: violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), in that KELLY engaged in unprotected sexual intercourse with Jane Doe #6 without first informing Jane Doe #6 that he had contracted herpes and obtaining her consent to sexual intercourse in these circumstances.

I have already instructed you on the elements of coercion or enticement of Jane Doe #6 in violation of the Mann Act, as well as the elements of violations of New York Penal Law Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure of infectious venereal disease), and you should apply those instructions here.

The Indictment provides that the defendant violated two different state laws. Either or both is sufficient to find that his conduct amounted to illegal sexual activity, but you must be unanimous as to which law was violated.

84

REQUEST NO. 36
Count Eight: Mann Act Transportation - Jane Doe #6

Count Eight alleges that the defendant transported Jane Doe #6, in violation of

the Mann Act.

The Indictment reads as follows:

On or about February 2, 2018, within the Eastern District of
New York and elsewhere, the defendant ROBERT
SYLVESTER KELLY, also known as "R. Kelly," together with
others, did knowingly and intentionally transport an individual,
to wit: Jane Doe #6, in interstate commerce, with intent that
such individual engage in sexual activity for which a person can
be charged with a criminal offense, to wit: violations of New
York Penal Law Section 120.20 (reckless endangerment) and
New York Public Health Law Section 2307 (knowing exposure
of infectious venereal disease), in that KELLY engaged in
unprotected sexual intercourse with Jane Doe #6 without first
informing Jane Doe #6 that he had contracted herpes and
obtaining her consent to sexual intercourse in these
circumstances.

I have already instructed you on the elements of transportation of Jane Doe #6 in violation of

the Mann Act, as well as the elements of violations of New York Penal Law Section 120.20

(reckless endangerment) and New York Public Health Law Section 2307 (knowing exposure

of infectious venereal disease), and you should apply those instructions here.

The Indictment provides that the defendant violated two different state laws.

Either or both is sufficient to find that his conduct amounted to illegal sexual activity, but

you must be unanimous as to which law was violated.

REQUEST NO. 37
Count Nine: Mann Act Coercion or Enticement - Jane Doe #6

Count Nine alleges that the defendant coerced or enticed Jane Doe #6, in

violation of the Mann Act.

The Indictment reads as follows:

On or about February 2, 2018, within the Eastern District of
New York and elsewhere, the defendant ROBERT
SYLVESTER KELLY, also known as "R. Kelly," together with
others, did knowingly and intentionally persuade, induce, entice
and coerce an individual, to wit: Jane Doe #6, to travel in
interstate commerce, to engage in sexual activity for which a
person can be charged with a criminal offense, to wit: violations
of New York Penal Law Section 120.20 (reckless
endangerment) and New York Public Health Law Section 2307
(knowing exposure of infectious venereal disease), in that
KELLY engaged in unprotected sexual intercourse with Jane
Doe #6 without first informing Jane Doe #6 that he had
contracted herpes and obtaining her consent to sexual
intercourse in these circumstances.

I have already instructed you on the elements of coercion or enticement of Jane Doe #6 in

violation of the Mann Act, as well as the elements of violations of New York Penal Law

Section 120.20 (reckless endangerment) and New York Public Health Law Section 2307

(knowing exposure of infectious venereal disease), and you should apply those instructions

here.

The Indictment provides that the defendant violated two different state laws.

Either or both is sufficient to find that his conduct amounted to illegal sexual activity, but

you must be unanimous as to which law was violated.

<u>REQUEST NO. 38</u>
<u>Punishment</u>

       The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations.  The duty of imposing a sentence rests exclusively upon the court.  Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence.  Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict, in any way, or, in any sense, enter into your deliberations.

<u>Authority</u>

Adapted from L. Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 9-1.

REQUEST NO. 39
Verdict Form

I have prepared a verdict form that includes the counts as listed in the Indictment.  Beneath each count is a space marked guilty or not guilty.  Your verdict as to each count must be recorded on the foreperson's verdict form.

If you find a defendant guilty of Count One, you must also answer the fourteen questions listed directly below that Count.

I remind you that the verdict form must reflect your unanimous verdict as to each count and each of the questions listed beneath Count One.

<u>CONCLUSION</u>

The government respectfully requests that the Court include the foregoing in

its instructions to the jury.  In addition, the government requests the opportunity to submit

further instructions or amend those submitted as appropriate.


Dated: Brooklyn, New York
　　　　　_____, 2021

                       Respectfully submitted,

                       JACQUELYN M. KASULIS
                       Acting United States Attorney
                       Eastern District of New York
                       271 Cadman Plaza East
                       Brooklyn, New York 11201

By:    _____/s/_____
          Elizabeth A. Geddes
          Nadia I. Shihata
          Maria Cruz Melendez
          Assistant U.S. Attorneys
          (718) 254-6430/6295/6408