EAG/NS/MCM
F.#2019R0029

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

ROBERT SYLVESTER KELLY,
    also known as "R. Kelly,"

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 19-CR-286 (S-3) (AMD)

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION IN LIMINE TO PROTECT THE IDENTITIES OF CERTAIN VICTIM-WITNESSES

JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

Elizabeth A. Geddes
Nadia I. Shihata
Maria Cruz Melendez
Assistant U.S. Attorneys
   (Of Counsel)

**PRELIMINARY STATEMENT**

The government respectfully submits this memorandum of law in support of its motion in limine in advance of trial in this matter, currently scheduled to commence on August 9, 2021. This motion in limine seeks to protect the identities of certain charged victims referred to as Jane Doe #2, Jane Doe #3 and Jane Doe #5 in the third superseding indictment (hereinafter referred to as the "Victim-Witnesses") that are expected to provide, and/or will be the subject of, sensitive and personal testimony concerning illegal sexual abuse, sexual contact and other acts committed by the defendant at trial.[1] Specifically, the government moves the Court to: (1) permit the Victim-Witnesses to testify using a pseudonym or their first names only; (2) limit references to each of the Victim-Witnesses in open court to their pseudonyms or first names only; and (3) prevent public disclosure, via cross-examination or otherwise of the Victim-Witnesses respective addresses, names of family members or exact place of employment, if any.

For the reasons set forth below, the Court should grant the government's motion.

**BACKGROUND**

I. The Charged Conduct

On March 12, 2020, a grand jury in the Eastern District of New York returned a nine-count third superseding indictment (the "Indictment"), charging the defendant with

---

[1] The government intends to file a motion to admit other acts evidence as direct evidence of the charged racketeering offense and as evidence admissible under Rules 404(b) and 413 of the Federal Rules of Evidence. In connection with that motion, the government will also request that certain victim-witnesses of the other acts evidence be permitted to testify using pseudonyms or their first names only.

1

racketeering (18 U.S.C. §§ 1962(c) and 1963), and alleging 14 racketeering acts, including bribery, sexual exploitation of a child, kidnapping, transportation of minors and other individuals for the purpose of engaging in illegal sexual activity, illegal coercion and enticement of individuals and forced labor, as well as violations of the Mann Act, related to the transportation of individuals, including a minor, for the purpose of engaging in illegal sexual activity, and illegal coercion and enticement of individuals, including a minor, in violation of 18 U.S.C. §§ 2421(a), 2422(a) and (b), and 2423(a). Among the charges are offenses that carry a ten-year mandatory minimum sentence. The defendant's alleged victims are identified sequentially in the Indictment as "Jane Doe #1" through "Jane Doe #6."

II.     The Charged Victim-Witnesses

The government anticipates that the charged victims Jane Doe #2, Jane Doe #3 and Jane Doe #5 will be called as witnesses at trial and will also be the subject of testimony and other evidence elicited at trial.

A.     Jane Doe #2

The Indictment charges the defendant with racketeering including predicate racketeering acts involving Jane Doe #2, an individual whose identity is known to the government and the defendant. Jane Doe #2 is expected to testify that she met the defendant in or about 1999 in Chicago, when she was 16 years old, after a member of the Enterprise approached her at a fast-food restaurant and informed her that the defendant wished to speak with her. Thereafter, while Jane Doe #2 was a minor under the age of 18, the defendant engaged in sexual conduct with Jane Doe #2 and, on multiple occasions, filmed Jane Doe #2 having sexual intercourse with the defendant, thereby producing child pornography.

2

B.      Jane Doe #3

The Indictment charges the defendant with racketeering including predicate racketeering acts involving Jane Doe #3, an individual whose identity is known to the government and the defendant. Jane Doe #3 is expected to testify that she met Kelly in 2003 at a mall outside the state of Illinois when she was in her early twenties and working as a radio station intern. The defendant thereafter invited Jane Doe #3 to travel to Chicago, Illinois, purportedly to conduct an interview of him in connection with her employment at the time. Following her arrival in Chicago, Jane Doe #3 was directed to a recording studio. Once there, she was escorted to a room within the studio by one of the defendant's associates, who also took and searched her suitcase. Later, while in the room, another associate made a copy of Jane Doe #3's driver's license, directed her to sign what she believed to be a nondisclosure agreement, and advised her not to talk to anyone and to keep her head down. Jane Doe #3 ultimately spent approximately three days in the room, which was locked, without sustenance. After a member of the Enterprise eventually provided her with food and a drink, she became tired and dizzy. She woke up some time thereafter and saw that the defendant was with her in the room and that her underwear had been removed without her knowledge or consent, which in combination with other circumstances, made it apparent that the defendant had sexually abused her while she was unconscious.

C.      Jane Doe #5

The Indictment charges the defendant with racketeering including predicate racketeering acts involving Jane Doe #5, an individual whose identity is known to the government and the defendant. (He is also charged with substantive Mann Act violations involving Jane Doe #5). Jane Doe #5 is expected to testify that she met the defendant in or

3

about 2015 in Florida, when she was 17 years old, after a member of the Enterprise approached her at a concert and gave her the defendant's telephone number. Thereafter, while Jane Doe #5 was a minor under the age of 18 and in violation of applicable state law, the defendant engaged in a sexual relationship with Jane Doe #5 and, on multiple occasions, filmed them engaging in sexual intercourse, thereby producing child pornography. As a result of the defendant's actions, Jane Doe #5 contracted an incurable sexually transmitted disease at the age of 17. In addition, the defendant used physical force, threats of physical force, physical restraint and threats of physical restraint and other means of psychological coercion to cause the Jane Doe #5 to engage in sexual activity not just with the defendant (to which Jane Doe #5 consented), but also sexual activity with many other women and a man. The sexual activity with the others was always at the defendant's direction and in the defendant's presence and often filmed for the defendant's use.

## ARGUMENT

At trial, the government expects that the Victim-Witnesses will testify about and/or be the subject of testimony and other evidence relevant to the crimes charged in the Indictment. Due to the sensitive nature of the testimony and evidence, as noted above, the government moves in limine for the Court to: (1) permit the Victim-Witnesses to testify using their first names only or pseudonyms; (2) limit references to each of the Victim-Witnesses in open court to their first names only or pseudonyms; and (3) prevent public disclosure, via cross-examination or otherwise of the Victim-Witnesses respective addresses, names of family members or exact place of employment, if any. As discussed below, these

measures are necessary to protect the Victim-Witnesses from potential harassment from the media and others, undue embarrassment and other adverse consequences.

I. <u>Legal Standard</u>

The Confrontation Clause guarantees defendants in all federal and state criminal prosecutions the right to confront government witnesses testifying against them. <u>California v. Green</u>, 399 U.S. 149, 173-74 (1970). This right, however, is not absolute. A defendant's rights under the Confrontation Clause must yield to accommodate other legitimate interests in the criminal trial process. <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1970). For instance, the Supreme Court has observed that there is "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986). In deciding whether to limit the scope of cross-examination, the court must balance the government's reasons for requesting such limitations against the defendant's interest in the full cross-examination of the witness. See <u>Alford v. United States</u>, 282 U.S. 687, 694 (1931); <u>Smith v. Illinois</u>, 390 U.S. 129, 134 (1968) ("[I]f the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling.").

In the trial context, courts have found that the potential for reprisals, humiliation, or annoyance are sufficient to justify nondisclosure of personal identifying

5

information by a witness. As the Honorable Allyne R. Ross, District Court Judge in the Eastern District of New York, has summarized:

> In advancing the contention that the defendant's rights under the Confrontation Clause of the Sixth Amendment require full disclosure of the witnesses' names, place of employment, and home addresses, the defendant relies on Smith v. Illinois, 390 U.S. 129 (1968), and Alford v. United States, 282 U.S. 687 (1931). Taken together, these cases have been interpreted by the Second Circuit to safeguard two main interests of the defendant: (1) obtaining information needed for in-court and out-of-court investigation of the witness; and (2) enabling defense counsel to elicit information that might be relevant to the jury's deliberations as to the credibility or knowledgeability of the witness. See United States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970). In the event the government seeks to limit disclosure of identifying information in open court, the government must provide a reason for the limitation. Id. (citing Smith, 390 U.S. at 134 (White, J., concurring)). "[T]he reason may be that the answer may subject the witness to reprisals or that the question is being used to humiliate or annoy the witness." Id. (citing Alford, 282 U.S. at 694). The defendant is then required to demonstrate a "particularized need" for disclosure of the relevant information, which the court weighs against the risks to the witness. See United States v. Bennett, 409 F.2d 888, 901 (2d Cir. 1969); see also United States v. Cavallaro, 553 F.2d 300, 305 (2d Cir. 1977).

United States v. Marcus, No. 05-CR-457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007) (internal citations omitted).

In Marcus, the court relied in part on United States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970), in which the Second Circuit analyzed the Supreme Court's holdings in Smith and Alford, and ultimately concluded that there was no prejudice to the defendant where he was precluded from inquiring about a witness's address. See Marcus, 2007 WL 330388, at *1-2. The Marcus court held that although the government should come forward with a reason for withholding a witness's address, "the reason may be that the answer may subject the witness to reprisals or that the question is being used to humiliate or annoy the

witness." Id. (ruling that potential harassment, potential loss of employment, and the explicit nature of anticipated testimony are legitimate reasons to protect witnesses' full identity and to exclude mention of witnesses' home addresses, and current places of employment); accord United States v. Pepe, 747 F.2d 632, 656 n.33 (11th Cir. 1984) (finding no error in precluding cross-examination regarding witnesses' home addresses); United States v. Navarro, 737 F.2d 625, 633-34 (7th Cir. 1984) (cross-examination of an informant about his home address and current place of employment precluded); United States v. Harris, 501 F.2d 1, 9 (9th Cir. 1974) ("If the answer may subject the witness to harassment, humiliation, or danger, then nondisclosure of the witness' home address may be justifiable."); United States v. Alston, 460 F.2d 48, 51-52 (5th Cir. 1972).  As the Marcus court concluded, the relevant precedent looks to whether the information is necessary to the defendant in order to engage in an in- or out-of-court investigation of the witness or to attempt to discredit the victim before the jury.

      In addition, the Second Circuit has upheld non-disclosure of full identifying information in order to protect the safety of the witness and his or her family.  See, e.g., United States v. Watson, 599 F.2d 1149, 1157 (2d Cir.), amended on other grounds by 690 F.2d 15 (2d Cir. 1979), 633 F.2d 1041 (2d Cir. 1980) (government witness in witness protection program permitted not to disclose his occupation); United States v. Baker, 419 F.2d 83, 87 (2d Cir. 1969) (government witness permitted to withhold name and address of current employer); United States v. Persico, 425 F.2d 1375, 1383-84 (2d Cir. 1970) (two government witnesses permitted to conceal addresses and places of employment).

      Where the government seeks to limit disclosure of a witness's identifying information in court, the government must articulate a need for withholding the identifiers,

7

such as fear of reprisal, humiliation, or annoyance to the witness. Once the government identifies a need to protect the witness' full identity, the defendant must demonstrate a "particularized need" for the information, which the Court weighs against the harm to the witness. Marcus, 2007 WL 330388, at *1. In Marcus, Judge Ross expressly found, in a case involving sex trafficking allegations, that "[i]n light of the explicit nature of the conduct that the witnesses will be testifying about . . . the court has determined that the witnesses' fear of harassment and reprisals is legitimate." 2007 WL 330388, at *1.

Similarly, in another trial case in this district, the Honorable Sandra J. Feuerstein, then District Court Judge in the Eastern District of New York, also permitted victims testifying in graphic detail about acts of forced prostitution and sexual contact with customers and others to testify using their first names only. See Order dated April 26, 2011, at 2, United States v. Rivera, 09-CR-619 (E.D.N.Y.) (Docket No. 231). In addition, in a case where the defendant was charged with abusive sexual contact and assault on an airplane, the Honorable Carol B. Amon, District Court Judge in the Eastern District of New York, permitted the victim-witness to testify using her first name only. See Transcript of April 5, 2016 Pre-Trial Conference at 6-10, United States v. Quraishi, 15-CR-598 (E.D.N.Y.) (Docket No. 46).

In United States v. Carlos Richard Martinez, 17-CR-281 (E.D.N.Y.), the Honorable Brian M. Cogan, District Court Judge in the Eastern District of New York, permitted a victim-witness to testify at trial using a pseudonym in a case involving testimony of a similar nature where the defendant was charged with crimes involving sexual abuse. See Order at 2-3, United States v. Carlos Richard Martinez, 17-CR-281 (E.D.N.Y.) (Docket No. 34). In rendering its decision, the Martinez court stated:

8

> Here, Jane Doe is expected to testify in explicit detail about allegedly being the victim of degrading and humiliating treatment by the defendant. The case has already received significant national and local press coverage. Revealing Jane Doe's identity would likely cause her anxiety and risk social stigma. More broadly, requiring Jane Doe to disclose her identity could chill the willingness of other alleged victims of sex crimes to come forward. Furthermore, defendant has not identified any "particularized need" for the disclosure of Jane Doe's identity information in open court. Defendant already knows who Jane Doe is, and will not be prevented from mounting a defense in the event that she is referred to only as Jane Doe. Additionally, although her address, family members' names, and place of employment are entirely irrelevant to her testimony, disclosing these details risks allowing third parties to identify her.

Id. Moreover, at certain sentencings of sex traffickers, courts in this district have permitted victims to give in-court victim impact statements using only their first name or the name Jane Doe. See, e.g., United States v. Raniere, et al., 18-CR-204 (NGG) (Docket No. 838 (order permitting victims to make statements using pseudonyms and noting that victims were permitted to testify at trial using nicknames, first names or pseudonyms)); see also United States v. Angel Cortez-Granados, 11-CR-657 (SLT); United States v. Benito Lopez-Perez, et al., 11-CR-199 (CBA).

II.     Analysis

The limited protections requested by the government for the Victim-Witnesses' personal identifiers are reasonable, necessary and appropriate to protect their safety and well-being, avoid harassment of the Victim-Witnesses by the press and others, and prevent undue embarrassment and other adverse consequences, such as retaliation by the defendant's supporters, need for relocation, or loss of employment. The Victim-Witnesses are expected to testify in explicit detail and/or be the subject of highly sensitive and personal

9

testimony concerning their medical history and illegal sexual abuse by the defendant, some of which occurred while most of the Victim-Witnesses were under the age of 18.

Since the defendant's arrest, the case has garnered significant attention from local, national and international media sources, which can only be expected to increase during trial. The defendant's arrest and indictment received widespread coverage in the media and the case has continued to receive significant attention given the defendant's career as a well-known musician and the nature of the charges.[2] The news coverage has not only centered on the defendant, but has also focused on victims, attempting in certain instances to identify unnamed victims in the Indictment through various channels.[3] In addition to the attention that the case has received from the press, the case has likewise garnered widespread

---

[2] See, e.g., "R. Kelly Indicted On Federal Kidnapping, Racketeering and Child Sex Related Charges in NYC; Separate New Charges Also Filed in Chicago", NBC New York (July 12, 2019), available at https://www.nbcnewyork.com/news/local/surviving-r-kelly-sex-crime-arrest-new-york-city-brooklyn-chicago-federal-prosecutor/1628943/; "Here's How the Feds Got R Kelly", Vulture Magazine (July 12, 2019), available at https://www.vulture.com/2019/07/r-kelly-arrested-again-federal-charges-racketeering.html; "R Kelly Denied Bail in Sex Crime Case in New York", BBC News, (Aug. 2, 2019), available at https://www.bbc.com/news/world-us-canada-49211063; "R. Kelly Faces New Bribery Charge in Brooklyn Criminal Case", Reuters (Dec. 5, 2019), available at https://www.reuters.com/article/us-people-rkelly/r-kelly-faces-new-bribery-charge-in-brooklyn-criminal-case-idUSKBN1Y92S5; "New York Federal Prosecutors File New Charges Against R. Kelly," NPR Music (March 13, 2020), available at https://www.npr.org/2020/03/13/815500741/new-york-federal-prosecutors-file-new-charges-against-r-kelly; "R. Kelly Hit with New Criminal Charges of Racketeering", USA Today (March 13, 2020), available at https://www.usatoday.com/story/entertainment/celebrities/2020/03/13/r-kelly-new-criminal-charges-racketeering-federal-prosecutors-nyc/5045785002/; "R. Kelly's Brooklyn Federal Trial Pushed Back Again, New Date Set For August", New York Daily News (Feb. 9, 2021) available at http://www.nydailynews.com/news/crime/ny-r-kelly-nyc-federal-trial-new-date-20210209-iw3rhdw3vzgbrojmdxthaaphfe-story.html.

[3] See, e.g., "R. Kelly Knowingly Exposed Sex Partners to Herpes, Prosecutors Say", The New York Times (March 13, 2020), available at https://www.nytimes.com/2020/03/13/nyregion/r-kelly-herpes.html.

attention and discussion via multiple social media platforms such as Facebook, Instagram, YouTube and Twitter. This attention has not only consisted of discussions regarding the case generally, but has included attempts by members of the public to determine the identities of the Jane Does named in the Indictment and other potential witnesses, as well as online campaigns aimed at individuals presumed to be connected to the trial.[4]

Moreover, as the Court is aware, the government has arrested and charged multiple individuals in connection with interference with this case, arising from conduct including arson, attempted bribery, and harassment aimed at witnesses in this case. See United States v. Russell, 20-CR-427 (E.D.N.Y.); United States v. Arline, 21-CR-44 (E.D.N.Y.); United States v. Williams, 20-CR-395 (E.D.N.Y.).

Under these circumstances, maintaining the anonymity of the Victim-Witnesses is particularly appropriate. Significantly, despite the case's publicity, two of the Victim-Witnesses, Jane Doe #2 and Jane Doe #3, have not spoken publicly about their experiences and instead have maintained their anonymity with respect to the allegations against the defendant. While Jane Doe #5 has spoken publicly about some of her experiences with the defendant, her anticipated testimony at trial will be more fulsome than her prior public disclosures and will include sensitive information that has not been previously publicly revealed. Publicly revealing the Victim-Witnesses' identities would

---

[4] See, e.g., "'Surviving R. Kelly' Part II: What Happened to the Surviving Lies Facebook Page", Newsweek (January 3, 2020), available at https://www.newsweek.com/surviving-r-kelly-part-ii-surviving-lies-facebook-page-lifetime-1480286 (discussing Facebook's removal of account created with the purpose of discrediting the defendant's accusers and sharing their personal contact information, the creation of "a number of copycat pages," and claims by reported accusers of harassment and receipt of threatening letters).

11

cause needless anxiety and social stigma, which concerns are further heightened by the defendant's notoriety and the long memory of the internet.

Moreover, requiring the Victim-Witnesses to provide publicly full identifying information does not serve any of the legitimate purposes identified by the courts, such as the defendant's obtaining information for in- or out-of-court investigation or attempting to discredit the witnesses before the jury. Rather, requiring the Victim-Witnesses to provide their identifying information in open court would serve only to harass, embarrass and "to humiliate or annoy the [victims]." Marti, 421 F.2d at 1266. These purposes are directly at odds with the rights that victims are to be afforded under the Crime Victims' Rights Act, which include the right to be heard, but also to be treated with respect for their dignity and privacy. See 18 U.S.C. § 3771(a)(8). Indeed, requiring victims of sex crimes to provide their names in public could chill their willingness to testify, for fear of having their personal histories publicized, and the embarrassment and humiliation that such publicity could cause them as they rebuild their lives. In addition, a ruling requiring the Victim-Witnesses to disclose their full identities publicly could cause other victims—including minor victims—to avoid seeking help from law enforcement because of fear that coming forward could subject them to further harassment and embarrassment, as well as retaliation by a defendant's supporters.

Against this well-grounded need to limit fully identifying the Victim-Witnesses publically, the defendant will be unable to articulate any "particularized need" for the disclosure of the Victim-Witnesses' identity information in open court. Counsel for the defendant is currently aware of the identity of the charged Jane Does, which will be confirmed by the government prior to trial, and has been or will be provided with any

12

discoverable statements for the Victim-Witnesses in the government's possession.[5] The reasonable limitations requested by the government, therefore, will not prevent the defendant from presenting a defense. Indeed, the identifying information the government seeks to limit in open court, including the Victim-Witnesses' full names, specific employment and family information, is largely irrelevant to the testimony of the Victim-Witnesses. There is a substantial risk, however, that disclosure of such information will identify the Victim-Witnesses with particularity, and thus subject them to harassment, retaliation and embarrassment, or additional consequences, such as a need to relocate or loss of employment. See, e.g., United States v. Bennett, 409 F.2d 888, 901 (2d Cir. 1969) (district court did not err in allowing government witness not to identify place of employment where defense failed to demonstrate a "particularized need" for the information).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motion in its entirety and limit the disclosure at trial of the Victim-

---

[5] The jury will also be informed of the Victim-Witnesses' full names. During testimony, the Victim-Witnesses will confirm their true names through photographs depicting their full names underneath, which will be admitted into evidence and shown to the jury (but not the public). The government also respectfully requests that, during the in-person voir dire process, photographs of the Victim-Witnesses depicting their full names be shown to prospective jurors (but not the public) to ensure that members of the jury do not know the Victim-Witnesses.

Witnesses' personal identifying information and allow them to testify using only their first names or using pseudonyms.

Dated:   Brooklyn, New York
         July___, 2021

                                      Respectfully submitted,

                                      JACQUELYN M. KASULIS
                                    Acting United States Attorney

By:      /s/_____
       Elizabeth A. Geddes
       Nadia I. Shihata
       Maria Cruz Melendez
       Assistant United States Attorneys
       (718) 254-7000

cc: All defense counsel of record (by ECF)