1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          : 19cr286(AMD)
                                   :
          Plaintiff,               :
                                   :
     -against-                     : United States Courthouse
                                   : Brooklyn, New York
ROBERT SYLVESTER KELLY,            :
                                   :
          Defendant.               : Thursday, July 15, 2021
                                   : 1:00 p.m.
                                   :
                                   :
                                   :

- - - - - - - - - - - - - - X

        TRANSCRIPT OF CRIMINAL CAUSE FOR CURCIO HEARING
          BEFORE THE HONORABLE ANN M. DONNELLY
              UNITED STATES DISTRICT JUDGE

                  A P P E A R A N C E S:

For the Government:  JACQUELYN KASULIS, ESQ.
                     Acting United States Attorney
                       Eastern District of New York
                       271 Cadman Plaza East
                       Brooklyn, New York 11201
                 BY:  MARIA CRUZ MELENDEZ, ESQ.
                      NADIA SHIHATA, ESQ.
                      Assistant United States Attorneys

For the Defendant:   AIELLO & CANNICK
                       69-06 Grand Avenue
                       Maspeth, NY
                     BY:DEVEREAUX LEON CANNICK, ESQ.

For the Defendant:   THE LAW OFFICE OF THOMAS A. FARINELLA
                       260 Madison Avenue, 8th Floor
                       New York, NY 10016
                     BY:THOMAS A. FARINELLA, ESQ.


COURT REPORTER:      SOPHIE NOLAN, RPR, OCR
                     E-mail:  NolanEDNY@aol.com

2

```
 1                      BLANK LAW, PC
                          444 S. Washington Ave.
 2                        Royal Oak, MI 48067
                        BY:NICOLE BLANK BECKER, ESQ.
 3
                        GREENBERG TRIAL LAWYERS
 4                        53 West Jackson, Suite 1260
                          Chicago, IL 60604-6060
 5                      BY:STEVEN A GREENBERG, ESQ.
                          (Via teleconference.)
 6
                        LEONARD MEYER LLP
 7                        120 N. LaSalle, Ste 20th Floor
                          Chicago, IL 60602
 8                      BY:MICHAEL LEONARD, ESQ.
                          (Via teleconference.)
 9
       Curcio counsel:    MEISTER SEELIG & FEIN LLP
10                        125 Park Ave, 8th Floor
                          New York, NY 10017
11                      BY:ILANA HARAMATI, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                        Proceedings                    3
```

1              (In open court.)

2          (The Hon. Ann M. Donnelly, presiding.)

3              (Defendant present.)

4          THE COURTROOM DEPUTY:  This is criminal cause for a

5   Curcio hearing, docket number 19-CR-286, *USA versus Robert*

6   *Kelly*.

7          Counsel state your appearance, Government first.

8          MS. MELENDEZ:  Good afternoon, Your Honor.  Maria

9   Cruz Melendez and Nadia Shihata.

10         MS. BLANK BECKER:  Nichole Blank Becker on behalf of

11  Mr. Kelly seated to my left and seated to my right is attorney

12  Devereux Cannick and to my far left is attorney Tom Farinella.

13  Thank you, Judge.

14         THE COURT:  Good afternoon.

15         MS. HARAMATI:  Ilana Haramati, Curcio counsel.

16         THE COURT:  Good afternoon.

17         MR. GREENBERG:  Steve Greenberg and Mike Leonard on

18  the phone.

19         THE COURT:  Thanks.  And I think we have

20  Ms. Rodriguez also; is that correct?

21         MS. RODRIGUEZ:  Yes, Your Honor, I am present in

22  your virtual courtroom.

23         THE COURT:  Okay.  I just want to be sure everybody

24  can hear.  Just a quick outline of what we're going to do

25  today.  Parenthetically, I did get Mr. Cannick's letter which

Proceedings                                                    4

1    I will address at the end of today's proceeding.

2           This is a continuation of the Curcio hearing that we

3    began I believe on the 17th.  This is hearing is taking place

4    pursuant to the Court's obligation to investigate whenever,

5    quote, the spectre of attorney conflicts of interest arise.

6           In connection with today's proceeding, I have

7    reviewed all of the submissions that I have gotten, not just

8    since -- before June 17th, but also those that were submitted

9    after that hearing.  I am just going to remind everyone that I

10   am not here to mediate disputes among the lawyers.  I am not

11   interested in anything that does not relate to the discrete

12   issues of the extent to which it is -- and I think it's only

13   Ms. Becker at this point who may have a conflict.

14          I don't care when Mr. Greenberg met Ms. Rodriguez.

15   I have no interest in anything to do with that.  I am only

16   interested in the extent to which there is a conflict because

17   Mr. Kelly has a right to have conflict-free representation and

18   if he's going to waive it, he is entitled to know what the

19   conflict is and have it explained to him.

20          As I said before, I appointed Ms. Haramati as Curcio

21   counsel and I thank her for her efforts in this regard to

22   advise Mr. Kelly about any potential conflicts and we will

23   talk about that in a bit.

24          Included in the submissions that I received were an

25   e-mail and some other materials from Ms. Rodriguez about this

Proceedings                                                5

1   possible conflict of interest relating to the two witnesses.

2   I am going to remind counsel there is one witness that we are

3   referring to as Jane Doe No. 5.  Do not use her name.  She is

4   to be referred to as Jane Doe No. 5, but I do have some

5   questions for Ms. Rodriguez regarding some of the materials

6   that she submitted.

7           Some of the those questions will, in all likelihood,

8   implicate the attorney/client privilege, her representation of

9   these two witnesses, and for those portions that do involve

10  her attorney/client relationship with Jane Doe No. 5 and the

11  other witness, I will have a conversation with her ex parte.

12          Some of the inquiry that I have of Ms. Rodriguez I

13  think we can do in open court, but I am going to ask

14  Ms. Rodriguez to let me know the extent to which anything that

15  I am asking or that she wants to discuss implicates that

16  privilege.  And I also want to make sure --

17          Ms. Rodriguez, you haven't been here before, but we

18  are referring to one of your clients as Jane Doe No. 5; okay?

19          MS. RODRIGUEZ:  Yes, Your Honor.

20          THE COURT:  And then I think we are referring to the

21  other witness by her name, Ms. Savage; is that correct?

22          MS. MELENDEZ:  That's correct.

23          THE COURT:  Is there anybody else that is to be

24  referred to as a Jane Doe?

25          MS. MELENDEZ:  For the purposes of this discussion I

Proceedings                                    6

1    believe that's it, Your Honor.

2              THE COURT:  Okay.  Ms. Rodriguez, I'm going to ask

3    you some of the questions that we can talk about in open court

4    and if these relate to subjects that will involve discussions

5    about privileged communication, let me know, okay?

6              MS. RODRIGUEZ:  Okay.

7              THE COURT:  When were you retained by Jane Doe No. 5

8    and Joycelyn Savage?

9              MS. RODRIGUEZ:  I was retained by them in July of

10   2019.

11             THE COURT:  And for how long?

12             MS. RODRIGUEZ:  And the exact date -- I'm sorry.  I

13   was looking for the exact date, but it was very early July

14   2019.

15             THE COURT:  Okay.  And for how long did you

16   represent them?

17             MS. RODRIGUEZ:  I represented them jointly until

18   about September 1 of 2019.

19             THE COURT:  When did you first come into contact

20   with Ms. Becker?

21             MS. RODRIGUEZ:  I first met Ms. Becker in person at

22   the bond hearing that was at the Dirksen Center in July 2019.

23             THE COURT:  At the what center?

24             MS. RODRIGUEZ:  The Federal Building in Chicago.

25   It's called the Dirksen building.

Proceedings                                                   7

1          THE COURT:  Dirksen, okay.  And was that in

2   connection with your representation of these two women?

3          MS. RODRIGUEZ:  It was because -- yes, I would say

4   yes.

5          THE COURT:  And at the point that you met

6   Ms. Becker, were you representing Jane Doe No. 5 and

7   Ms. Savage the first time you met her?

8          MS. RODRIGUEZ:  Yes.

9          THE COURT:  Did you ever give Ms. Becker any

10  instructions regarding her interactions with those witnesses?

11         MS. RODRIGUEZ:  Yes.

12         THE COURT:  And what were your instructions?

13         MS. RODRIGUEZ:  I had asked her to please not

14  contact my clients without my knowledge.

15         THE COURT:  And what form --

16         MS. RODRIGUEZ:  And I also --

17         THE COURT:  Go ahead.  I am sorry.

18         MS. RODRIGUEZ:  I'm sorry.  I know there is a delay

19  so I am trying to speak slowly so you can all hear me.

20         THE COURT:  That's fine.  That's fine.

21         MS. RODRIGUEZ:  The second one was to please not

22  give them any advice about things that might pertain to the

23  case or their interests.

24         THE COURT:  And in what form did those -- what form

25  did those instructions take?

```
                          Proceedings                          8
```

1          MS. RODRIGUEZ:  The form was through text message

2    and through e-mail and through in-person.

3          THE COURT:  And do you know approximately when you

4    gave these various instructions?

5          MS. RODRIGUEZ:  Yes -- and actually on the phone.  I

6    spoke to her on the phone.  So, on July 15th, I sent her a

7    text message with my e-mail address and called her and we had

8    a very lovely conversation.  And I communicated to her.

9          THE COURT:  What did you say?

10          MS. RODRIGUEZ:  I said specifically I don't want the

11   lines to be blurred regarding our roles and I think they are

12   already blurred.  If you could please not contact them at all

13   without my knowledge.

14          THE COURT:  Did you text it to -- sorry.  Let me

15   finish the question.  I know we have a little bit of a delay.

16   Did you text that?  Did you e-mail it?  Did you say it in

17   person?  Did you do all three of those things?

18          MS. RODRIGUEZ:  Yes.  The text message was sent on

19   July 15, 2019 at 5:15 p.m. Then the phone call with Ms. Becker

20   was later that day and we spoke for about 45 minutes.  Then I

21   saw her on July 16th in person.  I met her about 1:00 right

22   before the hearing and we discussed it and it was very

23   pleasant.  She seemed to have understood what I was asking her

24   to do.

25          THE COURT:  You said she seemed to understand when

Proceedings                                                          9

1   you met in person.  Did you receive any response to the text

2   message that you sent on July 15th?

3              MS. RODRIGUEZ:  No.

4              THE COURT:  And is there a way to tell when you send

5   a text message whether or not the person has received it?

6              MS. RODRIGUEZ:  Not through the technology that I

7   had at the time.

8              THE COURT:  For example, would your phone tell you

9   if a message did not go through?

10              MS. RODRIGUEZ:  No, it wouldn't, but I saved the

11   text message on my device which I still have and I have it in

12   my hand.

13              THE COURT:  Okay.  I think it may be included in

14   some of the materials that I received.  And so you still have

15   it on the phone; is that correct?

16              MS. RODRIGUEZ:  Yes.

17              THE COURT:  So sometimes when people send text

18   messages and it doesn't go through, you get an alert that

19   tells you that it didn't go through.  Does your phone do that?

20              MS. RODRIGUEZ:  Yes, it does.

21              THE COURT:  Did it do it at the time that you sent

22   these text messages in -- is it 2019?

23              MS. RODRIGUEZ:  Correct, 2019.  It did not -- I'm

24   sure she received it because we spoke after that text message.

25              THE COURT:  What specifically did she said that led

Proceedings                                        10

1    you to the conclusion that she got the text message?

2              MS. RODRIGUEZ:  On the phone I remember her saying,

3    Gloria, I'm glad they retained you.  I'm glad they retained an

4    attorney.  I'm Mr. Kelly's attorney, whatever you need -- the

5    lines are drawn and I'm not going to step on your toes and she

6    made it known that there was a clear understanding of my

7    concern.

8              THE COURT:  So this was July 16th --

9              MS. RODRIGUEZ:  July 15th, the phone call, and the

10   text was July 15th.

11             THE COURT:  And you met her in person on the 16th

12   when you had this conversation; correct?

13             MS. RODRIGUEZ:  Correct.  I actually met her and

14   Mr. Greenberg in person for the first time July 16th.

15             THE COURT:  Following those contacts on the 15th and

16   the 16th -- did you also say that you sent an e-mail?

17             MS. RODRIGUEZ:  In my notes I saw that I put an

18   e-mail there, but I don't think that my office maintained a

19   record of that.  So I don't independently remember sending an

20   e-mail.  I had a little note here that said I sent an e-mail,

21   but I don't actually have the e-mail.

22             THE COURT:  Okay.  Now, following these

23   conversations, did you learn at some point that Ms. Becker was

24   contacting either or both of these women without letting you

25   know?

SN        OCR        RPR

1          MS. RODRIGUEZ:  Yes.

2          THE COURT:  How did that happen?

3          MS. RODRIGUEZ:  Well, Jane Doe No. 5 was kind of the

4   point of contact for Ms. Savage and it was obvious to me that

5   despite the lovely conversation that I had with Ms. Becker

6   that Ms. Becker was still relaying to them information about

7   Mr. Kelly's case and giving them what I believed was legal

8   information, which was contradictory to what I was advising

9   them on.

10          THE COURT:  All right.  Go ahead, sorry.

11          MS. RODRIGUEZ:  And I can give you -- sure.

12   Specifically there was an issue about what to do with the

13   media and I remember asking them where are you coming with

14   this and their reply was, Ms. Becker said, and then -- I

15   was -- I have no doubt in my mind that Ms. Becker was

16   continuing to speak to my clients, number one, without my

17   knowledge; and, number two, relaying information that was of a

18   material nature in response to their legal interests.

19          THE COURT:  Now, I want to find out what the

20   specifics of that information was, but I am -- it sounds to me

21   like it would require you to divulge conversations that you

22   had with your clients that are privileged.  Is there anything

23   you can tell us --

24          MS. RODRIGUEZ:  That's correct, Your Honor.

25          THE COURT:  Is there anything you can tell us about

Proceedings                                                        12

1   that that is not privileged?  If you can't, that's fine.  We

2   can --

3           MS. RODRIGUEZ:  Yes.  The -- the breakdown of my

4   relationship with both of my clients, I believe, was led -- or

5   I believe was encouraged by them still receiving information

6   that was contrary to my advice for them and when I formally

7   severed the relationship, I received instruction in a letter

8   from my clients, signed by both of them, seeking to turn my

9   file over to their new attorney.  The new attorney was not

10  named in the letter, but when I spoke to Jane Doe No. 5 and

11  asked her where she wanted me to send it to, she gave me

12  Ms. Becker's contact information.  And then I had a discussion

13  with her about that and how I felt that it was concerning to

14  me that she would be representing them.

15          THE COURT:  Is there anything else that you can tell

16  us.  You put quite a bit of information into your submissions.

17          Is there anything else that you can tell us that's

18  not privileged that's relevant to this inquiry?

19          MS. RODRIGUEZ:  I believe that would be it as far as

20  what is not privileged.

21          THE COURT:  I think that at this point we will

22  recess so that the Court can do an inquiry ex parte on the

23  topics that have to do with the attorney/client privilege.  I

24  don't think that will take all that long, but I am going to

25  leave the courtroom to do that and we will be in recess until

Proceedings                                           13

1    we are finished with that.

2                (Pause in proceedings.)

3                THE COURT:  Ms. Rodriguez, can you hear us?

4                MS. RODRIGUEZ:  Yes, Your Honor, I can.

5                THE COURT:  I spoke with Ms. Rodriguez about the

6    communications that implicated the attorney/client privilege.

7    There was one item or one incident that the witness described

8    that I think is appropriate.  It does not implicate the

9    attorney/client privilege.

10               So I am just going to ask the witness to describe

11   the conversation -- prior to the Court speaking with the

12   witness ex parte, the witness described a conversation that

13   she had with Ms. Becker on the 16th of July.  I think that was

14   the date.  Following that conversation the witness, during the

15   ex parte part of the inquiry --

16               You talked about a conversation that you had with

17   Mr. Greenberg regarding your concerns about Ms. Becker.  Can

18   you describe that conversation?

19               MS. RODRIGUEZ:  Yes, Your Honor.  About a couple of

20   weeks after the federal bond hearing in Mr. Kelly's case in

21   Chicago, I had spoken with Mr. Greenberg about a different

22   issue on the phone and it was a very brief conversation that

23   I'm sure Mr. Greenberg may not remember, but in the

24   conversation towards the end of this conversation I had

25   mentioned to him if he could please talk to Ms. Becker to,

Proceedings                                14

1    quote, rein her in.  And the response that Mr. Greenberg

2    said -- it was something to the effect of, good luck with

3    that.

4              THE COURT:  When you say "rein her in," I just want

5    to be sure -- what do you mean; rein her in regarding what?

6              MS. RODRIGUEZ:  Rein her in in respect to not

7    communicating with my clients without my knowledge.

8              THE COURT:  Okay?

9              MS. RODRIGUEZ:  It was apparent to me that

10   Ms. Becker continued speaking with them regularly and that my

11   communications with Ms. Becker to please stop went unheeded.

12   So I took my concern to Mr. Greenberg since I knew at the time

13   Ms. Becker was on Mr. Kelly's legal team to ask him to please

14   rein her in from continuing that behavior and he had said

15   something to the effect of good luck with that.

16             THE COURT:  Okay.  I don't have any further

17   questions for the witness.

18             Let me start with the Government, are there any

19   additional questions that you want to put to the witness or

20   you want me to put to the witness to complete the record on

21   this issue?

22             MS. CRUZ MELENDEZ:  No, Your Honor.

23             THE COURT:  And how about from Mr. Kelly's side; any

24   questions to put to the witness regarding the issues that I am

25   interested in?  I will put the question, but you tell me what

Proceedings                                          15

1    the question is.

2              MS. BLANK BECKER:  I actually just have things that

3    I would like to address to the Court.  They're not specific

4    questions to Ms. Rodriguez.  Thank you.

5              THE COURT:  All right, I think it's probably okay --

6    is it okay to let the witness go?

7              MS. CRUZ MELENDEZ:  The Government has no objection

8    to that.

9              THE COURT:  All right.  I want to be sure that

10   Curcio counsel -- is there anything that you need to hear from

11   her?

12             MS. HARAMATI:  No, Your Honor.

13             THE COURT:  And nothing else from Mr. Kelly's side

14   that we need to put to the witness?

15             MS. BLANK BECKER:  No, Judge.  Thank you.

16             THE COURT:  Thank you very much, Ms. Rodriguez.  You

17   are free to go?

18             MS. RODRIGUEZ:  Great.  Thank you, Your Honor.

19             THE COURT:  Okay.  Now I will hear from the parties.

20   If there's anything additional, any additional things they

21   want me to look at, anything else that they want me to say.

22             I don't know, Ms. Becker, if in the time since that

23   conference in June you have had a chance to refresh your

24   recollection about the matters at issue in this hearing or if

25   there's anything that you want to say, bearing in mind that

Proceedings                                          16

1   the focus of the hearing is Mr. Kelly's right to conflict-free

2   counsel.

3               As difficult as these inquiries are, it's not about,

4   unless it's a factual question about -- it's not about you, in

5   other words.  It's about whether there is a conflict and I

6   will repeat; it's also not about whatever disputes and

7   disagreements that you have with Mr. Leonard and

8   Mr. Greenberg.

9               Keeping that in mind, is there something specific

10  that you have to add?

11              MS. BLANK BECKER:  Thank you, Judge.  Judge and I

12  don't mean to belabor the point, but I think it's appropriate

13  for me to make a record as well and just forward my thoughts.

14              Judge, I did have a chance to look at the messages

15  that were sent on the piece of paper that was given to us from

16  Ms. Rodriguez.  Obviously it does show that she attempted

17  and/or did, apparently -- she can't even tell us --

18              THE COURT:  Did you get it?

19              MS. BLANK BECKER:  Yes, yes.

20              THE COURT:  But did you get it when it was sent?

21  That's the question.

22              MS. BLANK BECKER:  Judge, unfortunately I have zero

23  recollection of seeing it.  It doesn't mean I didn't get it.

24  It just means I have zero recollection of seeing this.

25              THE COURT:  Okay.

Proceedings                                          17

1          MS. BLANK BECKER:  Thank you.  Additionally, Judge,

2    what I provided for the Court since I had an opportunity to

3    now review the materials that I had specifically pertaining to

4    Ms. Rodriguez and/or my communications with the girls --

5          THE COURT:  The women.

6          MS. BLANK BECKER:  I'm sorry.

7          THE COURT:  They are women.  They are adult women.

8          MS. BLANK BECKER:  The women.  You are correct,

9    Judge.  I apologize.  Judge, my -- my research based on the

10   text messages that I was able to look through, Judge, and I

11   supplied this to the Court, simply show that on July 13th,

12   Jane Doe No. 5 sent me a text message indicating that she

13   hired a spokesperson and that spokesperson was Ms. Gloria

14   Rodriguez.  So I was made aware of that on the 13th.

15         And then on that particular day I also had some

16   conversations -- text message conversations with Mr. Greenberg

17   and when I had conversations with Mr. Greenberg, he was asking

18   me if I would ask the girls if they were coming to court that

19   day.

20         THE COURT:  I am just going to stop you.

21         MS. BLANK BECKER:  Sorry.

22         THE COURT:  I am -- it is 2021.  We are talking

23   about women in their 20s.  They are not girls.  Please do not

24   refer to them that way.

25         MS. BLANK BECKER:  I apologize, Judge.  It's been

Proceedings                                    18

1    two years.

2              THE COURT:  They were women then, too.  Go ahead.

3              MS. BLANK BECKER:  The discussion was about the

4    woman and in that text message he had wanted me to contact

5    them and specifically I indicated to Mr. Greenberg, and this

6    is in the text message:  They said they are having Gloria

7    Schmidt be their spokesperson.  Apparently she told them she

8    had lunch with you the other day, so this would have been

9    prior to July 13th.  I am sure they would like to come to the

10   hearing.  Do you think they should, and what time.  And his

11   response, Judge, was:  People talk too much.  We had a meeting

12   in a secret location so nobody would know.

13             THE COURT:  What does this have to do with your

14   communications with these two represented witnesses?

15             MS. BLANK BECKER:  It does, Judge, because if I

16   could finish that sentence --

17             THE COURT:  I read it.  You submitted it so there's

18   no reason to keep reading it.

19             MS. BLANK BECKER:  Just for the record.

20             THE COURT:  It's on the record.

21             MS. BLANK BECKER:  So, Judge, Mr. Greenberg told me

22   that she couldn't represent the women.  Okay.  So although I

23   knew on my own from conversations with Ms. Rodriguez that she

24   was going to represent them --

25             THE COURT:  But that is -- I am sorry to sound

Proceedings                                    19

1    impatient, but the question is whether you knew and you said

2    the last time that you did know that she represented them.  So

3    that's why I am not really interested --

4         Mr. Greenberg wants to get off the case.  If he were

5    on the case I would ask him these questions, but my intention

6    is to excuse them.  So that's why I am not really -- that is

7    why I am trying to explain it to you.  Maybe there is a forum

8    for you all to hash out your complaints about one another.  It

9    is not here.  I don't want to know about it, A, because I

10   think it's a waste of time; and, B, it's not a focus of what

11   I'm focusing on, which is your client's right to conflict-free

12   representation.

13        I think if we keep our eye on the ball of what

14   Mr. Kelly's interests are and not what our own personal

15   interests are, we can accomplish that objective.  Maybe

16   there's a place for you all to argue about what Mr. Greenberg

17   said or what someone else said, but I think it's clear that

18   you were aware at the time that Ms. Rodriguez was representing

19   these two women; correct so far?

20        MS. BLANK BECKER:  That is correct, Judge.

21        THE COURT:  And I think the last time we also

22   established that you were aware also of the rule that a lawyer

23   should not speak to represented people.

24        MS. BLANK BECKER:  That's correct, Judge, and that's

25   why I'm trying to make this record, Judge.

Proceedings                                        20

1          THE COURT:  But whatever Mr. Greenberg said isn't

2     part of the record.  I am encouraging you to focus on these

3     things.  That's my question.

4          My question is, in your review of your materials is

5     there anything that you want to add about your interactions

6     with these two represented women in connection with this case?

7          MS. BLANK BECKER:  Yes, Judge.  With all due

8     respect, I do understand exactly what you're saying.  So,

9     thank you, Judge.  The reason I brought this up is simply

10    because even though I -- strike that.

11          I knew that they were represented.  Therefore, the

12    same exact day when they text me, I supplied the Court with

13    texts that I responded and I said, Ask Gloria.  That was on

14    July 13th.  There was a number of texts between July 13th and

15    July 16th that I did not respond to and on the 16th I texted

16    them back, Ask Gloria.  And ultimately, Judge, the very next

17    day, the 16th, that's when the women sent me an article which

18    I produced for the Court as well, and they indicated that in

19    their text message that as a result of that article that was

20    on a social media outlet, that they did not want her as their

21    lawyer anymore.

22          THE COURT:  They told you this?

23          MS. BLANK BECKER:  In a text message, Judge, yes,

24    yes.  And that was the following day after Mr. Kelly's

25    hearing.

Proceedings                                        21

1          THE COURT:  So, is it your position that you thought

2     at that time she was no longer representing them?

3          MS. BLANK BECKER:  I actually still thought she was

4     doing the media stuff with them, yes, I actually did, but they

5     accidentally -- and I think I brought this up last time and

6     it's in the text message as well, they accidentally ended up

7     sending me the termination letter.  And, so, I had a chance to

8     read it because at first I didn't know what it was, but it

9     started saying, Hey, Gloria --

10         THE COURT:  I know what it says.  It's in the

11    record.  And we talked about that the last time.

12         But it is the case that -- and, you know, you

13    continued to have significant contacts with them and

14    conversations during this period; is that true?

15         MS. BLANK BECKER:  Judge, I had no significant

16    conversations.  Did I answer if they would say, what day is

17    court or something to that effect, yes.  Did I have

18    significant conversation as has been indicated somewhat by

19    Ms. Rodriguez about legal stuff, never.

20         THE COURT:  Did you have conversations with them

21    about anything having to do with the case?

22         MS. BLANK BECKER:  Yes, I would give them what date

23    if they would ask, Judge.  I believe at one point they asked

24    if he needed clothing, a suit, for court.  I responded to

25    that.  There were several things of that nature that I did

Proceedings                              22

1    respond to, yes, Judge.

2          THE COURT:  Did you talk to them about their

3    relationship with Ms. Rodriguez?  Did they share with you

4    their thoughts about that?

5          MS. BLANK BECKER:  Judge, the only thing I recall

6    them talking about is the message when the article came out

7    that they want to terminate her.  That's what I recall.

8          THE COURT:  Okay.  Is there anything that you want

9    to put on the record?  I'm not trying to keep you from putting

10   anything on the record except to the extent that it has to do

11   with a personal dispute between you and the lawyers.  I'm not

12   interested in that unless it somehow connects to this issue,

13   but I don't think it does.

14         MS. BLANK BECKER:  Judge, I was simply trying to put

15   a full picture as to what my understanding was and other than

16   that, Judge, I do not have anything additional.  Thank you.

17         THE COURT:  Okay.  What about does any co-counsel

18   have anything they want to say on this topic?

19         Mr. Farinella.

20         MR. FARINELLA:  No.

21         THE COURT:  Mr. Cannick?

22         MR. CANNICK:  No, Your Honor.

23         THE COURT:  From the Government?

24         MS. CRUZ MELENDEZ:  Very briefly and I believe we

25   spoke about this last time.  When the Government spoke with

Proceedings                                    23

1    Jane Doe No. 5, she did detail a meeting in approximately

2    August of 2019 in which she had a lengthy conversation with

3    Ms. Blank Becker.  During that conversation I believe there

4    were questions concerning her relationship or their

5    relationship with the defendant and information that Ms. Blank

6    Becker thought might be useful for the purposes of Mr. Kelly's

7    defense, some of which information, as we stated in our

8    filing, could be perceived and I think frankly would be

9    perceived, adverse to the defendant's position at trial.

10            THE COURT:  I want to be sure I understand what

11   you're saying.  The information that these -- that the

12   witnesses gave to Ms. Becker, you are saying would be --

13            MS. CRUZ MELENDEZ:  Adverse to the defendant's

14   position at trial.  And I only raise it for the purposes of

15   making it clear that to the extent that your question was did

16   Ms. Blank Becker have any lengthy conversations with the

17   witnesses, my understanding, based on conversations with Jane

18   Doe No. 5, is that there was at least that meeting in

19   approximately August of 2019.

20            THE COURT:  Do you recall that meeting, having a

21   conversation with them in an interview -- is it just Jane Doe

22   No. 5?

23            MS. CRUZ MELENDEZ:  I believe Ms. Savage was present

24   as well.

25            MS. BLANK BECKER:  Judge, I cannot honestly recall.

Proceedings                    24

1   Did I have conversations with them, yes.  Did I know about

2   their history with my client?  For a long time they were not

3   represented by anybody, so I certainly did have conversations

4   with them about their relationship kind of, I would say, but I

5   certainly cannot specifically remember a conversation in

6   August of 2019 where we talked about any specifics or that I

7   gave them any advice adverse to Mr. Kelly.

8           THE COURT:  I do not think that that's what Ms. Cruz

9   Melendez is saying.  I think what Ms. Cruz Melendez is saying

10  is that during the course of that conversation, Jane Doe No. 5

11  gave you information that was not helpful to your client.

12          MS. CRUZ MELENDEZ:  If it's helpful, I can point

13  both the Court and counsel to where we indicated in our

14  letter.  I will find that.

15          THE COURT:  Is that the letter of June 24th?

16          MS. CRUZ MELENDEZ:  The June 24th letter, Your

17  Honor.  Your Honor it's page three, the first full paragraph.

18          MS. BLANK BECKER:  Judge, may we approach if that's

19  appropriate?

20          THE COURT:  I do not really see any need to approach

21  at this point.  We're just talking about this paragraph.  I

22  take it you received that letter; correct?

23          MS. BLANK BECKER:  I received all the letters that

24  were on the PACER, yes, Judge, of course.

25          THE COURT:  You're doing that to alert Ms. Blank

Proceedings                              25

1    Becker of what you're talking about?

2              MS. CRUZ MELENDEZ:  That is a correct.

3              THE COURT:  All right.  My recollection was that you

4    said you met them, Jane Doe No. 5 and Ms. Savage, at the -- I

5    think it was at the hearing after Mr. Kelly's arrest on the

6    Illinois federal charge; is that correct?  That was my

7    recollection of the testimony or maybe you had talked to them

8    on FaceTime or something before then.

9              MS. BLANK BECKER:  Judge, do I recall that they were

10   at Dunkin' Donuts one day.  They were dropped off there prior

11   to court and --

12             THE COURT:  I am talking the first time you met

13   them.

14             MS. BLANK BECKER:  I'm sorry, the very first time,

15   yes, Judge, it was -- I had a FaceTime call with my client

16   months into representing him and he had turned the phone and I

17   had said hello to them, yes.

18             THE COURT:  So you had never had any interaction

19   with them before; correct?

20             MS. BLANK BECKER:  Yes.

21             THE COURT:  And prior to them being represented by

22   Ms. Rodriguez, you hadn't had any -- did you give them any

23   advice whatsoever?

24             MS. BLANK BECKER:  Judge, the first time I was

25   contacted, I believe I supplied that to the Court as well,

Proceedings                                        26

1    was -- I have to look, but I believe it was July 12 or 13 by

2    Jane Doe No. 5.

3              THE COURT:  And so prior to that, you had never --

4    during the course of your representation of Mr. Kelly, you

5    hadn't had any interaction with them at all in the nature of

6    legal or any advice -- just bearing in mind that I think it's

7    not just -- even if it's how to deal with the media, that is

8    something that is also under the umbrella of legal advice

9    because of somebody's interest in how they're perceived

10   publicly, so I am referring to that as well.  Nothing else?

11             MS. BLANK BECKER:  Judge, I may have seen them in

12   court prior to that, but me personally interacting with them,

13   that is correct.

14             THE COURT:  Is there anything else the Government

15   wanted to add?

16             MS. CRUZ MELENDEZ:  Not with respect to this issue,

17   Your Honor.

18             THE COURT:  And anything else from the defense?

19             MS. BLANK BECKER:  No, Judge.

20             THE COURT:  Ms. Haramati anything from you?

21             MS. HARAMATI:  No, Your Honor.

22             THE COURT:  Let me ask Ms. Haramati, do you need to

23   talk to Mr. Kelly any further?

24             There is one thing that I want to place on the

25   record that is based on my interview with -- my conversation

Proceedings                                    27

1    with Ms. Rodriguez, and after that I want you to tell me if

2    there's some additional conversation that you want to have

3    with him.  Obviously I'm not going to relay the specifics

4    because they are protected by the attorney/client privilege,

5    but during the inquiry Ms. Rodriguez related certain instances

6    where she -- where Ms. Becker gave Ms. Rodriguez's clients

7    advice and advice that conflicted with the advice that

8    Ms. Rodriguez had given her clients and, as I said before,

9    even if the discussion is about public image or media or

10   anything of that kind, that is also contained in the

11   definition of legal advice.

12           There could be two questions here, it could be that

13   if this -- if this advice were given, it's just what

14   Ms. Becker thought was good advice, but she also represents

15   Mr. Kelly and a reasonable person could conclude that she was

16   gaining their confidence and giving them advice that was

17   designed to help Mr. Kelly, not necessarily them.

18           Now, I am saying that this is what a reasonable

19   person could conclude and I think it is in the record that

20   the, at least from Ms. Rodriguez's perspective, I believe this

21   is -- let me just check with my law clerk.

22           (Pause in proceedings.)

23           THE COURT:  When the relationship was ended, they

24   told her to send their file to Ms. Becker, so clearly there

25   was -- there were conversations going on and it's a situation

Proceedings                    28

1   where -- where when you are representing one person and you

2   want to find out what the witnesses have to say, that's fine,

3   but when they are represented, that poses an ethical conflict

4   and not all ethical conflicts require this sort of inquiry or

5   certainly that counsel be taken off the case.

6          But in this instance, there is a plausible

7   accusation of violating the code, whether or not that actually

8   happens, that can create its own pressures on a lawyer to

9   refute that violation, to refute that accusation.

10         So, I just want to make sure with Ms. Haramati, I

11  know this is sort of a related issue to some of the other

12  issues that have come up, but do you need any additional time

13  to discuss this particular feature of this with Mr. Kelly?

14         MS. HARAMATI:  Your Honor, we discussed similar

15  issues.  I would appreciate if I could speak to Mr. Kelly for

16  a moment before answering the Court whether I need --

17         THE COURT:  Why don't we do that.  So you don't have

18  to do that with us all watching here, what the best way to do

19  that?  To take him in the back?  Okay, let's do that.

20         We'll be in recess for just a minute.

21         MS. HARAMATI:  Thank you, Your Honor.

22         (Recess taken.)

23         THE COURT:  Of all, I know it's cold in here.  It's

24  either freezing or you're on fire so there is not a whole lot

25  we can do about it.  In my experience it is better to be cold

Proceedings                                                29

1   than hot.  Anyway, I am sure it will be hot on another day but

2   that's just the way it is.

3          Let me ask Ms. Haramati, have you had enough time to

4   discuss with Mr. Kelly not just the conflicts that were

5   identified or potential conflicts that were identified in the

6   submissions, but I guess I will say a somewhat different but

7   related one that came up today.

8          MS. HARAMATI:  Yes, Your Honor.  Just with this

9   additional time we were able to discuss it sufficiently.

10         THE COURT:  I see.  And have you discussed all of

11  those issues that were raised in the letter?

12         MS. HARAMATI:  We spent time discussing all the four

13  other issues that were raised in the Government's -- I think

14  the June 14th letter.

15         THE COURT:  In your view, does he understand what

16  those conflicts are?

17         MS. HARAMATI:  Yes, Your Honor.

18         THE COURT:  Is he capable of waiving those?

19         MS. HARAMATI:  Yes.

20         MS. CRUZ MELENDEZ:  Your Honor?

21         THE COURT:  Go ahead.

22         MS. CRUZ MELENDEZ:  Before Your Honor begins the

23  inquiry, as Your Honor pointed out the Government mentioned

24  additional potential conflicts in its submissions and we would

25  ask that to the extent Your Honor has a concern with respect

Proceedings                                          30

1   to doing a more-detailed inquiry for the purpose of not

2   discussing sealed information, the Court would consider, so

3   that the record is clear and in an abundance of caution, doing

4   the inquiry with respect to those other issues via sidebar or

5   some other method for the purposes of making sure that the --

6   and for the -- as well as the interest of the defendant and

7   the interest of the Government to make sure that the record is

8   as clear as possible.

9         THE COURT:  I mean, I can do that, but Mr. Kelly is

10  sitting over at the table so I'm not quite sure how that would

11  work.  You want him walked over here and ask him over there?

12        MS. CRUZ MELENDEZ:  If that's possible, Your Honor.

13        THE COURT:  I think that when we first met, I

14  mentioned that there were things in there that I think that

15  the Government also agrees are -- there's not a sufficient

16  basis to conclude that they actually happened, but the concern

17  is that anybody -- that a lawyer might be concerned about

18  making sure that this didn't get out or something like that.

19  I can't think of the name of the case but it's akin to a

20  lawyer who --

21        MS. CRUZ MELENDEZ:  *Fulton.*

22        THE COURT:  Right, *Fulton.*  The lawyer was accused

23  of something that's not true but the lawyer may have an

24  interest in defending herself or himself from that accusation.

25  I think we can do that without identifying things that are --

SN        OCR        RPR

Proceedings                                    31

1    that we don't think there's any basis for.  I don't think

2    that's necessary as long as we're making reference to, and you

3    can point me to the paragraphs in the letter and I can even

4    have Curcio counsel show that to Mr. Kelly because I know they

5    have discussed it and just --

6           And Curcio counsel has also advised that she's gone

7    over all of these things with him.  I am just going to, for a

8    belt and suspenders, I'm assuming that as part of that

9    conversation that you advised Mr. Kelly that the question

10   isn't whether certain accusations are true or untrue.

11          One of the possible issues is if there's something,

12   an accusation, out there the concern is that the lawyer's

13   interest will be in defending himself or herself from the

14   accusation regardless of whether it's true.

15          MS. HARAMATI:  Yes, we discussed that.

16          THE COURT:  Does that sound sufficient?

17          MS. CRUZ MELENDEZ:  Your Honor, if the Government

18   has an opportunity to hear the inquiry and then perhaps have

19   an opportunity to be heard afterwards, we'd appreciate it.

20          THE COURT:  You will let me know.  So let's get

21   Mr. Kelly the -- I think if counsel can give him the

22   microphone.

23          Mr. Kelly, just make sure it's on.  You are

24   vaccinated?

25          THE DEFENDANT:  Yes, ma'am.

Proceedings                                      32

1        THE COURT:  So you can pull it over towards you.

2        THE DEFENDANT:  Thank you.

3        MS. CRUZ MELENDEZ:  Your Honor, if I could note one

4   thing that may make this move a little more smoothly as you

5   begin the inquiry.  As defense counsel noted, Mr. Kelly has

6   some reading limitations and so to the extent Your Honor

7   references something in the filing, we would just ask that

8   Ms. Haramati have an opportunity to speak quietly to the

9   defendant so that it's perfectly clear.

10       THE COURT:  So, based on what I've reviewed,

11  Mr. Kelly, I have determined that Ms. Becker has potential

12  conflicts of interest in representing you.  I have also

13  determined that you can waive those conflicts if you are

14  informed about what they are and if you consent you can

15  continue to have her represent you.

16       The conflict, the potential conflicts, arise -- one

17  of them is because of the evidence that Ms. Becker had

18  substantial contacts with potential witnesses and may have

19  developed a relationship of trust with them even though she

20  were never formally retained as their lawyer she has

21  confidentiality obligations to them.  And given the nature and

22  extent of those communications and the content of them, she

23  would have a conflict if she were to cross-examine either one

24  of them.  So that's one of the conflicts.

25       Related to that conflict is also this question of

Proceedings                                    33

1   whether there's an ethical violation involved in that -- in

2   those contexts and if there is an ethical violation or an

3   accusation of an ethical violation, the concern is, as I said

4   before in speaking with the Government, the concern is that a

5   person would be motivated to defend himself or herself from

6   the accusation in a way that might keep the lawyer from asking

7   certain questions or calling certain witnesses.  That's what

8   the concern is.

9          The other conflicts which I don't think there's a

10   factual basis for them but it's the same question, and I've

11   asked Curcio counsel, Ms. Haramati, to review with you and

12   advise you about all of those concerns.

13          Now, the general issue here is that whenever a

14   lawyer has a conflict of interest what's in the lawyer's best

15   interest and what's in your best interest as the client may

16   not be the same and so you have the Constitutional right, as I

17   think I advised you before, to be represented by a lawyer who

18   has no conflict.  You also, within certain limitations, have a

19   right to choose your own counsel.  We also have a situation

20   where you have two other lawyers and, so, that's also

21   something you can take into account.

22          So I am going to ask you a series of questions so

23   that I can be sure that, A, that you understand what the

24   conflicts are and that you are in a position to tell me

25   whether you want to waive them.  So are you willing to answer

Proceedings                                              34

1   those questions?

2          THE DEFENDANT:  Yes, ma'am, Your Honor.

3          THE COURT:  So, do you have any condition or

4   anything that would interfere with your ability to understand

5   what's happening here in court today?

6          THE DEFENDANT:  No, ma'am.

7          THE COURT:  Okay.  Now, you are currently

8   represented by Ms. Blank Becker; is that correct?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And are you satisfied with her services

11   so far in this case?

12          THE DEFENDANT:  Yes, I am.

13          THE COURT:  All right.  And do you intend to go

14   forward with Ms. Blank Becker as one of your lawyers?

15          THE DEFENDANT:  Yes, I do, Your Honor.

16          THE COURT:  And she has had -- as you are aware,

17   there is certainly evidence that she has had sustained

18   communications with potential witnesses in this case.  Are you

19   aware of that?

20          THE DEFENDANT:  Yes, ma'am Your Honor.

21          THE COURT:  As I said before, there are risks to

22   being represented by a lawyer who has those conflicts that

23   have been raised in this case.  So to the extent there's an

24   attorney/client relationship, it doesn't have to be formal.

25   To the extent that Ms. Becker gave legal advice of any kind do

Proceedings                                              35

1    a potential witness, that means she owes that person a duty of

2    loyalty and she might be prevented from either investigating

3    leads or introducing evidence or challenging a witness's

4    testimony and that includes Jane Doe No. 5 or calling another

5    witness, Ms. Savage, if she were to rely on information that

6    she received in a privileged communication.  Do you understand

7    that?

8              THE DEFENDANT:  Yes, I do, Your Honor.

9              THE COURT:  Now, she also may have gotten some

10   privileged information from either of those two witnesses that

11   might help your case, but she can't disclose it to you because

12   of her ethical duties and she couldn't share that information

13   with either Mr. Cannick or Mr. Farinella for the same reasons.

14   Do you understand that?

15             THE DEFENDANT:  Yes, I understand, Your Honor.

16             THE COURT:  She would also be prohibited from

17   cross-examining or doing a direct examination of any witness

18   with whom she had had a privileged conversation, including

19   Jane Doe No. 5 and Ms. Savage, do you understand that?

20             THE DEFENDANT:  Yes, ma'am, Your Honor, I do.

21             THE COURT:  Now, as I said before, she has a duty of

22   loyalty to people that she has given legal advice to

23   regardless of whether there's a formal relationship.  That

24   duty continues even after the relationship ends.  So she owes

25   a continuing duty of loyalty to former clients or anybody to

Proceedings                                    36

1   whom she gave legal advice.  There is a chance that she could

2   make decisions that, consciously or unconsciously, could be

3   influenced by how those decisions might affect the people to

4   whom she owes a continuing duty of loyalty.  Do you understand

5   that?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  And then related to that, although, is

8   the question of becoming an unsworn witness, having gotten

9   information from witnesses.  But, again, since you have three

10  lawyers, if that's a concern, one of the other lawyers can

11  take the witness, can do the examination.  Do you understand?

12           THE DEFENDANT:  Yes, I do, Your Honor.

13           THE COURT:  Now, in addition to that, there are

14  certain allegations and I think the best thing to do might be

15  just to refer --

16           I'm going to ask Ms. Cruz Melendez, I think it would

17  be ECF number 107, might contain what the concerns are; is

18  that right?

19           MS. CRUZ MELENDEZ:  The June 14, 2021 letter, which

20  is -- I don't have the ECF number directly in front of me.

21           THE COURT:  That is okay.

22           MS. CRUZ MELENDEZ:  June 14, 2021.

23           THE COURT:  And I'm just going to direct

24  Ms. Haramati to that letter and in particular to the second

25  paragraph of page two and just if you can direct Mr. Kelly to

Proceedings                                                37

1    what I am a talking about.

2              MS. HARAMATI:  I will do that.

3              THE COURT:  And relatedly the information in the

4    paragraph following that.

5              MS. HARAMATI:  I'm sorry, the paragraph following

6    relates to the unsworn witness issue.  I believe the second

7    paragraph on page one, is that it?

8              MS. CRUZ MELENDEZ:  So, the second paragraph

9    beginning on page one which goes into page -- the top of page

10   two, as well as the first full paragraph of page two.

11             THE COURT:  You've reviewed those specific --

12             MS. HARAMATI:  We have.

13             MS. CRUZ MELENDEZ:  Your Honor, just one other

14   thing.  With respect to the second full paragraph which is

15   technically paragraph three on page two, I just wanted to note

16   that in addition to Jane Doe No. 5, there are additional

17   witnesses or potential witnesses named starting at the end of

18   line three into line four that would also be included in

19   the -- with respect to the unsworn witness issue.

20             THE COURT:  Yeah, we just said that.

21             MS. CRUZ MELENDEZ:  Okay.

22             THE COURT:  I think we did, didn't we?

23             MS. HARAMATI:  I believe we've covered the unsworn

24   witness.

25             MS. CRUZ MELENDEZ:  Thank you, Judge.

Proceedings                                    38

1          THE COURT:  That is all right.  So, specifically

2     that second paragraph on page two, Mr. Kelly, have you

3     reviewed the contents of that paragraph is Ms. Haramati?

4          THE DEFENDANT:  Yes, Your Honor, I have.

5          THE COURT:  You understand what's contained in them;

6     correct?

7          THE DEFENDANT:  Yes, correct.

8          THE COURT:  And also in the paragraph on the

9     preceding page which I actually think we discussed the last

10    time, but I also don't think there is much of a foundation for

11    it, that also contains a separate allegation and Ms. Haramati

12    reviewed that with you not just today, but in your prior

13    meetings; correct?

14         THE DEFENDANT:  Yes, correct.

15         THE COURT:  And, again, the -- just the general

16    issue is that an attorney who has committed unethical conduct,

17    and I'm not saying that anybody did, but that the general

18    question is that someone who has done something unethical may

19    want to hide that conduct and an attorney who is accused of

20    unethical conduct, even if the person didn't do it, may seek

21    to dispel the impression that she did it or he did it.  If the

22    person did it they may want to hide it and if the person

23    didn't do it, they don't want the accusation to come out.

24    That's basically what I am saying to you.

25         In either situation, the lawyer could make decisions

Proceedings                                          39

1   that aren't in your best interest in order to protect herself

2   or himself from that information.  So, again, and I think I

3   mentioned this before, a lawyer may choose not to call a

4   witness or to avoid certain kinds of questioning because of

5   the concern that it could affect the lawyer's career.  Do you

6   understand?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  And the other thing is that an attorney

9   who is accused of wrongdoing or of the -- of some of the

10  things that are contained in that letter, might not be able to

11  give you a completely independent or unbiased assessment of

12  whether you should go to trial, whether you should testify,

13  things like that.  Do you understand?

14             THE DEFENDANT:  Yes, I do Your Honor.

15             THE COURT:  Do you have any questions about any of

16  the things that we've talked about so far?

17             THE DEFENDANT:  No, I don't.

18             THE COURT:  There may be, and I identified a few

19  issues here, there may be additional issues that come up.

20  Nobody can predict every possible conflict or issue that may

21  come up and if later in this case there's more information

22  that comes up or the conflicts becomes more serious, I may

23  have -- I don't know that this will happen, but it's always a

24  possibility that I may have no choice but to disqualify the

25  conflicted lawyer at that time.  Do you understand?

Proceedings                                              40

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  Now, I explained earlier that the Court

3     appointed a respected member of our bar, Ms. Haramati, who is

4     independent of the case and her role was to advise you of all

5     of these potential conflicts and I understand that she has met

6     with you and advised you about the concerns that are raised in

7     those submissions.

8          Have you had enough time to consult with her or do

9     you want to get any additional advice or guidance from her?

10    Don't hesitate to ask if you want it.  You are not under any

11    pressure to make this decision at this moment.  If you would

12    like, we can take a recess.  You can consult with Ms. Haramati

13    once more about these issues and, if you want, I will give you

14    a half hour or so to talk to her to make sure you understand

15    everything about it because the next phase, just so you're

16    prepared, I really want to make sure that you understand what

17    the conflicts are, so I will be asking you specifically to

18    describe those to me, and then I am going to ask you just to

19    make sure that you understand what all your rights are in

20    connection with this.

21         So I think it's probably a really good idea to take

22    a half an hour or so, meet with Ms. Haramati and make sure

23    that you don't have any additional questions.  That is what we

24    will do.  We will recess for a half an hour.  Before we do

25    that, I don't know if there's any other question that either

Proceedings                                              41

1   Ms. Haramati or the Government wants me to put to Mr. Kelly

2   before he consults with Ms. Haramati.

3               MS. CRUZ MELENDEZ:  Nothing from the Government,

4   Your Honor.

5               THE COURT:  Anything else Ms. Haramati?

6               MS. HARAMATI:  No, Your Honor.

7               THE COURT:  Let's recess for that period of time and

8   then we will resume.

9               (Recess taken.)

10              THE COURT:  All right.  Let me just ask Mr. Kelly,

11  have you had enough time to consult with Ms. Haramati about

12  the issues that are involved here and about what you want to

13  do?

14              THE DEFENDANT:  Yes, Your Honor, I have.

15              THE COURT:  And do you think that you are in a

16  position to tell me whether or not you want to waive the

17  conflict of interest?

18              THE DEFENDANT:  I believe so, Your Honor.

19              THE COURT:  So what I would like to start with

20  first, and if you need some time to speak to Ms. Haramati at

21  any time during the course of this inquiry, I will give you as

22  much time as you need, but what I would first like to do is

23  just ask if you can tell me what you understand the potential

24  conflicts to be in general terms and what the risks are that

25  are associated with those potential conflicts.

Proceedings                                    42

1          THE DEFENDANT:  Okay, thanks, Your Honor.  First of

2     all, as far as Jane Doe No. 5 and Ms. Savage, I understand

3     that as far as Ms. Blank Becker -- it's hard to pronounce, as

4     far as she's concerns if there's a conflict of interest I

5     understand that if I waive, she will be able to question but

6     she will be very limited as far as questioning them.

7          THE COURT:  She may not be able to question them at

8     all.

9          THE DEFENDANT:  And I understand that as well.

10          THE COURT:  And, so, in terms of that portion of it,

11     of the fact that she may be limited in the things that she may

12     ask them.  Do you also understand that she cannot share any

13     confidences that she learned from them with any other members

14     of your team?

15          THE DEFENDANT:  Yes, I do, Your Honor.

16          THE COURT:  Now, aside from that representation

17     question, the appearance that perhaps she provided legal

18     advice to them, there's a separate question in connection with

19     that; her contact with them having to do with potential

20     ethical violations and whether or not they were committed is

21     not the question.  The question is when a person is accused of

22     that, when a lawyer is accused of that, it might make the

23     lawyer make choices which are not in your best interest.  Do

24     you understand that?

25          THE DEFENDANT:  Yes.

SN        OCR        RPR

Proceedings                                                    43

1        THE COURT:  Can you explain it back to me and if you

2   want to consult with Ms. Haramati, just let me know.

3        THE DEFENDANT:  Just give me one second.

4        THE COURT:  Sure.

5        (Defendant and counsel confer.)

6        THE DEFENDANT:  Sorry.

7        THE COURT:  That is okay.

8        THE DEFENDANT:  I understand that if Ms. Blank

9   Becker talked to any clients that were represented by another

10  attorney, that she could try to cover that up to make herself

11  look good instead of focusing and paying attention on what she

12  should be doing for me, basically, in my trial.  I understand

13  that.

14       THE COURT:  And then there were a couple of other

15  matters that we won't refer to specifically and just for ease

16  of reference, they're the items that Ms. Haramati showed you

17  in that letter.  Do you recall what those were?

18       THE DEFENDANT:  Yes, ma'am, I do.

19       THE COURT:  And in general terms, what is your

20  understanding about the reason why that conflict or potential

21  conflict could pose a difficulty for you?

22       THE DEFENDANT:  Well, I think for one, they're

23  rumors and that's all they are to me.

24       THE COURT:  Right, but do you understand the risk

25  that even if something isn't true a person could take steps to

Proceedings                                                    44

1   make sure the rumor didn't get out, let's say that.  Do you

2   understand that?

3              THE DEFENDANT:  I understand that, Your Honor.

4              THE COURT:  And that's related to what we just

5   talked about with the ethical concerns and you gave a pretty

6   good description of what the concern is.  Do you understand

7   that this concern is pretty much the same concern?

8              THE DEFENDANT:  Yes, ma'am, I do.

9              THE COURT:  The final related question to the

10  contact with the witnesses, although this is ameliorated by

11  the presence of other lawyers, is the extent to which having

12  learned things from those witnesses, even putting aside the

13  question of giving legal advice, a lawyer could put herself in

14  the position of being an unsworn witness.  That's the third

15  related concern.  Do you understand that one?  Let me have

16  Ms. Haramati explain it to you once more and then I will give

17  it a shot, too.

18             MS. HARAMATI:  Just one moment, Your Honor.

19             THE COURT:  Sure.

20             (Defendant and counsel confer.)

21             MS. HARAMATI:  I believe we're ready.

22             THE COURT:  Okay.  So what do you understand this

23  potential conflict to mean?

24             THE DEFENDANT:  Your Honor, when the attorney was

25  explaining it to me it sounds perfect and I totally get it.  I

Proceedings                                      45

1    just don't know how to repeat everything she just said.

2              THE COURT:  Let me do it this way, and by the way

3    these are not easy concepts for anyone, so I can understand

4    that, but let me just first make sure you do understand what

5    counsel explained to you; correct?

6              THE DEFENDANT:  Yes; correct.

7              THE COURT:  And the risk is, and it's a little bit

8    subtle, but the risk is that if a lawyer has a conversation

9    with a witness and the witness testifies in a different way at

10   trial, the lawyer can certainly question the person about it,

11   but the lawyer can't say that didn't happen, this is what you

12   really said, because the lawyer is not a witness.  The lawyer

13   is a lawyer.

14             How did I do, Ms. Haramati?

15             MS. BECKER:  That's precisely what Mr. Kelly and I

16   discussed.

17             THE COURT:  So that's the reason.  The lawyer can't

18   be a witness because the lawyer is a lawyer.  Is that clear to

19   you?

20             THE DEFENDANT:  Very clear, Your Honor.

21             THE COURT:  Okay.  So I also want to make sure that

22   you understand and I think you do, you have the right to

23   object to having Ms. Becker represent you because of these

24   issues.  Do you understand?

25             THE DEFENDANT:  Yes, ma'am, Your Honor.

Proceedings                                      46

1        THE COURT:  Okay.  And after speaking with

2   Ms. Haramati and hearing what I have explained to you and

3   based on the advice that you have gotten from Ms. Haramati, do

4   you still want to continue with Ms. Becker as your lawyer?

5        THE DEFENDANT:  Yes, ma'am, Your Honor, I do.

6        THE COURT:  And do you understand that by choosing

7   to continue with her you are giving up your right to be

8   represented by a lawyer who does not have a conflict of

9   interest, at least -- you have two lawyers who don't have a

10  conflict of interest, but at least insofar as she is

11  concerned, you are giving up the right to have a third lawyer

12  that doesn't have a conflict.  Do you understand?

13       THE DEFENDANT:  That part I don't.

14       THE COURT:  You have two lawyers who as far as I

15  know are not conflicted, you've got Mr. Cannick and

16  Mr. Farinella.  There is no allegation that anybody is

17  conflicted.  Ms. Becker is not your only lawyer, but I want to

18  be sure that you are giving up the right to have her represent

19  you without a conflict of interest.  Do you understand?

20       PROSPECTIVE JUROR:  Yes, I do, Your Honor.

21       THE COURT:  Okay.  And that means that if you were

22  to be convicted at a trial, you couldn't later claim that your

23  lawyer, Ms. Becker, wasn't an effective lawyer because she had

24  these conflicts or potential conflicts.  Do you understand?

25       THE DEFENDANT:  Yes, I do, Your Honor.

Proceedings                                    47

1        THE COURT:  Is there anything else that you need to

2   have explained or that you need to consult with Ms. Haramati

3   about?

4        THE DEFENDANT:  No, no.

5        THE COURT:  Any other questions that the Government

6   wants me to put to Mr. Kelly?

7        MS. CRUZ MELENDEZ:  Nothing, Your Honor.

8        THE COURT:  Okay.  I think, based on the record,

9   that we have established that Mr. Kelly is fully competent and

10  capable of making an informed decision, that he has been

11  advised by respected counsel, Ms. Haramati and that his waiver

12  of these potential conflicts or conflicts is knowing and

13  intelligent and so I accept the waiver and at this point, I

14  think it's fine to excuse Mr. Greenberg and Mr. Leonard who I

15  think are on the phone; is that right?

16       MR. GREENBERG:  Yes, Your Honor.

17       MR. LEONARD:  Yes, Judge.

18       THE COURT:  So you are excused from representation

19  in this case.

20       And, Ms. Haramati, you have the thanks and respect

21  of the Court for your efforts in this regard.  I greatly

22  appreciate it and I don't think we need to have Ms. Haramati

23  spend any more time with us here, unless she wants to, okay.

24       MS. BECKER:  Thank you.

25       THE COURT:  Thank you so much.

Proceedings                                      48

1            I do want to address a couple of additional issues.

2      I received Mr. Cannick's letter regarding some sticking points

3      at MDC and before we began this proceeding and I'm sure the

4      Government has something to say about it, but I did speak with

5      Peter Lee, who gave me some answers to those particular

6      questions but I have a second solution to this problem.  So I

7      am just going to list what I have learned from Mr. Lee and

8      just bearing in mind that these are, I'm sure you are well

9      aware, that there are certain restrictions about what can be

10     brought into a facility, but nonetheless.

11           So let's just start in order; the issue of not being

12     able to bring in the binders.  I am advised that you can bring

13     in Redwelds but you cannot just bring in a binder with metal

14     and you can bring in folders.  The issue with regard to pens

15     and the like, you can bring in pens and pencils and sticky

16     notes, but they can't -- no highlighters or markers.

17           Now, the issue with the laptops, you are able to

18     bring in multiple laptops, hard drives and there are computers

19     in the visiting room to which the hard drives can be

20     connected.  For security reasons, they ordinarily don't allow

21     chargers and this apparently has been the policy in the MDC.

22     But hard drives can be brought in.

23           Now, just the last thing, and I'm not quite finished

24     with this because I have another suggestion for you, but

25     there's this question of diabetes.  Has Mr. Kelly been

Proceedings                                      49

1   diagnosed?

2          MR. CANNICK:  Yes, Your Honor.

3          THE COURT:  Is he on medication, insulin?  I know he

4   was diagnosed pre-diabetic.  Because of COVID, he can't bring

5   food into the visiting room, but he can come and go to get

6   whatever nourishment he needs, but I also just -- it's not

7   something that was brought to my attention in terms of an

8   actual diagnosis.  So if there's a medical order --

9          MR. CANNICK:  Your Honor, we will -- just to let you

10  know, Your Honor, when he showed symptoms the other day of

11  experiencing an episode, he eventually was taken back

12  upstairs.

13         THE COURT:  Okay.

14         MR. CANNICK:  And that took an hour plus away.  I

15  thought they were just running him upstairs and getting a

16  candy bar and come back downstairs, but that's not the case.

17  Suffice it to say, we're trying to do the best we can with

18  what we have and we will continue.

19         THE COURT:  The third option is we can also make

20  arrangements to have him produced here three days a week.

21  Now, that has attendant difficulties for Mr. Kelly because

22  that requires him to get up early.  There are also

23  restrictions when you -- I'm sure you are aware.  There are

24  things that you can't do.

25         MR. CANNICK:  Right.

SN      OCR      RPR

1          THE COURT:  After this proceeding is over, we will

2   give you the contact information to make that happen if that's

3   what you want.  The only thing is you can't do it on a Friday.

4          MR. CANNICK:  Very well.  May I have a second?

5          THE COURT:  Sure.

6          (Pause in proceedings.)

7          MR. CANNICK:  Thank you, Your Honor.

8          THE COURT:  And that may be something that you don't

9   want to do, which I fully understand, but we will see if we

10  can get the -- if that's something that you want to take

11  advantage of.

12         MR. CANNICK:  I will discuss it with the others.  I

13  don't know if there will be face-to-face meetings because if

14  you come here there's a screen, there's a mesh.  We want to

15  show a computer.  I don't think there's any reception in the

16  Marshal's pen and there's a mesh screen where we wouldn't be

17  able to exchange documents.

18         THE COURT:  There will be no internet in either

19  place.  That's a security issue in the facility and also

20  downstairs.  At least in terms of a hard drive or a thumb

21  drive, and I'm acting like I know how these things work, but

22  you are able to bring those in.  So, we can -- you can speak

23  with -- let me make sure if it's all right if we do this.

24         (Pause in proceedings.)

25         THE COURT:  You can speak with our courtroom deputy

Proceedings                                                    51

1    about the mechanics of that other method.  Okay?

2              MR. CANNICK:  Okay, thank you.

3              THE COURT:  Now, I just want to also remind the

4    parties of a couple of things.  Our final pretrial conference

5    is August 2nd.

6              MR. CANNICK:  Your Honor, is that date flexible?

7              THE COURT:  Yes.

8              MR. CANNICK:  Can we consider August 6th or 5th.

9              THE COURT:  That's not a problem, whichever date you

10   want you.

11             MR. CANNICK:  The 6th around 11.

12             THE COURT:  Sure.  I don't anticipate it's going to

13   take very long, but August 6th at 11.  Now, the Government has

14   submitted a list of people and organizations and places that

15   will be included in the questionnaire.  So jurors will know

16   whether they know any of the organizations or things like

17   that.  So the Government submitted that list.  I guess it

18   might need to be updated?

19             MS. CRUZ MELENDEZ:  It's possible, Your Honor.

20   There might be -- as we noted in our letter there might be a

21   few names that we would add to the list.

22             THE COURT:  I didn't get a separate list from the

23   defense, but I'm assuming -- take a look at that list, the

24   deadline has passed, but I assume that was because whomever

25   you were going to call or whoever you were concerned about was

Proceedings                                              52

1    on that list.

2              MR. CANNICK:  That's pretty much --

3              THE COURT:  Double check that because the jurors are

4    coming in -- the questionnaires are going to be distributed

5    the week after next.

6              MR. CANNICK:  There are two names that we would like

7    to add.  They are they're not witnesses but individuals who

8    will be part of the defense team.

9              THE COURT:  That was going to be my next area.  We

10   also will need a list of the people that are going to be in

11   the courtroom.  I think everybody is vaccinated, but I don't

12   know if the paralegals --

13             MR. CANNICK:  One is an attorney filing an

14   appearance.  Don't get upset, we won't be asking go for

15   additional time.  He will be here and ready to go.  That will

16   be Calvin Scholar.

17             THE COURT:  So he's going to file a notice of

18   appearance.

19             MR. CANNICK:  Yes.  And I don't know if the

20   Government needs to add his name to whatever list that is.

21             THE COURT:  I will let you all work that out.  The

22   bottom line is we want to make sure that the jurors, that we

23   don't have a problem.

24             I do want to make sure that I'm giving you the right

25   information about what information that we will need about the

Proceedings                                                53

1   people who will be here, but I think that we can probably do

2   that separately.  I don't want to say anything that doesn't

3   apply.

4          Then motions in limine are due by July 19th and I

5   know we've received one from the Government and any opposition

6   is July 26th.  I will give you a preview.  I believe

7   Mr. Cannick is the only one that I have had the pleasure of

8   trying a case with, but just some sort of basic things; this

9   is a fairly low-drama courtroom and so I would like to keep it

10  that way.  The other issues generally is I'm not a huge fan of

11  sidebar conferences.  I'm not saying an absolute no, but I

12  generally find them to be unnecessary and distracting to the

13  jury.  So just a -- it's not something that I look forward to

14  and so I'm going to -- I may not always grant your request for

15  a sidebar conference.

16         I don't permit speaking objections and, so, just say

17  objection and sometimes you will win and sometimes you won't

18  but usually we just move on from those without extended

19  argument.  Of course if there's something that you're just

20  desperate to tell me, we can deal with that, but I think most

21  of the time we can just move on.  I usually understand what

22  your objection is, but there doesn't neat to be extended

23  conversation about it.

24         I will give you some more of those details once we

25  have our final pretrial conference on August the 6th at 11

Proceedings                                              54

1    o'clock.  And I just want to know if there's anything else

2    that either side needs to put on the record.  Let me start

3    with the Government.

4              MS. CRUZ MELENDEZ:  Nothing further from the

5    Government.

6              THE COURT:  How about the defense?

7              MR. CANNICK:  Nothing currently, Your Honor.

8              THE COURT:  All right.  So, Mr. Cannick or whomever,

9    if you want to find out how to go about if you want him

10   brought here, you don't have to, but if you want that, Donna

11   can help you with that.

12             All right, everyone, thank you so much.

13             (Proceedings paused.)

14             MS. SHIHATA:  Your Honor, I'm very sorry to get you

15   back in the courtroom, but I thought we could resolve this

16   issue while everyone is here.

17             THE COURT:  That's fine.

18             MS. SHIHATA:  So if I may explain, Your Honor.  On

19   July 13th the Government obtained a search warrant for

20   Mr. Kelly's DNA that was signed by the honorable James Cho, a

21   Magistrate Judge in this court.  The warrant indicates that we

22   do this at a mutually convenient time and alert defense

23   counsel.  We indicated to defense counsel by e-mail yesterday

24   that we proposed doing this while everyone was here in court

25   so as not to inconvenience everyone again, particularly the

1   issues they have had in meeting with their client and we

2   provided a copy of the warrant.  No one objected to that.

3          I made sure they got a copy of the warrant again

4   when I spoke to them before court this morning.  I got an

5   inquiry saying can we get a copy of the affidavit.  I said it

6   is currently under seal.  We will be filing for a limited

7   unsealing order and when we do, we of course will provide it

8   to you.  We were all set and we have our law enforcement

9   officers here to do the swabbing and they just told us that

10  they refuse unless we show them the affidavit.  I don't think

11  that is the proper procedure.  They're entitled to challenge

12  it after the fact.

13         THE COURT:  I think that's right.  You know, I

14  haven't -- I don't -- I'm positive that's not the procedure so

15  there's a warrant.  If the warrant authorizes the taking of

16  the DNA, if the warrant -- you can request a hearing after the

17  taking of the DNA on the basis of the Judge's determination,

18  but there is no cause to see the affidavit now.

19         I'm not saying that you have to do this -- when is

20  that going to be available?  When are you going to make the

21  unsealing order?

22         MS. SHIHATA:  I was going to propose, Judge, to make

23  it to you right now, a limited unsealing order for the

24  purposes of providing the affidavit to defense counsel and

25  assuming Your Honor grants it I will do it as soon as I get

Proceedings                                                       56

1   back to my office.  I will e-mail them the affidavit.

2               THE COURT:  I mean, that's the way to go.  And if

3   there is something in the affidavit that makes you think you

4   want to challenge the basis for the warrant, you can do it,

5   but I think it makes the most sense.  I mean, you don't want

6   to interrupt your time consulting with Mr. Kelly.  So I think

7   if everybody is ready you should go ahead and do it.

8               MS. SHIHATA:  Thank you, Your Honor.

9               THE COURT:  Anything from your side?

10              MR. CANNICK:  We're good.  Thank you, Your Honor.

11  We would consent to the Government's application regarding the

12  unsealing order.

13              THE COURT:  It's a limited -- shall I sign it now?

14              MS. SHIHATA:  I will send Donna a copy but it would

15  be a limited unsealing order just for these purposes.

16              THE COURT:  Okay.  Thank you, everyone.

17

18              (Matter adjourned.)

19

20

21                        - oo0oo -

22

23

24

25

SN        OCR        RPR

## 1

**1** [1] - 6:18
**10016** [1] - 1:22
**10017** [1] - 2:10
**107** [1] - 36:17
**11** [3] - 51:11, 51:13, 53:25
**11201** [1] - 1:16
**12** [1] - 26:1
**120** [1] - 2:7
**125** [1] - 2:10
**1260** [1] - 2:4
**13** [1] - 26:1
**13th** [6] - 17:11, 17:14, 18:9, 20:14, 54:19
**14** [2] - 36:19, 36:22
**14th** [1] - 29:14
**15** [2] - 1:7, 8:19
**15th** [5] - 8:6, 9:2, 10:9, 10:10, 10:15
**16th** [9] - 8:21, 10:8, 10:11, 10:14, 10:16, 13:13, 20:15, 20:17
**17th** [2] - 4:3, 4:8
**19-CR-286** [1] - 3:5
**19cr286(AMD** [1] - 1:3
**19th** [1] - 53:4
**1:00** [2] - 1:8, 8:21

## 2

**2019** [10] - 6:10, 6:14, 6:18, 6:22, 8:19, 9:22, 9:23, 23:2, 23:19, 24:6
**2021** [4] - 1:7, 17:22, 36:19, 36:22
**20s** [1] - 17:23
**20th** [1] - 2:7
**24th** [2] - 24:15, 24:16
**260** [1] - 1:22
**26th** [1] - 53:6
**271** [1] - 1:16
**2nd** [1] - 51:5

## 4

**444** [1] - 2:1
**45** [1] - 8:20
**48067** [1] - 2:2

## 5

**5** [19] - 5:3, 5:4, 5:10, 5:18, 6:7, 7:6, 11:3, 12:10, 17:12, 23:1, 23:18, 23:22, 24:10, 25:4, 26:2, 35:4, 35:19, 37:16, 42:2
**53** [1] - 2:4
**5:15** [1] - 8:19
**5th** [1] - 51:8

## 6

**60602** [1] - 2:7

## 60604-6060 [1] - 2:4
**69-06** [1] - 1:19
**6th** [4] - 51:8, 51:11, 51:13, 53:25

## 8

**8th** [2] - 1:22, 2:10

## A

**ability** [1] - 34:4
**able** [9] - 17:10, 29:9, 39:10, 42:5, 42:7, 48:12, 48:17, 50:17, 50:22
**absolute** [1] - 53:11
**abundance** [1] - 30:3
**accept** [1] - 47:13
**accidentally** [2] - 21:5, 21:6
**accomplish** [1] - 19:15
**account** [1] - 33:21
**accusation** [8] - 28:7, 28:9, 30:24, 31:12, 31:14, 33:3, 33:6, 38:23
**accusations** [1] - 31:10
**accused** [5] - 30:22, 38:19, 39:9, 42:21, 42:22
**acting** [1] - 50:21
**Acting** [1] - 1:15
**actual** [1] - 49:8
**add** [6] - 16:10, 20:5, 26:15, 51:21, 52:7, 52:20
**addition** [2] - 36:13, 37:16
**additional** [14] - 14:19, 15:20, 22:16, 27:2, 28:12, 29:9, 29:24, 37:16, 39:19, 40:9, 40:23, 48:1, 52:15
**additionally** [1] - 17:1
**address** [4] - 4:1, 8:7, 15:3, 48:1
**adjourned** [1] - 56:18
**adult** [1] - 17:7
**advantage** [1] - 50:11
**adverse** [3] - 23:9, 23:13, 24:7
**advice** [20] - 7:22, 12:6, 24:7, 25:23, 26:6, 26:8, 27:7, 27:11, 27:13, 27:14, 27:16, 34:25, 35:22, 36:1, 40:9, 42:18, 44:13, 46:3
**advise** [4] - 4:22, 33:12, 40:4
**advised** [6] - 31:6, 31:9, 33:17, 40:6, 47:11, 48:12
**advising** [1] - 11:8
**affect** [2] - 36:3, 39:5
**affidavit** [6] - 55:5, 55:10, 55:18, 55:24, 56:1, 56:3
**afternoon** [3] - 3:8, 3:14, 3:16
**afterwards** [1] - 31:19
**agrees** [1] - 30:15
**ahead** [5] - 7:17, 11:10, 18:2, 29:21, 56:7
**AIELLO** [1] - 1:19
**akin** [1] - 30:19
**alert** [3] - 9:18, 24:25, 54:22
**allegation** [2] - 38:11, 46:16

**allegations** [1] - 36:14
**allow** [1] - 48:20
**ameliorated** [1] - 44:10
**AMERICA** [1] - 1:3
**Ann** [1] - 3:2
**ANN** [1] - 1:12
**answer** [2] - 21:16, 33:25
**answering** [1] - 28:16
**answers** [1] - 48:5
**anticipate** [1] - 51:12
**anyway** [1] - 29:1
**apologize** [2] - 17:9, 17:25
**apparent** [1] - 14:9
**appearance** [4] - 3:7, 42:17, 52:14, 52:18
**application** [1] - 56:11
**apply** [1] - 53:3
**appointed** [2] - 4:20, 40:3
**appreciate** [3] - 28:15, 31:19, 47:22
**approach** [2] - 24:18, 24:20
**appropriate** [3] - 13:8, 16:12, 24:19
**area** [1] - 52:9
**argue** [1] - 19:16
**argument** [1] - 53:19
**arise** [2] - 4:5, 32:16
**arrangements** [1] - 49:20
**arrest** [1] - 25:5
**article** [3] - 20:17, 20:19, 22:6
**aside** [2] - 42:16, 44:12
**assessment** [1] - 39:11
**Assistant** [1] - 1:18
**associated** [1] - 41:25
**assume** [1] - 51:24
**assuming** [3] - 31:8, 51:23, 55:25
**attempted** [1] - 16:16
**attendant** [1] - 49:21
**attention** [2] - 43:11, 49:7
**Attorney** [1] - 1:15
**attorney** [13] - 3:11, 3:12, 4:5, 10:4, 12:9, 38:16, 38:19, 39:8, 43:10, 44:24, 52:13
**attorney/client** [7] - 5:8, 5:10, 12:23, 13:6, 13:9, 27:4, 34:24
**Attorneys** [1] - 1:18
**August** [7] - 23:2, 23:19, 24:6, 51:5, 51:8, 51:13, 53:25
**authorizes** [1] - 55:15
**available** [1] - 55:20
**Ave** [2] - 2:1, 2:10
**Avenue** [2] - 1:19, 1:22
**avoid** [1] - 39:4
**aware** [7] - 17:14, 19:18, 19:22, 34:16, 34:19, 48:9, 49:23

## B

**ball** [1] - 19:13
**bar** [2] - 40:3, 49:16
**based** [6] - 17:9, 23:17, 26:25, 32:10,

46:3, 47:8
**basic** [1] - 53:8
**basis** [5] - 30:16, 31:1, 33:10, 55:17, 56:4
**bearing** [3] - 15:25, 26:6, 48:8
**Becker** [38] - 3:10, 4:13, 6:20, 6:21, 7:6, 7:9, 8:19, 10:23, 11:5, 11:6, 11:14, 11:15, 13:13, 13:17, 13:25, 14:10, 14:11, 14:13, 15:22, 23:3, 23:6, 23:12, 23:16, 25:1, 27:6, 27:14, 27:24, 32:11, 32:17, 34:8, 34:14, 34:25, 42:3, 43:9, 45:23, 46:4, 46:17, 46:23
**BECKER** [36] - 2:2, 3:10, 15:2, 15:15, 16:11, 16:19, 16:22, 17:1, 17:6, 17:8, 17:21, 17:25, 18:3, 18:15, 18:19, 18:21, 19:20, 19:24, 20:7, 20:23, 21:3, 21:15, 21:22, 22:5, 22:14, 23:25, 24:18, 24:23, 25:9, 25:14, 25:20, 25:24, 26:11, 26:19, 45:15, 47:24
**Becker's** [1] - 12:12
**becomes** [1] - 39:22
**becoming** [1] - 36:8
**BEFORE** [1] - 1:12
**began** [2] - 4:3, 48:3
**begin** [1] - 32:5
**beginning** [1] - 37:9
**begins** [1] - 29:22
**behalf** [1] - 3:10
**behavior** [1] - 14:14
**belabor** [1] - 16:12
**belt** [1] - 31:8
**best** [7] - 28:18, 33:14, 33:15, 36:14, 39:1, 42:23, 49:17
**better** [1] - 28:25
**between** [2] - 20:14, 22:11
**binder** [1] - 48:13
**binders** [1] - 48:12
**bit** [4] - 4:23, 8:15, 12:16, 45:7
**Blank** [1] - 3:10
**blank** [8] - 23:3, 23:5, 23:16, 24:25, 34:8, 34:14, 42:3, 43:8
**BLANK** [35] - 2:1, 2:2, 3:10, 15:2, 15:15, 16:11, 16:19, 16:22, 17:1, 17:6, 17:8, 17:21, 17:25, 18:3, 18:15, 18:19, 18:21, 19:20, 19:24, 20:7, 20:23, 21:3, 21:15, 21:22, 22:5, 22:14, 23:25, 24:18, 24:23, 25:9, 25:14, 25:20, 25:24, 26:11, 26:19
**blurred** [2] - 8:11, 8:12
**bond** [2] - 6:22, 13:20
**bottom** [1] - 52:22
**breakdown** [1] - 12:3
**brief** [1] - 13:22
**briefly** [1] - 22:24
**bring** [8] - 48:12, 48:13, 48:14, 48:15, 48:18, 49:4, 50:22
**Brooklyn** [2] - 1:6, 1:16
**brought** [6] - 20:9, 21:5, 48:10, 48:22, 49:7, 54:10
**Building** [1] - 6:24

**building** [1] - 6:25
**BY** [2] - 1:17, 1:20
**BY:ILANA** [1] - 2:11
**BY:MICHAEL** [1] - 2:8
**BY:NICOLE** [1] - 2:2
**BY:STEVEN** [1] - 2:5
**BY:THOMAS** [1] - 1:23

## C

**Cadman** [1] - 1:16
**Calvin** [1] - 52:16
**candy** [1] - 49:16
**Cannick** [5] - 3:12, 35:13, 46:15, 53:7, 54:8
**CANNICK** [20] - 1:19, 1:20, 22:22, 49:2, 49:9, 49:14, 49:25, 50:4, 50:7, 50:12, 51:2, 51:6, 51:8, 51:11, 52:2, 52:6, 52:13, 52:19, 54:7, 56:10
**cannick** [1] - 22:21
**Cannick's** [2] - 3:25, 48:2
**cannot** [4] - 23:25, 24:5, 42:12, 48:13
**capable** [2] - 29:18, 47:10
**care** [1] - 4:14
**career** [1] - 39:5
**case** [19] - 7:23, 11:7, 13:20, 19:4, 19:5, 20:6, 21:12, 21:21, 28:5, 30:19, 34:11, 34:18, 34:23, 35:11, 39:21, 40:4, 47:19, 49:16, 53:8
**CAUSE** [1] - 1:11
**caution** [1] - 30:3
**Center** [1] - 6:22
**center** [1] - 6:23
**certain** [8] - 27:5, 31:10, 33:7, 33:18, 36:14, 39:4, 48:9
**certainly** [5] - 24:3, 24:5, 28:5, 34:17, 45:10
**challenge** [2] - 55:11, 56:4
**challenging** [1] - 35:3
**chance** [4] - 15:23, 16:14, 21:7, 36:1
**charge** [1] - 25:6
**chargers** [1] - 48:21
**check** [2] - 27:21, 52:3
**Chicago** [4] - 2:4, 2:7, 6:24, 13:21
**Cho** [1] - 54:20
**choice** [1] - 39:24
**choices** [1] - 42:23
**choose** [2] - 33:19, 39:3
**choosing** [1] - 46:6
**claim** [1] - 46:22
**clear** [8] - 10:6, 19:17, 23:15, 30:3, 30:8, 32:9, 45:18, 45:20
**clearly** [1] - 27:24
**clerk** [1] - 27:21
**client** [5] - 24:2, 24:11, 25:15, 33:15, 55:1
**client's** [1] - 19:11
**clients** [11] - 5:18, 7:14, 11:16, 11:22, 12:4, 12:8, 14:7, 27:6, 27:8, 35:25,

43:9
**clothing** [1] - 21:24
**co** [1] - 22:17
**co-counsel** [1] - 22:17
**code** [1] - 28:7
**cold** [2] - 28:23, 28:25
**coming** [3] - 11:13, 17:18, 52:4
**committed** [2] - 38:16, 42:20
**communicated** [1] - 8:8
**communicating** [1] - 14:7
**communication** [2] - 6:5, 35:6
**communications** [6] - 13:6, 14:11, 17:4, 18:14, 32:22, 34:18
**competent** [1] - 47:9
**complaints** [1] - 19:8
**complete** [1] - 14:20
**completely** [1] - 39:11
**computer** [1] - 50:15
**computers** [1] - 48:18
**concepts** [1] - 45:3
**concern** [14] - 10:7, 14:12, 29:25, 30:16, 31:12, 33:3, 33:4, 33:8, 36:10, 39:5, 44:6, 44:7, 44:15
**concerned** [2] - 30:17, 46:11, 51:25
**concerning** [2] - 12:13, 23:4
**concerns** [6] - 13:17, 33:12, 36:17, 40:6, 42:4, 44:5
**conclude** [3] - 27:15, 27:19, 30:16
**conclusion** [1] - 10:1
**condition** [1] - 34:3
**conduct** [3] - 38:16, 38:19, 38:20
**confer** [2] - 43:5, 44:20
**conference** [4] - 15:23, 51:4, 53:15, 53:25
**conferences** [1] - 53:11
**confidence** [1] - 27:16
**confidences** [1] - 42:13
**confidentiality** [1] - 32:21
**conflict** [24] - 4:13, 4:16, 4:17, 4:19, 5:1, 16:1, 16:5, 19:11, 28:3, 32:16, 32:23, 32:25, 33:14, 33:18, 39:20, 41:17, 42:4, 43:20, 43:21, 44:23, 46:8, 46:10, 46:12, 46:19
**conflict-free** [3] - 4:17, 16:1, 19:11
**conflicted** [4] - 27:7, 39:25, 46:15, 46:17
**conflicts** [23] - 4:5, 4:22, 28:4, 29:4, 29:5, 29:16, 29:24, 32:12, 32:13, 32:16, 32:24, 33:9, 33:24, 34:22, 39:22, 40:5, 40:17, 41:24, 41:25, 46:24, 47:12
**connected** [1] - 48:20
**connection** [5] - 4:6, 7:2, 20:6, 40:20, 42:18
**connects** [1] - 22:12
**consciously** [1] - 36:2
**consent** [2] - 32:14, 56:11
**consider** [2] - 30:2, 51:8
**Constitutional** [1] - 33:16

Case 1:19-cr-00286-AMD   Document 139   Filed 07/25/21   Page 58 of 66 PageID #: 1310

**consult** [5] - 40:8, 40:12, 41:11, 43:2, 47:2
**consulting** [1] - 56:6
**consults** [1] - 41:2
**contact** [9] - 6:19, 7:14, 8:12, 11:4, 12:12, 18:4, 42:19, 44:10, 50:2
**contacted** [1] - 25:25
**contacting** [1] - 10:24
**contacts** [3] - 10:15, 21:13, 32:18
**contain** [1] - 36:17
**contained** [3] - 27:10, 38:5, 39:10
**contains** [1] - 38:11
**content** [1] - 32:22
**contents** [1] - 38:3
**contexts** [1] - 33:2
**continuation** [1] - 4:2
**continue** [4] - 32:15, 46:4, 46:7, 49:18
**continued** [2] - 14:10, 21:13
**continues** [1] - 35:24
**continuing** [4] - 11:16, 14:14, 35:25, 36:4
**contradictory** [1] - 11:8
**contrary** [1] - 12:6
**convenient** [1] - 54:22
**conversation** [24] - 5:11, 8:8, 10:12, 11:5, 13:11, 13:12, 13:14, 13:16, 13:18, 13:22, 13:24, 21:18, 23:2, 23:3, 23:21, 24:5, 24:10, 26:25, 27:2, 31:9, 35:18, 45:8, 53:23
**conversations** [14] - 10:23, 11:21, 17:16, 17:17, 18:23, 21:14, 21:16, 21:20, 23:16, 23:17, 24:1, 24:3, 27:25
**convicted** [1] - 46:22
**copy** [4] - 55:2, 55:3, 55:5, 56:14
**correct** [24] - 3:20, 5:21, 5:22, 9:15, 9:23, 10:12, 10:13, 11:24, 17:8, 19:19, 19:20, 19:24, 24:22, 25:2, 25:6, 25:19, 26:13, 34:8, 38:6, 38:7, 38:13, 38:14, 45:5, 45:6
**counsel** [23] - 2:9, 3:7, 3:15, 4:21, 5:2, 15:10, 16:2, 22:17, 24:13, 28:5, 31:4, 31:6, 31:21, 32:5, 33:11, 33:19, 43:5, 44:20, 45:5, 47:11, 54:23, 55:24
**couple** [4] - 13:19, 43:14, 48:1, 51:4
**course** [6] - 24:10, 24:24, 26:4, 41:21, 53:19, 55:7
**court** [12] - 3:1, 5:13, 6:3, 17:18, 21:17, 21:24, 25:11, 26:12, 34:5, 54:21, 54:24, 55:4
**Court** [13] - 12:22, 13:11, 15:3, 17:2, 17:11, 20:12, 20:18, 24:13, 25:25, 28:16, 30:2, 40:2, 47:21
**COURT** [186] - 1:1, 1:24, 3:14, 3:16, 3:19, 3:23, 5:20, 5:23, 6:2, 6:7, 6:11, 6:15, 6:19, 6:23, 7:1, 7:5, 7:9, 7:12, 7:15, 7:17, 7:20, 7:24, 8:3, 8:9, 8:14, 8:25, 9:4, 9:8, 9:13, 9:17, 9:21, 9:25, 10:8, 10:11, 10:15, 10:22, 11:2, 11:10, 11:19, 11:25, 12:15, 12:21, 13:3, 13:5, 14:4, 14:8, 14:16, 14:23, 15:5, 15:9,

15:13, 15:16, 15:19, 16:18, 16:20, 16:25, 17:5, 17:7, 17:20, 17:22, 18:2, 18:13, 18:17, 18:20, 18:25, 19:21, 20:1, 20:22, 21:1, 21:10, 21:20, 22:2, 22:8, 22:17, 22:21, 22:23, 23:10, 23:20, 24:8, 24:15, 24:20, 24:25, 25:3, 25:12, 25:18, 25:21, 26:3, 26:14, 26:18, 26:20, 26:22, 27:23, 28:17, 28:23, 29:10, 29:15, 29:18, 29:21, 30:9, 30:13, 30:22, 31:16, 31:20, 32:1, 32:10, 34:3, 34:7, 34:10, 34:13, 34:16, 34:21, 35:9, 35:16, 35:21, 36:7, 36:13, 36:21, 36:23, 37:3, 37:11, 37:20, 37:22, 38:1, 38:5, 38:8, 38:15, 39:8, 39:15, 39:18, 40:2, 41:5, 41:7, 41:10, 41:15, 41:19, 42:7, 42:10, 42:16, 43:1, 43:4, 43:7, 43:14, 43:19, 43:24, 44:4, 44:9, 44:19, 44:22, 45:2, 45:7, 45:17, 45:21, 46:1, 46:6, 46:14, 46:21, 47:1, 47:5, 47:8, 47:18, 47:25, 49:3, 49:13, 49:19, 50:1, 50:5, 50:8, 50:18, 50:25, 51:3, 51:7, 51:9, 51:12, 51:22, 52:3, 52:9, 52:17, 52:21, 54:6, 54:8, 54:17, 55:13, 56:2, 56:9, 56:13, 56:16
**Court's** [1] - 4:4
**Courthouse** [1] - 1:5
**COURTROOM** [1] - 3:4
**courtroom** [6] - 3:22, 12:25, 50:25, 52:11, 53:9, 54:15
**cover** [1] - 43:10
**covered** [1] - 37:23
**COVID** [1] - 49:4
**create** [1] - 28:8
**CRIMINAL** [1] - 1:11
**criminal** [1] - 3:4
**cross** [2] - 32:23, 35:17
**cross-examine** [1] - 32:23
**cross-examining** [1] - 35:17
**CRUZ** [26] - 1:17, 14:22, 15:7, 22:24, 23:13, 23:23, 24:12, 24:16, 25:2, 26:16, 29:20, 29:22, 30:12, 30:21, 31:17, 32:3, 36:19, 36:22, 37:8, 37:13, 37:21, 37:25, 41:3, 47:7, 51:19, 54:4
**Cruz** [4] - 3:9, 24:8, 24:9, 36:16
**CURCIO** [1] - 1:11
**Curcio** [9] - 2:9, 3:5, 3:15, 4:2, 4:20, 15:10, 31:4, 31:6, 33:11

# D

**date** [6] - 6:12, 6:13, 13:14, 21:22, 51:6, 51:9
**days** [1] - 49:20
**deadline** [1] - 51:24
**deal** [2] - 26:7, 53:20
**decision** [2] - 40:11, 47:10
**decisions** [3] - 36:2, 36:3, 38:25
**defend** [1] - 33:5
**defendant** [4] - 1:7, 23:5, 30:6, 32:9
**DEFENDANT** [41] - 31:25, 32:2, 34:2,

34:6, 34:9, 34:12, 34:15, 34:20, 35:8, 35:15, 35:20, 36:6, 36:12, 38:4, 38:7, 38:14, 39:7, 39:14, 39:17, 40:1, 41:14, 41:18, 42:1, 42:9, 42:15, 42:25, 43:3, 43:6, 43:8, 43:18, 43:22, 44:3, 44:8, 44:24, 45:6, 45:20, 45:25, 46:5, 46:13, 46:25, 47:4
**Defendant** [5] - 1:19, 1:21, 3:3, 43:5, 44:20
**defendant's** [2] - 23:9, 23:13
**defending** [2] - 30:24, 31:13
**defense** [9] - 23:7, 26:18, 32:5, 51:23, 52:8, 54:6, 54:22, 54:23, 55:24
**definition** [1] - 27:11
**delay** [2] - 7:18, 8:15
**deputy** [1] - 50:25
**DEPUTY** [1] - 3:4
**describe** [3] - 13:10, 13:18, 40:18
**described** [2] - 13:7, 13:12
**description** [1] - 44:6
**designed** [1] - 27:17
**desperate** [1] - 53:20
**despite** [1] - 11:5
**detail** [1] - 23:1
**detailed** [1] - 30:1
**details** [1] - 53:24
**determination** [1] - 55:17
**determined** [2] - 32:11, 32:13
**developed** [1] - 32:19
**DEVEREAUX** [1] - 1:20
**Devereux** [1] - 3:12
**device** [1] - 9:11
**diabetes** [1] - 48:25
**diabetic** [1] - 49:4
**diagnosed** [2] - 49:1, 49:4
**diagnosis** [1] - 49:8
**different** [3] - 13:21, 29:6, 45:9
**difficult** [1] - 16:3
**difficulties** [1] - 49:21
**difficulty** [1] - 43:21
**direct** [3] - 35:17, 36:23, 36:25
**directly** [1] - 36:20
**Dirksen** [3] - 6:22, 6:25, 7:1
**disagreements** [1] - 16:7
**disclose** [1] - 35:11
**discrete** [1] - 4:11
**discuss** [5] - 5:15, 28:13, 29:4, 29:9, 50:12
**discussed** [7] - 8:22, 28:14, 29:10, 31:5, 31:15, 38:9, 45:16
**discussing** [2] - 29:12, 30:2
**discussion** [4] - 5:25, 12:12, 18:3, 27:9
**discussions** [1] - 6:4
**dispel** [1] - 38:21
**dispute** [1] - 22:11
**disputes** [2] - 4:10, 16:6
**disqualify** [1] - 39:24
**distracting** [1] - 53:12

SN        OCR        RPR

**distributed** [1] - 52:4
**DISTRICT** [3] - 1:1, 1:1, 1:12
**District** [1] - 1:15
**divulge** [1] - 11:21
**DNA** [3] - 54:20, 55:16, 55:17
**docket** [1] - 3:5
**documents** [1] - 50:17
**Doe** [20] - 5:3, 5:4, 5:10, 5:18, 5:24, 6:7, 7:6, 11:3, 12:10, 17:12, 23:1, 23:18, 23:21, 24:10, 25:4, 26:2, 35:4, 35:19, 37:16, 42:2
**done** [1] - 38:18
**Donna** [2] - 54:10, 56:14
**Donnelly** [1] - 3:2
**DONNELLY** [1] - 1:12
**Donuts** [1] - 25:10
**double** [1] - 52:3
**doubt** [1] - 11:15
**downstairs** [2] - 49:16, 50:20
**drama** [1] - 53:9
**drawn** [1] - 10:5
**drive** [2] - 50:20, 50:21
**drives** [3] - 48:18, 48:19, 48:22
**dropped** [1] - 25:10
**due** [2] - 20:7, 53:4
**Dunkin'** [1] - 25:10
**during** [7] - 13:14, 21:14, 23:3, 24:10, 26:4, 27:5, 41:21
**duties** [1] - 35:12
**duty** [5] - 35:1, 35:21, 35:24, 35:25, 36:4

### E

**E-mail** [1] - 1:25
**e-mail** [11] - 4:25, 8:2, 8:7, 8:16, 10:16, 10:18, 10:20, 10:21, 54:23, 56:1
**early** [2] - 6:13, 49:22
**ease** [1] - 43:15
**East** [1] - 1:16
**EASTERN** [1] - 1:1
**Eastern** [1] - 1:15
**easy** [1] - 45:3
**ECF** [2] - 36:17, 36:20
**effect** [3] - 14:2, 14:15, 21:17
**effective** [1] - 46:23
**efforts** [2] - 4:21, 47:21
**either** [10] - 10:24, 28:24, 32:23, 35:2, 35:10, 35:13, 38:25, 40:25, 50:18, 54:2
**encouraged** [1] - 12:5
**encouraging** [1] - 20:2
**end** [3] - 4:1, 13:24, 37:17
**ended** [2] - 21:6, 27:23
**ends** [1] - 35:24
**enforcement** [1] - 55:8
**entitled** [2] - 4:18, 55:11
**episode** [1] - 49:11
**ESQ** [9] - 1:14, 1:17, 1:17, 1:20, 1:23,

2:2, 2:5, 2:8, 2:11
**established** [2] - 19:22, 47:9
**ethical** [8] - 28:3, 28:4, 33:1, 33:2, 33:3, 35:12, 42:20, 44:5
**eventually** [1] - 49:11
**evidence** [2] - 32:17, 34:17, 35:3
**ex** [4] - 5:11, 12:22, 13:12, 13:15
**exact** [3] - 6:12, 6:13, 20:12
**exactly** [1] - 20:8
**examination** [2] - 35:17, 36:11
**examine** [1] - 32:23
**examining** [1] - 35:17
**example** [1] - 9:8
**except** [1] - 22:10
**exchange** [1] - 50:17
**excuse** [2] - 19:6, 47:14
**excused** [1] - 47:18
**experience** [1] - 28:25
**experiencing** [1] - 49:11
**explain** [4] - 19:7, 43:1, 44:16, 54:18
**explained** [5] - 4:19, 40:2, 45:5, 46:2, 47:2
**explaining** [1] - 44:25
**extended** [2] - 53:18, 53:22
**extent** [11] - 4:12, 4:16, 5:14, 22:10, 23:15, 29:25, 32:6, 32:22, 34:23, 34:25, 44:11
**eye** [1] - 19:13

### F

**face** [2] - 50:13
**face-to-face** [1] - 50:13
**FaceTime** [2] - 25:8, 25:15
**facility** [2] - 48:10, 50:19
**fact** [2] - 42:11, 55:12
**factual** [2] - 16:4, 33:10
**fairly** [1] - 53:9
**fan** [1] - 53:10
**far** [10] - 3:12, 12:19, 19:19, 34:11, 39:16, 42:2, 42:3, 42:4, 42:6, 46:14
**FARINELLA** [3] - 1:21, 1:23, 22:20
**farinella** [3] - 22:19, 35:13, 46:16
**Farinella** [1] - 3:12
**feature** [1] - 28:13
**federal** [2] - 13:20, 25:6
**Federal** [1] - 6:24
**FEIN** [1] - 2:9
**felt** [1] - 12:13
**few** [2] - 39:18, 51:21
**file** [2] - 12:9, 27:24, 52:17
**filing** [4] - 23:8, 32:7, 52:13, 55:6
**final** [3] - 44:9, 51:4, 53:25
**fine** [6] - 7:20, 12:1, 28:2, 47:14, 54:17
**finish** [2] - 8:15, 18:16
**finished** [2] - 13:1, 48:23
**fire** [1] - 28:24
**first** [16] - 3:7, 6:19, 6:21, 7:7, 10:14, 21:8, 24:17, 25:12, 25:14, 25:24,

30:13, 37:10, 41:20, 41:22, 42:1, 45:4
**flexible** [1] - 51:6
**Floor** [3] - 1:22, 2:7, 2:10
**focus** [3] - 16:1, 19:10, 20:2
**focusing** [2] - 19:11, 43:11
**folders** [1] - 48:14
**following** [6] - 10:15, 10:22, 13:14, 20:24, 37:4, 37:5
**food** [1] - 49:5
**FOR** [1] - 1:11
**form** [4] - 7:15, 7:24, 8:1
**formal** [2] - 34:24, 35:23
**formally** [2] - 12:6, 32:20
**former** [1] - 35:25
**forum** [1] - 19:7
**forward** [2] - 16:13, 34:14, 53:13
**foundation** [1] - 38:10
**four** [2] - 29:12, 37:18
**frankly** [1] - 23:8
**free** [4] - 4:17, 15:17, 16:1, 19:11
**freezing** [1] - 28:24
**Friday** [1] - 50:3
**front** [1] - 36:20
**full** [4] - 22:15, 24:17, 37:10, 37:14
**fully** [2] - 47:9, 50:9
**Fulton** [2] - 30:21, 30:22

### G

**gaining** [1] - 27:16
**general** [5] - 33:13, 38:15, 38:17, 41:24, 43:19
**generally** [2] - 53:10, 53:12
**girls** [3] - 17:4, 17:18, 17:23
**given** [5] - 16:15, 27:8, 27:13, 32:21, 35:22
**glad** [2] - 10:3
**Gloria** [6] - 10:3, 17:13, 18:6, 20:13, 20:16, 21:9
**Government** [23] - 1:14, 3:7, 14:18, 15:7, 22:23, 22:25, 26:14, 29:23, 30:7, 30:15, 31:17, 33:4, 41:1, 41:3, 47:5, 48:4, 51:13, 51:17, 52:20, 53:5, 54:3, 54:5, 54:19
**Government's** [2] - 29:13, 56:11
**Grand** [1] - 1:19
**grant** [1] - 53:14
**grants** [1] - 55:25
**great** [1] - 15:18
**greatly** [1] - 47:21
**Greenberg** [16] - 3:17, 4:14, 13:17, 13:21, 13:23, 14:1, 14:12, 16:8, 17:16, 17:17, 18:5, 18:21, 19:4, 19:16, 20:1, 47:14
**greenberg** [1] - 10:14
**GREENBERG** [4] - 2:3, 2:5, 3:17, 47:14
**guess** [2] - 29:6, 51:17
**guidance** [1] - 40:9

# H

**half** [3] - 40:14, 40:22, 40:24
**hand** [1] - 9:12
**HARAMATI** [18] - 2:11, 3:15, 15:12, 26:21, 28:14, 28:21, 29:8, 29:12, 29:17, 29:19, 31:15, 37:2, 37:5, 37:12, 37:23, 41:6, 44:18, 44:21
**haramati** [1] - 26:20
**Haramati** [28] - 3:15, 4:20, 26:22, 28:10, 29:3, 32:8, 33:11, 36:24, 38:3, 38:11, 40:3, 40:12, 40:22, 41:1, 41:2, 41:5, 41:11, 41:20, 43:2, 43:16, 44:16, 45:14, 46:2, 46:3, 47:2, 47:11, 47:20, 47:22
**hard** [5] - 42:3, 48:18, 48:19, 48:22, 50:20
**hash** [1] - 19:8
**hear** [6] - 3:24, 7:19, 13:3, 15:10, 15:19, 31:18
**heard** [1] - 31:19
**HEARING** [1] - 1:11
**hearing** [14] - 3:5, 4:2, 4:3, 4:9, 6:22, 8:22, 13:20, 15:24, 16:1, 18:10, 20:25, 25:5, 46:2, 55:16
**hello** [1] - 25:17
**help** [3] - 27:17, 35:11, 54:11
**helpful** [2] - 24:11, 24:12
**herself** [6] - 30:24, 31:13, 33:5, 39:1, 43:10, 44:13
**hesitate** [1] - 40:10
**hide** [2] - 38:19, 38:22
**highlighters** [1] - 48:16
**himself** [4] - 30:24, 31:13, 33:5, 39:2
**hired** [1] - 17:13
**history** [1] - 24:2
**Hon** [1] - 3:2
**honestly** [1] - 23:25
**Honor** [68] - 3:8, 3:21, 5:19, 6:1, 11:24, 13:4, 13:19, 14:22, 15:12, 15:18, 22:22, 24:17, 26:17, 26:21, 28:14, 28:21, 29:8, 29:17, 29:20, 29:22, 29:23, 29:25, 30:12, 31:17, 32:3, 32:6, 34:2, 34:9, 34:15, 34:20, 35:8, 35:15, 35:20, 36:6, 36:12, 37:13, 38:4, 39:14, 40:1, 41:4, 41:6, 41:14, 41:18, 42:1, 42:15, 44:3, 44:18, 44:24, 45:20, 45:25, 46:5, 46:20, 46:25, 47:7, 47:16, 49:2, 49:9, 49:10, 50:7, 51:6, 51:19, 54:7, 54:14, 54:18, 55:25, 56:8, 56:10
**HONORABLE** [1] - 1:12
**honorable** [1] - 54:20
**hot** [2] - 29:1
**hour** [4] - 40:14, 40:22, 40:24, 49:14
**huge** [1] - 53:10

# I

**idea** [1] - 40:21

**identified** [3] - 29:5, 39:18
**identifying** [1] - 30:25
**IL** [2] - 2:4, 2:7
**Ilana** [1] - 3:15
**Illinois** [1] - 25:6
**image** [1] - 27:9
**impatient** [1] - 19:1
**implicate** [2] - 5:8, 13:8
**implicated** [1] - 13:6
**implicates** [1] - 5:15
**impression** [1] - 38:21
**in-person** [1] - 8:2
**incident** [1] - 13:7
**included** [4] - 4:24, 9:13, 37:18, 51:15
**includes** [1] - 35:4
**including** [1] - 35:18
**inconvenience** [1] - 54:25
**independent** [2] - 39:11, 40:4
**independently** [1] - 10:19
**indicated** [5] - 18:5, 20:18, 21:18, 24:13, 54:23
**indicates** [1] - 54:21
**indicating** [1] - 17:12
**individuals** [1] - 52:7
**influenced** [1] - 36:3
**information** [22] - 11:6, 11:8, 11:17, 11:20, 12:5, 12:12, 12:16, 23:5, 23:7, 23:11, 24:11, 30:2, 35:5, 35:10, 35:12, 36:9, 37:3, 39:2, 39:21, 50:2, 52:25
**informed** [2] - 32:14, 47:10
**inquiries** [1] - 16:3
**inquiry** [13] - 5:12, 12:18, 12:22, 13:15, 27:5, 28:4, 29:23, 30:1, 30:4, 31:18, 32:5, 41:21, 55:5
**insofar** [1] - 46:10
**instance** [1] - 28:6
**instances** [1] - 27:5
**instead** [1] - 43:11
**instruction** [1] - 12:7
**instructions** [4] - 7:10, 7:12, 7:25, 8:4
**insulin** [1] - 49:3
**intelligent** [1] - 47:13
**intend** [1] - 34:13
**intention** [1] - 19:5
**interacting** [1] - 26:12
**interaction** [2] - 25:18, 26:5
**interactions** [2] - 7:10, 20:5
**interest** [19] - 4:5, 4:15, 5:1, 26:9, 30:6, 30:7, 30:24, 31:13, 32:12, 33:14, 33:15, 39:1, 41:17, 42:4, 42:23, 46:9, 46:10, 46:19
**interested** [5] - 4:11, 4:16, 14:25, 19:3, 22:12
**interests** [4] - 7:23, 11:18, 19:14, 19:15
**interfere** [1] - 34:4
**internet** [1] - 50:18
**interrupt** [1] - 56:6
**interview** [2] - 23:21, 26:25

**introducing** [1] - 35:3
**investigate** [1] - 4:4
**investigating** [1] - 35:2
**involve** [2] - 5:9, 6:4
**involved** [2] - 33:1, 41:12
**issue** [17] - 11:12, 13:22, 14:21, 15:24, 22:12, 26:16, 28:11, 33:13, 37:6, 37:19, 38:16, 39:20, 48:11, 48:14, 48:17, 50:19, 54:16
**issues** [16] - 4:12, 14:24, 28:12, 28:15, 29:11, 29:13, 30:4, 31:11, 39:19, 40:13, 41:12, 45:24, 48:1, 53:10, 55:1
**item** [1] - 13:7
**items** [1] - 43:16

# J

**Jackson** [1] - 2:4
**JACQUELYN** [1] - 1:14
**James** [1] - 54:20
**Jane** [20] - 5:3, 5:4, 5:10, 5:18, 5:24, 6:7, 7:6, 11:3, 12:10, 17:12, 23:1, 23:17, 23:21, 24:10, 25:4, 26:2, 35:4, 35:19, 37:16, 42:2
**jointly** [1] - 6:17
**Joycelyn** [1] - 6:8
**Judge** [27] - 3:13, 15:15, 16:11, 17:1, 17:9, 17:10, 17:25, 18:11, 18:15, 18:21, 19:20, 19:24, 19:25, 20:7, 20:9, 20:16, 20:23, 21:23, 22:1, 22:16, 24:24, 25:15, 26:19, 37:25, 47:17, 54:21, 55:22
**judge** [12] - 16:11, 16:14, 16:22, 17:9, 21:15, 22:5, 22:14, 23:25, 24:18, 25:9, 25:24, 26:11
**JUDGE** [1] - 1:12
**Judge's** [1] - 55:17
**July** [22] - 1:7, 6:9, 6:13, 6:22, 8:6, 8:19, 8:21, 9:2, 10:8, 10:9, 10:10, 10:14, 13:13, 17:11, 18:9, 20:14, 20:15, 26:1, 53:4, 53:6, 54:19
**June** [7] - 4:8, 15:23, 24:15, 24:16, 29:14, 36:19, 36:22
**JUROR** [1] - 46:20
**jurors** [3] - 51:15, 52:3, 52:22
**jury** [1] - 53:13

# K

**KASULIS** [1] - 1:14
**keep** [5] - 18:18, 19:13, 22:9, 33:6, 53:9
**keeping** [1] - 16:9
**Kelly** [29] - 3:6, 3:11, 4:17, 4:22, 24:7, 26:4, 26:23, 27:15, 27:17, 28:13, 28:15, 29:4, 30:9, 31:4, 31:9, 31:21, 31:23, 32:5, 32:11, 36:25, 38:2, 41:1, 41:10, 45:15, 47:6, 47:9, 48:25, 49:21, 56:6
**KELLY** [1] - 1:6

**Kelly's** [12] - 10:4, 11:7, 13:20, 14:13, 14:23, 15:13, 16:1, 19:14, 20:24, 23:6, 25:5, 54:20
**kind** [4] - 11:3, 24:4, 27:10, 34:25
**kinds** [1] - 39:4
**knowing** [1] - 47:12
**knowledge** [4] - 7:14, 8:13, 11:17, 14:7
**known** [1] - 10:6

# L

**laptops** [2] - 48:17, 48:18
**LaSalle** [1] - 2:7
**last** [7] - 19:2, 19:21, 21:5, 21:11, 22:25, 38:9, 48:23
**law** [2] - 27:21, 55:8
**LAW** [2] - 1:21, 2:1
**lawyer** [33] - 19:22, 20:21, 28:8, 30:17, 30:20, 30:22, 30:23, 32:20, 33:6, 33:14, 33:17, 34:22, 38:25, 39:3, 39:25, 42:22, 42:23, 44:13, 45:8, 45:10, 45:11, 45:12, 45:13, 45:17, 45:18, 46:4, 46:8, 46:11, 46:17, 46:23
**lawyer's** [3] - 31:12, 33:14, 39:5
**LAWYERS** [1] - 2:3
**lawyers** [9] - 4:10, 22:11, 33:20, 34:14, 36:10, 44:11, 46:9, 46:14
**leads** [1] - 35:3
**learn** [1] - 10:23
**learned** [3] - 42:13, 44:12, 48:7
**least** [5] - 23:18, 27:20, 46:9, 46:10, 50:20
**leave** [1] - 12:25
**led** [2] - 9:25, 12:4
**Lee** [2] - 48:5, 48:7
**left** [2] - 3:11, 3:12
**legal** [12] - 11:7, 11:18, 14:13, 21:19, 26:6, 26:8, 27:11, 34:25, 35:22, 36:1, 42:17, 44:13
**lengthy** [2] - 23:2, 23:16
**LEON** [1] - 1:20
**Leonard** [3] - 3:17, 16:7, 47:14
**LEONARD** [3] - 2:6, 2:8, 47:17
**letter** [17] - 3:25, 12:7, 12:10, 21:7, 24:14, 24:15, 24:16, 24:22, 29:11, 29:14, 31:3, 36:19, 36:24, 39:10, 43:17, 48:2, 51:20
**letters** [1] - 24:23
**letting** [1] - 10:24
**likelihood** [1] - 5:7
**limine** [1] - 53:4
**limitations** [2] - 32:6, 33:18
**limited** [6] - 42:6, 42:11, 55:6, 55:23, 56:13, 56:15
**line** [3] - 37:18, 52:22
**lines** [2] - 8:11, 10:5
**list** [9] - 48:7, 51:14, 51:17, 51:21, 51:22, 51:23, 52:1, 52:10, 52:20

**LLP** [2] - 2:6, 2:9
**location** [1] - 18:12
**look** [7] - 15:21, 16:14, 17:10, 26:1, 43:11, 51:23, 53:13
**looking** [1] - 6:13
**lovely** [2] - 8:8, 11:5
**low** [1] - 53:9
**low-drama** [1] - 53:9
**loyalty** [4] - 35:2, 35:22, 35:25, 36:4
**luck** [2] - 14:2, 14:15
**lunch** [1] - 18:8

# M

**ma'am** [10] - 31:25, 34:2, 34:6, 34:20, 35:20, 39:7, 43:18, 44:8, 45:25, 46:5
**Madison** [1] - 1:22
**Magistrate** [1] - 54:21
**mail** [12] - 1:25, 4:25, 8:2, 8:7, 8:16, 10:16, 10:18, 10:20, 10:21, 54:23, 56:1
**maintained** [1] - 10:18
**Maria** [1] - 3:8
**MARIA** [1] - 1:17
**markers** [1] - 48:16
**Marshal's** [1] - 50:16
**Maspeth** [1] - 1:20
**material** [1] - 11:18
**materials** [4] - 4:25, 5:5, 9:14, 17:3, 20:4
**Matter** [1] - 56:18
**matters** [2] - 15:24, 43:15
**MDC** [2] - 48:3, 48:21
**mean** [7] - 14:5, 16:12, 16:23, 30:9, 44:23, 56:2, 56:5
**means** [3] - 16:24, 35:1, 46:21
**mechanics** [1] - 51:1
**media** [5] - 11:13, 20:20, 21:4, 26:7, 27:9
**mediate** [1] - 4:10
**medical** [1] - 49:8
**medication** [1] - 49:3
**meet** [1] - 40:22
**meeting** [5] - 18:11, 23:1, 23:18, 23:20, 55:1
**meetings** [2] - 38:13, 50:13
**MEISTER** [1] - 2:9
**MELENDEZ** [29] - 1:17, 3:8, 5:22, 5:25, 14:22, 15:7, 22:24, 23:13, 23:23, 24:12, 24:16, 25:2, 26:16, 29:20, 29:22, 30:12, 30:21, 31:17, 32:3, 36:19, 36:22, 37:8, 37:13, 37:21, 37:25, 41:3, 47:7, 51:19, 54:4
**Melendez** [4] - 3:9, 24:9, 36:16
**member** [1] - 40:3
**members** [1] - 42:13
**mentioned** [4] - 13:25, 29:23, 30:14, 39:3
**mesh** [2] - 50:14, 50:16

**message** [17] - 8:1, 8:7, 8:18, 9:2, 9:5, 9:9, 9:11, 9:24, 10:1, 17:12, 17:16, 18:4, 18:6, 20:19, 20:23, 21:6, 22:6
**messages** [4] - 9:18, 9:22, 16:14, 17:10
**met** [12] - 4:14, 6:21, 7:5, 7:7, 8:21, 9:1, 10:11, 10:13, 25:4, 25:12, 30:13, 40:5
**metal** [1] - 48:13
**method** [2] - 30:5, 51:1
**MEYER** [1] - 2:6
**MI** [1] - 2:2
**microphone** [1] - 31:22
**might** [14] - 7:22, 23:6, 30:17, 33:6, 35:2, 35:11, 36:3, 36:14, 36:17, 39:10, 42:22, 51:18, 51:20
**Mike** [1] - 3:17
**mind** [5] - 11:15, 15:25, 16:9, 26:6, 48:8
**minute** [1] - 28:20
**minutes** [1] - 8:20
**moment** [3] - 28:16, 40:11, 44:18
**months** [1] - 25:16
**more-detailed** [1] - 30:1
**morning** [1] - 55:4
**most** [2] - 53:20, 56:5
**motions** [1] - 53:4
**motivated** [1] - 33:5
**move** [3] - 32:4, 53:18, 53:21
**MR** [22] - 3:17, 22:20, 22:22, 47:16, 47:17, 49:2, 49:9, 49:14, 49:25, 50:4, 50:7, 50:12, 51:2, 51:6, 51:8, 51:11, 52:2, 52:6, 52:13, 52:19, 54:7, 56:10
**MS** [123] - 3:8, 3:10, 3:15, 3:21, 5:19, 5:22, 5:25, 6:6, 6:9, 6:12, 6:17, 6:21, 6:24, 7:3, 7:8, 7:11, 7:13, 7:16, 7:18, 7:21, 8:1, 8:5, 8:10, 8:18, 9:3, 9:6, 9:10, 9:16, 9:20, 9:23, 10:2, 10:9, 10:13, 10:17, 11:1, 11:3, 11:11, 11:24, 12:3, 12:19, 13:4, 13:19, 14:6, 14:9, 14:22, 15:2, 15:7, 15:12, 15:15, 15:18, 16:11, 16:19, 16:22, 17:1, 17:6, 17:8, 17:21, 17:25, 18:3, 18:15, 18:19, 18:21, 19:20, 19:24, 20:7, 20:23, 21:3, 21:15, 21:22, 22:5, 22:14, 22:24, 23:13, 23:23, 23:25, 24:12, 24:16, 24:18, 24:23, 25:2, 25:9, 25:14, 25:20, 25:24, 26:11, 26:16, 26:19, 26:21, 28:14, 28:21, 29:8, 29:17, 29:19, 29:20, 29:22, 30:12, 30:21, 31:15, 31:17, 32:3, 36:19, 36:22, 37:5, 37:8, 37:12, 37:13, 37:21, 37:23, 37:25, 41:3, 41:6, 44:18, 44:21, 45:15, 47:7, 47:24, 51:19, 54:4, 54:14, 54:18, 55:22, 56:8, 56:14
**multiple** [1] - 48:18
**mutually** [1] - 54:22

Case 1:19-cr-00286-AMD   Document 139   Filed 07/25/21   Page 63 of 66 PageID #: 1315

## N

**Nadia** [1] - 3:9
**NADIA** [1] - 1:17
**name** [4] - 5:3, 5:21, 30:19, 52:20
**named** [2] - 12:10, 37:17
**names** [2] - 51:21, 52:6
**nature** [4] - 11:18, 21:25, 26:5, 32:21
**neat** [1] - 53:22
**necessarily** [1] - 27:17
**necessary** [1] - 31:2
**need** [15] - 10:4, 15:10, 15:14, 24:20, 26:22, 28:12, 28:16, 41:20, 41:22, 47:1, 47:2, 47:22, 51:18, 52:10, 52:25
**needed** [1] - 21:24
**needs** [3] - 49:6, 52:20, 54:2
**never** [4] - 21:19, 25:18, 26:3, 32:20
**NEW** [1] - 1:1
**new** [2] - 12:9
**New** [5] - 1:6, 1:15, 1:16, 1:22, 2:10
**next** [4] - 20:16, 40:15, 52:5, 52:9
**Nichole** [1] - 3:10
**nobody** [2] - 18:12, 39:20
**NOLAN** [1] - 1:24
**NolanEDNY@aol.com** [1] - 1:25
**nonetheless** [1] - 48:10
**note** [3] - 10:20, 32:3, 37:15
**noted** [2] - 32:5, 51:20
**notes** [2] - 10:17, 48:16
**nothing** [6] - 15:13, 26:10, 41:3, 47:7, 54:4, 54:7
**notice** [1] - 52:17
**nourishment** [1] - 49:6
**number** [6] - 3:5, 11:16, 11:17, 20:14, 36:17, 36:20
**NY** [3] - 1:20, 1:22, 2:10

## O

**o'clock** [1] - 54:1
**Oak** [1] - 2:2
**object** [1] - 45:23
**objected** [1] - 55:2
**objection** [3] - 15:7, 53:17, 53:22
**objections** [1] - 53:16
**objective** [1] - 19:15
**obligation** [1] - 4:4
**obligations** [1] - 32:21
**obtained** [1] - 54:19
**obvious** [1] - 11:4
**obviously** [2] - 16:16, 27:3
**OCR** [1] - 1:24
**OF** [4] - 1:1, 1:3, 1:11, 1:21
**office** [2] - 10:18, 56:1
**OFFICE** [1] - 1:21
**officers** [1] - 55:9
**once** [3] - 40:13, 44:16, 53:24
**one** [30] - 5:2, 5:18, 7:21, 11:16, 13:7, 19:8, 21:23, 25:10, 26:24, 28:1, 29:7,
31:11, 32:3, 32:16, 32:23, 32:24, 34:14, 36:10, 37:7, 37:9, 37:13, 43:3, 43:22, 44:15, 44:18, 52:13, 53:5, 53:7, 55:2
**ooOoo** [1] - 56:21
**open** [3] - 3:1, 5:13, 6:3
**opportunity** [4] - 17:2, 31:18, 31:19, 32:8
**opposition** [1] - 53:5
**option** [1] - 49:19
**order** [8] - 39:1, 48:11, 49:8, 55:7, 55:21, 55:23, 56:12, 56:15
**ordinarily** [1] - 48:20
**organizations** [2] - 51:14, 51:16
**outlet** [1] - 20:20
**outline** [1] - 3:24
**owes** [3] - 35:1, 35:24, 36:4
**own** [4] - 18:23, 19:14, 28:8, 33:19

## P

**p.m** [2] - 1:8, 8:19
**PACER** [1] - 24:24
**page** [10] - 24:17, 36:25, 37:7, 37:9, 37:10, 37:15, 38:2, 38:9
**paper** [1] - 16:15
**paragraph** [13] - 24:17, 24:21, 36:25, 37:4, 37:5, 37:7, 37:8, 37:10, 37:14, 37:15, 38:2, 38:3, 38:8
**paragraphs** [1] - 31:3
**paralegals** [1] - 52:12
**parenthetically** [1] - 3:25
**Park** [1] - 2:10
**part** [5] - 13:15, 20:2, 31:8, 46:13, 52:8
**parte** [4] - 5:11, 12:22, 13:12, 13:15
**particular** [4] - 17:15, 28:13, 36:24, 48:5
**particularly** [1] - 54:25
**parties** [2] - 15:19, 51:4
**passed** [1] - 51:24
**Pause** [3] - 13:2, 27:22, 50:6
**pause** [1] - 50:24
**paused** [1] - 54:13
**paying** [1] - 43:11
**PC** [1] - 2:1
**pen** [1] - 50:16
**pencils** [1] - 48:15
**pens** [2] - 48:14, 48:15
**people** [7] - 9:17, 19:23, 35:22, 36:3, 51:14, 52:10, 53:1
**People** [1] - 18:11
**perceived** [3] - 23:8, 23:9, 26:9
**perfect** [1] - 44:25
**perfectly** [1] - 32:9
**perhaps** [2] - 31:18, 42:17
**period** [2] - 21:14, 41:7
**permit** [1] - 53:16
**person** [19] - 6:21, 8:2, 8:17, 8:21, 9:1, 9:5, 10:11, 10:14, 27:15, 27:19, 28:1,
33:5, 35:1, 38:20, 38:22, 42:21, 43:25, 45:10
**personal** [2] - 19:14, 22:11
**personally** [1] - 26:12
**perspective** [1] - 27:20
**pertain** [1] - 7:22
**pertaining** [1] - 17:3
**Peter** [1] - 48:5
**phase** [1] - 40:15
**phone** [12] - 3:18, 8:5, 8:6, 8:19, 9:8, 9:15, 9:19, 10:2, 10:9, 13:22, 25:16, 47:15
**picture** [1] - 22:15
**piece** [1] - 16:15
**place** [4] - 4:3, 19:16, 26:24, 50:19
**places** [1] - 51:14
**plaintiff** [1] - 1:4
**plausible** [1] - 28:6
**Plaza** [1] - 1:16
**pleasant** [1] - 8:23
**pleasure** [1] - 53:7
**plus** [1] - 49:14
**point** [11] - 4:13, 7:5, 10:23, 11:4, 12:21, 16:12, 21:23, 24:12, 24:21, 31:3, 47:13
**pointed** [1] - 29:23
**points** [1] - 48:2
**policy** [1] - 48:21
**portion** [1] - 42:10
**portions** [1] - 5:9
**pose** [1] - 43:21
**poses** [1] - 28:3
**position** [6] - 21:1, 23:9, 23:14, 33:24, 41:16, 44:14
**positive** [1] - 55:14
**possibility** [1] - 39:24
**possible** [6] - 5:1, 30:8, 30:12, 31:11, 39:20, 51:19
**potential** [17] - 4:22, 29:5, 29:24, 32:11, 32:16, 32:18, 34:18, 35:1, 37:17, 40:5, 41:23, 41:25, 42:19, 43:20, 44:23, 46:24, 47:12
**pre** [1] - 49:4
**pre-diabetic** [1] - 49:4
**preceding** [1] - 38:9
**precisely** [1] - 45:15
**predict** [1] - 39:20
**prepared** [1] - 40:16
**presence** [1] - 44:11
**present** [3] - 3:3, 3:21, 23:23
**presiding** [1] - 3:2
**pressure** [1] - 40:11
**pressures** [1] - 28:8
**pretrial** [2] - 51:4, 53:25
**pretty** [3] - 44:5, 44:7, 52:2
**prevented** [1] - 35:2
**preview** [1] - 53:6
**privilege** [6] - 5:8, 5:16, 12:23, 13:6, 13:9, 27:4

**privileged** [8] - 6:5, 11:22, 12:1, 12:18, 12:20, 35:6, 35:10, 35:18
**problem** [3] - 48:6, 51:9, 52:23
**procedure** [2] - 55:11, 55:14
**proceeding** [4] - 4:1, 4:6, 48:3, 50:1
**proceedings** [4] - 13:2, 27:22, 50:6, 50:24
**Proceedings** [1] - 54:13
**produced** [2] - 20:18, 49:20
**prohibited** [1] - 35:16
**pronounce** [1] - 42:3
**proper** [1] - 55:11
**propose** [1] - 55:22
**proposed** [1] - 54:24
**PROSPECTIVE** [1] - 46:20
**protect** [1] - 39:1
**protected** [1] - 27:4
**provide** [1] - 55:7
**provided** [3] - 17:2, 42:17, 55:2
**providing** [1] - 55:24
**public** [1] - 27:9
**publicly** [1] - 26:10
**pull** [1] - 32:1
**purpose** [1] - 30:1
**purposes** [6] - 5:25, 23:6, 23:14, 30:5, 55:24, 56:15
**pursuant** [1] - 4:4
**put** [13] - 10:17, 12:16, 14:19, 14:20, 14:24, 14:25, 15:14, 22:9, 22:14, 41:1, 44:13, 47:6, 54:2
**putting** [2] - 22:9, 44:12

## Q

**questioning** [2] - 39:4, 42:6
**questionnaire** [1] - 51:15
**questionnaires** [1] - 52:4
**questions** [17] - 5:5, 5:7, 6:3, 14:17, 14:19, 14:24, 15:4, 19:5, 23:4, 27:12, 33:7, 33:22, 34:1, 39:15, 40:23, 47:5, 48:6
**quick** [1] - 3:24
**quietly** [1] - 32:8
**quite** [3] - 12:16, 30:10, 48:23
**quote** [2] - 4:5, 14:1

## R

**raise** [1] - 23:14
**raised** [4] - 29:11, 29:13, 34:23, 40:6
**read** [2] - 18:17, 21:8
**reading** [2] - 18:18, 32:6
**ready** [3] - 44:21, 52:15, 56:7
**really** [6] - 19:3, 19:6, 24:20, 40:16, 40:21, 45:12
**reason** [4] - 18:18, 20:9, 43:20, 45:17
**reasonable** [2] - 27:15, 27:18
**reasons** [2] - 35:13, 48:20
**receive** [1] - 9:1

**received** [10] - 4:24, 9:5, 9:14, 9:24, 12:7, 24:22, 24:23, 35:6, 48:2, 53:5
**receiving** [1] - 12:5
**reception** [1] - 50:15
**Recess** [2] - 28:22, 41:9
**recess** [6] - 12:22, 12:25, 28:20, 40:12, 40:24, 41:7
**recollection** [5] - 15:24, 16:23, 16:24, 25:3, 25:7
**record** [16] - 10:19, 14:20, 16:13, 18:19, 18:20, 19:25, 20:2, 21:11, 22:9, 22:10, 26:25, 27:19, 30:3, 30:7, 47:8, 54:2
**Redwelds** [1] - 48:13
**refer** [3] - 17:24, 36:15, 43:15
**reference** [1] - 31:2, 43:16
**references** [1] - 32:7
**referred** [2] - 5:4, 5:24
**referring** [4] - 5:3, 5:18, 5:20, 26:10
**refresh** [1] - 15:23
**refuse** [1] - 55:10
**refute** [1] - 28:9
**regard** [3] - 4:21, 47:21, 48:14
**regarding** [8] - 5:5, 7:10, 8:11, 13:17, 14:5, 14:24, 48:2, 56:11
**regardless** [2] - 31:14, 35:23
**regularly** [1] - 14:10
**rein** [5] - 14:1, 14:4, 14:5, 14:6, 14:14
**relate** [2] - 4:11, 6:4
**related** [8] - 27:5, 28:11, 29:7, 32:25, 36:7, 44:4, 44:9, 44:15
**relatedly** [1] - 37:3
**relates** [1] - 37:6
**relating** [1] - 5:1
**relationship** [12] - 5:10, 12:4, 12:7, 22:3, 23:4, 23:5, 24:4, 27:23, 32:19, 34:24, 35:23, 35:24
**relay** [1] - 27:3
**relaying** [2] - 11:6, 11:17
**relevant** [1] - 12:18
**rely** [1] - 35:5
**remember** [5] - 10:2, 10:19, 11:13, 13:23, 24:5
**remind** [3] - 4:9, 5:2, 51:3
**repeat** [2] - 16:6, 45:1
**reply** [1] - 11:14
**REPORTER** [1] - 1:24
**represent** [6] - 6:16, 18:22, 18:24, 32:15, 45:23, 46:18
**representation** [7] - 4:17, 5:8, 7:2, 19:12, 26:4, 42:16, 47:18
**represented** [14] - 6:17, 18:14, 19:2, 19:23, 20:6, 20:11, 24:3, 25:21, 28:3, 33:17, 34:8, 34:22, 43:9, 46:8
**representing** [7] - 7:6, 12:14, 19:18, 21:2, 25:16, 28:1, 32:12
**represents** [1] - 27:14
**request** [2] - 53:14, 55:16
**require** [2] - 11:21, 28:4

**requires** [1] - 49:22
**research** [1] - 17:9
**resolve** [1] - 54:15
**respect** [8] - 14:6, 20:8, 26:16, 29:25, 30:4, 37:14, 37:19, 47:20
**respected** [2] - 40:3, 47:11
**respond** [2] - 20:15, 22:1
**responded** [2] - 20:13, 21:24
**response** [4] - 9:1, 11:18, 14:1, 18:11
**restrictions** [2] - 48:9, 49:23
**result** [1] - 20:19
**resume** [1] - 41:8
**retained** [5] - 6:7, 6:9, 10:3, 32:20
**review** [3] - 17:3, 20:4, 33:11
**reviewed** [5] - 4:7, 32:10, 37:11, 38:3, 38:12
**rights** [1] - 40:19
**risk** [3] - 43:24, 45:7, 45:8
**risks** [2] - 34:21, 41:24
**Robert** [1] - 3:5
**ROBERT** [1] - 1:6
**Rodriguez** [23] - 3:20, 4:14, 4:25, 5:5, 5:12, 5:14, 5:17, 6:2, 13:3, 13:5, 15:4, 15:16, 16:16, 17:4, 17:14, 18:23, 19:18, 21:19, 22:3, 25:22, 27:1, 27:5, 27:8
**RODRIGUEZ** [40] - 3:21, 5:19, 6:6, 6:9, 6:12, 6:17, 6:21, 6:24, 7:3, 7:8, 7:11, 7:13, 7:16, 7:18, 7:21, 8:1, 8:5, 8:10, 8:18, 9:3, 9:6, 9:10, 9:16, 9:20, 9:23, 10:2, 10:9, 10:13, 10:17, 11:1, 11:3, 11:11, 11:24, 12:3, 12:19, 13:4, 13:19, 14:6, 14:9, 15:18
**Rodriguez's** [2] - 27:6, 27:20
**role** [1] - 40:4
**roles** [1] - 8:11
**room** [2] - 48:19, 49:5
**Royal** [1] - 2:2
**RPR** [1] - 1:24
**rule** [1] - 19:22
**rumor** [1] - 44:1
**rumors** [1] - 43:23
**running** [1] - 49:15

## S

**satisfied** [1] - 34:10
**Savage** [9] - 5:21, 6:8, 7:7, 11:4, 23:23, 25:4, 35:5, 35:19, 42:2
**saved** [1] - 9:10
**saw** [2] - 8:21, 10:17
**Schmidt** [1] - 18:7
**Scholar** [1] - 52:16
**screen** [2] - 50:14, 50:16
**seal** [1] - 55:6
**sealed** [1] - 30:2
**search** [1] - 54:19
**seated** [2] - 3:11
**second** [9] - 7:21, 36:24, 37:6, 37:8,

**37**:14, **38**:2, **43**:3, **48**:6, **50**:4
**secret** [1] - 18:12
**security** [2] - 48:20, 50:19
**see** [4] - 24:20, 29:10, 50:9, 55:18
**seeing** [2] - 16:23, 16:24
**seek** [1] - 38:20
**seeking** [1] - 12:8
**SEELIG** [1] - 2:9
**send** [5] - 9:4, 9:17, 12:11, 27:24, 56:14
**sending** [2] - 10:19, 21:7
**sense** [1] - 56:5
**sent** [10] - 8:6, 8:18, 9:2, 9:21, 10:16, 10:20, 16:15, 16:20, 17:12, 20:17
**sentence** [1] - 18:16
**separate** [3] - 38:11, 42:18, 51:22
**separately** [1] - 53:2
**September** [1] - 6:18
**series** [1] - 33:22
**serious** [1] - 39:22
**services** [1] - 34:10
**set** [1] - 55:8
**several** [1] - 21:25
**severed** [1] - 12:7
**shall** [1] - 56:13
**share** [3] - 22:3, 35:12, 42:12
**Shihata** [1] - 3:9
**SHIHATA** [6] - 1:17, 54:14, 54:18, 55:22, 56:8, 56:14
**shot** [1] - 44:17
**show** [5] - 16:16, 17:11, 31:4, 50:15, 55:10
**showed** [2] - 43:16, 49:10
**side** [4] - 14:23, 15:13, 54:2, 56:9
**sidebar** [3] - 30:4, 53:11, 53:15
**sign** [1] - 56:13
**signed** [2] - 12:8, 54:20
**significant** [3] - 21:13, 21:15, 21:18
**similar** [1] - 28:14
**simply** [3] - 17:11, 20:9, 22:14
**sitting** [1] - 30:10
**situation** [3] - 27:25, 33:19, 38:25
**slowly** [1] - 7:19
**smoothly** [1] - 32:4
**social** [1] - 20:20
**solution** [1] - 48:6
**someone** [2] - 19:17, 38:18
**sometimes** [3] - 9:17, 53:17
**somewhat** [2] - 21:18, 29:6
**soon** [1] - 55:25
**SOPHIE** [1] - 1:24
**sorry** [12] - 6:12, 7:17, 7:18, 8:14, 11:10, 17:6, 17:21, 18:25, 25:14, 37:5, 43:6, 54:14
**sort** [3] - 28:4, 28:11, 53:8
**sound** [2] - 18:25, 31:16
**sounds** [2] - 11:20, 44:25
**speaking** [5] - 13:11, 14:10, 33:4, 46:1, 53:16

**specific** [3] - 15:3, 16:9, 37:11
**specifically** [9] - 8:10, 9:25, 11:12, 17:3, 18:5, 24:5, 38:1, 40:17, 43:15
**specifics** [3] - 11:20, 24:6, 27:3
**spectre** [1] - 4:5
**spend** [1] - 47:23
**spent** [1] - 29:12
**spoken** [1] - 13:21
**spokesperson** [3] - 17:13, 18:7
**start** [4] - 14:18, 41:19, 48:11, 54:2
**started** [1] - 21:9
**starting** [1] - 37:17
**state** [1] - 3:7
**STATES** [3] - 1:1, 1:3, 1:12
**States** [3] - 1:5, 1:15, 1:18
**Ste** [1] - 2:7
**step** [1] - 10:5
**steps** [1] - 43:25
**Steve** [1] - 3:17
**sticking** [1] - 48:2
**sticky** [1] - 48:15
**still** [6] - 9:11, 9:14, 11:6, 12:5, 21:3, 46:4
**stop** [2] - 14:11, 17:20
**strike** [1] - 20:10
**stuff** [2] - 21:4, 21:19
**subjects** [1] - 6:4
**submissions** [6] - 4:7, 4:24, 12:16, 29:6, 29:24, 40:7
**submitted** [5] - 4:8, 5:6, 18:17, 51:14, 51:17
**substantial** [1] - 32:18
**subtle** [1] - 45:8
**suffice** [1] - 49:17
**sufficient** [2] - 30:15, 31:16
**sufficiently** [1] - 29:9
**suggestion** [1] - 48:24
**suit** [1] - 21:24
**Suite** [1] - 2:4
**supplied** [3] - 17:11, 20:12, 25:25
**suspenders** [1] - 31:8
**sustained** [1] - 34:17
**swabbing** [1] - 55:9
**SYLVESTER** [1] - 1:6
**symptoms** [1] - 49:10

## T

**table** [1] - 30:10
**team** [3] - 14:13, 42:14, 52:8
**technically** [1] - 37:15
**technology** [1] - 9:6
**teleconference** [2] - 2:5, 2:8
**terminate** [1] - 22:7
**termination** [1] - 21:7
**terms** [5] - 41:24, 42:10, 43:19, 49:7, 50:20
**testifies** [1] - 45:9
**testify** [1] - 39:12

**testimony** [2] - 25:7, 35:4
**text** [22] - 8:1, 8:7, 8:14, 8:16, 8:18, 9:1, 9:5, 9:11, 9:17, 9:22, 9:24, 10:1, 10:10, 17:10, 17:12, 17:16, 18:4, 18:6, 20:12, 20:19, 20:23, 21:6
**texted** [1] - 20:15
**texts** [2] - 20:13, 20:14
**THE** [228] - 1:12, 1:21, 3:4, 3:14, 3:16, 3:19, 3:23, 5:20, 5:23, 6:2, 6:7, 6:11, 6:15, 6:19, 6:23, 7:1, 7:5, 7:9, 7:12, 7:15, 7:17, 7:20, 7:24, 8:3, 8:9, 8:14, 8:25, 9:4, 9:8, 9:13, 9:17, 9:21, 9:25, 10:8, 10:11, 10:15, 10:22, 11:2, 11:10, 11:19, 11:25, 12:15, 12:21, 13:3, 13:5, 14:4, 14:8, 14:16, 14:23, 15:5, 15:9, 15:13, 15:16, 15:19, 16:18, 16:20, 16:25, 17:5, 17:7, 17:20, 17:22, 18:2, 18:13, 18:17, 18:20, 18:25, 19:21, 20:1, 20:22, 21:1, 21:10, 21:20, 22:2, 22:8, 22:17, 22:21, 22:23, 23:10, 23:20, 24:8, 24:15, 24:20, 24:25, 25:3, 25:12, 25:18, 25:21, 26:3, 26:14, 26:18, 26:20, 26:22, 27:23, 28:17, 28:23, 29:10, 29:15, 29:18, 29:21, 30:9, 30:13, 30:22, 31:16, 31:20, 31:25, 32:1, 32:2, 32:10, 34:2, 34:3, 34:6, 34:7, 34:9, 34:10, 34:12, 34:13, 34:15, 34:16, 34:20, 34:21, 35:8, 35:9, 35:15, 35:16, 35:20, 35:21, 36:6, 36:7, 36:12, 36:13, 36:20, 36:23, 37:3, 37:11, 37:20, 37:22, 38:1, 38:4, 38:5, 38:7, 38:8, 38:14, 38:15, 39:7, 39:8, 39:14, 39:15, 39:17, 39:18, 40:1, 40:2, 41:5, 41:7, 41:10, 41:14, 41:15, 41:18, 41:19, 42:1, 42:7, 42:9, 42:10, 42:15, 42:16, 42:25, 43:1, 43:3, 43:4, 43:6, 43:7, 43:8, 43:14, 43:18, 43:19, 43:22, 43:24, 44:3, 44:4, 44:8, 44:9, 44:19, 44:22, 44:24, 45:2, 45:6, 45:7, 45:17, 45:20, 45:21, 45:25, 46:1, 46:5, 46:6, 46:13, 46:14, 46:21, 46:25, 47:1, 47:4, 47:5, 47:8, 47:18, 47:25, 49:3, 49:13, 49:19, 50:1, 50:5, 50:8, 50:18, 50:25, 51:3, 51:7, 51:9, 51:12, 51:22, 52:3, 52:9, 52:17, 52:21, 54:6, 54:8, 54:17, 55:13, 56:2, 56:9, 56:13, 56:16
**therefore** [1] - 20:11
**third** [3] - 44:14, 46:11, 49:19
**THOMAS** [1] - 1:21
**thoughts** [2] - 16:13, 22:4
**three** [6] - 8:17, 24:17, 36:9, 37:15, 37:18, 49:20
**thumb** [1] - 50:20
**Thursday** [1] - 1:7
**today** [4] - 3:25, 29:7, 34:5, 38:12
**today's** [2] - 4:1, 4:6
**toes** [1] - 10:5
**Tom** [1] - 3:12
**took** [2] - 14:12, 49:14
**top** [1] - 37:9

**topic** [1] - 22:18
**topics** [1] - 12:23
**totally** [1] - 44:25
**towards** [2] - 13:24, 32:1
**TRANSCRIPT** [1] - 1:11
**trial** [6] - 23:9, 23:14, 39:12, 43:12, 45:10, 46:22
**TRIAL** [1] - 2:3
**true** [5] - 21:14, 30:23, 31:10, 31:14, 43:25
**trust** [1] - 32:19
**try** [1] - 43:10
**trying** [7] - 7:19, 19:7, 19:25, 22:9, 22:14, 49:17, 53:8
**turn** [1] - 12:8
**turned** [1] - 25:16
**two** [19] - 5:1, 5:9, 7:2, 11:17, 18:1, 18:14, 19:19, 20:6, 27:12, 33:20, 35:10, 36:25, 37:10, 37:15, 38:2, 46:9, 46:14, 52:6

## U

**ultimately** [1] - 20:16
**umbrella** [1] - 26:8
**unbiased** [1] - 39:11
**unconsciously** [1] - 36:2
**under** [3] - 26:8, 40:10, 55:6
**understood** [1] - 8:23
**unethical** [3] - 38:16, 38:18, 38:20
**unfortunately** [1] - 16:22
**unheeded** [1] - 14:11
**UNITED** [3] - 1:1, 1:3, 1:12
**United** [3] - 1:5, 1:15, 1:18
**unless** [4] - 16:4, 22:12, 47:23, 55:10
**unnecessary** [1] - 53:12
**unsealing** [5] - 55:7, 55:21, 55:23, 56:12, 56:15
**unsworn** [5] - 36:8, 37:6, 37:19, 37:23, 44:14
**untrue** [1] - 31:10
**up** [13] - 20:9, 21:5, 21:6, 28:12, 29:7, 39:19, 39:21, 39:22, 43:10, 46:7, 46:11, 46:18, 49:22
**updated** [1] - 51:18
**upset** [1] - 52:14
**upstairs** [2] - 49:12, 49:15
**USA** [1] - 3:5
**useful** [1] - 23:6

## V

**vaccinated** [2] - 31:24, 52:11
**various** [1] - 8:4
**versus** [1] - 3:5
**via** [2] - 2:5, 30:4
**Via** [1] - 2:8
**view** [1] - 29:15
**violating** [1] - 28:7

**violation** [4] - 28:9, 33:1, 33:2, 33:3
**violations** [1] - 42:20
**virtual** [1] - 3:22
**visiting** [2] - 48:19, 49:5

## W

**waive** [5] - 4:18, 32:13, 33:25, 41:16, 42:5
**waiver** [2] - 47:11, 47:13
**waiving** [1] - 29:18
**walked** [1] - 30:11
**wants** [5] - 5:15, 19:4, 41:1, 47:6, 47:23
**warrant** [8] - 54:19, 54:21, 55:2, 55:3, 55:15, 55:16, 56:4
**Washington** [1] - 2:1
**waste** [1] - 19:10
**watching** [1] - 28:18
**week** [2] - 49:20, 52:5
**weeks** [1] - 13:20
**West** [1] - 2:4
**whatsoever** [1] - 25:23
**whichever** [1] - 51:9
**whole** [1] - 28:24
**willing** [1] - 33:25
**win** [1] - 53:17
**witness** [28] - 5:2, 5:11, 5:21, 13:7, 13:10, 13:12, 13:14, 14:17, 14:19, 14:20, 14:24, 15:6, 15:14, 35:1, 35:5, 35:17, 36:8, 36:11, 37:6, 37:19, 37:24, 39:4, 44:14, 45:9, 45:12, 45:18
**witness's** [1] - 35:3
**witnesses** [17] - 5:1, 5:9, 7:10, 18:14, 23:12, 23:17, 28:2, 32:18, 33:7, 34:18, 35:10, 36:9, 37:17, 44:10, 44:12, 52:7
**woman** [1] - 18:4
**women** [12] - 7:2, 10:24, 17:5, 17:7, 17:8, 17:23, 18:2, 18:22, 19:19, 20:6, 20:17
**words** [1] - 16:5
**wrongdoing** [1] - 39:9

## Y

**years** [1] - 18:1
**yesterday** [1] - 54:23
**YORK** [1] - 1:1
**York** [5] - 1:6, 1:15, 1:16, 1:22, 2:10

## Z

**zero** [2] - 16:22, 16:24