

U.S. Department of Justice

United States Attorney
Eastern District of New York

EAG/NIS/MCM
F. #2019R00029

271 Cadman Plaza East
Brooklyn, New York 11201

August 2, 2021

<u>By ECF</u>

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Robert Sylvester Kelly
     <u>Criminal Docket No 19-286 (S-3) (RSK)</u>

Dear Judge Donnelly:

  The government writes in reply to the defendant's response in opposition to the government's motion <u>in</u> <u>limine</u> to admit other acts evidence. (<u>See</u> Mem. of Law in Opp. to Gov't's Mot. <u>in</u> <u>Limine</u> to Admit Certain Uncharged Acts, dated July 13, 2021 (ECF Docket Entry No. 146) ("Def. Mem.")). For the reasons set forth herein and in the government's initial memorandum, the government's motion should be granted.

  First, all of the other acts evidence the government seeks to offer is admissible as direct evidence of the charged racketeering offense, a fact the defendant fails to mention in his response, and therefore the notice provisions of Rule 404(b) of the Federal Rules of Evidence do not apply. (<u>See, e.g.,</u> Gov't Mot. to Admit Certain Uncharged Acts, at 31). In its initial memorandum, the government cited to Rule 404(b) only as an alternate basis for admission of this evidence. (<u>Id.</u> at 30, 38-40).

  Significantly, as set forth in the government's memorandum in support of its motion to admit certain other acts evidence, a racketeering offense is not limited to just the enumerated racketeering acts; rather it is the combination of both the activity of the enterprise and evidence of the pattern of racketeering, demonstrating that the defendant's conduct is "interrelated and that there is continuity or a threat of continuity," often through the presentation of uncharged other acts. (<u>See id.</u> (citing <u>United States v. Indelicato</u>, 865 F.2d 1370, 1381 (2d. Cir. 1989); <u>United States v. Pizzonia</u>, 577 F.3d 455, 463 (2d Cir. 2009)). As clearly set forth in the government's memorandum, the other acts evidence

discussed therein falls squarely within the time frame of the charged racketeering activity of "[i]n or about January 1994 and the present",[1] (Ind. ¶ 12), and involves not only the defendant's own conduct, but his use of and reliance on various members of the charged enterprise to carry out the uncharged acts as part of the methods and means of the pattern of racketeering charged in this case, including, but not limited to, selecting victims, making travel arrangements and carrying out the defendant's instructions, which were used to control and silence his victims. The proffered evidence, therefore, reflects not only the defendant's pattern of racketeering, but also the longstanding continuity of such conduct committed by the defendant and other members of the enterprise throughout the duration of the racketeering period.

Second, even if the notice provisions of Rule 404(b) did apply, the government has complied with those provisions. The Court set the schedule to file motions in limine on February 9, 2021, and at no time did defense counsel seek an earlier date for the filing of the government's Rule 404(b) motion. (See Minute Entry dated Feb. 9, 2021). The government was prepared to file its motions on Monday, July 19, 2021, but the defendant sought an extra four days for the filing of motions in limine, an extension to which the government did not object. (See Ltr. of Thomas Farinella to the Court, dated July 19, 2021 (ECF Docket Entry No 131)). Regardless, the government's notice was sufficient such "that the defendant has a fair opportunity to meet it." See Fed. R. Evid. 404(b)(3)(A). Significantly, the defendant has had ample notice of the government's evidence, as the substance of these uncharged acts and the evidence supporting them were disclosed in the government's production of 3500 material, as well as in prior productions of Rule 16 discovery. This is also true of the allegations concerning John Doe #1 and John Doe #2. The government disclosed 3500 material relating to both John Does on February 5, 2021, as well as discovery material corroborating their claims.[2] Thus, the defense had ample notice of the allegations of sexual

---

[1] While the evidence the government seeks to admit regarding the defendant's introduction to and sexual conduct with Jane Doe #1 includes evidence from approximately 1992 and 1993, such evidence is admissible because it is direct evidence of Racketeering Act One, inextricably intertwined with the conduct charged in that racketeering act and provides relevant and important background concerning the conduct. Cf. United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."); see also United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (Other crimes or acts evidence admissible where it arose "out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial"); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense").

[2] The defendant claims that "there was never any mention by the government that this controversial topic [sexual contact between the defendant and John Doe #1 and John

2

activity between the defendant and John Doe #1 and John Doe #2 and could have sought to include a question regarding such allegations in the questionnaire.[3] (Moreover, jury selection is not complete and, should the defendant request, the Court could pose additional relevant questions as to this topic to the venire during the jury selection process.)

Nor is there any merit to the defendant's allegations that there is no evidence supporting sexual activity between the defendant and Jane Doe #1, while she was a minor. (See Def. Mem. at 10 ("There is absolutely no physical proof, nor circumstantial proof, that any of these allegations put forth by the government are true. Jane Doe #1 is unable to testify that any of the above allegations are true, they are merely accusations that assist in forming the government's narrative.")). A witness ("Witness #1") will testify that the defendant admitted to him that, based on information the defendant obtained from Jane Doe #1, the defendant believed Jane Doe #1 was pregnant by him. In addition, Witness #1 will testify that based on the defendant's statements and demeanor, he believed that the defendant was the individual who impregnated Jane Doe #1, including because the defendant admitted that he (the defendant) was advised that he would need to marry Jane Doe #1 to escape prosecution. Many of these admissions were made just before Witness #1 helped the defendant arrange an unplanned flight to return to Chicago—while the defendant was on tour in another state—to secretly marry Jane Doe #1. In addition, another witness – Jane Doe #7 – will testify that she saw the defendant engaged in sexual contact with Jane Doe #1 in or about 1992, when Jane Doe #1 was just 13 years old. Jane Doe #5 also will testify that the defendant admitted to her that he married Jane Doe #1 (when she was 15 years old) because she was pregnant, and he wanted to be protected by law if they were married (he apparently believed that spousal privilege would preclude Jane Doe #1 from testifying against him). The evidence is also not barred by Rule 403, as the defendant argues (Def. Mem. at 10),

---

Doe #2] would potentially be part of Mr. Kelly's trial. The defense was blindsided." (Def. Mem. at 4). Yet it is difficult to comprehend for what other purpose the government would have provided 3500 material for both John Doe #1 and John Doe #2 other than to provide the defendant with statements—including their respective statements regarding the sexual contact between the defendant and each of them—related to evidence that the government intended to elicit at trial.

[3] Notably, the evidence and statements produced to the defendant pursuant to Rule 16 from the inception of the government's prosecution, as well as initial statements produced pursuant to 18 U.S.C. § 3500—all prior to the finalization of the juror questionnaire—included multiple allegations concerning same-sex sexual contact between women and girls at the defendant's direction. The defendant, however, at no point requested that the potential jurors be questioned regarding their views on same-sex relationships or sexual activities. The defendant's assertions of severe prejudice as a basis to exclude the evidence related to John Doe #1 and John Doe #2, therefore, rings hollow and appears to be a pretense aimed purely at excluding clear evidence of the charged racketeering activity, particularly where, as noted above, the potential jurors' views on this subject may readily be probed during jury selection.

given that the nature of the allegations is similar to other allegations contained in the indictment, including that the defendant had sexual contact with Jane Doe #4 when she was just 16 years old and, in any event, while the evidence of the defendant's sexual contact with Jane Doe #1 may be prejudicial, it is not unfairly so. To the contrary, it is extremely probative of the reasons for which the defendant engaged in the alleged bribery scheme in the first place.

Finally, the defendant's claim that he does not know the identities of Jane Doe #7 to Jane Doe #20, or John Doe #1 and John Doe #2, similarly falls flat. First, in its 3500 material and Rule 16 disclosures, the government has provided the full identities of several of these individuals and has provided sufficient detail about them that it is difficult to fathom that the defendant and his counsel do not readily know many of their identities. Even assuming that the defendant does not know most of their identities, an assumption the government finds difficult to credit, the government provided detailed descriptions of their allegations against the defendant in its initial production of 3500 material, giving the defendant a more than sufficient opportunity to prepare its defense. Moreover, upon receiving the defendant's opposition motion, the government has now also provided a list of the identities to the defendant. Notably, at no time did the defense ask for their identities; had they asked, the government would have readily provided their names when the defense requested the identities of Jane Doe #2 and Jane Doe #3. (Furthermore, the government did provide the name of Jane Doe #1 and the names of lawyers representing many of the individuals discussed in the government's motion regarding other acts evidence in a letter to defense counsel dated February 5, 2021, upon production of the initial 3500 material, further showing that at no time was the government intending to conceal their identities.)

For the reasons set forth above and in its initial memorandum, the government respectfully submits its motion should be granted.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:   /s/
Elizabeth A. Geddes
Nadia I. Shihata
Maria Cruz Melendez
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of Court (AMD) (by ECF)
      Defense Counsel (by ECF)