# Attachment A

Case 1:19-cr-00286-AMD   Document 223-1   Filed 09/20/21   Page 1 of 5 PageID #: 5496



21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Rachel F. Strom**
212-402-4069 tel

RachelStrom@dwt.com

July 22, 2021

**VIA ECF**

Hon. Ann Donnelly
Eastern District of New York
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, New York 11201

Re:   *United States of America v. Robert Sylvester Kelly*, 19-CR-286 (E.D.N.Y.)

Dear Judge Donnelly:

We represent the American Broadcasting Companies, Inc., The Associated Press, Buzzfeed News, CBS Broadcasting Inc. on behalf of CBS News and WCBS-TV, Cable News Network, The Daily Beast, Dow Jones & Company (publisher of the *Wall Street Journal*), NBCUniversal, The New York Times Company, NYP Holdings, Inc. (publisher of the *New York Post*), Vox Media LLC, and The Washington Post (collectively, "Press Organizations"). Journalists who work at these organizations understand that the Court intends to limit access by the press and public to the sex trafficking trial of the musician Robert Sylvester Kelly, professionally known as R. Kelly, to two overflow rooms. We write to request that the Court, in recognition of critical First Amendment rights and the widespread public interest in the trial, reconsider its closure of the courtroom and permit a pool of six reporters to attend the trial in person in the actual courtroom.

As Your Honor is well-aware, this is a trial of great importance. It follows decades of serious accusations of sexual abuse of young women, including minors, by a prominent American musician. Over the years, these allegations have been the subject of numerous press reports,

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

including from the Press Organizations[1] as well as other lawsuits and prosecutions.[2] At the same time, the media and public have been critiqued for ignoring or making light of the stories of R. Kelly's alleged victims, which some claim is due not only to the musician's stature, but to the fact that his alleged victims are Black women and girls.[3] Simply put, this is a trial of unique public importance, one at the nexus of critical issues of race, gender, and sexual violence, where media coverage is imperative. To provide adequate coverage here, at least a limited pool of reporters should be allowed into the courtroom itself – to see the reactions of the defendant and the jurors to the witnesses, to see the evidence, to hear statements that may not be picked up on a microphone, and to be fully present for the trial.

This Court no doubt knows that the press and the public have a presumptive First Amendment right of access to criminal trials. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 604–06 (1982). The Supreme Court has found that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." *Id.* Moreover, the Second Circuit has recognized that even where alternative means to access a proceeding are available, "[t]he ability to see and to hear a proceeding as [it] unfolds is a vital component of the First Amendment right of access…" *United States v. Alcantara*, 396 F.3d 189, 201–02 (2d Cir. 2005). Accordingly, a crucial component of this right of access is the press's ability to experience firsthand the reactions

---

[1] *See, e.g.,* Elisha Brown, *Time's Up Targets R. Kelly—He Calls It a 'Public Lynching'*, THE DAILY BEAST (Apr. 30, 2018 2:41 PM ET), https://www.thedailybeast.com/times-up-is-calling-for-a-boycott-of-r-kelly-over-sexual-abuse-claims; Adam Kirch, *What Should We Do About Scandalous Artists?*, THE WALL STREET JOURNAL (Jan. 24, 2019), https://www.wsj.com/articles/what-should-we-do-about-scandalous-artists-11548352964; Associated Press, *R. Kelly Is Arrested in Chicago on Federal Sex-Crime Charges* (Jul. 12, 2019), https://www.wsj.com/articles/r-kelly-is-arrested-in-chicago-on-federal-sex-crime-charges-11562908567; Andrew Denney, *R. Kelly accused of having sex with minor in latest federal charges*, N.Y. POST (Mar. 13, 2020), https://pagesix.com/2020/03/13/r-kelly-accused-of-having-sex-with-minor-in-latest-federal-charges/?_ga=2.192654698.1507619888.1626378759-1317068774.1605125652; CBS News, *The Gayle King Interview with R. Kelly* (Mar. 8, 2019), https://www.cbsnews.com/video/the-gayle-king-interview-with-r-kelly/; Jim DeRogatis and Abdon Palasch, *R. Kelly accused of sex with teenage girls*, CHICAGO SUN-TIMES (Dec. 21, 2000, 5:00 AM CST), https://chicago.suntimes.com/2000/12/21/18423229/r-kelly-accused-of-sex-with-teenage-girls; Jim DeRogatis, *Parents Told Police Their Daughter Is Being Held Against Her Will In R. Kelly's "Cult"*, BUZZFEED NEWS (July 17, 2017, 7:02 AM ET); Jim DeRogatis, *A Woman Who Says She Had Underage Sex With R. Kelly Is Finally Telling Her Story*, BUZZFEED NEWS (Aug. 21, 2017, 9:50 PM. ET).

[2] Mark Savage, *R. Kelly: The history of allegations against him*, BBC NEWS (Aug. 28, 2020), https://www.bbc.com/news/entertainment-arts-40635526 (compiling list of court cases and settlements).

[3] Maya Salam, *R. Kelly: Why So Many Ignored the Warning Signs*, N.Y. TIMES (Jan. 11, 2019), https://www.nytimes.com/2019/01/11/arts/surviving-r-kelly-accusations.html; Ida Harris, *R. Kelly's Victims Were Ignored For 30 Years. It Has 'Everything To Do With The Fact That They Are Black Women.'*, ELLE (Jan. 5, 2019), https://www.elle.com/culture/movies-tv/a25756816/r-kelly-lifetime-documentary-dream-hampton-interview/.

July 22, 2021
Page 3

and demeanor of the parties, attorneys, judge, and jury. Under Supreme Court precedent, this presumptive access right, including the concomitant right to see and to hear a proceeding, "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Sup. Court of California, Riverside Cty.*, 464 U.S. 501, 510 (1984). That interest must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id*.

While the Press Organizations understand that this Court will allow public access to the trial through two overflow rooms, the experience of the Organizations' journalists has shown that an overflow room is not an adequate substitute for the First Amendment right of access to the courtroom itself. Prior high profile criminal trials in the Eastern District of New York that have utilized overflow rooms for reporters have resulted in members of the press being unable to see or hear major components of the trial, including being able to see the defendant, witnesses, jurors, or properly hear attorneys and witnesses due to microphone issues. Indeed, in two recent high profile trials in the Eastern District of New York, the 2019 NXIVM trial and the 2018-2019 trial of El Chapo, reporters in the overflow room missed the prosecutor's opening statement because either the prosecutor's microphone was turned off or because the technology was simply not functioning. Such technical difficulties in this case could create a constructive closure of the courtroom to the public and press, which could then even result in a violation of the Defendant's right to a public trial.[4] Even without these difficulties, overflow room monitors can only show a narrow view of the courtroom, because they use fixed single-angle cameras. As such, key components like the defendant, the judge, or the faces of witnesses are often hidden and jurors are almost always excluded from view. Thus, while overflow rooms are often a necessary complement to the right of access to the actual courtroom, they are not an adequate substitute here.[5]

We are mindful of the difficulties created by the COVID-19 pandemic and respect this Court's efforts to balance the safety of the parties and court staff with the First Amendment right of access. We respectfully believe, however, that it is possible to take COVID-19 safety precautions into account without fully excluding the press and public from the courtroom, particularly because COVID-19 transmission rates in New York City are low and vaccination rates

---

[4] *See, e.g., United States v. Gupta*, 699 F.3d 682, 685 (2d Cir. 2012) (en banc) (holding that district court's exclusion of the public for the entirety of *voir dire* violated criminal defendant's Sixth Amendment right to a public trial and vacating defendant's conviction).

[5] The Press Organizations also seek a mechanism to notify the Court immediately should any similar technological issues arise in the overflow rooms for this trial, so that the trial can be paused until the problem is resolved.

July 22, 2021
Page 4

are high.[6] Indeed, currently, courtroom after courtroom is becoming available to the public. There is no reason that such an important and high profile case should not follow this trend. The proposed pool of six would still allow for social distancing and masking in the courtroom.

We therefore respectfully request that this Court reconsider its order limiting press access to this trial, and in recognition of the First Amendment right of access, permit a limited pool of reporters to attend this important trial in-person.

Respectfully Submitted,

Rachel F. Strom
Nimra H. Azmi

cc: Counsel for all parties (via ECF)

---

[6] Per New York City, 69.9% of New York City adults partially vaccinated and 64.7% fully vaccinated as of this week. NYC Health, *COVID-19 Data*, https://www1.nyc.gov/site/doh/covid/covid-19-data-vaccines.page#people (last accessed July 21, 2021).