4567

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - - - X
3
    UNITED STATES OF AMERICA,      : 19-CR-00286(AMD)
4                                  :
                                   :
5                                  :
         -against-                 : United States Courthouse
6                                  : Brooklyn, New York
                                   :
7                                  :
                                   : FRIDAY, September 24, 2021
8   ROBERT SYLVESTER KELLY,        : 9:30 a.m.
                                   :
9          Defendant.              :
                                   :
10  - - - - - - - - - - - - - - - - X
11
12         TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
13          BEFORE THE HONORABLE ANN M. DONNELLY
                UNITED STATES DISTRICT JUDGE
14
15                 A P P E A R A N C E S:
16
    For the Government:   JACQUELYN M. KASULIS, ESQ.
17                          Acting United States Attorney
                            Eastern District of New York
18                          271 Cadman Plaza East
                            Brooklyn, New York 11201
19                        BY:  ELIZABETH GEDDES, ESQ.
                            NADIA SHIHATA, ESQ.
20                          MARIA E. CRUZ MELENDEZ, ESQ.
                            Assistant United States Attorneys
21
22
    For the Defendant:    AIELLO & CANNICK, Esq.
23                          69-06 Grand Avenue
                            Maspeth, New York 11378
24                        BY:  DEVERAUX L. CANNICK, ESQ.
25

4568

```
                  A P P E A R A N C E S:  (Continued)


 For the Defendant:       BLANK LAW, P.C.
                             444 S. Washington Avenue
                             Royal Oak, Michigan 48067
                          BY:  NICOLE BLANK BECKER, ESQ.


                          THE LAW OFFICE OF THOMAS A. FARINELLA
                             260 Madison Avenue
                             8th Floor
                             New York, New York 10016
                          BY:  THOMAS A. FARINELLA, ESQ.


                          THE C.H. SCHOLAR LAW FIRM, PLLC
                             225 Broadway
                             Suite 225
                             New York, New York 10007
                          BY:  CALVIN HAROLD SCHOLAR, ESQ.
```

```
 Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
                  Official Court Reporter
                  E-mail:  SMaceRPR@gmail.com
 Proceedings recorded by computerized stenography.  Transcript
 produced by Computer-aided Transcription
```

SAM       OCR       RMR       CRR       RPR

Proceedings                                    4569

1              (In open court - jury not present.)

2         THE COURTROOM DEPUTY:  All rise.

3         (Judge ANN M. DONNELLY entered the courtroom.)

4         THE COURT:  Hi, everybody can sit down.

5         (Pause in the proceedings.)

6         (Defendant entered the courtroom.)

7         THE COURT:  Are we ready to begin?

8    Anything before we start?

9         MS. SHIHATA:  No, Your Honor.

10        THE COURT:  All right.

11        MR. SCHOLAR:  Yes, Your Honor.

12        Just a review of the Government's rebuttal

13   summation.  It's on page 4552 of the transcript.  There was

14   some argument about what Mr. Cannick was saying during his

15   summation, and then there was the line that stated:

16        What is that supposed to prove?

17        And just the repeated references to Mr. Cannick and

18   the defense case.  We would argue that that's, again,

19   attempting to shift the burden with respect to the burden of

20   proof, and we would hope that the Court would give an

21   instruction with respect to that before we began.

22        THE COURT:  Well, I don't understand it to be burden

23   shifting at all.  I mean it is a rebuttal summation and so, by

24   definition, it is going to respond to the arguments in the

25   defense.

Proceedings                                    4570

1          And if I am remembering the comment correctly, it

2     was a comment on an inference that Mr. Cannick drew from the

3     evidence.  It had nothing to do with the burden.  I think it

4     might have been the turn of phrase, but there was no comment,

5     as far as I'm concerned, on the burden of proof.

6          And, in fact, I think in both summations, the

7     Government emphasized on a few occasions that the burden was

8     theirs and it was a burden that they welcomed.

9          So, I don't think there's any need to remind the

10    jury.  Surely, it's in my final charge, so I am not going to

11    do anything about that now.

12         But it does remind me, I know Ms. Lawoyin sent the

13    charge to everybody, and I am assuming everybody has had a

14    chance to read it and doesn't have anything they want to add

15    or take out.  Correct?

16              MS. SHIHATA:  That's correct.

17              MR. SCHOLAR:  That's correct, Judge.

18              THE COURT:  Okay, great.

19              All right.  Anything else?

20              MR. SCHOLAR:  No, Judge.

21              THE COURT:  All right, let's get the jury, please.

22              (Pause.)

23              THE COURT:  One thing I was going to remind the

24    Government, when you are finished, if you can take down the

25    board.  I just want to be able to see the jurors.  Thanks.

1            (Pause.)

2            THE COURTROOM DEPUTY:  All rise.

3            (Jury enters.)

4            THE COURTROOM DEPUTY:  You may be seated.

5            THE COURT:  All right, good morning, everybody.

6            THE JURY:  Good morning.

7            THE COURT:  We are ready to proceed.  We are going

8    to continue with the rebuttal summation by Ms. Shihata.

9            Go ahead.

10           MS. SHIHATA:  Good morning, everyone.

11           THE JURY:  Good morning.

12           MS. SHIHATA:  Now, I think where I left off

13   yesterday I was talking about Sonja, and some of the arguments

14   defense counsel made regarding her.

15           And defense counsel claimed there was no evidence

16   supporting that Sonja was locked in a room at that studio, The

17   Chocolate Factory, when it was on Larrabee Street.  And that's

18   just not so.  You heard Sonja testify powerfully and

19   convincingly that she was locked in a room.  And that, alone,

20   is enough to find that act proven.

21           But you also know that defense counsel's claim that

22   there is no evidence that any doors at that studio where she

23   was held locked from the outside.  That's also not true.  Nick

24   Williams testified about that at the transcript at 3545.

25           (Exhibit published.)

Rebuttal - Shihata                    4572

1          And you can see that there on your screen:

2          With respect to the offices, could any of these be

3    locked from the outside?

4          Answer:  I seem to recall that offices like Tom's

5    office could be locked and just with a key.

6          Fair to say that there may be other types of rooms

7    in the studios that have locks on them?

8          I'm sorry, but anyway, so, you can look at 3545

9    related to that.

10         MS. SHIHATA:  And you also know by Sonja's

11   description that the room that she was in was, in fact, an

12   office.  It was Mr. Hyams' office, that former owner at the

13   studio.  And so, there is between her testimony, Mr. Williams'

14   testimony, the room you know she was in, there is sufficient

15   evidence regarding that.

16         Now, yesterday in closing argument defense counsel

17   repeatedly accused the Government of trying to mislead you and

18   lying to you, and that is simply not what the record shows.

19   It's not even what his so-called examples show.

20         He claimed that the Government misled you by

21   entering photos into evidence of the defendant interacting

22   with Jane during that first R. Kelly concert that she went to.

23   He said that we were trying to create a false narrative that

24   the defendant targeted her.

25         Ladies and gentlemen, no one here claimed that Jane

Rebuttal - Shihata                          4573

1    was the only person the defendant interacted with during that

2    concert.  No one.

3          Jane testified that the defendant showed her a lot

4    of attention at the concert.  Remember, she was right up front

5    there in the pit area.  And how did she get there?  That

6    wasn't her original seat assignment.  Someone from the

7    defendant's entourage gave her two wristbands so she could

8    access that area.

9          And the photo that Mr. Cannick complained about us

10   introducing, that was Government Exhibit 248(a), a screenshot

11   from Jane's phone at the time showing those two wristbands.

12         (Exhibit published.)

13         MS. SHIHATA:  You see it on the screen.

14         That's not misleading, ladies and gentlemen, that's

15   called corroboration.

16         And by the way, you know that the defendant took

17   notice of Jane at that concert in April 2015 because Jane

18   didn't somehow magically conjure up the defendant's phone

19   number.  Somebody gave it to her.  And you know who did, a

20   member of that enterprise.  You can see it in Jane's testimony

21   at page 773 of the transcript.

22         And she said -- and the question was:

23         Question:  During the show, what, if any, additional

24   contact did you have with other associates of the defendant?

25         Analysis:  When he performed his second set of the

Rebuttal - Shihata                                          4574

1    stage that was further in the middle of the crowd, someone

2    from his entourage did come to me and they gave me a sheet of

3    paper and said, Don't tell anyone.

4              Did you take a look at the sheet of paper?

5              I did.

6              What was on the sheet of paper?

7              It was the defendant's name and a phone number.

8              And then it goes on:  It was Rob and it had a

9    number.

10             She even remembered the telephone number.

11             And then there's phone records in evidence.

12   Government Exhibit 157.  That's the defendant's outgoing calls

13   to Jane.  And when you look at it, and you'll have it, it's

14   ten pages long.  Ten pages long.  Outgoing calls from the

15   defendant to Jane beginning in April 22nd, 2015 and going

16   through the end of December 2015.

17             And by the way, there was also some talk about how

18   when Jane was on the bus that wasn't punishment, that was --

19   Jane was on there because she was lazy and needed to do her

20   homework or something like that.

21             Well, you saw Alesiette Mayweather's texts.

22   Remember, *the punishment was real* she wrote there.  And those

23   texts were from May 2016.  And there's a stipulation in

24   evidence, which we read to you during this trial at some

25   point, that records from Jane's virtual school show that she

Rebuttal - Shihata                    4575

1   was done with school on April 29th, 2016.  So, when Alesiette

2   Mayweather sent those texts with her contemporaneous thoughts

3   about what was going on, school was done.  No homework to do

4   on that bus.

5           Now, these are just some examples of defense counsel

6   playing fast and loose with the facts in the record.  I'm not

7   going to go through them all, we'd be here all day, literally,

8   if I did, but my point here is don't just take their word for

9   it.  Don't even take my word for it.  If you have a question,

10   ask to see the evidence.

11           Now, defense counsel also claimed that none of the

12   government's witnesses said that they saw the defendant with

13   an underage person.

14           You know that that is simply not true.  Cheryl Mack

15   saw the defendant with an underage person, 17-year-old Jane.

16   And you know Cheryl knew her age because she booked that first

17   American Airlines flight for Jane to LA at the end of 2015.

18   And then she met Jane shortly thereafter at the Mandalay Bay

19   in Las Vegas.  You saw those text messages and you heard

20   Cheryl Mack testify about that.  And she didn't just see

21   17-year-old Jane platonically hanging out with the defendant;

22   no, remember what she told you.  In July 2015 the defendant

23   was performing three shows at a casino in Connecticut.  And

24   you will also have in the records, in the evidence you'll see,

25   there is an exhibit that shows he was performing at the

Rebuttal - Shihata                                    4576

1    Foxwoods Casino at that time in Connecticut.

2           And remember what Cheryl told you she saw in the

3    dressing room after that last show, Jane's head going towards

4    the defendant's penis to give him oral sex.  And she said that

5    was her cue to leave the room.  You heard that last week.

6           Who else saw the defendant with an underaged person?

7           Angela.  She saw and experienced the defendant

8    engage in sexual acts with both herself as a young teenager at

9    his apartment, and with two other young teenagers that day she

10   first met him, Tiffany and another girl.  And she told you

11   that at a tour stop in Washington, D.C. in 1992 or '93, she

12   saw the defendant with his head between Aaliyah's legs giving

13   her oral sex.  Aaliyah was just 13 or 14 at the time.

14          And Anthony Navarro told you he recognized Jerhonda

15   as a guest who stayed at Olympia Fields.  Now, he didn't

16   identify her by name, but he recognized her photograph,

17   Government Exhibit 70.  And recalled seeing her at the Olympia

18   Fields house and giving her rides and picking up food for her.

19   That's at the transcript 508 to 09.  He stopped working for

20   the defendant in 2009, he testified to that.  So, when he saw

21   Jerhonda there, she was just 16 years old.  You have her birth

22   certificate, you know that.  Yet another person who saw the

23   defendant with an underaged girl.

24          And remember that defense witness Larry Hood, his

25   childhood friend and former Chicago police officer who claimed

Rebuttal - Shihata                                        4577

1    he left the PD in good standing, but then admitted he actually

2    left after a felony forgery conviction and admitted he lied

3    under oath.  Remember him.  He said he acted as security for

4    the defendant at various times, including in the early days.

5    And after first claiming he had never seen the defendant with

6    underaged girls, he almost immediately contradicted himself,

7    acknowledging that Aaliyah was a teenager and he saw her with

8    her little hype girls at the studio to include Angela, herself

9    underage at the time.  And he also admitted to you that he, as

10   security for the defendant, wasn't checking a single ID at the

11   studio.

12            And you heard that from a lot of witnesses at this

13   trial.  Security wasn't checking IDs all the time.  Defense

14   counsel saying it doesn't make it so.

15            Now, did everyone on that board know for certain

16   that there were underage girls around?

17            Maybe not, but they certainly weren't checking.  And

18   I submit to you that they didn't really care and they turned a

19   blind eye.  They wanted to stay employed and they didn't ask

20   questions.  That was their focus.

21            Now, I want to talk a bit about Jerhonda, because

22   defense counsel spent some time on this yesterday.  And his

23   argument, literally, makes zero sense when you look at the

24   actual evidence.

25            So, he called Jerhonda a stalker and a groupie

Rebuttal - Shihata                    4578

1   extraordinaire, and he claimed that the defendant never had

2   sex with her.  He said Robert vehemently denies any sexual

3   relationship with Jerhonda.  And he claimed that the only time

4   she was in his house was when she jumped a fence and got

5   inside and took some photographs and somehow found a T-shirt

6   in the house and magically got his sperm on it.  Remember,

7   he's not even house when that happens.

8            And he also claimed that the last assault and sex

9   that Jerhonda told you about when the defendant choked her and

10  ejaculated on her face and she wiped his semen off of the

11  T-shirt, that's the basis for that forced labor charge in the

12  indictment, that she never told the lawyer at the Loggans law

13  firm that she had a T-shirt when she first met with him --

14  with her.

15           Defense counsel is dead wrong on that.  Look at the

16  actual testimony from Courtnay Wilson, the lawyer who took

17  Jerhonda's information and drafted that new client memorandum.

18  What did she tell you under oath on that witness stand?  That

19  just four days after this incident occurred in January 2010,

20  among the information that Jerhonda told Ms. Wilson, quote,

21  that she had a T-shirt that had semen on it from Mr. Kelly,

22  unquote.  And then she further said, quote, she had used the

23  T-shirt to wipe it off from her body.  That's the transcript

24  at 608, entirely consistent with what Jerhonda told you on

25  that witness stand.  And remember, this is late January 2010.

Rebuttal - Shihata                          4579

1           Why is that important?

2           Because this whole theory about Jerhonda breaking

3   into the house and getting a T-shirt with sperm, which isn't

4   actually supported by anything in the record, that's happened,

5   right, that happened when Anthony Navarro was still working

6   for the defendant at Olympia Fields.  And Anthony Navarro left

7   in 2009.  And defense counsel suggested to you, wrongfully, as

8   we just went over, that Jerhonda didn't say anything about the

9   T-shirt when she first went to the Loggans law firm, which

10  we've now established is incorrect, and that she and Dominique

11  then jumped the fence, got onto Olympia Fields, and somehow

12  got this T-shirt with the semen on it at a time when the

13  defendant was traveling and not in the house.

14          And he suggested to you that it was after getting

15  that T-shirt that -- sorry, he suggested to you that she first

16  went to the law firm, she didn't have that evidence, and then

17  she had to go and get it, and so she broke into the house.

18  But again, it doesn't -- it's internally inconsistent.  The

19  timing doesn't work out because she is -- Anthony Navarro is

20  2009, she goes to the law firm in January 2010 and, by the

21  way, mentions the T-shirt.

22          It's also absurd for the defendant to argue that

23  Jerhonda was a stalker because of the phone records in

24  evidence.

25          This is Government Exhibit 149.  Ms. Geddes talked

SAM        OCR        RMR        CRR        RPR

Rebuttal - Shihata                    4580

1    about this yesterday, and if you look at it, it is pages and

2    pages of phone records, phone contact between the defendant

3    and Jerhonda.  It's going both ways.  She's not a stalker,

4    ladies and gentlemen, he was having sex with her when she was

5    16 years old, just like she told you.  And he was video

6    recording it when she was 16 years old using a Cannon video

7    camera and an iPhone 3GS.  That's sexual exploitation of a

8    minor and production of child pornography.

9          And by the way, if he didn't know this person and

10   she was some crazy stalker, what's the defendant doing with

11   those doctored copies of her birth certificate, state ID and

12   this fake employment ID in the locked safe in the storage

13   facility?  And why is he paying her a 1.5-million-dollar

14   settlement if she's just made this thing up out of whole cloth

15   and he can prove it?

16         Again, just because defense counsel says it, doesn't

17   make it so.

18         Now, I want to turn to Faith for a moment.  Defense

19   counsel talked to you about these texts between Faith and the

20   defendant from April 2018.  And, you know, you saw he showed

21   you those texts during his closing argument, but that wasn't

22   the first time you saw those texts.  You saw those texts

23   because they were part of an attachment to that threatening

24   letter that the defendant sent to Faith's lawyer right here in

25   Brooklyn.  That's Government Exhibit -- it's in Government

Rebuttal - Shihata                    4581

1   Exhibit 231(a).  And here they are, these texts from April.

2              (Exhibit published.)

3              MS. SHIHATA:  But you also heard her testify about

4   them.  And I am going to put this on the screen.

5              (Exhibit published.)

6              MS. SHIHATA:  You heard her testify about it in

7   pages 2282 to 2285 of the transcript and defense counsel

8   completely ignored what Faith actually said about this.

9              And remember what Faith told you.  She told you she

10  went to the Dallas Police Department to make a report before

11  these texts were sent in April 2018.  And she reported to the

12  Dallas PD that she had contracted herpes from the defendant,

13  and the police -- and then she tried, she told you she was

14  present there with the police officers and they tried to make

15  a recorded call to the defendant and he didn't answer.  And

16  she was advised to try to do that again.

17             And so, what did she tell you she did?

18             That she sent these texts in April 2018 to try to

19  get him on the phone, and she did get him on the phone and her

20  lawyer was conferenced in and they recorded it.  And they

21  tried to talk about the herpes and he said, the defendant

22  said:  I'm not talking about that over the phone.  Why don't

23  you come to Chicago?  She didn't end up going, but that is

24  what these texts are about.  You know that because she

25  testified about it.

Rebuttal - Shihata                                   4582

1          (Exhibit published.)

2          MS. SHIHATA:  It wasn't her trying to get back with

3   him.

4          THE COURT:  Ms. Shihata, I am just going to remind

5   you to don't speak too quickly, okay?

6          MS. SHIHATA:  Okay.

7          And by the way, you also heard from her she went to

8   the Dallas PD, she went to the police department in Long

9   Island.  She did all that.  She reported what happened to her

10  in two different cities before filing that lawsuit in

11  New York.  So, when Mr. Cannick says nobody went to the

12  police; once again, wrong.

13         Now, let's talk about Racketeering Act One, the

14  bribery charge.

15         Now, defense counsel in his closing argument,

16  basically, he wants you to look at one question and answer

17  between Mr. Smith and a lawyer.  But, again, you need to look

18  at the totality of the evidence, and that includes the

19  totality of Demetrius Smith's testimony.  And that shows you

20  that the defendant had everything to do with that bribery.

21         It's the defendant who tells Smith Aaliyah's in

22  trouble and to get them on a plane back to Chicago as soon as

23  possible.

24         It's the defendant who tells Smith, quote:  Don't

25  call Barry, it's deeper than you think.  That's at transcript

Rebuttal - Shihata                    4583

1   613.  And you know who Barry is, the defendant's manager at

2   the time and Aaliyah's uncle, Barry Hankerson.

3          It's the defendant who while on the plane tells

4   Smith, quote:  Aaliyah, man, she thinks she's pregnant.

5   That's at 703 in the transcript.

6          And Smith told you what the defendant's demeanor was

7   when he said that; worried.

8          It's the defendant who tells Smith he needs to marry

9   Aaliyah to protect himself.

10          And the advice of Derrel McDavid, another member of

11   that enterprise, to protect himself.  From what?  Jail.

12          And when Smith tells the defendant:  You shouldn't

13   do it, and tries to talk him out of it, it's the defendant who

14   tells Smith:  Whose side are you on?  Transcript 710.

15          And then what does Smith tell you?  He thought he

16   was gonna get, quote, pushed out of the loop and he wanted to

17   stay in that loop, in that inner circle, in that enterprise.

18   And while they're all there discussing how to make this

19   marriage happen and quickly, Smith suggests he can bribe an

20   employee at the welfare office to get this fraudulent ID for

21   Aaliyah.  And at transcript 712, Smith makes clear that the

22   defendant was there for that discussion.  Then they drive to

23   that welfare office, and the defendant heads there, too.  He's

24   in a car behind Smith with Aaliyah.  That's at the transcript

25   718.

Rebuttal - Shihata                    4584

1          The defendant knows what they're doing.  He knows

2    where they're going.  They're all there to help the defendant,

3    to protect the defendant.  And the defendant, of course, is

4    there to make sure this all happens, to make sure it all goes

5    smoothly.  He's in that car with Aaliyah.  He knows she's not

6    on welfare.  He just wrote and produced her first album.  He's

7    got to be there to make sure she gets out of that car and goes

8    along with all of this, gets her photo taken.  She's not going

9    to listen to Demetrius Smith, she's going to listen to the

10   defendant.

11          Now, he doesn't go inside that welfare office, but

12   that makes sense.  R. Kelly going inside might draw some

13   attention, but he's in the car right outside.  And you know

14   the $500 used for that bribe came from the defendant.  This is

15   all being done for him.  Smith isn't using his own money for

16   that bribe.  And Derrel McDavid is the defendant's accountant,

17   the one who pays the bills and the other expenses for the

18   defendant, but those bills and expenses aren't paid with

19   Derrel McDavid's money, they're paid with the defendant's

20   money.  And this bribe is just another expense for that

21   enterprise.

22          And then after the welfare office, the defendant,

23   Aaliyah, Mr. Smith, they all go to the Fed Ex or shipping

24   company to get a second fake ID for Aaliyah.  That's at

25   transcript 722.  And then finally, they eventually go to the

Rebuttal - Shihata                    4585

1    County Clerk's office to get the marriage license.  And the

2    defendant has to go inside for that because he's the one

3    getting married.  And it's there that he and Aaliyah have to

4    present their IDs, so you know the defendant sees the

5    fraudulent ID then and hears Derrel McDavid have to do some

6    convincing of the clerk.  And, again, he's not surprised, he

7    knows Aaliyah's not on welfare and he knows how she just got

8    that ID.

9           Throughout this trial, you have seen and heard how

10   the defendant is, basically, a control freak.  You heard how

11   just a couple of hours before Smith paid that bribe, the

12   defendant gave Smith an ultimatum:  Whose side are you on?

13   And he goes with Smith from location to location to get this

14   marriage license and get this marriage done quickly.  It's all

15   for his benefit and for his protection.  The idea that he had

16   no earthly idea what was going on is ridiculous.

17          Now, you also heard a lot in the closing arguments

18   about how this case doesn't involve a real crime or any real

19   crimes, that it's manufactured, it's fake, it's an overreach.

20          Well, as the judge will instruct you, these charges

21   are real.  We wouldn't be here today or the past six weeks,

22   you guys have come in and sat so attentively, if they weren't.

23          Having sex with underage Aaliyah isn't a

24   relationship, it's a crime.

25          Having sex with underage Jerhonda isn't a

Rebuttal - Shihata                                        4586

1    relationship, it's a crime.

2              Having sex with underage Jane isn't a relationship,

3    it's a crime.

4              Videotaping sex with minors, like Jerhonda, Jane and

5    Stephanie, is a crime.

6              Knowingly exposing Jane and Faith to his genital

7    herpes through unprotected sexual intercourse without

8    informing them first is a crime.

9              Forcing Jane to engage in sexual services with

10   others, including total strangers, and forcing her to

11   participate and star in his pornographic videos, in those

12   circumstances -- in the circumstances charged here, that's

13   forced labor and that's a crime.

14             Putting Faith in a small, enclosed room with a gun

15   nearby within reach, grabbing the back of her head and forcing

16   it onto his penis to give him oral sex in the circumstances

17   charged here, it's forced labor and that's a crime.

18             Causing money to be paid to a public employee for a

19   fraudulent ID so you can marry a 15-year-old and hide your

20   sexual abuse of her is bribery, and that's a crime.

21             Everything charged in the indictment is a crime.

22   Mr. Cannick suggested to you it's -- it's like traveling with

23   your boyfriend or girlfriend on business and somehow getting

24   charged with a federal crime.

25             No, it's not.  The purpose here of that travel was

Rebuttal - Shihata                    4587

1   for illegal sexual activity.  That's what's charged here and

2   that is what we have proven to you beyond a reasonable doubt.

3        You also heard from the defense arguing that there's

4   no enterprise here.  And you should listen to the judge's

5   instructions on this carefully because when you do, I expect

6   that she will instruct you that the term enterprise includes

7   legitimate and illegitimate enterprises, and that an

8   enterprise can be used as a vehicle, can be used -- can be a

9   vehicle used by a defendant to commit crimes.  That's exactly

10  what happened here.

11       Now, defense counsel also talked to you about this

12  letter that Jane wrote purportedly to her brother, and it was

13  Defense Exhibit O.  And Defense Exhibit O is one page of that

14  letter, but you've actually seen more than one page of it,

15  because Government Exhibit 422 includes that one page.  I am

16  showing it to you here.  (Displaying.)

17       This is how it was found at the storage facility,

18  the defendant's storage facility.  Pristine condition,

19  document protectors, under lock and key at the defendant's

20  storage facility.

21       And by the way, so when defense counsel told you

22  Jane wrote that letter when he was already in jail, when the

23  defendant was in jail and that it was found at the house.  No,

24  wrong.

25       And by the way, if you look at it, you'll see at the

1    end, and this is for the jury only, please.

2              (Exhibit published to the jury only.)

3              MS. SHIHATA:  Look at how she signs the letter, with

4    both her signature and then printed name underneath.

5              Who signs a letter to their brother like that?

6              You know what this was, collateral.  It was saved in

7    the storage facility in pristine condition to be used at a

8    trial like this one.  And it was used at a trial like this

9    one.

10             I want to briefly address this business about

11   inconsistencies in witness statements and witnesses being

12   caught in lies and how either the witnesses are lying or the

13   agents are incompetent.

14             Well, you all have been taking notes here, right;

15   and you're trying hard to do your best, I'm sure.  But my

16   guess is when you go back to deliberate and maybe you compare

17   your notes, there might be some discrepancies on what each of

18   you wrote down.  And maybe when you ask to see portions of the

19   transcript, you'll realize that you may have written down

20   something wrong or misunderstood something.

21             Does that mean you're incompetent?  Of course, not.

22             Also, the defense talked about how you really have

23   to remember those cross-examinations and how that's really the

24   important part of this trial.

25             Well, I think if you look back, I don't think you'll

Rebuttal - Shihata                         4589

1    remember defense counsel's cross-examinations quite like he

2    does.  Yes, witnesses asked him to repeat questions and to

3    clarify.  You know why?  Because often his questions were

4    unclear.  And when he didn't get an answer he wanted, he just

5    repeated them over and over sometimes or said, I didn't ask

6    you X-Y-Z, I asked you whatever.

7              Well, actually, you did.  You did ask X-Y-Z and you

8    didn't get the answer you wanted.  So, then he often raised

9    his voice and walked around the courtroom and put on a show.

10   But that show is not evidence, the witness' testimony is.

11             And those supposed smoking guns that came out on

12   cross.  Really?  Remember that series of questions in the

13   beginning with Jerhonda when Mr. Cannick tried to suggest she

14   was lying and had advanced her age two years and in a span of

15   14 months or something like that.  And then she, you know,

16   testified about the date of her birth and it all made sense.

17   That's the kind of nonsense that went on in here.

18             I submit to you that the witnesses were consistent,

19   and that wasn't because they practiced for 50 or 60 hours as

20   Mr. Cannick suggested.  By the way, where did that come from?

21   Nobody testified that they practiced anything, let alone for

22   50 or 60 hours.  They were consistent because they were

23   telling you what happened to them in their own lives to the

24   best of their recollection.  And they were, I submit, telling

25   you the truth.

Rebuttal - Shihata                                    4590

1              And we did not put on witness after witness and just
2    have them lie to you.  That was the suggestion.  In fact, I
3    think he said we let them lie to you.  It's absurd.  You sat
4    through this trial, you sat through Ms. Geddes's closing, she
5    meticulously went over how that witness testimony was
6    corroborated by other evidence, phone records.  You heard
7    about search warrants of the defendant's home and storage
8    facility.  But not just that, search warrants of electronic
9    evidence, business records that are in evidence, travel
10   records supporting what the witnesses told you.  It is
11   nonsense to suggest that we let people lie to you.  You sat
12   here, you know that's not true.
13             And by the way, the judge is going to instruct you
14   on this, there is nothing wrong with lawyers preparing
15   witnesses to testify.  You will hear an instruction from the
16   judge about that.  In fact, the instruction, I expect, will
17   tell you that we wouldn't be doing our job if we didn't do
18   that.
19             And the same is true, you heard about lawyers
20   representing witnesses.  You are going to get an instruction
21   from the judge about that, too.  And in that instruction, I
22   expect the judge will tell you there is nothing improper or
23   suspicious about a witness retaining a lawyer and that you
24   should evaluate the credibility of a witness who had a lawyer
25   present in the courtroom in the same manner that you evaluate

Rebuttal - Shihata                    4591

1   the testimony of any other witness.

2          Defense counsel also talked about choices, and in

3   his closing arguments and in the defendant's world,

4   apparently, everyone else's choices matter, except for the

5   defendant's.  The so-called superstar, musical genius, legend,

6   he's not responsible for anything.  He's just this passive

7   observer in his life.  He's the victim here.  Everything is

8   happening to him.  He was just the unluckiest guy in the

9   world.  He doesn't have just one person lie about him, he has

10  upwards of 40, apparently.

11         Basically, every person who said something bad about

12  him, they're lying.  That was the argument you heard.  That's

13  what they want you to believe.  But you saw those witnesses

14  take the stand, you saw their demeanor on both direct and

15  cross, and I submit to you, you saw how they were corroborated

16  by all the other evidence and you know that they weren't lying

17  to you.

18         And by the way, you saw how different that was from

19  when the defense started to put on witnesses.  I submit to you

20  that it was clear when some of them were lying.

21         That guy Danny or Donnie, whatever his name was, the

22  guy with no actual job who was supposedly there to, quote,

23  observe, learn and become.  Remember his facial expressions?

24  By the way, he told you that he met the defendant in 2005, but

25  then also told you he'd been at Chicago Trax, The Chocolate

Rebuttal - Shihata                    4592

1  Factory at North Larrabee.  Just one problem with that, as you

2  heard at this trial, that building, North Larrabee, was

3  demolished in 2004.

4          How about that accountant, Mr. Howard, who

5  supposedly spent upwards of ten hours a day with the defendant

6  every day for eighteen months?

7          What about all the recording the defendant was

8  supposed to be doing in the studio?

9          Between the time he gets up in the -- gets up in the

10  morning, the amount of time he spent with Mr. Howard, there

11  would be no time for anything else; no recording, no

12  basketball, nothing.

13          You also know it doesn't ring true because you can

14  do the math.  Mr. Howard said he billed the defendant some

15  $60,000 in 2018.  I'm not a mathematician.  In fact, I'm very

16  bad at math, that's why I'm a lawyer, but I think if you look

17  at the math you can see that if he was actually spending that

18  amount of time with him, he would be billing probably around

19  $500,000, not 60,000.

20          Now, let's go back to how the defendant is this

21  unluckiest man in the world according to him.  Not only does

22  he have all these accusers saying he did these horrible

23  things, lying about it, he's so unlucky that he filmed some of

24  those very same things.  And then he kept those very same

25  recordings.  And then federal agents, he's so unlucky, federal

SAM      OCR      RMR      CRR      RPR

1   agents searched his home and his storage facility and found

2   those things.  Videos showing him spanking and hitting Anna,

3   just like she said.  He's so unlucky that those videos show

4   him humiliating women, making Anna walk back and forth calling

5   herself a stupid bitch because he's directing her to.  And

6   that wasn't role play and that wasn't consensual.  You saw it

7   with your own eyes.

8            And by the way, Anna testified about that.  And the

9   other video with the bodily fluids, she testified about that,

10  too, and she said she didn't want to be doing that and that it

11  was humiliating.  That's at the transcript at 2876.

12

13            (Continued on the following page.)

14

15

16

17

18

19

20

21

22

23

24

25

Rebuttal Summation - Ms. Shihata            4594

1           MS. SHIHATA:   And then there is Alex.   You heard

2    him testify before you.   The guy that the defendant called

3    nephew and was this perfect stranger that he directed them to

4    have sex with making them unwilling participants in his

5    pornography videos.

6           Defense counsel wants you to believe that Alex is

7    just a big, fat liar.   But you know that's not true because

8    you saw the video.   We only played part of it for you but,

9    again, the whole thing is in evidence and you can watch the

10   whole thing if you want.   And you will see just what Alex

11   described in his testimony.   He said the women looked

12   zombieish during sex the defendant directed to have with him

13   and I submit that's you saw on the video.   And, by the way,

14   they weren't the only ones who looked zombieish.   Alex did,

15   too.

16          Again, you saw all this with your own eyes, you

17   heard it with your own ears, and if you're not sure you can

18   do so again.   The recordings are in evidence.   The defendant

19   is not the victim here.   He's not unlucky, ladies and

20   gentlemen, he's guilty.

21          For almost three decades, the defendant believed he

22   was untouchable.   A legend, musical genius.   You heard those

23   words over and over during this trial.   He believed the music

24   and persona he created, the money at his disposal, the fame,

25   the celebrity meant he could do whatever he wanted.   He still

Rebuttal Summation - Ms. Shihata          4595

1   believes that today.

2          And remember what Stephanie heard him say out of

3   the blue apropos of nothing at a restaurant one day.  "He

4   mentioned that he likes young girls and that people make such

5   a big deal of it, but it really isn't a big deal because

6   even -- look at Jerry Lee Lewis, he's a genius, and I'm a

7   genius, and we should be allowed to do whatever we want

8   because of what we give to this world."  That's at transcript

9   648 to 649.

10          And that's been the theme throughout this trial.

11  Defense counsel through their questions, their arguments,

12  have founded at that theme.  All those questions about the

13  big stars that came through the studio -- Whitney Houston

14  whatnot.  He wants you to focus on the celebrity and give him

15  a pass.  But writing hit songs and performing on stage to

16  fans doesn't give you license to commit crimes.  It doesn't

17  give you license to build up and use an enterprise of

18  sycophants, yes men, and enablers to continue those crimes

19  for decades.

20          It's time to let the defendant know that in our

21  system, no one is above the law and everyone is worthy of the

22  law's protection.  That dancing at a concert, sending gifts

23  or money from the defendant doesn't mean you can't be the

24  victim of a crime.  And it doesn't mean that your truth isn't

25  worthy of belief.

Rebuttal Summation - Ms. Shihata          4596

1          The defendant's victims aren't groupies or gold

2    diggers, they're human beings.  Daughters, sisters, some of

3    them now mothers, and their lives matter.  You saw each of

4    them take that witness stand and testify.  And you saw how

5    difficult that was.  Some put on a strong facade but

6    eventually broke down.  Some got frustrated and upset.  Many

7    of them were ashamed and embarrassed.  It was often difficult

8    testimony to listen to.  But, you know what, as difficult as

9    it was for all of us to hear, it was far worse for them to

10   experience and relive.

11         You heard their testimony.  You've seen all the

12   evidence.  You've seen who the defendant really is.  He's not

13   a genius, he's a criminal, a predator who he used his inner

14   circle, his enterprise, to commit crimes with impunity for

15   decades.

16         It's time to hold him accountable.  Follow the

17   judge's instructions and focus on the evidence.  Don't get

18   distracted by speculation and nonsense.  Find the defendant

19   guilty because that's what the evidence and justice demands.

20         Thank you.

21         THE COURT:  Thank you, Ms. Shihata.  How is

22   everybody doing?  The next -- thumbs up, okay.

23         The next phase is I'm going to give you my legal

24   instructions and I think we can go right into them.

25         Just going to ask the Government to take that

Rebuttal Summation - Ms. Shihata          4597

1   poster down so I can see the entire jury.

2          And just before we begin, let me see the parties at

3   the side for just a minute with the court reporter.

4          (Continued on the next page.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sidebar                                    4598

1          (Sidebar conference held on the record in the

2     presence of the Court and counsel, out of the hearing of the

3     jury.)

4               THE COURT:  I assume you guys are all ready to go.

5     Good.

6               (Sidebar discussion concludes.)

7               (Continued on the next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           (In open court.)

2           THE COURT:  Ladies and gentlemen, you have heard

3   all of the evidence in the case as well as the lawyers'

4   arguments.  I'm now going to instruct you on the law that

5   applies to this case.

6           You've all paid very close attention to the

7   evidence throughout these weeks and I ask that you continue

8   to do so as I give you these instructions.

9           The instructions are divided into three parts.

10          In the first part, I'm going to instruct you about

11  the general rules that define and govern your duties as

12  jurors in a criminal case.

13          In the second part of my instructions, I will give

14  you instructions about the crimes that are charged in this

15  case and the elements that the Government must prove beyond a

16  reasonable doubt for each crime.

17          Finally, I will give you some general rules about

18  the process of your deliberations.

19          I'm going to begin by reminding you of our

20  different roles.  Your role as jurors and my role as the

21  judge.  Your duty, as I explained in my opening instructions,

22  is to find the facts from all of the evidence in the case.

23  You are the sole judges of the facts and it is for you and

24  you alone to determine what weight you're going to give the

25  evidence, to resolve any conflicts in the evidence, and to

1    draw those inferences that you believe are reasonable and

2    warranted from the evidence.

3              My job is to instruct you on the law.  You must

4    follow the law as I give it to you and apply that law to the

5    facts as you find them.  It is your sworn obligation to

6    follow the law as I describe it to you whether you agree with

7    it or not.

8              You should not be concerned about the wisdom of any

9    rule of law that I state regardless of any opinion that you

10   might have about what the law may be or what you think it

11   should be.  You would violate your oaths as jurors if you

12   were to base your verdict on anything other than the law as I

13   define it for you.  If the lawyers have said something about

14   the law that is different from my instructions, you must

15   ignore what the lawyers say and be guided only by what I

16   instruct you on the law.  You shouldn't single out any one

17   instruction but consider my instructions as a whole.

18             Since it is your job and not my job to find the

19   facts, I have neither expressed or implied any opinion about

20   how you should decide the case.  You should not conclude from

21   anything that I've said during the course of the trial

22   including these instructions that I have any opinion about

23   the facts or the merits of the case.  For example, there were

24   times throughout the trial that I might have asked a witness

25   a question.  You shouldn't assume that I have any opinion

Jury Charge                          4601

1   because I did that.  Any question that I asked was either to

2   make something clearer or to expedite the trial.

3              In determining whether the defendant is guilty or

4   not guilty of these charges, you must not consider anything I

5   have said or done.  I have no view about the defendant's

6   guilt or innocence.  And it is your function to determine

7   what the facts are, not mine.  The fact that the defendant is

8   prosecuting this case in the name of the United States of

9   America should not affect your evaluation of the evidence and

10  the facts before you.  The Government is not entitled to

11  greater consideration than the defendant.  By the same token,

12  it is entitled to no less consideration.  All parties,

13  government or individuals, stand as equals in this court and

14  are entitled to equal consideration.  Neither the Government

15  or not defendant is entitled to any sympathy or favor.

16             It is your responsibility to decide the facts with

17  complete fairness and impartiality and without any bias or

18  prejudice or sympathy for any party.  You must perform your

19  duty as jurors with complete fairness and impartiality.  You

20  must consider the evidence carefully and impartially, follow

21  the law as I give it to you, and reach a just verdict

22  regardless of the consequences.

23             It would be improper for you to consider any

24  feelings that you might have about the defendant's race,

25  religion, national origin, ethnic background, occupation,

1  sex, or age.  Every person is entitled to the presumption of

2  innocence and the Government has the same burden of proof

3  with every defendant.  It would be also be improper for you

4  to permit any feelings that you might have about the nature

5  of the crimes that are charged to influence your

6  decision-making process.

7          As I believe I told you when you were selected as

8  jurors, the indictment is a document that the Government uses

9  to give the defendant notice of the charges against him and

10 to bring him before the Court.  The indictment in this case

11 contains nine separate counts and you will be called upon to

12 render a separate verdict as to each count.

13         The indictment is an accusation and nothing more.

14 It is not evidence and is entitled to no weight in your

15 determination of the facts.  The defendant has pled not

16 guilty to the indictment.  The burden is on the Government to

17 prove the defendant's guilt beyond a reasonable doubt.  This

18 burden never shifts to the defendant.  He does not have to

19 prove that he is innocent.  He does not have to present any

20 evidence at all.  If the Government does not meet its burden

21 of proving the defendant's guilt beyond a reasonable doubt,

22 you must reach a verdict of not guilty.

23         The defendant is presumed to be innocent of all the

24 charges against him.  The presumption of innocence alone,

25 unless it is overcome by proof beyond a reasonable doubt, is

Jury Charge                                      4603

1    sufficient to reach a verdict of not guilty.  The defendant

2    is presumed innocent unless and until you decide unanimously

3    that the Government has met its burden and proven him guilty

4    beyond a reasonable doubt.  This presumption was with the

5    defendant when the trial began and it remains with him now,

6    and will continue into your deliberations unless and until

7    you are convinced that the Government has proven his guilt

8    beyond a reasonable doubt.

9           So what is a "reasonable doubt"?  It is a doubt

10   that is based on reason and common sense.  The kind of doubt

11   that would cause a reasonable person to hesitate to rely on

12   it and act on it in a matter of importance in her or his

13   personal life.

14          A reasonable doubt is not a caprice or a whim.  It

15   is not a speculation or suspicion.  It is not an excuse to

16   avoid an unpleasant duty.  It is not based on sympathy.

17   Proof beyond a reasonable doubt is not proof beyond all

18   doubt.  Rather, it is proof that is so convincing that a

19   reasonable person, based on that proof, would not hesitate to

20   draw the conclusion offered by the Government.

21          If after fair and impartial consideration of all of

22   the evidence that you have heard in this trial you have a

23   reasonable doubt, it is your duty to acquit the defendant.

24   On the other hand, if after fair and impartial consideration

25   of all the evidence that you have heard, you are satisfied

1   with the defendant's guilt beyond a reasonable doubt, you

2   should vote to convict.

3           Under your oath as jurors, you are not permitted to

4   consider the question of the part that the defendant might

5   receive if he is convicted.  It is my duty, and my duty

6   alone, to impose a sentence if the defendant is convicted.

7   It is your job to weigh the evidence in the case and

8   determine whether the defendant is guilty beyond a reasonable

9   doubt solely on the basis of the evidence.

10          I'm now going to talk to you about what is evidence

11  and how you should consider it.

12          As I've told you before, you must determine the

13  facts in this case based only on the evidence that was

14  presented, and on the inferences that can reasonably be drawn

15  from that evidence.  The evidence consists of testimony from

16  the witness on direct and cross-examination, the physical

17  exhibits that were admitted into evidence, and stipulations

18  between the parties.  As I believe I've told you before, a

19  stipulation is an agreement between the parties that certain

20  facts are true.  You should regard those agreed facts as

21  true.

22          Certain things are not evidence and you should

23  disregard them in deciding what the facts are in this case.

24          First, as I believe I've mentioned several times,

25  arguments and statements by the lawyers including opening

Jury Charge                              4605

1    statements and summations are not evidence.  If a lawyer said

2    something about the evidence in an opening statement or in a

3    summation that conflicts with your recollection of the

4    evidence, it is your recollection of the evidence that

5    controls.

6              Second, any questions that the lawyer asked a

7    witness that the witness did not answer are not evidence.

8              Third, objections to questions or to exhibits are

9    not evidence.  And any statements the lawyer might have made

10   when the lawyer object are not evidence.  Lawyers have a

11   right to a duty to object and to request a sidebar conference

12   if they believe that a question is improper or that evidence

13   should not be received.  But you should not be influenced by

14   any objections or by any of my rulings on the objection.  If

15   I sustained an objection, ignore the question.  If I

16   overruled the objection, treat the answer just like any other

17   answer.

18             Fourth, if I have stricken any testimony from the

19   record and told you to disregard it, that's not evidence.

20             Fifth, anything you might have heard or seen

21   outside of the courtroom is not evidence.  Your verdict must

22   be based only on the evidence that was presented at this

23   trial or the lack of evidence.  In this regard, I have told

24   you on almost every time that we've left for the day not to

25   read any articles, watch any television reports, or listen to

1  the radio or read any accounts about this case.  That

2  instruction continues until the very end of the case until

3  after you have rendered a verdict.

4          There are, generally speaking, two types of

5  evidence:  Direct evidence and circumstantial evidence.  You

6  may rely on both types of evidence to reach your verdict in

7  this case.

8          Direct evidence is testimony from a witness about

9  something she knows from her own senses.  Something she has

10 seen, felt, touched, tasted, or heard.

11         Circumstantial evidence is proof of a chain of

12 circumstances that point to the existence or to the

13 nonexistence of certain facts.  There's a very simple example

14 of circumstantial evidence.  Suppose you came into a court on

15 a day when the weather was clear and sunny and dry.  But

16 after you've been in the windowless courtroom for several

17 hours, you see somebody walk in who has a wet raincoat and

18 you see another person who is shaking a wet umbrella.

19 Obviously, you cannot look outside the courtroom, and so, you

20 can't see whether it's raining.  You have no direct evidence

21 that it rained, but it would be reasonable and logical for

22 you to infer from these circumstances the wet coat, the

23 dripping umbrella that it rained outside while you were

24 sitting in court.

25         That's all there is to circumstantial evidence.

Jury Charge                                    4607

1   It's on the basis of reason, experience, and common sense.

2   You may infer the existence or nonexistence of a fact from

3   one or more established facts.  Inferences are conclusions

4   that reason and common sense lead you to draw from the facts

5   that were established by the evidence.  Use your common sense

6   in drawing inference.  An inference is not a suspicion or a

7   guess.  It is a reasoned, logical, decision to conclude that

8   a disputed fact exists on the basis of another fact that you

9   know exists.  So while you are considering the evidence that

10  was presented to you, you are permitted to draw reasonable

11  inferences from the facts proven at this trial.

12         Our law makes no distinction between the weight to

13  be given direct and circumstantial evidence.  One is not

14  better than the other.  You must base your verdict on a

15  reasonable assessment of all of the evidence in this case.

16  Whether it's based on direct or circumstantial evidence or on

17  logical and reasonable inferences to be drawn from that

18  evidence, you must be convinced of the defendant's guilt

19  beyond a reasonable doubt before you may convict.

20         Now, you have heard evidence that the defendant

21  engaged in conduct including crimes other than the crimes

22  that are charged in the indictment.  The defendant is not on

23  trial for committing any acts that are not charged in the

24  indictment, or for any acts committed outside the time

25  periods that are charged in each count of the indictment.

Jury Charge                                    4608

1    Consequently, you may not consider evidence of those other

2    acts as a substitute for the evidence that the defendant

3    committed the crimes that are charged in this cake.  Nor may

4    you consider that evidence as proof that the defendant has a

5    criminal propensity.  In other words, you may not conclude

6    that he likely commit the crimes charged in this indictment

7    because he was predisposed to criminal conduct.

8          Instead, you may consider the evidence of this

9    uncharged conduct only for the limited purposes that I'm

10   going to describe for you now.  You may consider the evidence

11   of the uncharged conduct only as evidence of the existence of

12   the charged enterprise and evidence that the enterprise

13   engaged in racketeering activity.

14         As evidence of the defendant's position or role

15   within the enterprise.

16         As evidence of the development of relationships of

17   mutual trust between the defendant and others with whom he is

18   charged with carrying out the charged crimes.

19         As evidence of conduct that is inextricably

20   intertwined with evidence of the charged crimes.

21         As evidence enabling you to understand the complete

22   story of the charged crimes.

23         As evidence of a modus operandi that the defendant

24   and his accomplices formed to commit the charged crimes.

25         As evidence corroborating the testimony of other

Jury Charge                                4609

1    government witnesses.

2          You may not consider the evidence of uncharged

3    conduct by the defendant for any other purpose than the ones

4    that I have just described to you.

5          Now, the Government has presented evidence in the

6    form of charts or summaries.  These were shown to you to save

7    time to make certain evidence more meaningful, and to aid you

8    in considering the evidence.  It is for you to decide whether

9    the charts or summaries correctly present the information

10   contained in the testimony, and in the exhibits on which they

11   were based.  Because they were admitted into evidence, you

12   may consider the charts and the summaries as evidence, but

13   you are to give them no greater consideration than you would

14   give it the evidence on which they were based.

15         Now, one of your duty as jurors is going to be to

16   determine the credibility of the witnesses who testify.

17         You are the sole judges of the witnesses's

18   credibility and the weight their testimony deserved.  There

19   is no magical formula for judging a witness' testimony.  You

20   all make these decisions in your own lives when you are

21   evaluating whether someone is being credible, and the

22   standards that you use in your own lives are the same

23   standards that you should use here.  Your determination of

24   credibility depends on the impression that a witness made

25   upon you as to whether that person was telling the truth or

1   giving you an accurate version of what happened.  You should

2   be guided by your common sense.  In making your decision, you

3   may take into account any number factors including the

4   following:

5          The witness' opportunity to see, hear, and know

6   about the events that the witness described.

7          The witness' ability to recall and describe those

8   things accurately.

9          The witness' manner of testifying.  Whether the

10  witness was candid and forthright, or if he seemed, or she

11  seemed, to be hiding something.  Whether the witness was

12  evasive or suspect in some way.

13         How did the witness' testimony on direct

14  examination compare with the witness' testimony on

15  cross-examination.

16         Was the witness' testimony reasonable in light of

17  all of the other evidence in the case.

18         Did the witness have any possible bias or any

19  relationship to the Government or the defendant?

20         Any loyalty or motive to shade the truth, or any

21  possible interest in the outcome of the trial.

22         Was the witness' testimony contradicted by the

23  witness' other testimony been what the witness did or said on

24  a previous occasion by other witness' testimony, or by other

25  evidence.

Jury Charge                                     4611

1          Inconsistencies or discrepancies in a witness'

2    testimony or, among the testimony of different witnesses, may

3    or may not cause you to discredit the witness' testimony.

4          If there is a discrepancy or an inconsistency, you

5    should consider whether it relates to an important fact,

6    whether it is an unimportant detail.  Whether it was

7    intentional, or whether it was the result of an innocent

8    mistake.  You should also consider whether the witness had a

9    common-sense explanation for any inconsistency.  If you

10   determine that a witness has purposely lied to you that's

11   important and you should consider it seriously.

12         A witness' testimony may be discredited or

13   impeached by showing that the witness previously made

14   statements that are inconsistent with the witness' testimony

15   before you.  It is your job to determine the weight, if any,

16   to be given to all or part of the testimony of a witness who

17   has been impeached by prior inconsistent statements.  You

18   should first determine whether the prior statement is, in

19   fact, inconsistent.  If you find that a witness made an

20   inconsistent statement, you may consider that fact in

21   assessing the witness's credibility.  You may consider

22   whether you believe the witness or accept his or her

23   testimony even though there was a prior inconsistent

24   statement.  In making this determination, you should consider

25   the importance of the subject matter of the statement.  If

Jury Charge                          4612

1   you find that the matter is relatively unimportant, you may

2   decide not to attach much significance to the inconsistency.

3   If you find that the matter is important, you may decide that

4   it casts substantial doubt on the witness' credibility.

5           If you find that a witness' statement on the stand

6   is false, either in whole or in part, you may disregard the

7   particular part that you find to be false, or you may

8   disregard the witness' entire testimony.

9           Now, you heard testimony from four expert

10  witnesses.  Veronica Jackson testified as an expert in

11  forensic biology.  Yongfei Wu testified as an expert in

12  forensic biology and in DNA analysis.  Dr. Iffath Hoskins

13  testified as an expert in the field of medicine with a

14  specialization in obstetrics and gynecology including the

15  diagnosis, treatment, and effects of sexually transmitted

16  diseases.  And Dr. Dawn Hughes testified as an expert in

17  clinical and forensic psychology with a specialization in

18  interpersonal violence and traumatic stress.

19

20              (Continued on the next page.)

21

22

23

24

25

Charge of the Court                4613

1    (Continuing.)

2            THE COURT:  An expert witness is allowed to express

3    an opinion on matters about which she or he has special

4    knowledge and training.  Ordinarily, witnesses are limited to

5    testifying concerning matters of fact, and the rules of

6    evidence do not allow witnesses to testify about their

7    opinions or conclusions.  Experts are the exception to this

8    rule.  If specialized knowledge will help the jury understand

9    the evidence, or decide a disputed fact, a witness qualified

10   as an expert by knowledge, skill, experience, training, or

11   education may testify about that evidence or facts in the form

12   of an opinion.

13           You should consider the expert testimony that you

14   heard in this case and give it the weight that you think it

15   deserves.  In weighing an expert's testimony, you may consider

16   the expert's qualification, the expert witness' opinion, the

17   expert's demeanor and reasons for testifying, as well as all

18   of the other considerations that ordinarily apply when you're

19   assessing the credibility of a witness.  If you decide that

20   the expert's opinion is not based on sufficient education and

21   experience, or that the reasons given in support of the

22   expert's opinion are not sound, or that the expert's opinion

23   is outweighed by other evidence, you may disregard the

24   expert's opinion entirely.

25           In short the expert witness is just like anywhere

Charge of the Court                4614

1    other witness.  You should not accept the testimony of an

2    expert merely because she is an expert or merely because I

3    allowed the witness to testify about his or her opinion.  Nor

4    should you substitute it from own reason, judgment, and

5    common sense.  As I said before and I probably will say

6    again, the determination of the facts in this case rests

7    solely with you.

8              You've also heard from law enforcement agents.  You

9    should evaluate these witness' testimony in the same way that

10   you evaluate the testimony of any other witness.  The fact

11   that a witness is a law enforcement agent does not mean that

12   you should give that witness' more -- that witness' testimony

13   any more or less consideration than the testimony of any

14   other witness.  You should use all of those tests of

15   credibility that you just discussed with you to evaluate a

16   law enforcement witness' testimony.  It is up to you to

17   decide, after reviewing the evidence, whether to accept the

18   testimony of a law enforcement witness, and to give it

19   whatever weight you believe it deserves.

20             You've heard the testimony of a witness, Demetrius

21   Smith, who testified under a grant of immunity from this

22   Court.  You have also heard testimony from a witness,

23   "Louis", who testified pursuant to a cooperation agreement

24   with the Government after he pleaded guilty to a federal

25   crime.  The Government argues, as it is entitled to do, that

1    it must take the witnesses as it finds them.  The law allows

2    the use of testimony by alleged accomplices and

3    coconspirators.  Indeed, it is the law in the federal court

4    that the testimony of one such person may be enough in itself

5    for conviction if the jury finds that the testimony

6    establishes guilt beyond a reasonable doubt.

7            When a witness testifies under a grant of immunity,

8    his testimony may not be used against him in any criminal

9    case except in a prosecution for perjury, giving a false

10   statement, or otherwise failing to comply with this Court's

11   immunity order.  I'm instructing you that the Government is

12   entitled to call as a witness, a person who has been granted

13   immunity by an order of this Court, and that you may convict

14   the defendant on the basis of that witness' testimony alone

15   if you find that the testimony proves the defendant's guilt

16   beyond a reasonable doubt.

17           Cooperator testimony must be scrutinized with great

18   care and viewed with particular caution when you decide how

19   much of that testimony to believe.

20           I have given you some general instructions on

21   credibility and I'm not going to repeat them here.  Nor am I

22   going to repeat counsel's arguments on this issue.  But I

23   will say a few things that you may want to consider during

24   your deliberations on the subject of cooperating witnesses

25   and witnesses who testified pursuant to a grant of immunity.

Charge of the Court                    4616

1   You should ask yourself whether these witnesses would benefit

2   more by lying or by telling the truth.  Was their testimony

3   made up in any way because they believed or hoped that they

4   would somehow receive favorable treatment by testifying

5   falsely?  Or did they believe that their interests would best

6   be served by testifying truthful?  If you believe that the

7   witness was motived by hopes of personal gain, was the

8   motivation one that would cause him to lie, or would it cause

9   him to tell the truth?

10          You have heard also that "Louis" has been promised

11  that if he provides substantial assistance to the Government

12  and testifies truthfully, completely, and fully, the

13  Government will present to the sentencing court, what is

14  called a 5K1.1 letter.  The 5K letter sets forth the

15  cooperating witness' criminal acts, as well as the

16  substantial assistance the witness has provided.  The 5K

17  letter does not guarantee that the cooperating witness will

18  get a lower sentence.  This is because the sentencing court

19  may, but is not required to take the 5K1.1 letter into

20  account when imposing sentence on the cooperating witness.

21  The sentencing court has discretion, whether or not there is

22  a 5K letter, to impose any reasonable sentence that the Court

23  deems appropriate, up to the statutory maximum.  The final

24  determination as to the sentence to be imposed rests with the

25  Court, not the Government.

Charge of the Court                    4617

1        In sum, you should look at all of the evidence in

2   deciding what credence and what weight, if any, you will want

3   to give to the accomplice and cooperating witness.  Now,

4   you've also heard lawyers ask witnesses about the fact that

5   they retained lawyers and about the fact that the lawyers

6   were in the courtroom when the witness testified.  Similarly,

7   in closing arguments, counsel made arguments about witnesses

8   retaining lawyers.  There is nothing improper or suspicious

9   about a witness retaining a lawyer.  You should evaluate the

10  credibility of a witness who had a lawyer here in the

11  courtroom in the same manner that you evaluate the testimony

12  of any other witness.

13       The defendant did not testify in this case.  Under

14  our constitution, the defendant in a criminal case never has

15  any duty to testify or to come forward with evidence.  This

16  is because the burden of proof remains on the Government at

17  all times and the defendant is presumed innocent.  A

18  defendant is never required to prove that he is innocent.

19  You may not attach any significance to the fact that the

20  defendant did not testify.  You may not draw any inference

21  against him because he did not testify, and you may not

22  consider this against the defendant in any way during your

23  deliberations in the jury room.

24       During the trial, counsel read stipulations about

25  what certain witnesses would have said had they testified

Charge of the Court                    4618

1  before you in-person.  These witnesses were not under oath.

2  The Government and the defendant have agreed about what the

3  testimony of these witnesses would be had they testified

4  in-person at trial.

5          Now, you also heard during the course of the trial

6  and some summation, that attorneys for the Government and for

7  the defendant interviewed the witnesses when preparing for

8  trial and during the trial.  You must not draw any

9  unfavorable inference from that testimony.  On the contrary,

10  attorneys are obligated to prepare their cases as thoroughly

11  as possible, and in discharging that responsibility, it's

12  appropriate for them to interview witnesses in preparation

13  for trial and during the trial.

14          Now, I made some reference to prior inconsistent

15  statements before.  I'm now going to talk to you about

16  impeachment by prior inconsistent statements.  You've heard

17  evidence that a witness or witnesses made a statement on an

18  earlier occasion which counsel argues is inconsistent with

19  the witness' trial testimony.  Evidence of the prior

20  inconsistent statement was admitted for a limited purpose,

21  the purpose of helping you decide whether you believe the

22  trial testimony of the witness who contradicted herself or

23  himself.  If you find that the witness made an earlier

24  statement that conflicts with his or her trial testimony, you

25  may consider that fact in deciding how much of the testimony,

Charge of the Court                    4619

1   if any, to believe.

2           In making this determination, you may consider

3   whether the defendant -- I'm sorry, whether the witness

4   purposely made a false statement or whether it was an

5   innocent mistake, whether the inconsistency concerns an

6   important fact, or whether it had to do with a small detail,

7   whether the witness had an explanation for the inconsistency

8   and whether that explanation appealed to your common sense.

9           It is exclusively your duty, based upon all of the

10  evidence and your own good judgment, to determine whether the

11  prior statement was inconsistent, and if it was, how much, if

12  any, weight should be given to the inconsistent statement in

13  determining whether to believe all or part of the witness'

14  testimony.

15          Our law does not require either party to call as

16  witnesses, every person who might have been present at any

17  time or place involved in the trial or who may have -- I'm

18  sorry, involved in the case, or who may appear to have some

19  knowledge of the matter that's at issue at the trial.  Nor

20  does the law require any party to produce all papers and

21  things that were mentioned during the course of the trial and

22  admit them into evidence.  Both the Government and the

23  defense have the same power to subpoena witnesses to testify

24  on their behalf.  You should remember that there is no duty

25  on either side to call a witness whose testimony would be

Charge of the Court                    4620

1   cumulative of testimony that's already in evidence or who

2   would merely provide additional testimony to facts that are

3   already in evidence.  If the Government or the defendant

4   could have called a potential witness and neither one called

5   the witness, then you may draw the conclusion that the

6   testimony of the absent witness might have been unfavorable

7   to the Government or to the defendant or to both.  On the

8   other hand, it is equally within your province to draw no

9   inference at all from the failure of either side to call a

10  witness.

11          I remind you that the defendant has no obligation

12  to present any evidence at all, only the Government has the

13  burden of proof.

14          Although the Government does have the burden of

15  proof and although a reasonable doubt can arise from a lack

16  of evidence, the law does not require that the Government

17  prove its case through any particular means.  Law enforcement

18  techniques are not your concern.  You're not to speculate

19  about why the Government used the techniques that they did or

20  why they did not use other techniques.  Your concern is to

21  determine whether, based on the evidence in the case, the

22  defendant -- the Government has proved the defendant's guilt

23  beyond a reasonable doubt.

24          During the trial, you have heard evidence about a

25  variety of investigative techniques and methods of gathering

Charge of the Court                    4621

1   and collecting evidence.  I'm instructing you that any

2   evidence that was presented to you was obtained legally and

3   you can consider it.  The methods that were used to collect

4   evidence or to investigate this case should not enter into

5   your deliberations in any respect.

6              How's everybody doing?  Everybody good?

7              THE JURY:  (Collectively) Yes.

8              THE COURT:  Okay.  I'm now going to talk to you

9   about the legal elements of the crimes that are charged.  I'm

10  going to explain to you what the elements are of the crimes

11  charged in the indictment that the Government must prove

12  beyond a reasonable doubt.

13             As I said earlier, the indictment has nine separate

14  counts and you will be called upon to render a separate

15  verdict as to each count.  Each count charges the defendant

16  with a different crime.  You must consider each count

17  separately and return a separate verdict of guilty or not

18  guilty for each.  Whether you find the defendant guilty or

19  not guilty as to one offense should not affect your verdict

20  as to any other offense charged.

21             You will notice that the indictment charges conduct

22  that occurred "on or about" a certain date.  The Government

23  does not have to establish the exact date of an alleged

24  offense.  It's enough if the evidence establishes beyond a

25  reasonable doubt that an offense was committed on a date

Charge of the Court                    4622

1    that's reasonably near to the dates alleged.

2            Now, venue refers to the location of the charged

3    crimes.  Each count of the indictment alleges that a crime

4    occurred -- that the crime occurred in whole or in part in

5    this judicial district, which is the Eastern District of New

6    York.  The Eastern District includes Brooklyn, Queens, Staten

7    Island, Nassau and Suffolk counties on Long Island, and the

8    waters surrounding Manhattan.  To establish a venue for a

9    crime in this district, the Government must prove that some

10   act in furtherance of the crime happened in the Eastern

11   District of New York.  With respect to Count One which is the

12   racketeering count, the Government need only prove that some

13   act in furtherance of the racketeering offense happened in

14   the Eastern District of New York.  They do not have to prove

15   that any or all of the alleged racketeering acts happened in

16   the Eastern District of New York.

17           Unlike all of the other elements, the Government

18   must prove venue only by a preponderance of the evidence,

19   that is, that it is more likely than not that some act in

20   furtherance of the crimes occurred in Brooklyn, Queens,

21   Staten Island, Long Island, or the waters surrounding

22   Manhattan.

23           Now, during these instructions you will hear me use

24   the words "knowingly" and "intentionally".  I will define

25   these terms for you before I address the individual charges.

Charge of the Court                    4623

1   As a general rule, the law holds individuals accountable for

2   conduct -- only for conduct that they undertook

3   intentionally.  Thus, before you can find the defendant

4   guilty of the crimes charged, you must be satisfied that he

5   was acting knowingly or intentionally.

6           A person acts knowingly if he acts voluntarily and

7   intentionally, not because of ignorance, mistake or accident.

8   A person acts intentionally if he acts with the specific

9   intent to do something that the law forbids.  The person does

10  not have to be aware of the specific law or rule that his

11  conduct may be violating.  But he must act with a specific

12  intent to do whatever it is that the law forbids.

13          These issues of knowledge and intent require you to

14  make a determination about the defendant's state of mind,

15  something that can rarely be proved directly.  A wise and

16  careful consideration of all of the circumstances before you,

17  however, may permit you to make a determination as to the

18  defendant's state of mind.  In your everyday affairs, you are

19  frequently called upon to determine the state of that

20  person's state of mind from his words or from his actions in

21  given circumstances.  You're being asked to do the same thing

22  here.

23          Many of the racketeering acts in Count One and

24  certain of the other counts charge the defendant with aiding

25  and abetting or willfully causing certain crimes.  It is not

Charge of the Court                    4624

1    necessary to find that the person personally committed these

2    crimes,  as long as the Government proves that he -- I'm

3    sorry, it is not necessary to find that the defendant

4    personally committed those crimes, as long as the Government

5    proves that he "aided and abetted" or "willfully caused"

6    someone else to do so.  This is because under the law, a

7    person who aids or abets or willfully causes another person

8    to commit an offense, is just as guilty of the offense as if

9    he committed it himself.

10            With regard to aiding and abetting, the relevant

11   statute provides:  Whoever commits an offense against the

12   United States or aids or abets or counsels, commands or

13   induces, or procures its commission, is punishable as a

14   principal.

15            Therefore, you may find the defendant guilty of an

16   offense charged if you find beyond a reasonable doubt that

17   the Government has proven that another person actually

18   committed the crime with which the defendant is charged and

19   that the defendant aided and/or abetted that person in

20   committing the offense.

21            In order to find the defendant guilty of aiding and

22   abetting a crime, you must first find that someone actually

23   did commit the crime charged.  Obviously, nobody can be

24   convicted of aiding or abetting the criminal acts of someone

25   else if the other person did not actually commit a crime in

Charge of the Court                    4625

1  the first place.  But if you do find that a crime was

2  committed, then you must consider whether the defendant aided

3  or abetted the commission of that crime.

4          In order to aid or abet another person to commit a

5  crime, it is necessary that the defendant knowingly associate

6  himself in some way with the crime and that he participates

7  in the crime by doing some act to help make the crimes

8  succeed.  To establish that the defendant knowingly

9  associated himself with the crime, the Government must

10  establish that the defendant knew and intended that the crime

11  charged would be committed.  To establish the defendant

12  participated in the commission of the crime, the Government

13  must prove that the defendant engaged in some affirmative

14  conduct or overt act for the specific purpose of bringing

15  about that crime.

16          The mere presence of the defendant where a crime is

17  being committed, even if it's coupled with knowledge by the

18  defendant that the crime is being committed or merely

19  associating with the others who are committing the crime, is

20  not enough to establish aiding and abetting.  One who has no

21  knowledge that a crime is being committed or is about to be

22  committed, but inadvertently does something that aids in the

23  commission of that crime is not an aider or an abettor.  An

24  aider and an abettor must know that the crime is being

25  committed and act in a way that is intended to bring about

1    the success of the criminal venture.

2             To determine whether the defendant aided and

3    abetted the commission of a particular crime, or caused the

4    commission of the crime, ask yourself these questions:

5    First, did he participate in the crime charged as something

6    that he wished to bring about?  Second, did he associate

7    himself with the criminal venture knowingly and willfully?

8    Third, did he seek, by his actions, to make the criminal

9    venture succeed.

10            If the defendant did all of these things, then he

11   is an aider and abettor, and is therefore guilty of the

12   offense.  If, on the other hand, your answer to any of these

13   questions is no, then the defendant is not an aider and an

14   abettor and you must find him not guilty.

15            With regard to willful causation, the relevant

16   statute provides:  Whoever willfully causes an act to be done

17   which if directly performed by him or another would be an

18   offense against the United States, is punishable as a

19   principal.

20            In order to find a defendant guilty of willfully

21   causing a crime, you must first find that another person has

22   committed the acts constituting the offense charged, second,

23   you must find that the defendant had the mental state

24   required to violate the offense charged -- to commit the

25   offense charged, and third, you must find that the defendant

Charge of the Court                    4627

1   intentionally caused someone else to commit the requisite

2   act.

3           To convict a defendant of aiding and abetting or

4   willfully causing an offense under federal law, you must

5   unanimously agree that the Government has proven, beyond a

6   reasonable doubt, either that the defendant aided and abetted

7   the commission of the offense or that he willfully caused the

8   commission of the offense.  In other words, all 12 of you

9   must agree on aiding and abetting or willfully causing.  It's

10  not sufficient if some of you find that a defendant aided and

11  abetted the commission of the offense, while others find that

12  the defendant willfully caused the commission of the offense.

13          All right.  The indictment contains nine counts.

14  I'm going to summarize those counts and explain what the law

15  is regarding each one.  If there -- if some of the counts

16  repeat some of the same things, I'm not going to repeat it,

17  because I'll already have told you once.

18          Count One of the indictment charges the defendant

19  with violating the Racketeer Influenced and Corrupt

20  Organization Act.  Count One reads as follows:  In or about

21  in between January 1994 and the present, both dates being

22  approximate and inclusive, within the Eastern District of New

23  York and elsewhere, the defendant, Robert Sylvester Kelly,

24  also known as "R. Kelly," together with others, being a

25  person employed and associate with the Enterprise, an

Charge of the Court                    4628

1  enterprise that engaged in, and the activities of which

2  affected interstate and foreign commerce, did knowingly and

3  intentionally conduct and participate directly and

4  indirectly, in the conduct of the affairs of the Enterprise

5  through a pattern of racketeering activity as defined in

6  Title 18, United States Code, Sections 1961(1) and 1961(5),

7  consisting of the racketeering acts set forth below.

8          The relevant provision of the racketeering statute

9  reads as follows:  It shall be unlawful for any person

10  employed by or associated with any enterprise engaged in, or

11  the activities of which affect interstate and foreign

12  commerce, to conduct or participate, directly or indirectly,

13  in the conduct of such enterprise's affairs through a pattern

14  of racketeering activity....

15          To prove this crime, the Government must prove five

16  elements beyond a reasonable doubt.  First, an enterprise, as

17  described in the indictment, existed on or about the time

18  alleged in the indictment.  Second, the enterprise engaged in

19  or its activities, affected interstate or foreign commerce.

20  Third, the defendant was employed by or associated with the

21  enterprise.  Fourth, the defendant knowingly conducted or

22  participated, either directly or indirectly, in the conduct

23  of the affairs of the Enterprise.  Fifth, the defendant

24  knowingly participated in the conduct of the affairs or the

25  enterprise through a pattern of racketeering activity as

1   described in the indictment; that is, through the commission

2   of at least two of the charged racketeering acts, the last of

3   which must have occurred within 10 years after the commission

4   of a prior racketeering act, or through causing or aiding and

5   abetting the commission of two such racketeering acts.

6           I'm now going to talk about these elements in

7   greater detail.  First, the existence of the Enterprise.  The

8   Government must prove beyond a reasonable doubt that an

9   enterprise existed.  The indictment alleges the existence of

10  the following enterprise:  The defendant, Robert Sylvester

11  Kelly, also known as "R. Kelly", and individuals who served

12  as managers, bodyguards, drivers, personal assistants and

13  runners for Kelly, as well as member of Kelly's entourage,

14  comprised an enterprise within the meeting of 18 U.S.C.

15  Section 1961(4), that is, the Enterprise constituted a group

16  of individuals associated, in fact, that was engaged in and

17  the activities of which affected, interstate and foreign

18  commerce.  The Enterprise constituted an ongoing organization

19  who's members mentioned as a conditioning unit for a common

20  purpose of achieving the objectives of the Enterprise.

21          The purposes of the Enterprise were to promote R.

22  Kelly's music and the R. Kelly brand, to recruit women and

23  girls to engage in illegal sexual activity with Kelly and to

24  produce pornography, including child pornography.  By

25  promoting R. Kelly's music and the R. Kelly brand, the

Charge of the Court                    4630

1   members of the Enterprise expected to receive financial

2   opportunities personal benefits, including increased power

3   and status within the Enterprise.

4           In connection with the Enterprise, Kelly and other

5   members of the Enterprise traveled throughout the United

6   States and abroad to perform at concert venues, to promote

7   the R. Kelly brand, and to recruit him and girls to engage in

8   illegal sexual activities with Kelly.

9           When Kelly attended and performed at concerts and

10  other events, Kelly and/or other members of the Enterprise on

11  Kelly's behalf invited women and girls backstage and to other

12  events following Kelly's live performances.  These women and

13  girls were often offered wristbands that signified that they

14  were authorized to attend an event.  There, Kelly, relied

15  upon member of the Enterprise to ensure that only those

16  authorized to attend were allowed at the event and to manage

17  the flow of women and girls who were directly interacting

18  with Kelly.

19          When Kelly identified a woman or a girl who he

20  wished to see again, he either gave his contact information

21  to the woman or girl or obtained her contact information or

22  relied on members of the Enterprise to do so.  Following

23  these events, Kelly communicated with certain of these women

24  and girls by telephone, including through the use of

25  traditional telephone calls, text messages, iMessaes and

Charge of the Court                    4631

1   FaceTime.  As part of this communication, Kelly often

2   requested that the women and girls provide photographs of

3   themselves.

4           Kelly and other members of the Enterprise also

5   arranged for the women and girls to travel to see Kelly on

6   occasion, including at concerts throughout the United States

7   and related events.  To facilitate their travel, Kelly

8   directed the women and girls to contact a member of the

9   Enterprise, who then arranged travel for the women and girls.

10  When the women and girls arrived at the lodging, which was

11  typically selected by a member of the Enterprise, a member of

12  the Enterprise usually provided them with instructions.  In

13  addition, members of the Enterprise took steps to ensure that

14  the women and girls did not interact with the other women and

15  girls whom Kelly planned to see.  Members of the Enterprise

16  then arranged if the women and girls to attend his concerts

17  and positioned them such that Kelly could see them during the

18  concerts.

19          Kelly promulgated numerous rules that many of his

20  sexual partners were required to follow, including the

21  following:  The women and girls were not permitted to leave

22  their room without receiving permission from Kelly, including

23  to eat or to go to the bathroom; the women and girls were

24  required to wear baggy clothing when they were not

25  accompanying Kelly to an event or unless otherwise instructed

Charge of the Court                    4632

1    by Kelly; the women and girls were not permitted to look at

2    other men, and instead, were told to keep their heads down;

3    and the women and girls were required to call Kelly "Daddy."

4              The Enterprise operated within the Eastern District

5    of New York and elsewhere, including overseas.

6              Methods and means of the Enterprise.

7              Among the means and methods by which Kelly and his

8    associates participated in the conduct of the affairs of the

9    Enterprise were the following:  Committing, attempting, and

10   aiding and abetting the commission of crimes and conspiring

11   to commit crimes, including but not limited to engaging in

12   sexual activity with girls under 18 years old, engaging and

13   facilitating sexual activity without disclosing sexually

14   transmitted disease Kelly had contracted, producing child

15   pornography, bribery, extortion, coercion and blackmail;

16   demanding absolute commitment to Kelly and not tolerating

17   dissent; obtaining sensitive information about sexual

18   partners and members and associates of the Enterprise to

19   maintain control over them; creating embarrassing and

20   degrading videos of sexual partners to maintain control over

21   them; recruiting and grooming sexual partners for Kelly; and

22   isolating women and girls from friends and family and making

23   them dependent on Kelly for their financial well-being.

24              The term "enterprise," as used these instructions

25   may include any group of people associated in fact, even

Charge of the Court                    4633

1    though this association is not recognized as a legal entity.

2    An enterprise does not have to be a formal business entity

3    like a corporation.  Nor must it be registered or licensed as

4    an enterprise or as a commonly recognized legal entity like a

5    corporation, a partnership, a business, or the like.

6    Instead, an enterprise may be merely an informal association

7    of individuals.  The term "enterprise" includes legitimate

8    and illegitimate enterprises.  An enterprise be can be a

9    vehicle used by a defendant to commit crimes.

10          The "enterprise" does not have to have a particular

11   name, or, for that matter, any name at all.  A group or

12   association of people can be an enterprise if these people

13   have associated together for a common purpose of engaging in

14   a course of conduct.  Mere similarity of conduct or the fact

15   that individuals may have assembled together and discussed

16   common aims and interests does not necessarily establish

17   proof of the existence of an enterprise, although you may

18   consider such factors.  Such an association of persons may be

19   established by evidence showing an ongoing organization,

20   formal or informal, and by evidence that the people making up

21   the association functioned as a continuing unit.

22          The Government must prove that an

23   association-in-fact enterprise, existed by evidence of an

24   ongoing organization, formal or informal, and by evidence

25   that the various associates functioned as a continuing unit.

Charge of the Court                        4634

1    The enterprise must have the three following structural

2    features, one, a purpose; two, relationships among those

3    associates with the enterprise; and three, longevity

4    sufficient to permit these associates to pursue the

5    enterprise's purpose.

6            It is not necessary that the enterprise have any

7    particular or formal structure, but it must have sufficient

8    organization that its members functioned and operated in a

9    coordinated manner to carry out the alleged common purpose or

10   purposes of the enterprise.

11

12            (Continued on the following page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Jury Charge                         4635

1    (Continuing.)

2         THE COURT:  Such a group need not have a

3    hierarchical structure or chain of command.  Decisions may be

4    made on an ad hoc basis and by any number of methods, by

5    majority vote, consensus, a show of strength, et cetera.

6    Members of the group do not need to have fixed roles.

7    Different members may perform different roles at different

8    times.  The group does not need to have a name, regular

9    meetings, dues, established rules and regulations,

10   disciplinary procedures or initiation procedures.

11        While the group must function as a continuing unit

12   and remain in existence long enough to pursue a course of

13   conduct, you may nonetheless find that the enterprise element

14   is satisfied by finding the existence of a group whose

15   associates engage in spurts of activity that are punctuated by

16   periods of enact activity.

17        Thus, an enterprise need not have role

18   differentiation, a unique modus operandi, a chain of command,

19   sophistication of organization, diversity and complexity of

20   crimes, uncharged or additional crimes aside from the alleged

21   racketeering activity, or an enterprise name.  Moreover, the

22   enterprise is not required to be businesslike in its form or

23   function and it may, but does not need, to have an economic

24   profit-seeking motive.  Indeed, RICO, as the statute is

25   called, is not limited to groups whose crimes are

Jury Charge                                    4636

1   sophisticated, diverse, complex or unique.

2            Such an association of individuals may retain its

3   status as an enterprise even though the membership of the

4   association changes over time by adding or losing individuals

5   during the course of its existence.  The existence of the

6   enterprise continues even if there is a gap or interruption of

7   the enterprise's racketeering activities.

8            Although whether an enterprise existed is a distinct

9   element that must be proved by the government, common sense

10  tells us that the existence of an enterprise is often more

11  readily proven by what it does rather than by an abstract

12  analysis of its structure.  Thus, the evidence used to prove

13  the pattern of racketeering and the enterprise may coalesce.

14  You may consider proof of the racketeering acts to determine

15  whether the evidence establishes the existence of an

16  enterprise, and further, you may infer the existence of an

17  enterprise from the evidence of the pattern of racketeering

18  activity.

19           Moreover, it is not necessary to prove that every

20  member of the enterprise participated in or knew about all of

21  its activities.  It is sufficient that the defendant knew the

22  general nature of the enterprise and knew that the enterprise

23  extended beyond his individual role.  The government need only

24  establish that the defendant acted with the requisite criminal

25  intent.

Jury Charge                                    4637

1       The government is not required to prove each and

2  every allegation about the enterprise or the way in which the

3  enterprise operated.  The enterprise proved however, must be

4  essentially the one that was alleged in the indictment.

5       The second element is the effect on interstate

6  commerce or foreign commerce, and the government must prove

7  this element beyond a reasonable doubt, that the enterprise

8  was engaged in or had an effect on interstate or foreign

9  commerce, even if it was just a minimal effect.

10      Interstate commerce means trade or conducting

11  business or travel between one state and another state or the

12  District of Columbia; and foreign commerce such trade,

13  business or travel between the United States and another

14  country.  Therefore, interstate and foreign commerce may

15  include the movement of money, goods, services or people from

16  one state to another or the District of Columbia or between

17  the United States and another country.  This may include,

18  among other things, the purchase or sale of goods or supplies

19  from outside the United States, the use of interstate or

20  international mail or wire facilities, or the causing of any

21  of those things.  The government does not have to prove that

22  the defendant's acts affected interstate commerce or that the

23  defendant knew he was affecting interstate commerce.

24      With respect to proving that the enterprise had an

25  effect on interstate or foreign commerce, the government is

Jury Charge                                    4638

1   not required to prove a significant or substantial effect on

2   interstate or foreign commerce.  This element, which simply

3   ensures federal jurisdiction over the conduct, is satisfied

4   even if a minimal effect on interstate or foreign commerce is

5   shown.  The effect does not have to be direct.  Any affect,

6   even if it is postponed, indirect, or slight, is enough to

7   satisfy the interstate commerce element.  It does not matter

8   whether the effect is harmful or beneficial to interstate

9   commerce.  Moreover, the government does not have to prove

10  that the defendant knew that the enterprise would affect

11  interstate or foreign commerce, that the defendant intended to

12  affect interstate or foreign commerce, or that the defendant

13  engaged in, or that his activities affected, interstate or

14  foreign commerce.

15          I instruct you that it makes no difference whether

16  the type of interstate commerce affected is legal or illegal.

17          It is not necessary for the government to prove that

18  the individual racketeering acts themselves affected

19  interstate commerce or foreign commerce; rather, it is the

20  enterprise and its activities considered in their entirety

21  that must be shown to have had that affect.  On the other

22  hand, this effect on interstate or foreign commerce may

23  establish through the effect caused by the individual

24  racketeering acts.

25          Everybody is still good?

Jury Charge                                    4639

1              You need a break?

2              All right.  We are going to break for ten minutes or

3    so.  Please do not talk about the case.

4              THE CLERK:  All rise.

5              (Jury exits the courtroom.)

6              THE COURT:  Okay.  Everybody can have a seat.

7              Anything before we break?

8              Okay.  See you in a few minutes.

9              (Court in recess.)

10             (In open court; jury not present.)

11             (Parties present.)

12             THE CLERK:  All rise.

13             THE COURT:  Everybody can sit down.

14             Anything before we get the jury?

15             Okay.  We will get the jury then.

16             (Jury enters the courtroom.)

17             THE CLERK:  You may be seated.

18             THE COURT:  All right, everybody.  We are ready to

19   proceed.  I would talk faster, but I have been nagging

20   everybody to slow down, so I cannot do that to the court

21   reporter.

22             I should also tell you that you will have a copy of

23   these instructions back with you in the jury room.

24             I was just getting ready to speak to you about the

25   third element, and that is association with or employment by

Jury Charge                                          4640

1   the enterprise.  This is the third element that the government

2   must prove beyond a reasonable doubt, that the defendant was

3   associated with or employed by the enterprise at some point

4   during the period charged in the indictment.

5            "Associated with" should be given its plain meaning.

6   "Associate" means "to join, often in a loose relationship as a

7   partner, fellow worker, colleague, friend, companion or

8   ally...to join or connect with another."  A person is

9   "associated with" an enterprise when, for example, he joins

10  with other members of the enterprise and knowingly aids or

11  furthers the activities of the enterprise, or conducts

12  business with or through the enterprise.  The defendant does

13  not have to have been a member of or associated with the

14  enterprise for the entire period of its existence, but he must

15  have been associated with the enterprise at the time he

16  allegedly committed the crimes charged.  That is, the

17  government must prove that the defendant was connected to the

18  enterprise in some meaningful way and that he knew of the

19  existence of the enterprise and of the general nature of its

20  activities.  A person cannot be associated or employed by an

21  enterprise if he does not know of the enterprise's existence

22  or the nature of its activities.

23            The fourth element is participation in the

24  enterprise.  The government must prove that the defendant

25  knowingly conducted or participated, either directly or

Jury Charge                    4641

1   indirectly, in the conduct of the affairs of the enterprise.

2   This means that the defendant must have played some part in

3   the operation or management in the enterprise and that the

4   defendant intentionally performed acts, functions or duties

5   that are necessary to, or helpful in, the operation of the

6   enterprise.  Thus, if the defendant participated in the

7   operation or management of the enterprise itself or he had

8   some part in directing the enterprise's affairs, that would

9   satisfy this element.  In other words, all who participate in

10  the conduct of the enterprise, whether they are generals or

11  foot soldiers, are responsible for the affairs of the

12  enterprise.

13          The fifth element is the pattern of racketeering

14  activity.  The government must prove beyond a reasonable doubt

15  that the defendant engaged in a pattern of racketeering

16  activity.  "Racketeering activity" is defined to mean the

17  commission of certain crimes.  A "pattern of racketeering

18  activity" generally means the following:

19          First, the defendant intentionally committed, or

20  caused, or aided and abetted the commission of two or more of

21  the racketeering acts alleged in the indictment.  The most

22  recent racketeering act must have occurred within ten years

23  after the commission of a prior racketeering act.  Your

24  verdict must be unanimous as to which specific racketeering

25  acts you find that the defendant committed, caused or aided

Jury Charge                                              4642

1    and abetted.  I will instruct you on the elements of each of

2    the alleged racketeering acts.

3              Second, the racketeering acts must have a nexus to

4    the enterprise and the racketeering acts must be "related."  A

5    racketeering act has a "nexus" to the enterprise if it has a

6    meaningful connection to the enterprise.  To be "related," the

7    racketeering acts must have the same or similar purposes,

8    results, participants, victim, or methods of commission, or be

9    otherwise interrelated by distinguishing characteristics and

10   not be merely isolated events.  Two racketeering acts may be

11   "related" even though they are not similar or not directly

12   related to each other, provided that the racketeering acts are

13   related to the same enterprise.  For example, for both "nexus"

14   and "relatedness" purposes, the requisite relationship between

15   the RICO enterprise and a predicate racketeering act may be

16   established by evidence that the defendant was enabled to

17   commit the racketeering act solely by virtue of his position

18   in the enterprise or his involvement in or control over its

19   affairs, or by evidence that the defendant's position in the

20   enterprise facilitated his commission of the racketeering act,

21   or by evidence that the racketeering act benefited the

22   enterprise, or by evidence that the racketeering act was

23   authorized by the enterprise or by evidence that the

24   racketeering act promoted or furthered the purposes of the

25   enterprise.

Jury Charge                                    4643

1          Third, the racketeering acts themselves either

2   extended over a substantial period of time or posed a threat

3   of continued criminal activity.  The government does not have

4   to prove such a threat of continuity by any mathematical

5   formula or by any particular method of proof, but rather may

6   prove it in a variety of ways.  For example, the threat of

7   continued unlawful activity may be established when the

8   evidence shows that the racketeering acts are part of a

9   long-term association that exists for criminal purposes or

10  when the racketeering acts are shown to be the regular way of

11  conducting the affairs of the enterprise.

12          Moreover, in determining whether the government has

13  proven the threat of continued unlawful activity, you are not

14  limited to considering the specific racketeering acts that are

15  charged against the defendant; rather, in addition to

16  considering these acts you may also consider the nature of the

17  enterprise, and the other unlawful activities of the

18  enterprise and its members viewed in their entirety, including

19  both charged and unlawful activities.

20          I am now going to explain to you what the law is

21  that governs the 14 racketeering acts that the government has

22  alleged.  You must reach separate verdicts of proven or not

23  proven with regard to each of these alleged racketeering acts.

24  They are on the verdict sheet under Count One.

25          Racketeering Act One.  This act, Racketeering Act

Jury Charge                                   4644

1   One, charges the defendant with bribery.  And this is how it

2   reads:

3           On or about August 30th, 1994, within the Northern

4   District of Illinois, the defendant, Robert Sylvester Kelly,

5   together with others, did knowingly and intentionally cause

6   another individual to promise and tender to a public officer

7   and public employee property, to wit:  United States currency,

8   that such public officer and public employee was not

9   authorized by law to accept, with the intent to influence the

10  performance of an act related to the employment and function

11  of a public officer and public employee, to wit:  the creation

12  of a fraudulent identification document for Aaliyah Haughton,

13  in violation of Illinois Criminal Code Sections 5/33-1(a) and

14  5/5-1.

15          Illinois Criminal Code Section 5/33-1(a) provides,

16  in relevant part, that:

17          A person commits bribery when... with intent to

18  influence the performance of any act related to the employment

19  and function of any public officer [or] public employee... he

20  promises or tenders to that person any property which he is

21  not authorized by law to accept.

22          The government must prove beyond a reasonable doubt

23  each of the following elements:

24          First, that the person the defendant or one for

25  whose conduct he is legally responsible sought to influence

Jury Charge                                                4645

1    was a public officer or public employee.

2          Second, that the defendant or one for whose conduct

3    he is legally responsible caused another person to promise or

4    tender property to the person the defendant sought to

5    influence.

6          And third, that the defendant or one for whose

7    conduct he is legally responsible did so with the intent to

8    influence the performance of any act related to that person's

9    employment or function as a public officer or public employee.

10         In the alternative, the government may also prove

11   that the defendant committed the crime alleged in Racketeering

12   Act One, if it proves beyond a reasonable doubt each of the

13   following two elements:

14         First, that the defendant or one for whose conduct

15   he is legally responsible promised or tendered property to

16   another individual.

17         Second, that the defendant or one for whose conduct

18   he is legally responsible did so with the intent to cause

19   another individual to influence the performance of any act

20   related to the employment or function of a public employee or

21   a public officer.

22         "Public officer" means a person who is appointed to

23   an office which is established, and the qualifications and

24   duties of which are prescribed by statute, to discharge a

25   public duty for any public political subdivision of the State

Jury Charge                                4646

1   of Illinois.  The term "public employee" is a person who is

2   authorized to perform an official function on behalf of, and

3   is paid by the State of Illinois or any political subdivision

4   thereof.  The term "tender" means any delivery or proffer made

5   with the requisite intent.  A mere offer or promise with the

6   requisite intent is not sufficient to constitute bribery under

7   Illinois law.  United States currency constitutes property

8   under Illinois law.

9           Now I am going to read you these Illinois Criminal

10  Code sections.

11          First, 5/5-1 or 55-1 provides, in relevant part,

12  that:

13          A person is responsible for the conduct which is an

14  element of an offense if the conduct is either that of the

15  person himself, or that of another and he is legally

16  accountable for such conduct as provided in section 5-2, or

17  both.

18          Section 5-2 provides, in relevant part, a person is

19  legally accountable for the conduct of another when:

20          (b) the statute defining the offense makes him

21  accountable; or

22          (c) either before or during the commission of an

23  offense, and with the intent to promote or facilitate that

24  commission, he solicits, aids, abets agrees, or attempts to

25  aid such other person in planning or committing the offense.

Jury Charge                                    4647

1   However, a person is not so accountable, unless the statute

2   defining the offense otherwise, if:

3          (1) he is a victim of the offense that was

4   committed;

5          (2) the offense is so defined that his conduct was

6   inevitably incident to its commission; or

7          (3) before the commission of the offense, he

8   terminates his effort to promote or facilitate that commission

9   and does one of the following:  wholly deprives his prior

10  efforts of effectiveness in such commission, or gives timely

11  warning to the proper law enforcement authorities, or

12  otherwise makes proper effort to prevent the commission of the

13  offense.

14         With respect to Racketeering Act One, the defendant

15  is legally responsible for the conduct of another person when,

16  either before or during the commission of the offense, and

17  with the intent to promote or facilitate the commission of the

18  offense, the defendant knowingly solicits, aids, abets, agrees

19  to aid, or attempts to aid the other person in planning or

20  committing the offense.

21         Actual physical presence at the commission of a

22  crime is not a requirement for legal responsibility.

23         Intent to promote or facilitate the commission of

24  the offense may be shown by evidence that the defendant shared

25  a criminal intent of the person who directly committed the

Jury Charge                                    4648

1    offense or evidence that there was a common criminal design.

2          A person who is legally responsible for another

3    person's conduct may be convicted for the offense committed by

4    the other person even though the other person, who it is

5    claimed committed the offense, has not been prosecuted or

6    convicted of the offense.

7          The second racketeering act charges the defendant

8    with sexual exploitation of a child.  And it reads:

9          In or about and between may 1999 and October 15,

10   1999, both dates being approximate and inclusive, within the

11   Northern District of Illinois, the defendant Robert Sylvester

12   Kelly, together with others, did knowingly and intentionally

13   employ, use, persuade, induce, entice and coerce a minor, to

14   wit:  the person who testified as "Stephanie," to engage in

15   sexually explicit conduct for the purpose of producing one or

16   more visual depictions of such conduct, which visual

17   depictions were produced using materials that had been mailed,

18   shipped, and transported in interstate and foreign commerce,

19   in violation of Title 18, United States Code, Sections 2251(a)

20   and 2.  I'm sorry, all right.

21         Now, under Title 18 of the United States Code,

22   Section 2251:

23         A person who employs, uses, persuades, induces,

24   entices, or coerces any minor to engage in... any sexually

25   explicit conduct for the purpose of producing any visual

Jury Charge                                           4649

1   depiction of that conduct, shall be punished... if such person

2   knows or has a reason to know that the visual depiction will

3   be transported in interstate or foreign commerce or mailed if

4   that visual depiction was produced using materials that had

5   been mailed, shipped, or transported in interstate or foreign

6   commerce by any means, including by computer, or if the visual

7   depiction has actually been transported in interstate or

8   foreign commerce or mailed.

9        To prove that the defendant committed this

10   racketeering act, the government must prove the following

11   three elements beyond a reasonable doubt:

12        First:  That Stephanie was under the age of 18 at

13   the time of the acts alleged in the indictment.

14        Second:  That the defendant used, employed,

15   persuaded, induced, or enticed Stephanie to take part in

16   sexually explicit conduct for the purpose of producing or

17   transmitting a visual depiction of that conduct.

18        Third:  That the visual depiction was produced using

19   materials that had been mailed, shipped, or transported in and

20   affecting interstate and foreign commerce.

21        As to the first element, the government must prove

22   beyond a reasonable doubt that Stephanie was less than

23   18 years old at the time of the acts alleged in the

24   indictment.  The government does not need to prove that the

25   defendant knew that Stephanie was less than 18 years old.

Jury Charge                               4650

1          As to the second element, the words "used,"

2     "employed," "persuaded," "induced," and "enticed" are words of

3     common usage.  You should interpret these words by using your

4     own common sense.  The words "persuade," "induce" and "entice"

5     are, in effect, synonyms that convey the idea of leading or

6     moving another person by persuasion as to some action, state

7     of mind, et cetera, or to bring about, produce or cause.

8          A "visual depiction" includes any photograph, film,

9     video or picture, including undeveloped film and videotape,

10    data stored on a computer disc or by electronic means which is

11    capable of conversion into a visual image or data that is

12    capable of conversion into a visual image that has been

13    transmitted by any means.  A visual depiction includes a

14    digitally recorded photograph or video.

15         "Sexually explicit conduct" means, among other

16    things, actual or simulated sexual intercourse, including

17    genital-genital, oral-genital, anal-genital, or oral-anal,

18    whether between persons of the same or opposite sex;

19    masturbation or lascivious exhibitions of the genitals or

20    pubic area of any person.

21         The term "lascivious exhibition" means a depiction

22    that displays the genitals or pubic area of a person in order

23    to excite lustfulness or sexual stimulation in the viewer.

24    Not every exposure of the genitals or pubic area constitutes

25    lascivious exhibition.  In deciding whether a particular

Jury Charge                              4651

1   depiction constitutes lascivious exhibition, you should
2   consider the following:
3          Whether the focal point of the visual depiction is
4   of the minor's genitals or pubic area or whether there is some
5   other focal area.
6          Whether the setting of the visual depictions makes
7   it appear to be sexually suggestive, for example, in a place
8   or pose generally associated with sexual activity.
9          Whether the minor is displayed in an unnatural pose
10  or in inappropriate attire, considering the minor's age.
11         Whether the minor is fully or partially clothed or
12  nude, although nudity is not in and of itself lascivious.
13         Whether the visual depiction suggests sexual coyness
14  or a willingness to engage in sexual activity.
15         Whether the visual depiction was intended or
16  designed to elicit a sexual response from the viewer.
17         It is not required that a visual depiction include
18  all of these factors.  The importance that you give to any one
19  factor is up to you to decide.
20         While the government must prove that the defendant
21  acted with the purpose of producing a sexually explicit visual
22  depiction, the government does not need to prove that a visual
23  depiction of sexually explicit conduct was actually produced.
24  In deciding whether the government has proven that the
25  defendant had acted for the purpose of producing or

Jury Charge                                    4652

1   transmitting a visual depiction of sexually explicit conduct,

2   you may consider all of the evidence considering the

3   defendant's conduct.

4          Whether or not a minor consented to engage in

5   sexually-explicit conduct is irrelevant, as the consent or

6   voluntary participation of a minor is not a defense to the

7   charge.

8          As to the third element of the underlying crime, I

9   will further define what it means for a depiction to be

10  produced using materials that have been mailed, shipped or

11  transported in and affecting interstate and foreign commerce.

12  If a visual depiction of sexually explicit conduct, as I

13  defined it, is recorded or stored on a device that was made

14  either outside the state where the visual depiction was made

15  or in a foreign country, then that is enough to satisfy the

16  interstate commerce element.  It is not necessary that the

17  government prove that the defendant knew that the defense had

18  been made outside of the state where the visual depiction was

19  made in a foreign country.

20

21          (Continued on the next page.)

22

23

24

25

Charge of the Court                    4653

1  (Continuing.)

2      THE COURT:  Racketeering Act Three.  This

3  Racketeering Act charges the defendant with kidnap and it

4  reads as follows:

5          In or about and between 2003 and 2004, both dates

6  being approximate and inclusive, within the Northern District

7  of Illinois and elsewhere, the defendant, Robert Sylvester

8  Kelly, together with others, knowingly and intentionally

9  secretly confined an individual, to wit; the person who

10  testified as Sonja, against her will, and induced Sonja by

11  deceit and enticement to go from one place to another with the

12  intent secretly to confine her against her will in violation

13  of Illinois Criminal Code Sections 5/10-1.  That section

14  provides, in pertinent part, kidnapping occurs when a person

15  knowingly and secretly confines another against his will, or

16  by deceit and enticement induces another person to go from one

17  place to another with intent secretly to confine that person

18  against that person's will.

19          The Government must prove beyond a reasonable doubt

20  each of the following elements:

21          That the defendant or one for whose conduct he is

22  legally responsible acted knowingly.

23          That the defendant or one for whose conduct he is

24  legally responsible secretly confined or caused another person

25  to secretly confine Sonja against her will, or by deceit or

SAM     OCR     RMR     CRR     RPR

Charge of the Court                         4654

1   enticement induced Sonja to go from one place to another, and

2   that when the defendant or one for whose conduct he is legally

3   responsible did so, he or one for whose conduct he is legally

4   responsible, intended secretly to confine Sonja against her

5   will.

6           Confinement is established where the victim has been

7   clearly enclosed within something, most commonly, a house or a

8   car.  The secret confinement element of kidnapping may be

9   shown by proof of the secrecy of either the confinement or the

10  place of confinement.  To put it another way, confinement is

11  secret when it serves to isolate or insulate the victim from

12  meaningful contact or communication with the public, that is,

13  when the confinement is in a place or manner that makes it

14  unlikely that members of the public will know or learn of the

15  victim's unwilling confinement within a reasonable period of

16  time.

17          I previously explained to you with respect to the

18  first Racketeering Act, the circumstances under which someone

19  is legally accountable for the conduct of another person under

20  the Illinois Criminal Code, and that instruction applies here.

21          Racketeering Act Four.  This Racketeering

22  Act alleges that the defendant committed two separate

23  violations of the Mann Act, one related to transportation and

24  the other involving coercion or enticement.  Thus,

25  Racketeering Act Four has two parts, and you will render

Charge of the Court                    4655

1   separate verdicts on each part.  If you find that the

2   defendant committed either or both of these crimes, you must

3   find that the Government has proven Racketeering Act Four.

4           So, 4A, Racketeering 4A is entitled Transportation.

5   And the indictment reads like this:

6           In or about and between 2003 and 2004, both dates

7   being approximate and inclusive, within the Northern District

8   of Illinois and elsewhere, the defendant, Robert Sylvester

9   Kelly, together with others, did knowingly and intentionally

10  transport an individual, Sonja, in interstate commerce, with

11  the intent that the individual engage in sexual activity for

12  which a person can be charged with a criminal offense.

13  Violations of Illinois Criminal Code Sections 5/12 to

14  16(a)(6), and that's effective as of 2002; aggravated criminal

15  sexual abuse, 5/12, 16(a)(7), also effective 2002; aggravated

16  criminal sexual abuse; and 5/12 15(a)(2), which is criminal

17  sexual abuse, in that Kelly engaged in sexual conduct with

18  Sonja, to wit; directly touching and fondling Sonja's sex

19  organs for the purpose of his sexual gratification during the

20  commission of a kidnapping of Sonja, knowing that Sonja was

21  unable to give knowing consent; as part of the same course of

22  conduct as delivery of a controlled substance to Sonja,

23  knowing that Sonja was unable to give knowing consent and

24  knowing that Sonja was unable to give knowing consent in

25  violation of Title 18, United States Code, Sections 2421 and 2.

Charge of the Court                    4656

1  The indictment charges the defendant with violating

2  Section 2421 of Title 18 of the United States Code.  That

3  section provides, in relevant part:

4         Whoever knowingly transports any individual in

5  interstate commerce with intent that that person engage in any

6  sexual activity for which a person can be charged with a

7  criminal offense, shall be guilty of a crime.

8         In order to prove the defendant's guilt of

9  transporting an individual for the purpose of engaging in

10  illegal sexual activity, the Government must prove the

11  following elements beyond a reasonable doubt:

12         First, that the defendant knowingly transported or

13  caused the transportation of Sonja in interstate commerce as

14  alleged in the indictment.

15         Second, that the defendant transported Sonja with

16  the intent that he would engage in sexual activity with Sonja,

17  and that for that sexual activity a person can be charged with

18  a criminal offense.

19         The first element that the Government must prove

20  beyond a reasonable doubt is that the defendant knowingly

21  transported or caused the transportation of Sonja in

22  interstate commerce as alleged in the indictment.  This means

23  that the Government must prove that the defendant knew both

24  that he was transporting or causing the transportation of

25  Sonja, and that he was transporting Sonja or causing her

Charge of the Court                    4657

1    transportation in interstate commerce.  To act knowingly, that

2    means to act voluntarily and intentionally, and not because of

3    any accident, mistake or other innocent reason.

4            Interstate commerce, as I've said before, is

5    movement between one state and another.  The Government does

6    not have to prove that the defendant personally transported

7    Sonja across a state line.  It's enough to satisfy this

8    element that the defendant was actively engaged in or caused

9    the making of the travel arrangements, including by purchasing

10   or causing the purchase of the ticket necessary for the person

11   to travel as planned.

12           The second element that the defendant must prove

13   beyond a reasonable doubt is that the defendant transported or

14   caused Sonja's transportation with the intent that he would

15   engage in sexual activity with her, and that a person could be

16   charged with a criminal offense for that activity.  Direct

17   proof of a person's intent, as I said before, is almost never

18   available.  It would be the rare case that someone wrote or

19   stated that as of a given time he committed a particular act

20   with a particular intent.  That kind of direct proof is not

21   required.  The ultimate act of intent, though it's subjective,

22   may be established by circumstantial evidence, based on a

23   defendant's outward manifestations, his words, his conduct and

24   his acts, and all of the surrounding circumstances shown by

25   the evidence and the rational or logical evidence that you can

Charge of the Court                    4658

1    draw from them.

2         In order to establish this element, it is not

3    necessary that the Government prove that engaging in illegal

4    sexual activity was the only purpose for crossing the state

5    line.  A person may have several different purposes or motives

6    for such travel, and each may prompt in varying degrees the

7    act of making the journey.  The Government must prove beyond a

8    reasonable doubt, however, that a significant or motivating

9    purpose of the travel across a state line was that the

10   defendant would engage in illegal sexual activity with Sonja.

11   In other words, that illegal activity on can't have been

12   merely incidental to the trip.

13        All right, the indictment charges that the defendant

14   transported Sonja with the intent that she engage in sexual

15   activity that violates three Illinois criminal laws.  The

16   first is under Illinois Criminal Code Section 5/12-16(a)(6),

17   aggravated sexual abuse; the second is 5/12-16(a)(7),

18   aggravated criminal sexual abuse.  I guess they are both that.

19   Yes, aggravated criminal sexual abuse and 5/12-16(a)(7),

20   aggravated criminal sexual abuse, and 5/12-15(a)(2), which is

21   criminal sexual abuse.

22        If you find that the conduct for which the defendant

23   transported or caused Sonja's transportation violated any of

24   these three laws, then you must find that this element is

25   satisfied, but you have to be unanimous as to which law was

SAM     OCR     RMR     CRR     RPR

Charge of the Court                    4659

1   violated.  So, I am going to tell you about each of those

2   three laws.

3          First, Section 5/12-15(a) provides that a ey person

4   commits criminal sexual abuse, which is a crime, if he commits

5   an act of sexual conduct and the accused knew that the victim

6   was unable to understand the nature of the act or was unable

7   to give knowing consent.  So, the Government has to prove the

8   following two elements beyond a reasonable doubt:

9          First, that the defendant committed a sexual act

10  against Sonja or on Sonja.

11         Second, that the defendant knew that Sonja was

12  unable to understand the nature of the act or give knowing

13  consent to the act.

14         Sexual conduct means any intentional or knowing

15  touching or fondling of the victim or the accused, either

16  directly or through clothing, of the sex organs, anus or

17  breast of the victim or the accused, or any transfer or

18  transmission of semen by the accused upon any part of the

19  clothed or unclothed body of the victim for the purpose of

20  sexual gratification or arousal of the victim or the accused.

21         The next code section is aggravated sexual abuse,

22  and that's under Illinois Code Section 5/12-16(a)(6).  A

23  person is guilty of that crime if he commits criminal sexual

24  abuse as I just explained to you, and the criminal sexual

25  abuse was perpetrated during the course of the commission or

Charge of the Court                    4660

1   attempted commission of any other felony by the accused.  I

2   charge you that kidnapping is a felony.  I've already defined

3   that, and you should apply that definition here.

4        The next section of the Criminal Code is

5   5/12-16(a)(7), and that provides that a person commits

6   aggravated sexual abuse if he commits criminal sexual abuse,

7   as I just explained to you, and the accused delivered by

8   injection, inhalation, ingestion, transfer or possession or

9   any other means to the victim without her consent or by threat

10  or deception, or for other than medical purposes, any

11  controlled substance.

12       Now, Racketeering Act 4B is coercion.  And this is

13  what the indictment says:

14       In or about and between 2003 and 2004, within the

15  Northern District of Illinois and elsewhere, the defendant,

16  together with others, did knowingly and intentionally

17  persuade, induce, entice and coerce an individual, Sonja, to

18  travel in interstate commerce to engage in sexual activity for

19  which a person can be charged with a criminal offense, to wit:

20  Violations of Illinois Criminal Code Sections 5/12-16(a)(6),

21  that's aggravated criminal sexual abuse.

22       I am not going to read all these statutes, I am just

23  going to tell you what the crimes are.

24       Aggravated criminal sexual abuse and criminal sexual

25  abuse, in that Kelly engaged in sexual conduct with Sonja, to

1  wit:  Directly touching and fondling Sonja's sex organs for

2  the purpose of his sexual gratification during the commission

3  of a kidnapping of Sonja, knowing that Sonja was unable to

4  give knowing consent and as part of the course of conduct,

5  that same course of conduct, as delivery of a controlled

6  substance to Sonja, knowing that she was unable to give

7  knowing consent and knowing that she was unable to give

8  knowing consent in violation of Title 18, United States Code,

9  Sections 2422(a) and 2.

10           The indictment also charges the defendant with

11  violating that section of the United States Code, Title 18,

12  which provides:

13           Whoever knowingly persuades, induces, entices or

14  coerces any individual to travel in interstate commerce to

15  engage in any sexual activity for which a person can be

16  charged with a criminal offense shall be guilty of a crime.

17           In order to prove the defendant guilty of this

18  crime, the Government must prove each of the following

19  elements beyond a reasonable doubt:

20           First, that the defendant knowingly persuaded,

21  induced, enticed or coerced Sonja to travel in interstate

22  commerce as alleged in the indictment.

23           Second, that Sonja traveled in interstate commerce.

24           And third, that the defendant acted with the intent

25  that he would engage in illegal sexual activity with Sonja.

Charge of the Court                              4662

1          With respect to the third element, the indictment

2    charges that the defendant acted with the intent to engage in

3    illegal sexual activity in violation of three different state

4    laws.  I have already instructed you on those provisions, and

5    you should apply those instructions here.

6          If you find that the defendant acted with the intent

7    that he would engage in conduct that violated any of those

8    three laws, then you must find that this element is satisfied.

9    But, again, you have to be unanimous about which law he acted

10   with the intent to violate.

11          Moving on to Racketeering Act Five.

12          This act alleges that the defendant, using an

13   interstate facility, enticed or coerced Jerhonda to engage in

14   illegal sexual activity in violation of the Mann Act.  The

15   indictment reads as follows:

16          In or about and between May 2009 and January 2010,

17   both dates being approximate and inclusive, within the

18   Northern District of Illinois and elsewhere, the defendant,

19   together with others, did knowingly and intentionally

20   persuade, induce, entice and coerce an individual who had not

21   yet attained the age of 18 years, to wit, Jerhonda, to engage

22   in sexual activity for which a person can be charged with a

23   criminal offense.

24          And these are violations of Illinois Criminal Code

25   Section 5/12-16(d), that's aggravated criminal sexual abuse,

Charge of the Court                    4663

1   that Kelly engaged in sexual penetration of Jerhonda who was

2   under 17 years of age, while he was more than five years older

3   than Jerhonda, using one or more facilities and means of

4   interstate commerce in violation of Title 18, United States

5   Code, Sections 2422(b) and 2.

6          The indictment charges that the defendant violated

7   this section of the United States Code, which provides in

8   relevant part:

9          Whoever, using any facility or means of interstate

10  commerce, knowingly persuades, induces, entices or coerces any

11  person who has not attained the age of 18 years, to engage in

12  any sexual activity for which any person can be charged with a

13  criminal offense shall be guilty of a crime.

14         In order to prove that the defendant is guilty of

15  using the facility of interstate commerce to persuade or

16  induce or entice or coerce a person to engage in illegal

17  sexual activity, the Government must prove each of these

18  elements beyond a reasonable doubt:

19         First, that the defendant used a facility of

20  interstate commerce.

21         Second, that the defendant knowingly persuaded or

22  induced or enticed or coerced Jerhonda to engage in sexual

23  activity.

24         Third, that the sexual activity would violate

25  Illinois law.

SAM     OCR     RMR     CRR     RPR

Charge of the Court                    4664

1          Fourth, that Jerhonda was less than 18 at the time

2    of the acts alleged in the indictment.

3          The first element that the Government must prove

4    beyond a reasonable doubt is that the defendant used a

5    facility of interstate commerce.  Transmission of

6    communications by telephone constitutes the use of a facility

7    of interstate commerce regardless of whether the communication

8    actually crossed a state line, but you must find beyond a

9    reasonable doubt that the specific communication in question

10   was transmitted by the telephone.

11         The second element that the Government must prove

12   beyond a reasonable doubt is that the defendant knowingly

13   persuaded or induced or enticed or coerced Jerhonda to engage

14   in sexual activity.

15         And those words persuade, induce, entice and coerce,

16   you should give them their ordinary meanings.

17         The third element that the Government must prove

18   beyond a reasonable doubt is that the sexual activity would

19   violate Illinois law.  The indictment alleges that the

20   defendant persuaded Jerhonda to engage in sexual activity,

21   which constitutes aggravated sexual abuse in violation of

22   Illinois law.  To sustain that charge, aggravated criminal

23   sexual abuse, the Government has to prove the following three

24   elements beyond a reasonable doubt:

25         That the defendant committed an act of sexual

Charge of the Court                              4665

1   penetration with Jerhonda; that Jerhonda was at least 13 years

2   of age, but under 17 years of age when the act was committed;

3   and that the defendant was at least five years older than

4   Jerhonda.

5          Sexual penetration means any contact, however

6   slight, between the sex organs or anus of one person by an

7   object, the sex organ, mouth or anus of another person, or any

8   intrusion, however slight, by any part of the body of one

9   person or of any animal or object into the sex organ or anus

10  of another person, including, but not limited to, cunnilingus,

11  fellatio or anal penetration.  Evidence of emission of semen

12  is not required to prove sexual penetration.  It is a defense

13  to the charge of aggravated criminal sexual abuse that the

14  defendant reasonably believed Jerhonda to be 17 years of age

15  or older at the time the acts of sexual penetration were

16  committed.

17         The fourth element that the Government must prove

18  beyond a reasonable doubt is that Jerhonda was less than 18 at

19  the time of the acts alleged in the indictment.

20         Racketeering Act Six alleges that the defendant

21  committed forced labor of Jerhonda, and the indictment reads

22  as follows:

23         In or about and between May of 2009 and

24  January 2010, both dates being approximate and inclusive,

25  within the Northern District of Illinois and elsewhere, the

1    defendant, together with others, knowingly and intentionally,

2    obtained the labor and services of a person, Jerhonda, by

3    means of force, threats of force, physical restraint and

4    threats of physical restraint to Jerhonda or another person by

5    means of serious harm and threats of serious harm to Jerhonda

6    or another person; and by means of a scheme, plan and pattern

7    intended to cause that person to believe that if that person

8    did not perform such labor and services, that person would

9    suffer serious harm and physical restraint and a combination

10   of such means, in violation of Title 18, United States Code,

11   Sections 1589(a) and 2.

12          The relevant statute reads as follows:

13          Whoever knowingly obtains the labor and services of

14   another person by means of force, threats of force, physical

15   restraint or threats of physical restraint to that person or

16   another person, by means of serious harm or threats of serious

17   harm to that person or another person, or by means of any

18   scheme, plan, pattern, intended to cause the person to believe

19   that if that person did not perform such labor or services,

20   that person or another person would suffer serious harm or

21   physical restraint, shall be guilty of a crime.

22          The Government must prove the following three

23   elements beyond a reasonable doubt to prove that the defendant

24   committed this Racketeering Act.

25          The first is the defendant obtained the labor or

Charge of the Court                    4667

1  services of Jerhonda.

2          The second is that the defendant did so through one

3  of the following prohibited means:

4          Through threats of serious harm to or physical

5  restraint against Jerhonda or any other person, or through its

6  scheme, plan, pattern, intended to cause Jerhonda to believe

7  that not performing would result in serious harm to or

8  physical restraint against Jerhonda or any other person.

9          The third element is that the defendant acted

10 knowingly.

11         The first element that they must prove is that the

12 defendant obtained Jerhonda's labor and services.  To obtain

13 means to acquire, control or possess, even if only for a short

14 period.  Labor means the expenditure of physical or mental

15 effort.  Services means conduct or performance that assists or

16 benefits someone.

17         The Government does not have to prove that Jerhonda

18 performed work for defendant in the economic sense, although

19 that would satisfy this element.  Labor or services can

20 include, but is not limited to, sexual services.  All the

21 Government must prove is that Jerhonda provided labor services

22 as I just defined them.

23         As to the second element, if you find that the

24 defendant obtained the labor or services of Jerhonda, then you

25 have to determine whether he did so through one of the two

Charge of the Court                    4668

1   prohibited means.  That is, either through threats of serious

2   harm to or physical restraint against a person, or through a

3   scheme, plan or pattern intended to cause the person to

4   believe that serious harm would result if she did not perform

5   the labor or services required of her.

6          In order to find that this element has been

7   satisfied, you must find beyond a reasonable doubt that at

8   least one of the prohibited means that I just mentioned was

9   used to obtain Jerhonda's labor or services.  Some of the

10  terms that you will be considering in determining whether this

11  element of Racketeering Act Six has been satisfied, include

12  the term serious harm.  That includes both physical and

13  non-physical types of harm, including psychological,

14  financial, or reputational harm.  A threat of serious harm,

15  therefore, does not have to involve any threat of physical

16  violence.  It includes improper threats of consequences,

17  whether physical or non-physical, that are sufficient under

18  all the surrounding circumstances to compel or coerce a

19  reasonable person of the same background and in the same

20  circumstance as Jerhonda to provide or to continue providing

21  labor or services in order to avoid that harm.  In considering

22  whether a threat of harm is sufficient to compel or coerce an

23  alleged victim's services, you may also consider the

24  defendant's conduct, as well as Jerhonda's special

25  vulnerabilities, if any.  In this regard, you may find that

1   not all persons are of the same courage or firmness.  You may

2   consider, for example, Jerhonda's age, background, physical

3   and mental condition, experience, education, socio-economic

4   status, and any inequalities between Jerhonda and the

5   defendant with respect to these considerations, including

6   their relative stations, in life, among other things.  To put

7   it simply, you may ask whether Jerhonda was vulnerable in some

8   way so that the defendant's actions, even if not enough to

9   compel another person to provide labor or services, were

10  enough to compel Jerhonda to provide labor or services.

11          You should give the ordinary meaning to these words,

12  scheme, plan and pattern.  The scheme, plan or pattern does

13  not have to involve actual threats of serious harm, but may

14  involve any other means, including deception or psychological

15  coercion used to cause the victim to reasonably believe that

16  she, her family, or any other person would suffer serious harm

17  if she refused to continue providing labor or services.

18          If you find that any of the two prohibited means

19  that I mentioned earlier was used, you then have to determine

20  whether the means was sufficient to cause Jerhonda reasonably

21  to believe that she had no choice, but to provide labor or

22  services to the defendant.  In making that determination, you

23  may consider the cumulative effect on Jerhonda of the

24  defendant's conduct.

25          A few final things about this second element of

1   forced labor.  To prove forced labor, the Government does not

2   need to link each of the threats allegedly made or actions

3   allegedly taken against Jerhonda to particular labor or

4   service tasks that she performed.  If Jerhonda was threatened

5   with or suffered certain consequences in connection with the

6   services she rendered, either as punishment or as part of a

7   climate of fear that overcame her will and compelled her

8   service, that is sufficient to establish the second element of

9   the offense of forced labor.

10          The Government also does not have to prove physical

11  restraint, like chains, barbed wire or locked doors, in order

12  to establish the offense of forced labor.  The fact that

13  Jerhonda may have had the opportunity to escape is irrelevant

14  if the defendant placed her in such fear or circumstances that

15  she did not reasonably believe that she could leave.  A victim

16  who has been placed in such fear or circumstances is under no

17  affirmative duty to try to escape.

18          Finally, when you consider whether service performed

19  by someone was involuntary, I am instructing you that it is

20  not a defense to the crime of forced labor that the person

21  might have initially agreed voluntarily to render the service

22  or perform the labor.  If a person willingly begins service or

23  labor, but later wants to withdraw and then is forced to

24  remain and perform the labor or services against her will by

25  threats of serious harm, or by a scheme, plan or pattern

Charge of the Court                          4671

1    intended to cause her to believe that not performing the labor

2    or services will result in serious harm to her or someone

3    else, then her service becomes involuntary.  Also, whether a

4    person is paid a salary or a wage does not determine the

5    question of whether that person has been held in forced labor.

6    In other words, if someone is compelled to do labor against

7    her will by any one of the means prohibited by the forced

8    labor statute, that service is involuntary, even if she is

9    paid or compensated for the labor or services.

10              The third element I have already described to you,

11   that requires that the defendant acted knowingly.

12              Racketeering Act Seven charges that the defendant

13   sexually exploited Jerhonda, and the indictment reads as

14   follows:

15              In or about and between May 2009 and January 2010,

16   both dates being approximate and inclusive, within the

17   Northern District of Illinois and elsewhere, the defendant,

18   together with others, knowingly and intentionally employed,

19   used, persuaded, induced, enticed and coerced a minor,

20   Jerhonda, to engage in sexually explicit conduct for the

21   purpose of producing one or more visual depictions of such

22   conduct, which visual depictions were produced using material

23   that had been mailed, shipped and transported in and affecting

24   interstate and foreign commerce, in violation of Title 18

25   United States Code, Sections 2251(a), 2251(e) and 2.

Charge of the Court                    4672

1          To prove that the defendant committed this

2     Racketeering Act, the Government must prove the following

3     three elements beyond a reasonable doubt:

4          First, that Jerhonda was under the age of 18 at the

5     time of the acts alleged in the indictment.

6          Second, that the defendant used, employed,

7     persuaded, induced or enticed Jerhonda to take part in

8     sexually explicit conduct for the purpose of producing or

9     transmitting a visual depiction of that conduct.

10          Third, that the visual depiction was produced using

11     materials that had been mailed, shipped or transported in and

12     affecting interstate and foreign commerce.

13          I have already instructed you on all of these

14     elements in connection with Racketeering Act Two, and those

15     instructions apply to this Racketeering Act as well.

16          Racketeering Act Eight alleges that the defendant

17     committed two different violations of the Mann Act, one

18     related to transportation and the other involving coercion or

19     enticement.

20          So, this Racketeering Act also has two parts and you

21     will render separate verdicts on each part.

22          If you find that the defendant committed either or

23     both of these two crimes, you must find that the defendant has

24     proven Racketeering Act Eight.

25          8A is transportation, and here is what the

Charge of the Court                         4673

1   indictment says:

2          And from now on I am not going to include that *dates*

3   *being inclusive*, that applies to everything.  I don't think

4   there is any need to keep saying it.

5          On or about and between April 28th of 2015 and

6   May 1st, 2015, within the Central District of California, the

7   Northern District of California and elsewhere, the defendant,

8   together with others, knowingly and intentionally transported

9   an individual, Jane, in interstate commerce, with the intent

10  that Jane engage in sexual activity for which a person can be

11  charged with a criminal offense, to wit:  Violations of

12  California Health and Safety Code, Section 120290, which is

13  willful exposure of a communicable disease, in that Kelly

14  engaged in unprotected sexual intercourse with Jane without

15  first informing Jane that he had contracted herpes and

16  obtaining her consent to sexual intercourse in these

17  circumstances in violation of Title 18, United States Code,

18  Sections 2421(a) and 2.

19         The indictment charges the defendant with violating

20  this section of the Code and that provides, the section

21  provides, in relevant part:

22         Whoever knowingly transports any individual in

23  interstate commerce with the intent that that person engage in

24  any sexual activity for which any person can be charged with a

25  criminal offense shall be guilty of a crime.

Charge of the Court                    4674

1          In order to prove the defendant guilty of this

2    crime, the Government must prove beyond a reasonable doubt

3    each of the following elements:

4          First, that the defendant knowingly transported or

5    caused the transportation of Jane in interstate commerce as

6    alleged in the indictment.

7          Second, that the defendant transported or caused the

8    transportation of Jane with the intent that he would engage in

9    illegal sexual activity with Jane.

10         I have already instructed you on the elements of the

11   Mann Act transportation, and you should follow those

12   instructions here.

13         In this Racketeering Act, the illegal sexual

14   activity that is charged is a violation of California law.

15   Specifically, California Health and Safety Code

16   Section 120290.  And under that law, any person who is

17   afflicted with any contagious, infectious or communicable

18   disease who willfully exposes himself or herself to another

19   person shall be punished.  This is what the Government must

20   prove beyond a reasonable doubt:

21         First, that the defendant knew that he was afflicted

22   with any contagious and infectious and communicable disease.

23         Second, that the defendant exposed himself to Jane

24   by engaging in unprotected sexual activity with her.

25         Third, that the defendant acted willfully.

1        And fourth, that the defendant did not inform Jane

2   that he had a contagious, infectious or communicable disease

3   and obtain her consent to expose himself in these

4   circumstances prior to engaging in the exposure.

5        A communicable disease is any disease that was

6   transferable through the exposure incident.  With respect to

7   the third element, I have already defined this for you.  I

8   think that's willfully, that means with knowledge of the

9   consequences or purposefully.  It does not require that the

10  defendant intended to expose another person to a contagious or

11  infectious or communicable disease.

12       Racketeering Act 8B is coercion.  The indictment

13  reads as follows:

14       On or about and between April 28th, 2015 and

15  May 2015, within the Central District of California, the

16  Northern District of California and elsewhere, the defendant,

17  together with others, knowingly and intentionally persuaded,

18  induced, enticed and coerced Jane to travel in interstate

19  commerce to engage in sexual activity for which a person can

20  be charged with a criminal offense.

21       Again, that's that Section 120290 of the California

22  Health and Safety Code, which is willful exposure of a

23  communicable disease, that's that Kelly engaged in unprotected

24  sexual intercourse with Jane without first informing her that

25  he had contracted herpes and getting her consent to sexual

1  intercourse in these circumstances in violation of Title 18,

2  United States Code, Sections 2422(a) and 2.

3           That statute, which I think I have read before

4  reads:

5           That whoever knowingly persuades, induces, entices

6  or coerces any individual to travel in interstate commerce to

7  engage in any sexual activity for which a person can be

8  charged with a criminal offense shall be guilty of a crime.

9           Here is what the Government has to prove to

10 establish this crime beyond a reasonable doubt:

11          That the defendant knowingly persuaded, induced,

12 enticed or coerced Jane to travel in interstate commerce as

13 the indictment alleges.

14          Second, that Jane did travel in interstate commerce.

15          Third, that the defendant acted with the intent that

16 Jane would engage in illegal sexual activity.

17          I have already instructed you on the elements of

18 Mann Act coercion and enticement, and I have also instructed

19 you about the elements of the California Health and Safety

20 Code, and those instructions apply here.

21          Everybody okay?  We're getting there.

22          Racketeering Act Nine charges that the defendant

23 committed four separate violations of the Mann Act, two

24 related to transportation and the other involving coercion or

25 enticement.

Charge of the Court                    4677

1         It has four parts, and you will render separate

2    verdicts on each part.  If you find that the defendant

3    committed any one or all of these four crimes, then you must

4    find that the Government has proven Racketeering Act Nine.

5              So, the first one is referred to on the verdict

6    sheet as Racketeering Act 9A, and the indictment reads as

7    follows:

8                   In or about and between September 2015 and

9    October 2015, in the Eastern District of New York, the

10   Northern District of California and elsewhere, the defendant,

11   together with others, knowingly and intentionally transported

12   Jane in interstate commerce with the intent that Jane engage

13   in sexual activity for which a person can be charged with a

14   criminal offense, violations of California Penal Law

15   Section 261.5(a) and (c), which is unlawful sexual intercourse

16   with someone under 18, in that Kelly engaged in sexual

17   intercourse with Jane who was under 18 years old, while he was

18   more than three years older than Jane.

19        In order to prove the defendant guilty of

20   transporting a person for the purpose of engaging in illegal

21   sexual activity, the Government must prove each of the

22   following elements beyond a reasonable doubt:

23             That the defendant knowingly transported or caused

24   the transportation of Jane in interstate commerce; that's the

25   indictment alleges.

Charge of the Court                    4678

1          And that the defendant transported Jane with the

2     intent that he would engage in sexual activity with her.

3          And that for that sexual activity, a person can be

4     charged with a criminal offense.

5          I have already instructed you about Mann Act

6     transportation and that instruction applies, but the second

7     element has to do with California law and charges that the

8     defendant violated California law by engaging in sexual

9     intercourse with Jane who was under 18, while he was more than

10    three years older than Jane.  Under California law, any person

11    who engages in an act of unlawful sexual intercourse with a

12    minor who was more than three years younger than the

13    perpetrator is guilty of a crime.

14

15          (Continued on the following page.)

16

17

18

19

20

21

22

23

24

25

Jury Charge                    4679

1          THE COURT:   Unlawful sexual intercourse is an act

2   of sexual intercourse accomplished with a person who is not a

3   spouse of the perpetrator if the person is a minor.   A minor

4   is a person under 18, an adult is a person who is at least

5   18.

6          To prove a violation of this part of California

7   law, the Government must prove each of the following elements

8   beyond a reasonable doubt:

9          First, that the defendant had sexual intercourse

10   with Jane.

11          Second, that the defendant and Jane were not

12   married to each other at the time of the intercourse.

13          And third, at the time of the intercourse, Jane was

14   under the age of 18 and more than three years younger than

15   the defendant.

16          Sexual intercourse means any penetration, no matter

17   how slight, of the vagina or genitalia by the penis.

18   Ejaculation is not required.   It is not a defense that Jane

19   may have consented to the intercourse.

20          The defendant is not guilty of this violation of

21   California law if he reasonably and actually believed that

22   Jane was 18 or older at the time of the charged intercourse.

23   The Government must prove beyond a reasonable doubt that the

24   defendant did not reasonably and actually believe that Jane

25   was at least 18 years old.

Jury Charge                                          4680

1          Racketeering Act Nine-B is coercion or enticement
2    and the indictment reads:
3              In or about and between September and October of
4    2015, the defendant, together with others, knowingly and
5    intentionally persuaded, induced, enticed, and coerced Jane
6    to travel in interstate commerce and to engage in sexual
7    activity for which a person can be charged with a criminal
8    offense.
9              That's violations of California Penal Law:
10   Unlawful sexual intercourse with a person under 18 in that
11   Kelly engaged in sexual intercourse with Jane who was under
12   18 while he was more than three years older than Jane in
13   violation of Title 18, United States Code, Sections 2422(a)
14   and 2.
15             The Government must prove each of the following
16   elements beyond a reasonable doubt:
17             That the defendant knowingly persuaded, induced,
18   enticed, or coerced Jane to travel in interstate commerce as
19   the indictment alleges.
20             That Jane travelled in interstate commerce.
21             That the defendant act with the intent that he
22   would engage in illegal sexual activity with Jane.
23             I have already instructed you on all of the -- on
24   the Mann Act as well as the California Penal Law sections and
25   those instructions apply here.

Jury Charge                         4681

1          Racketeering Act 9C is coercion of a minor.

2          And this indictment reads almost identically to the

3    other racketeering acts.  That it alleges between September

4    and October of 2015 in the Eastern District, the Northern

5    District of California, and elsewhere the defendant with

6    others knowingly and intentionally persuaded, enticed, and

7    coerced someone who had not attained the age of 18 years,

8    Jane, to engage in sexual activity for which a person can be

9    charged with a criminal offense.

10          That's those violations of California Penal Law

11    outlawing unlawful sexual intercourse with a person under 18

12    in that Kelly engaged in sexual intercourse with Jane who was

13    under 18 years old while he was more than three years older

14    than Jane using one or more facilities of interstate

15    commerce.

16          I've already read you that code, that section of

17    the United States Code, that's Section 2422(b), I don't think

18    it's necessary to read it again.

19          In order to prove the defendant guilty of this

20    racketeering act, the Government must prove each of the

21    following elements beyond a reasonable doubt.

22          That the defendant used a facility of interstate

23    commerce.

24          That the defendant knowingly persuaded or induced

25    or enticed or coerced Jane to engage in sexual activity.

Jury Charge                                    4682

1      That this sexual activity would violate California

2  law.

3      And that Jane was less than 18 years old at the

4  time of the acts alleged in the indictment.

5      The first element that the Government must prove

6  beyond a reasonable doubt is that the defendant used a

7  facility of interstate commerce.

8      I've already instructed you this is that

9  instruction that transmission of communications by the

10  telephone constitutes interstate commerce, but that you have

11  to find that the specific communication in question actually

12  was transmitted by the telephone.

13      The second element that the Government must prove

14  is that the defendant knowingly persuaded or induced or

15  enticed or coerced Jane to engage in sexual activity.  And,

16  again, those words should be given their ordinary meanings.

17      The third element that the Government has to prove

18  beyond a reasonable doubt is that this sexual activity

19  violated California law.  I've already told you about that

20  relevant California law and that applies here.

21      And finally, the Government must prove beyond a

22  reasonable doubt that Jane was 18 years old at the time of

23  the acts alleged in the indictment.

24      We're on it Racketeering Act 9D, also

25  transportation of a minor.  Again, alleging that the

Jury Charge                                    4683

1    defendant transported Jane for the purpose of engaged in

2    illegal sexual activity.

3              And let me just check with the parties.  I think

4    that reads exactly the same as the last, doesn't it?

5              MS. GEDDES:  Just requires travel in interstate

6    commerce, and the other one required use of a facility.  I

7    think this one is very similar but it's technically

8    different.

9              THE COURT:  Well, then we'll read it.  That's fine.

10             So in or about and between September 2015 and

11   October 2015 in the Eastern District of New York, the

12   Northern District of California, and elsewhere, the

13   defendant, together with others, knowingly and intentionally

14   transported Jane who had not reached the age of 18 in

15   interstate commerce with the intent that Jane engage in

16   sexual activity for which a person could be charged with a

17   criminal offense.  That's those same violations of California

18   Penal Law.  And that Kelly engaged in sexual intercourse with

19   Jane who is under 18 while he was more than three years older

20   than Jane.

21             And, again, this is Section 2423(a) of Title 18 of

22   the United States Code and that reads:

23             That a person who knowingly transports an

24   individual who has not attained the age of 18 in interstate

25   or foreign commerce with the intent that the individual

1    engage in any sexual activity where for which a person could

2    be charged with a criminal offense shall be guilty of a

3    crime.

4           These elements that the Government must prove

5    beyond a reasonable doubt are that:

6           First, that the defendant knowingly transported or

7    caused the transportation a minor in interstate or foreign

8    commerce.

9           Second, that the defendant transported or caused

10   the transportation of a minor with the intent that she would

11   engage in any sexual activity for which a person can be

12   charged with a criminal offense.

13          And third, that Jane was less than 18 at the time

14   of the acts alleged in the indictment.

15          I've already defined "knowingly" and "interstate or

16   foreign commerce," those instructions apply here.  I've also

17   explained the law about transporting or causing the

18   transportation of another person.  Those instructions also

19   apply.

20          Racketeering Act Ten alleges that the defendant

21   committed sexual exploitation of Jane and the indictment

22   reads as follows:

23          In or about and between September 2015 and

24   December 30th of 2015 within the Northern District of

25   California, the Northern District of Illinois, and elsewhere,

1    the defendant knowingly and intentionally employed, used,

2    persuaded, induced, enticed and coerced a minor, Jane, to

3    engage in sexually explicit conduct for the purpose of

4    producing one or more visual depictions of such conduct which

5    visual depictions were produced using materials that had been

6    mailed, shipped, and transported in and affecting interstate

7    and foreign commerce in violation of Sections 2251(a), (e),

8    and 2 of the United States Code.

9          Here's what the Government must prove to establish

10   the defendant's guilt beyond a reasonable doubt:

11         First, that Jane was under 18 at the time of the

12   acts alleged in the indictment.

13         Second, that the defendant used, employed,

14   persuaded, induced, or enticed Jane to take part in sexually

15   explicit conduct for the purpose of producing or trance

16   magistrate visual depiction of that conduct.

17         And third, that the visual depiction was to be

18   mailed or transported or transmitted in or effecting

19   interstate or foreign commerce or using a facility of

20   interstate and foreign commerce or produced using materials

21   that had been mailed, shipped, or transported in and

22   affecting interstate and foreign commerce.

23         I've already told you about these elements and

24   given you the instructions in connection with Racketeering

25   Act Two and those apply here.

Jury Charge                         4686

1          Racketeering Act Eleven charges the defendant with

2     committing forced labor of Jane.

3          That the defendant indictment reads in pertinent

4     part:

5          That between April and, April 2015 and December of

6     2018 in the Northern District of Georgia, Northern District

7     of Illinois, and elsewhere, the defendant, together with

8     others, knowingly and intentionally obtained the labor and

9     services of Jane by means of force, physical restraint, and

10    threats of physical restraint to Jane or another person by

11    means of serious harm or threats of serious harm to Jane or

12    another person, and by means of a scheme, plan, or pattern

13    intended to cause that person to believe that if did not

14    perform the labor and services, she would suffer serious harm

15    and physical restraints and a combination of such means in

16    violation of Title 18, United States Code, Sections 1589(a)

17    and 2.

18         To prove that the defendant committed this act, the

19    Government has to prove three elements beyond a reasonable

20    doubt.

21         The first that the defendant obtained Jane's labor

22    or services.

23         And that the second is that he did so through one

24    of the following prohibited means, threats of serious harm to

25    or physical restraint against Jane or any other person or

Jury Charge                          4687

1    through a scheme, plan, or pattern intended to cause Jane to

2    believe that not performing the labor or services would

3    result in serious harm to or physical restraint against Jane

4    or any other person.

5              And that the defendant acted knowingly.

6              I've already instructed you on the elements of

7    forced labor and those instructions apply here.

8              Racketeering Act Twelve alleges two separate

9    violations of Mann Act, one transportation and the other

10   involving coercion or enticement.  So this racketeering act

11   like some of the others has two parts.  You will render

12   separate verdicts on each part.  If you find that the

13   defendant committed either or both of these two crimes, you

14   must find that the defendant has proven Racketeering Act

15   Twelve.

16             The first one is listed as 12A on the verdict sheet

17   and this alleges that the defendant transported Faith for

18   purposes of engaging in illegal sexual activity.

19             And the indictment reads in pertinent part:

20             On or about May 18th, within the Eastern District

21   of New York and elsewhere, the defendant, together with

22   others, knowingly and intentionally transported Faith in

23   interstate commerce with the intent that she engage in sexual

24   activity for which a person can be charged with a criminal

25   offense.  That's violations of New York Penal Law

1    Section 120.20, this is a reckless endangerment, and New York

2    Public Health Law Section 2307 which is the knowing exposure

3    of infectious venereal disease in that Kelly engaged in

4    unprotected sexual intercourse with Faith without first

5    informing her that he had contracted herpes and obtaining her

6    consent to sexual intercourse in these circumstances in

7    violation of Title 18, United States Code, sections 2421(a)

8    and 2.

9            In order to prove the defendant guilty of this

10   crime, the Government has to prove the following beyond a

11   reasonable doubt:

12           That the defendant knowingly transported or caused

13   the transportation of Faith in interstate commerce as alleged

14   in the indictment.

15           And that he transported Faith with the intent that

16   he would engage in sexual activity with Faith.

17           And that for that sexual activity a person can be

18   charged with the criminal offense.

19           I've already instructed you about Mann Act

20   Transportation.  That instruction applies here.  For this

21   racketeering act, the indictment alleges that the defendant

22   violated two different state laws.  Either or both are

23   sufficient to find that his conduct amounted to illegal

24   sexual activity, but you have to be unanimous as to which law

25   was violated.

Jury Charge                              4689

1          So the indictment says that he as I read before

2    that he engaged in unprotected sexual activity, intercourse,

3    with Faith without first telling her that he had herpes, and

4    without obtaining her consent to intercourse.  And it's

5    alleged to violate two sections of New York law.  New York

6    Penal Law 120.20 and Public Health Law 2307.

7          So to prove a violation of Penal Law

8    Section 120.20, the Government has to prove the following

9    elements beyond a reasonable doubt:

10         The first is that the defendant recklessly engaged

11   in conduct.

12         And the Government is that the reckless conduct

13   must have created a substantial risk of "serious physical

14   injury."

15         A person recklessly engages in conduct that creates

16   of a substantial risk of physical injury to someone else when

17   he engages in conduct that creates a substantial and

18   unjustifiable risk of serious physical injury to another

19   person when he is aware of and consciously disregards that

20   risk, and when that risk is of such nature and degree that

21   disregard of it constitutes a gross deviation from the

22   standard of conduct that a reasonable person would observe in

23   the situation.  The defendant's subjective intent is

24   irrelevant.

25         Serious physical injury means impairment of a

1  person's physical condition that creates a substantial risk

2  of death, or that causes death, or serious and protracted

3  disfigurement or protracted impairment of health or

4  protracted loss or impairment of the function of any bodily

5  organ.

6          The second law is New York Public Health Law

7  Section 2307 which reads that, "any person who knowing

8  himself or herself to be infected if an infectious venereal

9  disease has sexual intercourse with another shall be

10 punished.

11         And here's what the Government has to prove to

12 beyond a reasonable doubt to establish a violation of that

13 section.

14         First, that the defendant engaged in unprotected

15 sexual intercourse with Faith.

16         Second, that he knew that he was infected with an

17 infectious venereal disease which is herpes at the time that

18 he had sexual intercourse with Faith.

19         Third, that he did not inform Faith that he had

20 herpes and get her consent to engage in sexual intercourse

21 with him in these circumstances before he engaged in sexual

22 intercourse with her.

23         The second is Racketeering Act 12B, which is

24 coercion or enticement and that alleges that the defendant

25 coerced or enticed Faith or purposes of engaging in illegal

Jury Charge                        4691

1    sexual activity.

2           The indictment says in relevant part that:

3           On or about May 18th of 2017, in the Eastern

4    District of New York and elsewhere, the defendant knowingly

5    and intentionally persuaded, induced, enticed, and coerced

6    Faith to travel in interstate commerce to engage in sexual

7    activity for which a person can be charged with a criminal

8    offense.

9           Those are the same New York laws, violations of the

10   Penal Law and the Public Health Law.

11          And in that Kelly engaged in unprotected sexual

12   intercourse with Faith without first informing her that he

13   had contracted herpes in getting her consent to sexual

14   intercourse in these circumstances in violation of Title 18,

15   United States Code, Sections 2422(a) and 2.

16          The elements that the Government must prove are

17   that:

18          The defendant knowingly persuaded and induced,

19   enticed or coerced Faith to travel in interstate commerce has

20   the indictment alleges.

21          That she did travel in interstate commerce.

22          And that the defendant acted with the intent that

23   he engaged in illegal sexual activity with her.

24          I've already instructed you on all of the elements

25   of these -- of this particular racketeering act.  As I said,

1  the indictment provides that he violated two different state

2  laws either or both is enough to find that his conduct

3  amounted to illegal sexual activity, but again, you have to

4  be unanimous as to which law was violated.

5          Racketeering Act Thirteen is the forced labor of

6  Faith.  And that count alleges that on January 13, 2018,

7  within the Central District of California and elsewhere, the

8  defendant, and others, knowingly and intentionally obtained

9  Faith's labor and services by means of force, threats of

10  force, physical restraint, and threats of physical restraint

11  to Faith or another person by means of serious harm and

12  threats of serious harm to Faith or to another person and by

13  means of a scheme, plan, and pattern intended to cause Faith

14  to believe that if she did not perform labor and services,

15  she would suffer serious harm and physical restraint and a

16  combination of such means in violation of Title 18, United

17  States Code, Sections 1589(a) and 2.

18          Here's what the Government has to prove:

19          That the defendant obtained the labor services of

20  Faith.

21          And that he did so through one of the following

22  prohibited means:

23          Through threats of serious harm to or physical

24  restraint against Faith or any other person, and through a

25  scheme, plan, or pattern intended to cause Faith to believe

1   that not performing this service or labor would result in

2   serious harm to or physical restraint against Faith or any

3   other person and that the defendant acted knowingly.

4           I've already given you the law that applies to

5   forced labor and that applies here.

6           We're on the last racketeering act.

7           This one alleges -- this one has two parts, also.

8   Two violations of the Mann Act.  One transportation, and the

9   other coercion and enticement.  Like some of those other

10  racketeering acts, there are two parts.  You'll render

11  separate verdicts on each one.  If you find that the

12  defendant committed either or both of these two crimes, you

13  must find that the Government has proven Racketeering Act

14  Fourteen.

15          14A alleges that the defendant transported Faith

16  for the purposes of engaging in illegal sexual activity and

17  the indictment reads in relevant part:

18          On February 2, 2018, in the Eastern District of New

19  York and elsewhere, the defendant, together with others,

20  knowingly and intentionally transported Faith in interstate

21  commerce with the intent that she engage in sexual activity

22  for which a person can be charged with a criminal offense.

23  Those are those two violations of New York law.

24          In that Kelly engaged in unprotected sexual

25  intercourse with Faith without first informing her that he

1  had contracted herpes and obtaining her consent to sexual

2  intercourse under these circumstances.

3          Like that other count, the Government has to prove

4  that the defendant knowingly transported or caused the

5  transportation of Faith in interstate commerce, and that he

6  transported her with the intent that he would engage in

7  sexual activity with her and that for that sexual activity, a

8  person can be charged with a crime.

9          Same instructions as the last one that I gave you.

10 Those apply here.  Just bear in mind that either or both is

11 sufficient to find that the defendant's conduct amounted to

12 illegal sexual activity, but you have to be unanimous about

13 which law was violated.

14         The next, Racketeering Act 14B alleges that the

15 defendant coerced or enticed Faith for the purpose he engaged

16 in illegal sexual activity.

17         The indictment reads in pertinent part:

18         That on February 2, 2018, within the Eastern

19 District of New York and elsewhere, the defendant, together

20 with others, knowingly and intentionally persuaded, induced,

21 enticed, and coerced Faith to travel in interstate commerce

22 to engage in sexual activity for which a person can be

23 charged with a criminal offense.  That's those two violations

24 of New York law.  And in that Kelly engaged in unprotected

25 sexual intercourse with Faith without first informing her

Jury Charge                          4695

1   that he had contracted herpes, and obtaining her consent to

2   having sexual intercourse in these circumstances.

3           In order to prove the defendant guilty of

4   persuading or inducing or enticing or coercing Faith to

5   travel for the purpose of engaging in illegal sexual

6   activity, the Government must prove beyond a reasonable

7   doubt.

8           First, that the defendant knowingly persuaded,

9   induced, enticed or coerced Faith to travel in interstate

10  commerce as the indictment alleges that did travel in

11  interstate commerce, and that the defendant acted with the

12  intent that he would engage in illegal sexual activity with

13  Faith.

14          All of those instructions that I've given you

15  before apply.  And, again, that there are two different state

16  laws, you just have to either or both is enough, but you have

17  to be unanimous as to which law was violated.

18          All right.  Now, the next -- the rest of the counts

19  are all Mann Act counts.

20          I want to see the counsel at the side for just a

21  minute, please, with the Court reporter.

22          (Continued on the next page.)

23

24

25

Sidebar                                    4696

1          (Sidebar conference held on the record in the

2     presence of the Court and counsel, out of the hearing of the

3     jury.)

4               THE COURT:  As riveting as my presentation is, does

5     it require that I read every single one?

6               MS. GEDDES:  No.  I think you could simply say that

7     it's the exact same conduct except we don't have to prove any

8     enterprise or any of those other elements.  Just have to

9     prove the Mann Act violation which I've already explained it

10    you.

11              THE COURT:  Don't I have to give them dates?

12              MS. GEDDES:  Yes.  I think that you could say that

13    Count Two is the Mann Act violation charged in and I can tell

14    you to which racketeering act.

15              THE COURT:  I'm not trying to be lazy, I'm just,

16    you know, getting tired of hearing the sound of my own voice

17    I think I got it.

18              MR. SCHOLAR:  I think I agree.  I think you are

19    doing fine.

20              THE COURT:  Thanks.

21              (Sidebar discussion concludes.)

22              (Continued on the next page.)

23

24

25

1          (In open court.)

2          THE COURT:  All right.  The rest of these count I'm

3  going to summarize them.  I know you'd rather really hear me

4  read every single word, but I really have instructed you on

5  these before.  I don't mean for a minute to suggest that

6  they're not important, but I think you get the point.

7          So what I'm going to do is summarize some of them.

8          The Count Two is Mann Act Transportation.  This

9  relates to the transportation of Jane between September 15th

10  and October 2015.  It's just the same count that was under

11  racketeering act.

12          MS. GEDDES:  9A.

13          THE COURT:  9A.  And so, I'm not going to read that

14  again because I read it to you already.

15          I'm going to remind you that what the Government

16  has to prove, though, is that the defendant knowingly

17  transported or caused the transportation of Jane in

18  interstate commerce as the indictment alleges, and that he

19  transported Jane with the intent that he would engage in

20  sexual activity with her in that someone could be charged

21  with a criminal offense for that sexual activity.

22          Count Three is Mann Act Coercion or Enticement and

23  that relates to Jane and is racketeering act.

24          MS. GEDDES:  9B.

25          THE COURT:  9B.      (Continued on the next page.)

Charge of the Court                          4698

1    (Continuing.)

2          THE COURT:  And that is why I am not going to read

3    that charge again, because I read it already.

4          Again, I am just going to remind you what the

5    Government has to prove beyond a reasonable doubt.

6          That the defendant knowingly persuaded and induced,

7    enticed or coerced Jane to travel in interstate commerce, that

8    she traveled in interstate commerce, and that he acted with

9    the intent that the defendant would engage in illegal sexual

10   activity with Jane.

11         Count Four relates to Jane again.  This is Mann Act

12   coercion or enticement, and this is in connection with

13   Racketeering Act --

14         MS. GEDDES:  9C.

15         THE COURT:  -- 9C.

16         MS. GEDDES:  Yes.

17         THE COURT:  Again, I have read that to you.  I am

18   reminding you again what the Government has to prove beyond a

19   reasonable doubt.

20         That the defendant used a facility of interstate

21   commerce, that he knowingly persuaded or induced or enticed or

22   coerced Jane to engage in sexual activity, that this sexual

23   activity would violate California law, that Jane was less than

24   18 at the time of the acts alleged in the indictment.

25         Count Five is also related to Jane, and it's

Charge of the Court                    4699

1    Racketeering Act --

2              MS. GEDDES:  9D.

3              THE COURT:  -- 9D.  Again, I read that to you

4    already, and I believe I have already told you what the

5    Government has to prove.

6              So, I am not going to repeat that unless either of

7    the parties wants me to do that, and I don't see anybody

8    jumping up and asking me to do that.

9              All right, Count Six relates to Racketeering Act --

10             MS. GEDDES:  12A.

11             THE COURT:  -- 12A, and I have already instructed

12   you on that and the language is just the same.

13             Count Seven relates to 14 -- no?

14             MS. GEDDES:  12B.

15             THE COURT:  12B, sorry.  That has to do with Faith.

16   Again, I have read that to you.  I am not going to do that

17   again.

18             Count Eight also has to do with Faith, that is in

19   connection with 12?

20             MS. GEDDES:  14A.

21             THE COURT:  14A.

22             Okay, again, I think I just read that to you a few

23   minutes ago.  I am not going to do that again.

24             Count Nine is also Mann Act coercion or enticement,

25   it has to do with Faith and it's Racketeering Act --

Charge of the Court                    4700

1          MS. GEDDES:  14B.

2          THE COURT:  -- 14B.

3          I am not going to read it again because I read it

4  just moments ago.  And so, that is all of the counts of the

5  indictment.  Nine counts to the indictment.  The Racketeering

6  and all those related acts, all those Racketeering Acts, and

7  then the Mann Act counts.

8          So, I am coming down to the final part of the

9  instructions.

10          In a few minutes, you are going to begin your

11  deliberations, and so what I want to talk to you about is some

12  general rules about the process of your deliberations.  And I

13  just want you to keep in mind that nothing that I have said

14  during the course of the instructions or at any point during

15  the trial is meant to suggest in any way to you what I think

16  your verdict ought to be.  That is entirely up to you.

17          Now, in order for your deliberations to proceed in

18  an orderly way, you have to have a foreperson.  It is the

19  tradition in this district that Juror Number 1 acts as the

20  foreperson, but if when you begin your deliberation you decide

21  that you want someone else to be the foreperson, you can do

22  that.  What the foreperson does is sign all of the

23  communications with the Court and hands them to the deputy

24  marshal during your deliberations.

25          The foreperson's vote does not have any greater

SAM      OCR      RMR      CRR      RPR

Charge of the Court                    4701

1    weight than that of any other juror.

2           So, let's talk about deliberations for a few

3    moments.  Your duty is to reach a fair conclusion from the law

4    as I have given it to you and the evidence that was presented

5    in this case.  This duty is important.  When you are in the

6    jury room, listen to one another, discuss the evidence and the

7    issues of the case amongst yourselves.  It is the duty of each

8    one of you as jurors to consult with one another and to

9    deliberate with a view toward reaching a verdict, if you can

10   do that without violating your individual judgment.  No one

11   should surrender a conscientious conviction of what the truth

12   is and what the weight and effect of the evidence is.  Each

13   juror must decide the case for himself or herself, and not

14   merely give into the conclusion of your fellow jurors.

15          You should examine the issues and the evidence

16   before you with candor and with frankness, and with deference

17   to and respect and regard for the opinions of your fellow

18   jurors.

19          You should never hesitate to re-examine your

20   opinions or reconsider your position from time to time, and to

21   change them if you have become convinced that you are wrong,

22   but don't surrender an honest feeling or belief or conviction

23   about the weight and effect of the evidence just so that you

24   can reach a verdict.

25          To reach a verdict you must be unanimous.  That

Charge of the Court                    4702

1   means everybody has to agree.

2        It is critically important that you do not

3   communicate with anybody outside of the jury room about your

4   deliberations or about anything related to this case.

5   Obviously, you can't use any electronic device or media like a

6   telephone or a cell phone, anything like that, a smart watch,

7   any kind of communication service.  You just cannot

8   communicate with anyone in any way, shape or form about any

9   information having to do with this case or to conduct any

10  research or investigate the case.  And that rule, as I said,

11  applies until after I accept your verdict.

12       The only exception to the communication rule is if

13  you have a question for me.  And so, if you do have one or it

14  becomes necessary for some reason to communicate with me, what

15  you will do is send a note through the deputy marshal that

16  your foreperson signs.  No one in the jury should try to

17  communicate with me except by a signed note, and I will never

18  communicate with any member of the jury on any subject having

19  to do with the merits of the case other than in writing and

20  here in open court.

21       If, during the course of your deliberations, you

22  have questions about the law or if you want some additional

23  explanation, you can send me a note to that effect.

24       You will have all of the exhibits that were admitted

25  at trial, and you will also have access to the transcripts, if

Charge of the Court                4703

1    you want the transcripts of the testimony of any witness.

2         The Government must prove the defendant's guilt

3    beyond a reasonable doubt as we have already discussed.  If

4    you find that the Government has met this burden, then your

5    verdict should be guilty.  If the Government does not meet its

6    burden, your verdict should be not guilty.  To reach a

7    verdict, as I said, you have to be unanimous.

8         I have prepared a verdict form that includes the

9    counts that are listed in the indictment.  Beneath each count

10   is a space that's marked "guilty" and another one that is

11   marked "not guilty."  The form is not meant to suggest how to

12   deliberate or decide the facts of the case.  Your verdict as

13   to each count has to be recorded on the foreperson's verdict

14   form, and the foreperson should use a check mark in the

15   appropriate space, whether it's "guilty" or "not guilty," for

16   each count of the indictment.  The foreperson should also put

17   her initials or his initials and the date beside each mark on

18   the verdict form.  Again, this has to reflect your unanimous

19   verdict as to each count and each of the questions listed

20   under Count One.

21        So, if you find the defendant guilty of Count One,

22   you also have to answer the fourteen questions that are listed

23   below that count.  So, that's on the form.

24        So, I think I said earlier that each juror is

25   entitled to his opinion or her opinion, but you should consult

Charge of the Court                    4704

1   with one another and reach an agreement that is based only on

2   the evidence, if you can do that without contradicting your

3   individual judgment.  Each of you must decide the case for

4   yourselves after consideration with your fellow jurors.  If

5   after carefully considering all of the evidence and the

6   arguments of your fellow jurors, your view is different from

7   your fellow jurors, you should not change your opinion just

8   because you are outnumbered or because it's late.  Your final

9   vote must reflect your conviction as to how the issues should

10  be decided.

11          When you have reached a verdict, just send me a note

12  that's signed by your foreperson that says that you have

13  reached a verdict.  Do not write down what the verdict is.

14  You should never give a numerical count of where the jury

15  stands in its deliberations in any communication with the

16  Court.

17          The Government and defendant and the Court rely upon

18  each one of you to give this case your full and conscientious

19  attention and consideration.  When you do that, you carry out

20  your oaths as jurors and you render a true and just verdict.

21          I am just going to ask you to wait for a few

22  minutes, I want to discuss with the lawyers whether there is

23  anything further that we need to discuss.

24          (Sidebar held outside the hearing of the jury.)

25          (Continued on the following page.)

```
                           Sidebar                    4705
```

```
 1              (The following sidebar took place outside the
 2     hearing of the jury.)
 3              MS. CRUZ MELENDEZ:  So, in Racketeering Act One, it
 4     says, "A mere offer or promise with the requisite intent is
 5     sufficient," and I think you inadvertently put the word "not."
 6     Sorry, we tried to get your attention.
 7              THE COURT:  Is sufficient, okay.  Oh, okay.
 8              MS. CRUZ MELENDEZ:  On page 43, when you were
 9     reading the second element, you said "the defendant."
10              THE COURT:  Second element?
11              MS. CRUZ MELENDEZ:  Yes, so where it says, "The
12     second element that the Government must prove."
13              On page 62, when you were reading the fourth element
14     that the Government must prove beyond a reasonable doubt, you
15     said instead of saying that Jane was less than 18 years old,
16     you inadvertently left out "less than"; you said the
17     Government must prove Jane was 18 years old.
18              THE COURT:  What page?
19              MS. CRUZ MELENDEZ:  That's 62.
20              THE COURT:  Okay.
21              MS. CRUZ MELENDEZ:  We need to find a way, something
22     says Jane, when it should have said Faith.
23              THE LAW CLERK:  I changed it.
24              MS. CRUZ MELENDEZ:  On page 65, when we were
25     discussing Racketeering Act 12, this was the second time where
```

```
                         Sidebar                    4706
```

1   you said you must find that the defendant has proven, instead

2   of the Government.

3            THE COURT:  Okay.

4            MS. CRUZ MELENDEZ:  And yes, the only other change

5   is, we had in 69 --

6            THE COURT:  Faith.

7            MS. CRUZ MELENDEZ:  -- Faith on page 69, it should

8   refer to Faith.

9            THE COURT:  What did I say, Jane?

10           THE LAW CLERK:  You said Faith, but I changed it in

11  the document as well.

12           THE COURT:  Sorry, Mr. Scholar.

13           MR. SCHOLAR:  On page 83, I might have missed it,

14  you read the "as we talked about, each of you is entitled to

15  your opinion"?

16           THE COURT:  Yes.

17           MR. SCHOLAR:  Okay, then I missed that one.

18           And Exhibits H and I, they are the CDs of Jane, but

19  they are video.  And so, if they wanted to hear it, they have

20  to come into the courtroom.

21           THE COURT:  I think there is a method, they are in

22  another --

23           MR. SCHOLAR:  They can be in another room.

24           THE COURT:  Let me just ask Donna.

25           Can I deal with that after I deal with this?

```
                        Sidebar                        4707
```

1           MR. SCHOLAR:  Yes, I just wanted to bring it to your

2    attention.

3           THE COURT:  Just give me the page numbers.  34.

4           What else?

5           MS. CRUZ MELENDEZ:  34, 43.

6           THE COURT:  Okay.

7           MS. CRUZ MELENDEZ:  62 and 65.

8           THE COURT:  Okay, great.  All right, let me fix

9    this.  But it is written correctly, okay.

10          MR. SCHOLAR:  Yes.

11          THE COURT:  All right.

12          (Sidebar concluded.)

13

14          (Continued on the following page.)

15

16

17

18

19

20

21

22

23

24

25

Charge of the Court                    4708

1           (In open court - jury present.)

2           THE COURT:  So, this is just for you.  I think I

3    misspoke a few times, shocking, I know, in a couple parts of

4    the instructions.

5           So, when I was talking about Racketeering Act One, I

6    misspoke and I said something was not sufficient and it is

7    actually the opposite.  So, we were talking about "a mere

8    offer or promise with requisite intent is sufficient to

9    constitute bribery under Illinois law."  I said it wasn't, and

10   I just misspoke.  It is written correctly in the instructions.

11          I misspoke again when I was talking about elements

12   that the Government must prove, and this was with respect to

13   another one of the elements, and I said that defendant had to

14   prove beyond a reasonable doubt.  It is the Government that

15   has to prove beyond a reasonable doubt.  Again, it's written

16   correctly in the charge.

17          Then with respect to Racketeering Act 9C, the fourth

18   element that the Government has to prove beyond a reasonable

19   doubt --

20          Oh, sorry about that.

21          (Pause in the proceedings.)

22          THE COURT:  Almost done, sorry about that.

23          What it should read is that the Government must

24   prove beyond a reasonable doubt that Jane was less than 18.  I

25   think I said that she was 18.  Again, written correctly in the

SAM     OCR     RMR     CRR     RPR

Charge of the Court                    4709

1   instructions.

2            Racketeering Act Twelve, I said the defendant when I

3   should have said the Government.  So, what it should read:

4            If you find that the defendant committed either or

5   both of these two crimes, you must find that the Government

6   has proved Racketeering Act Twelve.

7            Was there anything else?  I think that was it.

8            All right, so are we good?

9            All right.

10           So, ladies and gentlemen, let's first swear our

11  deputy marshal in.

12           THE COURTROOM DEPUTY:  Would the marshal please come

13  forward and raise your right hand.

14           Do you solemnly swear or affirm that you will keep

15  the jurors together in the jury room, that you shall allow no

16  person to speak to them, nor shall you speak to them, without

17  direction of this Court?

18           US MARSHAL:  Yes, I do.

19           THE COURTROOM DEPUTY:  Thank you.

20           (Deputy marshal sworn.)

21           THE COURT:  All right, I am going to instruct our 12

22  regular jurors to go with the deputy marshal and you may begin

23  your deliberation.

24           THE COURTROOM DEPUTY:  All rise.

25           THE COURT:  Let's ask the alternates to stay here

Proceedings                                         4710

1    for just a moment.

2                (The jury exits to begin deliberations at 1:40 p.m.)

3                THE COURTROOM DEPUTY:  You may be seated.

4                THE COURT:  Okay.  Our alternate jurors are going to

5    be taken to a separate room.

6                And who is going to take them?

7                THE COURTROOM DEPUTY:  I'll take them.

8                THE COURT:  You take them.  Okay, so I am going to

9    ask you to go with Ms. Greene.  All right.

10                And also, folks, I am just going to remind you,

11    don't talk about the case and enjoy your lunch.

12                (The alternate jurors left the courtroom at

13    1:41 p.m.)

14                THE COURT:  Okay.  I actually have another matter

15    that I have to attend to.

16                I just want to confirm that the exhibits are all in

17    shape to go back to the jurors?

18                MS. GEDDES:  I believe they are now.  Our paralegals

19    were just finalizing that upstairs.

20                THE COURT:  Okay, and that includes the defense

21    exhibits.

22                There was a question about the extent to which the

23    jury is going to be able to play that -- what is it,

24    Mr. Scholar?

25                MR. SCHOLAR:  It was H and I.  H and I are video

SAM      OCR      RMR      CRR      RPR

Proceedings                                4711

1   disks, but the audio was admitted.  So, I guess if they want

2   to hear it, which I don't think they will, but if they want to

3   hear it, they have to come back into the courtroom, I guess.

4           MS. GEDDES:  Okay.

5           THE COURT:  Yes, I think I said this before, I am

6   generally of the view that when jurors are deliberating they

7   should be able to look at evidence without having to come back

8   in.

9           Is there a way to just give them the audio?

10          MS. GEDDES:  Can you convert it to audio?

11          MR. SCHOLAR:  We can try.  We can try and do that

12  during the lunch break.

13          THE COURT:  All right.  And we will send a copy of

14  the charge back.  I am sure everybody has got phone numbers

15  and everything so we can contact you if we need to.

16          Anything else that we have to do?

17          MS. GEDDES:  I don't believe so, and we'll just

18  coordinate with Ms. Greene to get those exhibits back to them.

19          THE COURT:  I am just going to be unavailable for a

20  little bit, but you can reach me if you need it.

21          Okay.  Let's take the defendant out.

22          (Defendant exited the courtroom.)

23          (Judge ANN M. DONNELLY exited the courtroom.)

24

25          (Luncheon recess taken - continued on next page.)

```
                        Proceedings                    4712
```

1    (Continuing.)

2              (In open court - jury not present.)

3              THE COURTROOM DEPUTY:  All rise.

4              (Judge ANN M. DONNELLY entered the courtroom.)

5              THE COURT:  Hi, everybody can sit down.

6              (Defendant entered the courtroom.)

7              THE COURT:  All right, my first question is have the

8    exhibits gone back to the jury?  Why has that not happened?

9              Are they ready to go?

10             MS. GEDDES:  Yes.

11             THE COURT:  All right, well, we'll send those back

12   because we have received a note requesting exhibits, and

13   Ms. Greene is giving everybody a copy of the note.

14             (Court's Exhibit 3 was received in evidence.)

15             THE COURT:  So, they've requested exhibits, which

16   they'll get; but as you can see on your copy, the floor plan

17   of the Chicago Trax Larrabee studio; the stipulation for Jerie

18   Ortez and Charity Torres.  And then 422, which is the letter

19   to Jane's brother.  They also want the full Sonja transcript.

20             And so, I think what we'll first do is just get them

21   back all of those exhibits.

22             The other thing I should say is that the, now I

23   can't remember which is which, the Court's instructions and

24   the verdict sheet went back.  The Court's instructions are

25   Court Exhibit Number 1 and the verdict sheet is Court Exhibit

Proceedings                                          4713

1   Number 2.

2              (Court's Exhibits 1 and 2 were received in

3   evidence.)

4              THE COURT:  And so, I guess with respect to the

5   Sonja transcript, we just have to take out all the objections

6   and extraneous things.

7              MS. CRUZ MELENDEZ:  We've started the process.

8              THE COURT:  Okay, great.

9              What are you going to do then, just copy it with

10  redacted portions?

11             All right.

12             Has the defense undertaken, I mean are you looking

13  at it, too?

14             MR. CANNICK:  No, we just saw the note, so we're

15  just starting it now.

16             THE COURT:  Okay.

17             MS. SHIHATA:  I think we have a version of the

18  transcript with proposed redactions.  So, we'll print that

19  out.  We can give that or e-mail it to defense counsel, they

20  can take a look.

21             THE COURT:  That was fast.

22             MS. SHIHATA:  We've been doing it for everybody

23  prior to getting any notes.

24             THE COURT:  All right.

25             Okay, so, if you've got that ready to go.

Proceedings                                    4714

1          MS. SHIHATA:  Do you want it by printing or e-mail?

2          MR. SCHOLAR:  You can send it by e-mail, that's

3     fine.

4          THE COURT:  And then all you have to review it for

5     is to make sure, just to double check really, and then we can

6     send it back.

7          But why don't we right now take the exhibits back to

8     the jurors.

9          MS. GEDDES:  Yes.  Did you guys look through the

10    exhibit list?

11         THE COURT:  This should have been done.  You haven't

12    looked through the exhibit list?

13         The jury has been deliberating for two hours, let's

14    get this back here.

15         Is there some dispute?

16         Okay, I am not hearing anything, so let's take this

17    back.

18         Is there a problem?

19         MR. SCHOLAR:  No, there's no problem.

20         THE COURT:  No problem, okay.

21         (Pause.)

22         THE COURT:  All right, I am assuming there is not

23    going to be any problem here.  I assume you can call me if you

24    need me, but once you've finished it, give it to Ms. Greene

25    and she'll send it back.

Proceedings                                      4715

1              MR. CANNICK:  Your Honor, at the end of the day, do

2    you have a cut-off time or....

3              THE COURT:  Well, probably 5:30.

4              MR. CANNICK:  Okay.

5              THE COURT:  Yes, I mean I want to stay just as much

6    as you do.

7              MR. CANNICK:  Yes, right.

8              THE COURT:  Okay, thanks everybody.

9              MR. CANNICK:  And you want us back here, in the

10   event we don't get another note, by 5:30?

11             THE COURT:  Yes, you are close by, I'm assuming?

12             MR. CANNICK:  Yes.  I'm not going to go back to

13   Westchester.

14             THE COURT:  All right.

15             (Judge ANN M. DONNELLY exited the courtroom.)

16             (Defendant exited the courtroom.)

17             (Recess taken.)

18             (In open court - jury not present.)

19             THE COURTROOM DEPUTY:  All rise.

20             (Judge ANN M. DONNELLY entered the courtroom.)

21             THE COURT:  Hi, everybody can have a seat.

22             Could I just see the parties at the time for a

23   second off the record?

24             (Sidebar held with the Court and counsel only.)

25             THE COURT:  Okay, we have a note from the jury.  It

Proceedings                                          4716

1   says:

2           From foreman juror to judge, subject, re verdict.

3   We the jurors have not reached a verdict as yet.

4           I think this means they want to go home.

5           It's signed by Juror Number 1, the foreperson.  This

6   is going to be Court Exhibit Number 4.

7           (Court's Exhibit 4 was received in evidence.)

8           THE COURT:  So, I am going to bring in the jurors

9   and excuse them for the weekend.

10          (Pause.)

11          THE COURTROOM DEPUTY:  All rise.

12          (The jury enters the courtroom at 5:33 p.m..)

13          THE COURTROOM DEPUTY:  You may be seated.

14          THE COURT:  Okay, jurors, good afternoon.

15          THE JURORS:  (Collectively) Good afternoon.

16          THE COURT:  I've received your two notes.  The first

17  note was requesting some evidence and some testimony, and I am

18  told you got that.

19          The most recent note says:  We, the jurors, have not

20  yet reached a verdict as yet.

21          And so, I take that to mean that you'd like to go

22  home.  So, I am going to excuse you for the weekend.

23          All those conditions that I have expressed to you

24  over and over again continue to apply.  Please do not talk

25  about the case at all to anyone.  Do not read any news

Proceedings                                    4717

1    accounts of the case at all.  And don't talk to one another

2    about the case.  You can only deliberate when all twelve of

3    you together are alone in the room with no one there.  Do not

4    continue your conversations about the case with your fellow

5    jurors outside of that jury room.

6              So, I hope you have a restful and wonderful weekend.

7    We will resume your deliberations, again, on Monday morning.

8              Thank you so much.

9              THE COURTROOM DEPUTY:  All rise.

10             (The jury was excused for the weekend at 5:35 p.m.)

11             THE COURTROOM DEPUTY:  You may be seated.

12             THE COURT:  We also just have to bring the

13   alternates in.

14             THE COURTROOM DEPUTY:  All rise.

15             (The alternate jurors entered the courtroom at 5:36

16   p.m.)

17             THE COURTROOM DEPUTY:  You may be seated.  Just sit

18   where you want.

19             THE COURT:  All right, Alternate Jurors, the jury

20   has finished its deliberations for the day.  I just want to

21   tell you how much I appreciate your continued attention and

22   patience, but all of those conditions that I placed on you are

23   still in place.

24             So, over the weekend don't look anything up about

25   the case, don't talk about the case.  Obviously, don't talk to

Proceedings                                    4718

1   the deliberating jury about the case, and don't listen to any

2   news reports or look anything up on the internet or anything

3   like that.  But I do want you to have a nice restful weekend,

4   and so I will see you on Monday morning, 9:30.

5            Thanks so much.

6            THE COURTROOM DEPUTY:  All rise.

7            (The alternate jurors were excused for the weekend

8   at 5:37 p.m.)

9            THE COURT:  All right, everybody can have a seat.

10           Anything before we break for the weekend?

11           MR. SCHOLAR:  Your Honor, do you want us to come

12  back here at 9:30 on Monday or just be in the area?

13           THE COURT:  I think it's enough that you are just

14  close by.  I mean there is no reason.  I am sure you will miss

15  it, but there is no reason to come here unless there is some

16  kind of communication, just as long as we have a way to reach

17  everybody.  Okay?

18           MR. SCHOLAR:  Thank you.

19           THE COURT:  All right, thanks so much.

20           (Defendant exited the courtroom.)

21           THE COURT:  Thank you to the marshals, also.

22           (Judge ANN M. DONNELLY exited the courtroom.)

23

24           (Proceedings adjourned to Monday, September 27, 2021

25  at 9:30 a.m.)

SAM      OCR      RMR      CRR      RPR

4719

1                              I N D E X

2

3                                                        PAGE

4

5    REBUTTAL SUMMATION - MS. SHIHATA:              4571

6

7    CHARGE OF THE COURT                            4599

8

9

10

11

12                            E X H I B I T S

13

14

15     Court's Exhibit 3                            4712

16

17     Court's Exhibits 1 and 2                     4713

18

19     Court's Exhibit 4                            4716

20

21

22

23

24

25