UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                             :

UNITED STATES OF AMERICA,         :

                                                             :          19 Cr 286 (AMD)

-vs-                                                   :

ROBERT SYLVESTER KELLY,          :
      also known as "R. Kelly,"          :

                      Defendant.         :
------------------------------------------------------X

# DEFENDANT ROBERT KELLY'S MEMORANDUM OF LAW IN SUPPORT OF HIS <u>SUPPLEMENTAL MOTION FOR A NEW TRIAL</u>

 

JENNIFER BONJEAN
Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY 10022
718-875-1850

*Attorney for Robert Kelly*

# INTRODUCTION

Defendant's trial was engulfed by irrelevant and excessive bad character evidence that added little to the jury's assessment of whether Defendant committed the charged offenses. Indeed, the six-week trial was comprised overwhelmingly of uncharged bad act evidence that served no legitimate evidentiary purpose. With the court's blessing, the government subjected the jury to a mass of repugnant conduct for the primary purpose of depicting Defendant as contemptable, sexual deviant. The government defended the introduction of the evidence as relevant to the "means and methods of the enterprise" with nary a word of Rule 403 considerations. For reasons argued in Defendant's Rule 29 motion, the government's evidence of an "enterprise" was insufficient as a matter of law. This case was not about an enterprise; it was about the conduct of one man who the government sought to punish for his alleged history of mistreating women. As such, the mountain of bad act evidence offered in this prosecution was nothing more than inadmissible propensity evidence. Because Defendant was forced to defend against dozens of uncharged claims of abusive and sexual misbehavior – much of it lawful albeit unpalatable for some – Defendant was stripped of the presumption of innocence and denied a fair trial.

But that is not all, Defendant was denied effective assistance of counsel when his attorneys failed to file adequate pre-trial objections to the introduction of the mass of overly prejudicial propensity evidence and routinely failed to lodge timely objections to some (although not all) of the damning bad-act evidence.

In sum, Defendant's trial was little more than a re-enactment of the one-sided docuseries "Surviving R. Kelly" which several of the jurors had viewed before stepping into the courtroom. It is a wonder that the government did not simply offer the docuseries into evidence. With this

backdrop, Defendant was powerless to defend against the charged offenses – for which there were viable, even winning defenses. Defendant was denied his constitutional guarantee of a fair trial where the jury heard excessive, minimally probative, evidence of contemptible conduct that was introduced solely to inflame the passions of the jury and punish the Defendant for decades of unchecked bad behavior.

## **RELEVANT FACTS**

In the two months preceding the start of Defendant's trial, his defense team was focused on fighting one another and preoccupied with litigating a *Curcio* hearing on account of one his attorney's disabling conflict of interest. Not surprisingly, Defendant's trial team wasted valuable time and resources focused on this side circus rather that preparing a strategy for defending the case.

At the Defendant's request, this Court granted an extension for the filing of motions *in limine* until July 23, 2021. [Dkt. No. 131] On July 23, 2021, the government filed a whopping 55-page motion[1] seeking to admit a heap of prior bad act evidence. [Dkt. No. 133] Defense counsel filed no motions *in limine*. Incredibly, defense counsel failed to preclude *any* uncharged bad act evidence that was produced as part of the government's 3500 materials. On July 30, 2021, defense counsel filed a written objection to the government's motion *in limine* regarding the introduction of prior bad act evidence largely on "timeliness" grounds. [Dkt. No. 145] The response contained a general objection to the evidence as untimely with no meaningful relevancy objections or Rule 403 analysis. Inexplicably, defense counsel did not seek a continuance of the trial to investigate these alleged "surprise" witnesses but merely asked the court to strike them.

---

[1] This motion was in addition to a separate 39-page motion *in limine.* [Dkt. No. 135]

At a final pretrial hearing, defense counsel conceded that he did, in fact, know who the other bad act witnesses were and was familiar with their allegations. Defense counsel conceded that he was in possession of all 3500 material and had received supplemental 3500 materials from government.

On August 6, 2021, defense counsel filed a 2-page supplemental opposition to the government's motion to admit other bad act evidence. Throughout trial, defense counsel filed a handful of letters objecting to the introduction of certain bad act evidence; those objections were largely overruled. The record does not seem to reflect objections to much of the uncharged bad act evidence offered by the government.

## ARGUMENT

**Defendant Was Denied a Fair Trial When His Jury Was Swamped with a Mass of Minimally Probative, Cumulative, and Unduly Prejudicial Other Bad Act Evidence – Some of Which Was Admitted Without Objection in Violation of Defendant's Sixth Amendment Guarantee of Effective Assistance of Counsel.**

With virtually no limitation, this Court permitted the prosecution to inundate the jury with excessive bad act evidence, mostly under the theory that the evidence was relevant to the "means and method" of the enterprise. The "means and method" justification for the introduction of copious amounts of bad act evidence is gravely flawed because the government's theory of an enterprise is flawed. Where the enterprise consisted of nothing more than the purported sexual misbehavior of the Defendant, unconnected to the activities of a discrete enterprise, the "means and methods" relevancy justification is meaningless.

As argued at length in Defendant's Rule 29 motion, the government failed to prove that Defendant was distinct from the so-called enterprise. No matter how much repellent evidence of

sexual indiscretions or abusive behavior the government accumulated against the Defendant, the fact remains that it was the Defendant, and the Defendant alone, who engaged in those affairs wholly disconnected to the affairs of a distinct enterprise. By characterizing Defendant's purported decades-long history of abusive conduct toward women as an enterprise, the government not only avoided statutes of limitations but was free to introduce *any* unkind or abusive act (of a sexual or non-sexual nature) as evidence of the enterprise, conveniently avoiding the rule against the admission of propensity evidence and the limitations set out in Fed. R. Evid. 404(b).

Notwithstanding, this Court was still obligated to conduct a meaningful Rule 403 analysis which it failed to do. Rule 403 authorizes the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The United States Supreme Court held in *Old Chief* that "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offenses charged. *Old Chief v. United States,* 519 U.S. 172, 180 (1997). The Committee Notes to Rule 403 explain, "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. R. Evid. 403. As *Old Chief* observed:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, but it simply closes the whole matter of character, disposition, and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The

4

> inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much crime with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that is disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice. *Michelson v. United States,* 335 U.S. 469, 475-76 (1948).

Probative value is also informed by the availability of alternative means to present similar evidence. Specifically, the Supreme Court has advised that the "Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives." *Old Chief,* 519 U.S. at 184.

The district court is afforded wide discretion to exclude evidence that is, on balance, unduly prejudicial. *Taveras,* 424 F. Supp. 446 (E.D.N.Y. 2006). "So long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational. *Id*.

As set out below, this Court did not conscientiously balance the probative value of certain proffered government evidence that carried an extraordinary risk of prejudice. In some instances, trial counsel failed to object to the introduction of such evidence, rendering counsels' performance objectively unreasonable.

### A. Excessive STD Evidence

The government charged the Defendant with committing numerous racketeering acts in the states of California and New York by knowingly exposing Jane and Faith to herpes. This Court repeatedly noted that under its interpretation of the statutes, the government was not required to show that Defendant transmitted herpes to Jane and Faith; mere exposure was sufficient.

As set forth in his Rule 29 motion, Defendant quarrels with this Court's interpretation of the statute, but assuming arguendo the Court is correct, there is little justification for allowing massive amounts of evidence that Defendant purportedly spent decades transmitting herpes to numerous women. Through Defendant's physician, the government presented evidence that Defendant had herpes when he was sexually active with Jane and Faith; that he knew he had herpes during the relevant time period; and that he was treating his condition with a regimen of Valtrex. Both women testified that they had unprotected sex with Defendant and that Defendant did not disclose that he suffered from herpes. This evidence went unrefuted. Accordingly, any additional evidence related to Defendant's herpes diagnosis and transmission of herpes to other women was unnecessary, cumulative, and unduly prejudicial – regardless of relevance.

Notwithstanding, the prosecution admitted excessive evidence about Defendant's failure to practice safe sex and elicited numerous allegations that Defendant transmitted herpes to other women. Specifically, the prosecution presented testimony that Defendant: (1) suffered from other sexually transmitted diseases *prior* to his sexual relationship with Jane and Faith; (2) had infected Jerhonda with herpes; (3) had infected Kate with herpes; and (4) had infected Anna with herpes. The prosecution offered copious amounts of documentary evidence regarding Defendant and his partner's herpes treatment and elicited graphic details from multiple witnesses about the symptoms of herpes. The governments uttered the word herpes hundreds of times throughout this trial.

This evidence was rank propensity evidence. For the reasons argued in Defendant's Rule 29 motions and above, the government simply failed to show that the so-called enterprise existed so that Defendant could expose women to herpes. As such, the herpes evidence is not justified

under the catch-all "means and methods" of the enterprise. It's just propensity evidence. Moreover, whatever probative value it had was significantly outweighed by its prejudicial effect.

Although trial counsel voiced an objection to the admission of Kate's testimony, the record does not clearly indicate that trial counsel objected to the excessive amount of herpes evidence from numerous other witnesses. This failure was objectively unreasonable since there is no possible trial strategy for failing to limit this type of other bad act evidence which was designed to breed contempt for the Defendant. Furthermore, there can be no confidence in this verdict of guilt where it was based largely prejudicial bad act evidence, including excessive "herpes" evidence.

### B. Evidence Concerning Sexual Relations With Aaliyah

The prosecution charged Defendant with one racketeering act of bribery for the sole purpose of getting evidence before the jury about his marriage and relationship with Aaliyah. Over defense counsel's objection, this Court permitted the prosecution to introduce testimony from Angela (Jane Doe No. 7) that she allegedly observed sexual interactions between Defendant and Aaliyah in 1991 on Defendant's tour bus. This Court erred by allowing this highly prejudicial testimony into evidence.

Angela's testimony was not relevant under the "means and methods" theory since it purportedly occurred pre-enterprise. This Court seemed to recognize this fact, but nonetheless concluded that Angela's testimony that she witnessed sexual interactions between Defendant and Aaliyah provided the motive for Defendant's racketeering act of bribery. Defendant respectfully disagrees on this point.

The prosecution presented testimony about Defendant's alleged motive for marrying Aaliyah through Demetrius Smith who expressly stated that Defendant told him that Aaliyah was

"in trouble" and "thought she was pregnant" (R. 703) Smith elaborated that Defendant believed that he needed to marry Aaliyah to protect himself from going to jail. (R. 706). Graphic testimony from a third-party about seeing Defendant and Aaliyah engaging in sexual relations added nothing more to the motive than Defendant's own admissions and the fact that he married Aaliyah. Whatever probative value Angela's testimony had on this point was substantially outweighed by its prejudicial effect. As such, it was error to allow Angela to testify about her alleged observations on the tour bus in 1991.

        **C.**        **Testimony from Addie, Alexis, Kate, Anna, Angela, Louis, and Alex**

This Court permitted the government to present a whopping seven additional witnesses to testify about graphic uncharged bad act evidence concerning dozens of sexual encounters with the Defendant. Apart from Angela's testimony which concerned sexual conduct pre-enterprise, the prosecution defended the introduction of this evidence under the catch-all "means and methods" of the enterprise theory. As argued above, where the Defendant, and the Defendant alone, was the enterprise, the "means and methods" justification for the introduction of copious amounts of bad act evidence is simply a free pass at introducing unlimited bad act evidence related to Defendant's alleged sexual misdeeds and abusive conduct. This circular logic returns us to the overarching defect in this prosecution, namely that it was a prosecution of Defendant's bad character and unpunished sexual misdeeds; it had nothing to with punishing or preventing the conduct of an enterprise.

Even if the evidence had some relevant purpose, the evidence was cumulative and unduly prejudicial. The jury was inundated with one jarring story after the next of unconventional graphic sex acts, including sexual conduct that many, perhaps most, would consider deviant

(*e.g.,* group sex, elements of BDSM[2], and coprophilia[3]) When considering this mass of prior bad act evidence cumulatively, its probative value is diminished exponentially as compared to its prejudicial effect. There can be little doubt that Defendant's jury was inclined to rectify past injustices by punishing Defendant even if it harbored doubt about his guilt on the charged offenses. The risk of prejudice and confusion was particularly acute where the trial devolved into a live rendition of the "Surviving R. Kelly" docuseries replete with viewings of sexually explicit videos.

Trial counsel objected to the introduction of testimony from Addie in a letter dated August 26, 2021, filed under seal, but the record does not seem to reflect that defense counsel specifically objected on 401 or 403 grounds to all of the aforementioned prior bad act evidence with the exception of Angela (but only as to her observations about Defendant's conduct with Aaliyah and not as to her own sexual experiences with Defendant). Trial counsel's performance was objectively substandard where it failed to adequately object to the introduction of this damning evidence. Trial counsel offered no written response to the prosecution's motion to allow this evidence and made no meaningful arguments at the final pretrial conference on these matters. Since trial counsel claimed that he was surprised by the proposed other bad act witnesses, he was in no position to make cogent and comprehensive arguments objecting to this unduly prejudicial evidence. Even when given another opportunity to file more fulsome objections, counsel failed to do so. No trial strategy justifies this objectively unreasonable performance. *Strickland v. Washington,* 466 U.S. 668, 690 (1984).

---

[2] Merriam – Webster Definition of BDSM: sexual activity involving such practices as the use of physical restraint, the granting or relinquishing of control, and the infliction of pain.
[3] Merriam – Webster Definition of coprophilia: marked interest in excrement; the use of feces or filth for sexual excitement

Inexplicably, trial counsel affirmatively introduced other prior bad act evidence. For example, trial counsel opened the door to testimony concerning Defendant's prior criminal prosecution in Illinois state court related to sexual exploitation of a child. No *sound* trial strategy justified telling the jury that Defendant had been previously prosecuted for crimes nearly identical to those charged in the instant case.

Defendant was prejudiced by his attorneys' failings where a reasonable probability exists that this Court would have excluded much of the prosecution's proposed bad act evidence if it had been challenged competently. There can be no confidence in this verdict of guilt where the jury was overwhelmed with bad character evidence.

### D.    Admission of Graphic Videos Depicting Sex Acts

Defendant was further denied a fair trial when this Court permitted the introduction of graphic pornography (and still photos) involving group sex between the Defendant, Alex, and Dominique – who did not even testify in these proceedings, and graphic videos involving Anna (including a video depicting coprophilia). Trial counsel objected to the introduction of these videos, albeit belatedly. Again, for the reasons set forth in counsel's letters to this Court, and for the reasons identified, *supra,* this evidence was not relevant to any "means and methods" of an enterprise since there was no enterprise. Whatever probative value it had, was substantially outweighed by its prejudicial effect. One cannot imagine a more prejudicial piece of evidence than these videos which added very little to the testimony the jurors heard.

### **CONCLUSION**

In light of the foregoing, Defendant's convictions must be vacated, and a new trial ordered.

Dated: March 21, 2022
      New York, New York

Respectfully submitted,

/s/JENNIFER BONJEAN
Jennifer Bonjean
Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY 10022
718-875-1850