UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                                :
UNITED STATES OF AMERICA,       :
                                               :      19 Cr 286 (AMD)

-vs-                                            :

ROBERT SYLVESTER KELLY,       :
    also known as "R. Kelly,"         :

                Defendant.     :
------------------------------------------------------X

**DEFENDANT ROBERT KELLY'S REPLY TO THE GOVERNMENT'S
<u>MEMORANDUM OF LAW IN OPPOSITION TO HIS MOTION FOR A NEW TRIAL</u>**

JENNIFER BONJEAN
Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY  10022
718-875-1850

*Attorney for Robert Kelly*

**I.        Defendant Was Denied Effective Assistance of Counsel Where His Trial Attorneys Failed to Conduct a Meaningful *Voir Dire* of Potential Jurors and Challenge Unqualified Jurors, Some of Whom Had Watched the Inflammatory Docuseries "Surviving R. Kelly" or Were Familiar with Prior Accusations of Sexual Abuse of Minors against Defendant. Counsel's Objectively Unreasonable Performance during *Voir Dire* Resulted in the Empaneling of a Jury that Was Neither Fair Nor Impartial in Violation of Defendant's Due Process Guarantees.**

The government defends trial counsel's performance during *voir dire,* claiming that Defendant's complaints are "vague" and belied by the record. Specifically, the government vouches for counsel's performance, arguing that trial counsel "actively participated" in *voir dire*.

The fact that defense counsel "participated" in *voir dire* does not mean that his performance was objectively reasonable where he agreed to the seating of multiple jurors who: (1) had seen "Surviving R. Kelly;" (2) were aware of Defendant's reputation that he "loves little girls;" and (3) were familiar with his prior legal troubles, including his criminal prosecution for creating sexually explicit videos with a minor. Had there been even *one* juror who had seen "Surviving R. Kelly" seated on Defendant's jury, his jury could not be deemed impartial. Incredibly, Defendant's jury was comprised of *two* people (Jurors 3 and 5) who watched "Surviving R. Kelly" and numerous others who were fully aware of accusations against Defendant for sexually abusing minors.[1] Defendant contends that fully half of his jurors should have been disqualified for cause. Trial counsel did not move for *any* of them to be disqualified for cause and did exercise any peremptory challenges against them.

---

[1] Undersigned counsel received the juror questionnaires from trial counsel. The questionnaires that form the basis of this claim should be filed on the docket under seal for use on appeal.

The government minimizes the extraordinary prejudice that Defendant suffered when at least two seated jurors had watched "Surviving R. Kelly." The government even claims that there was something strategic about trial counsel's decision to seat these jurors. The argument is nothing short of absurd. This Court need only watch the imbedded sample clips of "Surviving R. Kelly" to conclude that no possible trial strategy exists for failing to move to disqualify Jurors 3 and 5 for cause.[2] The government's efforts at constructing a trial strategy are unpersuasive.

"Surviving R. Kelly" is a docuseries consisting of *eleven* episodes that graphically detail claims of sexual abuse against the Defendant by numerous women.[3] Some of the information communicated in the docuseries was presented at Defendant's trial, but much of it was not. Indeed, the docuseries highlights the stories of scores of women who claim to have been victims of sexual abuse and offers no countervailing viewpoint. A large part of the documentary details Defendant's prior criminal case that involved allegations of sexual abuse of a 14-year-old which included allegations that he videotaped himself urinating on the 14-year-old. It is nothing short of mind-blowing that defense counsel acquiesced to the seating of jurors who came to the case with this highly prejudicial information that no human being could have put aside.

Trial counsel's decision to seat these jurors is particularly troublesome where there was simply no reason to do so. Although the documentary was popular, it would not have been difficult to empanel a jury that did not include individuals who had seen the docuseries. Moreover, there is little doubt that this Court would have granted defense counsel's motion for

---

[2] https://www.youtube.com/watch?v=zVqHs8O3wGU
https://www.youtube.com/watch?v=8FaA-1Aipjc
https://www.youtube.com/watch?v=yREP5i3Jhtg

[3] "Surviving R. Kelly" can be live streamed on several platforms, including Netflix and Amazon Prime. Defendant is unable to attach the docuseries to this pleading without violating Copyright laws but refers this Court to the docuseries and relies on the full docuseries in support of this claim. The YouTube links provided in footnote 1 is a small fraction of the type of information at least two jurors possessed prior to being seated as jurors.

cause to disqualify any jurors who had seen the docuseries or were familiar with his prior criminal prosecution, probably with no objection from the government, had defense counsel simply asked.

Defendant contends that counsel's on-the-record performance is objectively unreasonable where no possible trial strategy exists for loading the jury up with people who were exposed to undeniably prejudicial bad act evidence – much of which would not have been admissible at trial. To the extent the government contends that the Defendant himself agreed to seating these jurors, it is dead wrong. As set forth in the attached declaration, Defendant was provided *no* opportunity to review the juror questionnaires prior to trial and considered himself a bystander during this critical stage of trial.[4] [Decl. of Robert S. Kelly] Defendant explains that he played no meaningful role in the jury selection process and that when he attempted to assert himself and express his concerns about jurors who had watched the docuseries, his concerns were dismissed. *Id.* Indeed, Defendant had no idea that at least two jurors who decided his guilt had watched the documentary. Defendant declares that he did not consent to the seating of jurors who saw "Surviving R. Kelly" or those who had knowledge about prior allegations of sexual abuse against him. *Id.*

The government argues that Defendant cannot demonstrate prejudice, because he cannot show that any juror had "actual bias." (Gov. Opp. at 7) The argument does not pass the laugh test. According to the government, "[a]ctual bias is 'bias in fact' – the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Id.* This record demonstrates that before stepping into the courtroom, *two* jurors heard over 360 minutes of victim testimonies, including graphic accounts of urinating on 14-year-olds. If this type of

---

[4] Jury selection is a critical stage of trial. *See Gomez v. United States,* 490 U.S. 858, 873 (1989).

information does not lead to the inference that a person will not and cannot act with impartiality, it is difficult to imagine what would. A whopping *six* jurors were familiar with allegations that Defendant had previously sexually abused minors and had faced legal consequences for such conduct. The government attempts to trivialize the prejudice to Defendant, but it is simply beyond debate that Defendant's jurors suffered from actual bias.

Frankly, even if Defendant cannot show "actual bias," bias should be presumed here. The United States Supreme Court has observed, "[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness . . . To perform its high function in the best way 'justice must satisfy the appearance of justice.'" *Estes v. Texas,* 381 U.S. 532, 543 (1965). As Chief Justice Taft said in *Turney v. Ohio,* 273 U.S. 510 (1927):

> The requirement of due process of law in judicial procedures is not satisfied by the argument that men of the highest honor and the greatest self-sacrifice could carry it on without danger of injustice. Every procedure which would offer a *possible* temptation to the average man . . . to forget the burden of proof required to convict the defendant or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law. *Id.* at 532.

Indeed, the United States Supreme Court has struck down convictions irrespective of a showing of actual bias where prejudice is inherent in those convictions. *See, e.g., Rideau v. Louisiana,* 373 U.S. 723 (1963); *Turner v. Louisiana,* 379 U.S. 466 (1965).

This is a case where prejudice is inherent in Defendant's convictions because fully half of his jury was exposed to highly prejudicial and *inadmissible* evidence that invariably interfered with Defendant's cherished constitutional safeguards. In the old, but highly instructive case of

4

*Marshall v. United States,* 360 U.S. 310 (1959), the United States Supreme Court reversed a defendant's drug conviction after concluding that exposure of some of the jurors to newspaper articles was so prejudicial to justify a new trial. *Id.* During the defendant's trial, two newspaper articles got before a substantial number of jurors. *Id.* at 311. The news accounts contained information that the defendant had two previous felony convictions and detailed the circumstances of prior arrests and convictions. *Id.* Upon learning that the news accounts had reached the jurors, the trial judge questioned the jurors about whether they had seen the articles. *Id.* at 312. Seven of the jurors had some exposure to the articles, but *all* assured the trial judge that they would not be influenced by the news articles and could decide the case on the evidence in the record. The trial judge denied the defendant's motion for a mistrial, finding that there was no prejudice to the defendant. The United States Supreme Court reversed, finding "[w]e have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is part of the prosecution's evidence. It may indeed be greater for it is then not tempered by protective procedures." *Id*. at 312-313.

Consistent with the teachings of *Marshall,* Defendant is entitled to a new trial. Half of his jurors were exposed to information of a character that was so prejudicial that it could not be offered into evidence. Indeed, had trial counsel simply moved to disqualify these jurors, it seems likely that those motions for cause would have been allowed. Prejudice to the defendant must be presumed given the inflammatory nature of the information that no average human could put aside. Defendant's convictions must be vacated, and a new trial ordered.

**II.     Defendant Is Entitled to a New Trial Where One Of His Trial Attorneys Labored Under A Disabling Conflict Of Interest As a Result of Her Simultaneous Representation Of The Defendant and the Government's Star Witness "Jane" That Was Imputed to the Entire Defense Team.**

Defendant rests largely on his arguments contained in his opening memorandum of law. Defendant was denied his constitutional guarantee of conflict-free counsel when his attorney labored under a conflict of interest based on her simultaneous representation of Defendant and government witness, Jane. Trial counsel further suffered from a *Fulton* conflict. Neither of these conflicts were waivable.

In light of the foregoing, Defendant's convictions must be vacated, and a new trial ordered.

Dated:  April 4, 2022
           New York, New York                          Respectfully submitted,

                                                                          /s/JENNIFER BONJEAN
                                                                          Jennifer Bonjean
                                                                          Bonjean Law Group, PLLC
                                                                          750 Lexington Ave., 9th Fl.
                                                                          New York, NY  10022
                                                                          718-875-1850