

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| EAG/NS/MCM | *271 Cadman Plaza East* |
| F. #2019R00029 | *Brooklyn, New York 11201* |

April 7, 2022

<u>By ECF</u>

Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Robert Sylvester Kelly
> <u>Criminal Docket No. 19-286 (S-3) (AMD)</u>

Dear Judge Donnelly:

The government respectfully submits this letter in opposition to the defendant's April 5, 2022 motion for reconsideration of the Court's Order denying, in part, the defendant's motion to adjourn his sentencing. See ECF No. 285 ("Def. Mot."). Specifically, the Court denied the defendant's motion to adjourn his sentencing to a date after his trial in the Northern District of Illinois ("NDIL"). Pursuant to the Court's April 5, 2022 electronic Order, the defendant is currently scheduled to be sentenced on June 16, 2022 at 10:30 a.m. – more than eight and a half months after the jury found the defendant guilty on all counts.

Reconsideration of the Court's decision is not warranted. First, proceeding with the defendant's sentencing prior to his NDIL trial does not violate the defendant's Fifth Amendment rights. The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." As the Supreme Court has long held, "this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other court proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." <u>Minnesota v. Murphy</u>, 465 U.S. 420, 426 (1984) (internal quotation marks omitted). The potential statements at issue here involve the defendant's provision of information to a private mitigation "expert" hired by his defense counsel. Whatever information the private mitigation specialist would potentially provide to the Court would not be based on any

compelled statements of the defendant.[1]  Indeed, the defendant is not being <u>compelled</u> to say anything; he is (potentially) <u>choosing</u> to do so.  That is, of course, his choice.  But while the Fifth Amendment shields a defendant from the consequences of his compelled statements, it is not a sword that allows the defendant to benefit from a voluntary choice to make statements, without any conceivable risk.  Indeed, this choice is faced by all convicted defendants when they decide whether and to what extent to provide information to a probation officer preparing their presentence investigation report regarding the offenses of conviction, particularly those – like the defendant – convicted after trial who intend to file an appeal.  As the court in <u>United States v. Davis</u>, observed in denying a defendant request that he be permitted "to make statements to the Probation Department and to the court in connection with sentencing without having such statements used except in the sentence proceedings" in order to preserve his right to a "meaningful appeal":

> [The defendant] exercised his Fifth Amendment right at the trial and declined to testify.  He is still entitled to the Fifth Amendment privilege at the time of sentencing, and can decline to make any statement.  On the other hand, [the defendant] is entitled to speak on his own behalf in connection with the sentencing.  He is entitled to address any comments to the Probation Department and to the court, which he believes will assist him. . . . If [the defendant] chooses to speak, and if he should make admissions of guilt, or should make false statements, certain consequences may follow.  There is no basis for the court to insulate him from such consequences.

718 F. Supp. 8, 10 (S.D.N.Y. 1989); <u>see also</u> <u>United States v. Slayton</u>, 899 F.2d 15 (Table), 1990 WL 39423, at *2 (6th Cir. Apr. 6, 1990) ("[T]he fifth amendment protects defendants only from *compelled* self-incrimination.  Even accepting [the defendant's] argument that his fear of self-incrimination removed any true ability to exercise the choice of allocution [at

---

[1] Thus, the defendant's reliance on <u>R.I. v. Innis</u>, 446 U.S. 291, 301 at n.5 (1980), <u>see</u> Def. Mot. at 1, is entirely inapposite.  There, the Supreme Court held that "<u>Miranda</u> safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent" and explained that "'interrogation' under <u>Miranda</u> refers not only to express questioning, but also to any words or actions <u>on the part of police</u> (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." <u>Innis</u>, 446 U.S. at 301 (emphasis added).  In noting that "by 'incriminating response' we refer to any response – whether inculpatory or exculpatory – that the prosecution may seek to introduce at trial," <u>id.</u> at 301, n.5, the Supreme Court was clearly referring to custodial questioning by police.  Here, the questioning at issue is neither custodial or conducted by law enforcement.  It is voluntary questioning by a defense-paid mitigation specialist (which the defendant can decide to use at sentencing or not) and raises none of the Fifth Amendment issues the <u>Miranda</u> rule was designed to address.

sentencing], we do not find that such a constraint rises to the level of compulsion required by the fifth amendment.") (emphasis in original); United States v. De La Paz, 698 F.2d 695, 696-97 (5th Cir. 1983) (affirming district court's refusal to grant a continuance of sentencing where defendant, following his guilty plea to firearms offenses, requested a continuance "because he could not adequately exercise his right of allocution because an indictment for a 'continuing criminal enterprise' was pending against him, and the information he wished to mitigate his sentence for the firearms violation might be used again him in the pending trial").

Notably, the defendant's expressed concern here is even further removed. Statements made to a mitigation specialist retained by the defense are inherently less risky in this regard than statements made to a probation officer during a presentence interview or to the Court at the sentencing proceeding. Defense counsel will undoubtedly have the opportunity to discuss any statements made by the defendant to the mitigation specialist with the specialist prior to any disclosure to the Court and will be able to review any report prepared by the specialist prior to making a decision to submit any or all of the report to the Court.[2]

Moreover, as noted in the government's response to the defendant's original motion to adjourn sentencing, the same alleged concern about future use of potentially incriminating statements made to a mitigation specialist exists even when only considering the defendant's case in this District as such information could affect that defendant's appeal and any new trial sought by the defendant on appeal. See ECF No. 281 at n.1. Again, "[g]iven that the same purported concern would exist even after the NDIL trial, the existence of the NDIL trial cannot serve as a valid basis to delay the defendant's sentencing."[3] Id.

Notwithstanding that the defendant's concern does not provide a valid basis to delay his sentencing, the government nonetheless proposed a procedure that would address and alleviate those concerns, namely allowing the defendant to file any mitigation report (or relevant portions of it) under seal and issuing an order prohibiting the government from disclosing the report to anyone involved in the NDIL prosecution. See id. at 2. The defendant simply asserts – without any discussion – that the proposal "does not sufficiently protect Defendant's Fifth Amendment rights." Def. Mot. at n.2. As discussed above, however, proceeding with the defendant's sentencing does not violate the defendant's Fifth Amendment rights and the defendant's bald assertion to the contrary is not a sufficient basis to delay his sentencing, particularly where, as here, there is a way to ensure that any potentially incriminating mitigation statements made by the defendant that he wishes the

---

[2] Defense counsel also presumably will have the ability to request that changes be made to the report prior to deciding whether to submit it.

[3] Indeed, the fact that the defendant's concerns necessarily exist both before and after the NDIL trial is what renders the defendant's justification for a sentencing delay disingenuous.

Court to consider at sentencing can be provided to the Court without risk that such statements will be used by the prosecution in NDIL.

Finally, the defendant's "ask" is not a "small" one. <u>See</u> Def. Mot. at 2. Whether the defendant likes it or not, his "accusers" (Def. Mot. at 1) are victims of serious crimes and have rights under the law. Those victims have the "right to be reasonably heard at any public proceeding in the district court involving . . . sentencing" and the "right to proceedings free from unreasonable delay." 18 U.S.C. §§ 3771(a)(4) and (a)(7). Furthermore, were the Court to grant the defendant's request, the government anticipates that the defendant will make additional requests to delay the defendant's sentencing on precisely the same legally baseless ground, given that the defendant also faces criminal charges in state court in Illinois and Minnesota. Moreover, the Court cannot predict whether an unforeseen development in the NDIL case will delay the trial there for an unknown period of time. Requiring the defendant's sentencing to occur after the NDIL trial – and any other as-yet unscheduled trials in the defendant's pending state cases to address the defendant's purported Fifth Amendment concern – is simply not reasonable in these circumstances.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
            Elizabeth A. Geddes
            Nadia I. Shihata
            Maria Cruz Melendez
            Assistant U.S. Attorneys
            (718) 254-7000

cc:     Clerk of Court (by ECF)
          Defense Counsel (by ECF)