```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
                                                 :
UNITED STATES OF AMERICA,                        :
                                                 :          19 Cr 286 (AMD)
                                                 :
-vs-                                             :
                                                 :
                                                 :
                                                 :
ROBERT SYLVESTER KELLY,                          :
      also known as "R. Kelly,"                  :
                                                 :
              Defendant.                         :
-------------------------------------------------X
```

**DEFENDANT ROBERT KELLY'S SENTENCING MEMORANDUM:  PART I**

Jennifer Bonjean
Ashley Cohen
Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY  10022
718-875-1850

## INTRODUCTION

Defendant files this preliminary sentencing memorandum in support of his contention that the guidelines range for his convictions is 168-210 months. Defendant further contends that upon consideration of the factors set forth in 18 U.S.C. § 3553(a), this Court should sentence Defendant to a below guidelines sentence. Consistent with this Court's Order, Defendant intends to submit a supplemental sentencing memorandum on June 13, 2022, that addresses the § 3553(a) factors with supporting mitigation that sheds light on the history and characteristics of the Defendant.

## ARGUMENT

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007). After a proper calculation, a sentencing judge considers the seven factors set forth in 18 U.S.C. § 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant;" the four legitimate purposes of sentencing, as set forth below; "the kinds of sentences available;" the applicable Guidelines range itself; and relevant policy statement by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants;" and "the need to provide restitution to any victims." 18 U.S.C. § 3553 (a)(1)-(7); *see also, Gall,* 552 U.S. at 50, n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C)  to protect the public from further crimes of the defendant; and

  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553 (a)(2).

**The Guidelines Sentence In this Case Is 168-210 Months.**

  The government and probation argue that the Defendant's guidelines range is life although they take different routes to arriving at that conclusion. As set forth in detail below, many of the enhancements suggested by the government and probation are simply unsupported by the evidence and the law. Defendant argues that the range is 168-210 months.

  Probation sets forth a comprehensive summary of the charges, convictions, and evidence presented in this case. Defendant has already lodged objections in response to the presentence investigation report, including objections to some of probation's statements about the government's evidence. Defendant will highlight the trial record in this case as necessary below.

  Defendant was convicted one count of RICO based on conduct alleged to have occurred between 1994 and 2018. The base offense level of a racketeering offense is the greater of 19 or the offense level applicable to the underlying racketeering activity. U.S.S.G § 2E1.1. Application Note of the Commentary Guideline 2E1.1 instructs that, "where there is more than one underlying offense, treat underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2)." Defendant calculates the offense levels for each racketeering act as follows:

**A.**  <u>**Racketeering Act One:  Bribery**</u>

  Base Offense Level                  12

  **Adjusted Offense Level**               **12**

The government and probations contend that a two-level enhancement is justified on the basis that Defendant used a person less than 18 years of age to commit the offense. As argued in Defendant's Rule 29 motion, the government's evidence failed to show that *Defendant* knew that Demetrius Smith paid money to influence a public aid officer to produce an identification card for Jane Doe No. 1 (Aaliyah). The record is also devoid of any evidence that Defendant *used* Aaliyah in connection with the bribery. Of course, the bribery committed by Smith produced a fraudulent public aid card for Aaliyah. But it does not follow that Defendant *used* Aaliyah in the bribery. Accordingly, Defendant objects to a two-level enhancement pursuant to U.S.S.G. §3B1.1(a)

B. **Racketeering Act Two:  Sexual Exploitation (Stephanie)**

| | |
|---|---:|
| Base Offense Level | 32 |
| **Adjusted Offense Level** | **32** |

The government and probation argue that a two-level enhancement is appropriate pursuant to U.S.S.G § 2G2.1(b)(2)(A) on the grounds that the "offense involved the commission of a sexual act." Defendant was found guilty of sexual exploitation based on Stephanie's testimony that Defendant recorded a sexual act with her when she was 17 years old in violation of 18 U.S.C. § 2251(a). The government contends that because "sexually explicit conduct," an element of a §2251(a) violation, does not necessarily involve a sexual act, Defendant is subject to a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(2)(A) because he engaged in a sexual act with Stephanie. Defendant disagrees.

Enhancing Defendant's sentencing based on facts that formed the basis of the offense amounts to impermissible double counting. "Impermissible double counting occurs when one part of the Guidelines is applied to increase the defendant's sentence to reflect the kind of harm

that has already been fully accounted for by another part of the Guidelines." *United States v. Watkins,* 667 F. 3d 254, 261 (2d Cir. 2012). The only conduct proven by the government that qualified as "sexually explicit conduct" was the sexual act. Even if the government could have theoretically proved sexual exploitation without evidence of sexual act, it does not follow that the government can enhance the penalty based on conduct that was already accounted for in the base offense level. Accordingly, a two-level enhancement is unwarranted.

C.      **Racketeering Acts Three and Four: Kidnapping and Mann Act Violations: (Sonya)**

Defendant was acquitted of racketeering acts three and four related to Jane Doe No. 3. The government contends that because it could prove these racketeering acts by the lower preponderance of the evidence, they could be taken into consideration pursuant to *United States v. Ruggiero*, 100 F. 3d 284 (2d Cir. 1996). Defendant contends that where the jury clearly found that Sonya's testimony was not credible, this Court should not consider racketeering acts three and four in calculating the guidelines range. Despite the government's contention, it does not ask this Court to consider these acts in calculating a guidelines range.

D.      **Racketeering Act Five:  Mann Act Violation (Jerhonda)**

| | |
|---|---|
| Base Offense Level | 24 |
| **Adjusted Offense Level** | **24** |

The government urges a two-point enhancement pursuant to U.S.S.G. § 2G1.3(b)(2) because the offense involved "undue influence" toward the minor to engage in prohibited sexual conduct. "Undue Influence" is defined in the Guidelines as activity that "compromise[s] the voluntariness of the minor's behavior[.]" *Id.* at cmt. n.3(B). "[T]he defining characteristic of undue influence is that it involves a situation where the influencer has succeeded in altering the behavior of the target." *United States v. Patterson,* 576 F. 3d 431, 443 (7th Cir. 2009). The

government contends that a rebuttable presumption of undue influence exists because Defendant was greater than 10 years older than 16-year-old Jerhonda when they engaged in sexual activity between May 2009 and January 2010.

Contrary to the government's contention, Defendant rebuts the presumption of "undue influence." The trial record refutes any suggestion that Defendant did *anything* in altering the behavior of Jerhonda. Quite the opposite. Jerhonda, a sophisticated 16-year-old, took great pains to get close to Defendant, including by misrepresenting her age. Defendant did nothing to seek out Jerhonda. In contrast, Jerhonda forged a relationship with people in Defendant's orbit, falsely claiming to be 19 years of age, all to get access to the Defendant. Jerhonda admits that she falsely told Defendant that she was 19 years of age when they engaged in sexual conduct. It is true that Jerhonda claims that she promptly confessed her real age of 16 to the Defendant immediately after their first sexual encounter; however, even if this is true, Jerhonda's testimony does not reveal that Defendant used *any* influence, undue or otherwise, to engage in sexual activity with her. Defendant has been sufficiently punished for this offense and a two-level enhancement for "undue influence" is simply not justified on the facts of this case.

Similarly, a two-point enhancement is entirely unjustified pursuant to U.S.S.G. § 2G3.1(b)(3) where the record is devoid of evidence that the offense involved the use of a computer or cell phone to induce the travel of the minor. The government points this court to phone logs, random photos, and a single text *allegedly* from Defendant, stating "Please Call," as evidence of use of a cell phone to induce travel. This evidence fails to show that Defendant *induced* Jerhonda to travel to her home.

The record shows that Jerhonda traveled to Defendant's home with no invitation and at her own volition. Indeed, the evidence showed that Jerhonda snuck into Defendant's home when

Defendant was not even in town; Defendant did not "induce" Jerhonda to travel to his house. Furthermore, no records exist to establish the nature of any communications. Indeed, Jerhonda's testimony does not support the government's argument that she was ever induced to travel to his house by cell phone communications or any manner.

An invitation does not equal inducement. The Second Circuit has made clear that the terms "persuade, induce, entice [and] coerce" are words of common usage that have plan ordinary meanings." *United States v. Waqar*, 997 F. 3d 481, 483 (2d Cir. 2021); *United States v. Gagliardi*, 506 F. 3d 140,147 (2d Cir. 2007). The Court distinguishes this conduct from merely asking which is not sufficient to demonstrate criminality. Id. (recognizing that "there might be some uncertainty as to the precise demarcation between "persuading," which is criminalized, and "asking," which is not.") The government's evidence fails to show any specific words of persuasion that Defendant used in connection with Jerhonda. Thus, even if the government could argue that Defendant *asked* or *invited* her to come to his home and told her that someone would pick her up at the train station – that conduct is not inducement. Thus, a two-level enhancement is not supported by this record.

Last, a two-point enhancement is unwarranted pursuant to U.S.S.G. §2G3.1(b)(4). The government continues to argue that because a violation of 18 U.S.C. §2422 does not necessitate "illegal sexual activity," an enhancement for sexual contact does not amount to duplicative punishment. The government's argument is flawed where racketeering act five is premised on a criminal sex act, namely aggravated criminal sexual abuse under the Illinois criminal code. In short, to prove racketeering act five *as charged,* the government was required to prove a sex act. Thus, any enhancement based on a "sex act" is duplicative to the charged offense and the enhancement amounts to double counting.

**E.        Racketeering Act Six: Forced Labor - (Jerhonda)**

| | |
|---|---:|
| Base Offense Level | 30 |
| U.S.S.G. § 2H4.1(b)(4)(b) | 2 |
| **Adjusted Level Offense** | **32** |

As the government pointed out, probation's calculation of the adjusted offense level for this count is erroneous where the count did not include the production of child pornography. Although Defendant agrees with the government that the base offense level is 30, he objects to a four-level enhancement pursuant to § 2A3.1(b)(1), because the government's evidence did not establish, under any standard of proof, that the forced labor count involves conduct described in 18 U.S.C. § 2241(a) or (b).

As argued extensively in Defendant's Rule 29 motion, Jerhonda's testimony described an assault unrelated to any sexual conduct. Jerhonda testified that Defendant slapped and choked her because she was on her phone, and he didn't believe she was texting a friend. (R. 176) Jerhonda testified that *after* the assault, she gave Defendant oral sex because he "instructed" her to do so. Jerhonda's testimony is devoid of any mention of threats of violence or acts of force in connection with the oral sex act. The previously described physical assault was completed and unrelated to his "instruction" that she give him oral sex. Jerhonda did not even testify that she feared Defendant when he asked for oral sex and she complied. Thus, the government's claim that Defendant placed Jerhonda in fear of death or serious bodily injury is meritless. Accordingly, a four-level enhancement is unjustified on this record.

**F.        Racketeering Act Seven: Sexual Exploitation of a Child - (Jerhonda)**

| | |
|---|---:|
| Base Offense Level | 32 |
| **Adjusted Offense Level** | **32** |

The government agrees that there is no evidence that Defendant used force in connection with the production of any child pornography and that a four-level enhancement is inappropriate.

Defendant objects to a two-point enhancement pursuant to U.S.S.G. § 2G3.1(b)(3) where the record is devoid of evidence that the offense involved the use of a computer or cell phone to induce Jerhonda's travel.

G. **Racketeering Act Eight: Mann Act Violation (Jane)**

Base Offense Level (§ 2G1.1(a)(2))        14

**Adjusted Offense Level**        **14**

The government concedes that Jane misrepresented her age to Defendant when she met him in Florida in April 2015 which kicked off a lengthy relationship. Incredibly, the government seeks a four-level enhancement on this count, arguing that Defendant committed a fraud in connection with this Mann Act violation, because he did not disclose to Jane that he had genital herpes.

The government seeks to stretch the guidelines beyond all recognition which explains its failure to offer *any* support for its novel theory that the failure to disclose a herpes diagnosis amounts to fraud either as defined by federal fraud statutes, state statutes, or under common law. According to the Second Circuit, fraud involves a false representation; scienter; reliance; and harm. *Evans v. Ottimo*, 469 F.3d 278, 283 (2nd Cir. 2006); *United States v. Fusion Connect, Inc.* (*In re Fusion Connect, Inc.*), 634 B.R. 22, 32 (S.D.N.Y. 2021) (citing the Restatement (Second) of Torts). While there have been a few variations on these elements, *harm* is always present. *See Page v. Carozza* (*In re Carozza*), 167 B.R. 331 (E.D.N.Y. 1994) (breaking scienter up into "reasonably calculated to deceive" and "intended to deceive").

The government's evidence does not show that Defendant falsely represented anything to Jane or that Jane relied on any misrepresentations. Also absent is *any* evidence of harm. Because there is no evidence that Jane was infected with herpes when she traveled to California with Defendant between April 28, 2015, and May 1, 2015, the government cannot show that any harm resulted from his failure to disclose his herpes diagnosis. Indeed, Jane testified that she did *not* contract herpes from Defendant during this trip. Thus, the government's fraud theory is patently ridiculous. A four-level enhancement must be rejected under this theory.

H.     **Racketeering Act Nine:  Mann Act Violation (Jane)**

Base Offense Level (§ 2G1.3)                                                             24

**Adjusted Offense Level**                                                                24

The government alleges that the base offense level for Racketeering Act Nine is 32 pursuant to U.S.S.G. § 2G2.1 which involves sexual exploitation of a minor "by production of sexually explicit visual or printed material." Racketeering Act Nine was a Mann Act violation and therefore the appropriate guidelines can be found at U.S.S.G. § 2G1.3(c)(1).

Pursuant to U.S.S.G § 2G1.3(c)(1), the base offense level is 28 where the jury determined that Defendant was guilty of violating 18 U.S.C. § 2422(b). The government seeks to convert this offense into an offense for sexual exploitation of a child, arguing that the base offense level is 32. But the government fails to explain why this Court should not look to U.S.S.G § 2G1.3(c)(1) as the starting point for correctly calculating the base offense level as to Racketeering Act Nine where Defendant was not convicted of sexual exploitation but rather a Mann Act violation. Notably, Defendant was separately charged and convicted of sexual exploitation of a child in connection with video recording sexual activities with Jane during their trip to California.

The government's theory fails for other reasons. At the time Defendant purportedly committed Racketeering Act Nine, Jane was living with the Defendant and engaged in a legally consensual relationship in the state of Illinois. This is undisputed no matter how distasteful the government finds it. There is nothing in the record that suggests that Defendant brought Jane to California *for the purpose* of "producing a visual depiction" of their sexual activity. Notably, the government previously argued that Defendant's purpose in bringing Jane to California was to expose her to herpes. The government seems to believe that Defendant's purpose in bringing Jane to California is whatever they say it is depending on what elements it needs to prove. As Defendant argued in his Rule 29 motion, Defendant's "motivating purpose" in bringing Jane to California was to have her companionship, even if included sexual contact. While Jane testified that her relationship with Defendant involved sex, that intimate relationship was legal in the State of Illinois. It is entirely illogical to suggest as the government does that Defendant had a purpose in bringing Jane to California to have sex with her where they shared a home in the state of Illinois where the age of consent was 17. Even if the government persuasively argued that Defendant's purpose in bringing Jane to California was to have sex with her, it cannot be said that Defendant's "motivating purpose" or *any* purpose was to produce video of that sexual activity. The government knows very well that Defendant's travels with Jane had absolutely nothing to do with producing commercial child pornography. Any attempt to increase the offense level under this theory is legally wrong.

The government agrees that an enhancement pursuant to U.S.S.G. § 2G2.1(b)(6)(B)(i) is inappropriate. Accordingly, the adjusted offense level for Racketeering Act Nine is 24.

**I.** **Racketeering Act Ten:  Mann Act Violation (Jane)**

Base Offense Level                                                                                                  32

**Adjusted Offense Level** 32

Defendant objects to a two-point enhancement pursuant to U.S.S.G § 2G2.1(b)(2)(A) on the grounds that the "offense involved the commission of a sexual act." Defendant was found guilty of sexual exploitation, in violation of 18 U.S.C. § 2251(a), based solely on Jane's testimony that Defendant recorded their sexual activity in late 2015 when she was 17 (almost 18) years old. Notably, the sexual activity that occurred in the Northern District of Illinois was legal conduct, even if the recording of it was not. The government's evidence turned entirely on Jane's testimony as the government produced *no* video of Defendant and Jane engaging in sexual activity during this time-period.

First, the government should not be permitted to enhance the sentencing guideline for this offense based on sexual contact that occurred in the Northern District of Illinois since *that* contact was not unlawful. The unlawful activity in the Northern District of Illinois was the *filming* of the contact – not the contact itself. Therefore, this enhancement could only be applicable for any sexual contact in the state of California. But again, as argued *supra,* because the sexual contact that occurred in California arguably forms the basis of the charged offense,[1] it would be duplicative to enhance this offense based on "sexual contact."

Contrary to the government's argument, simply because "sexually explicit conduct" does not *require* proof of a sex act for purposes of demonstrating a § 2251 violation, where the government's proof of "sexually explicit conduct" *is* the sex act and nothing more, the government cannot enhance based entirely on a theoretical. Here, the element of "sexually explicit conduct" was allegedly proven by Jane's testimony that Defendant produced a visual

---

[1] The jury was not asked to determine whether racketeering act ten was based on conduct in California or Chicago or both.

depiction of their sex acts. That conduct formed the basis of the charged offense and should not also serve as a basis to enhance Defendant's sentence notwithstanding that the government did not *need* to prove the sex act to establish a §2251 violation. Such an enhancement would constitute impermissible double punishment under the facts of this case.

The government agrees that Defendant's offense level should not be enhanced by four-levels for pursuant to U.S.S.G. § 2G2.1(b)(4).

The government urges a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(6), arguing that Defendant "stayed in touch" with Jane by cellphone "in order to induce her to travel to see him." Defendant and Jane were in a relationship, lived together, and traveled together. Defendant did not use a cellphone for any purpose other than communicating with his girlfriend The government and the public may be outraged that Defendant entered into a relationship with Jane, who he believed to be 18, when he was in his 40s. The government and the public may be outraged that Defendant continued his relationship with Jane after learning that she lied to him about her age even though in the state of Illinois the relationship was lawful. But the government is clearly attempting to artificially enhance this sentence by ignoring the true nature of Defendant's relationship with Jane. Put differently, if Defendant had not traveled with Jane to California on an isolated occasion a couple of months before Jane's 18th birthday and had not video-recorded his sexual acts with Jane, there would have been *no* racketeering acts as to Jane whatsoever. The government is free to feel moral outrage about Defendant's relationship with Jane, but it cannot enhance the sentence based on factors that ignores their own evidence. The government's fiction that Defendant used cell phones to "persuade, induce, coerce, or facilitate" Jane's travel should be rejected since it ignores the nature of their relationship entirely and the

base offense level already punishes Defendant for his conduct. Accordingly, a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(6) must be rejected.

**J.      Racketeering Act Eleven:  Forced Labor - (Jane)**

    Base Offense Level                                                         22

    **Adjusted Level Offense**                                      **22**

The government now finds it convenient to change its theory of prosecution to suit its sentencing arguments. The forced labor offense involves a base offense level of 22. As the government concedes, the heart of its forced labor count is the allegation that Defendant obtained "labor" from Jane forcing or threatening force against her in connection with sexual activities with other women and men – none of which occurred when she was underage. As argued in Defendant's Rule 29 motion, there simply is no evidence, even from Jane, that she was forced or threatened with physical harm to participate in group sex acts. Her belated claim that she did not *want* to participate in such activities does not demonstrate that Defendant forced her to engage in such activities through physical harm or threats of physical harm.

That said, if this Court concludes that the evidence established that Jane's participation in group sex acts amounted to an offense of criminal sexual abuse, the government's calculation of an adjusted offense level of 36 would be accurate. But as stated above, the government did not establish that Defendant committed an offense of criminal sexual abuse in connection with Jane's group sex acts with Defendant and others because the record is devoid of evidence of force in connection with those acts.

**K.      Racketeering Act Twelve: Mann Act Violation - (Faith)**

    Base Offense Level                                                          14

    **Adjusted Offense Level**                                        **14**

Again, the government has no basis whatsoever to seek a four-level enhancement for fraud based on Defendant's failure to disclose his herpes diagnosis to Faith. As argued previously, fraud involves a false representation; scienter; reliance; and harm. *Evans v. Ottimo*, 469 F.3d 278, 283 (2nd Cir. 2006); *United States v. Fusion Connect, Inc.* (*In re Fusion Connect, Inc.*), 634 B.R. 22, 32 (S.D.N.Y. 2021) (citing the Restatement (Second) of Torts). While there have been a few variations on these elements, *harm* is always present. *See Page v. Carozza* (*In re Carozza*), 167 B.R. 331 (E.D.N.Y. 1994) (breaking scienter up into "reasonably calculated to deceive" and "intended to deceive").

The government's evidence does not show that Defendant falsely represented anything to Faith or that Faith relied on any misrepresentation. Most importantly, there is no evidence of harm since Faith did not contract herpes from the Defendant. Faith testified that after traveling to New York, she was diagnosed with herpes type 1 after getting cold sores on her mouth. (R. 2279-2280). Nearly 50% of the population has herpes type one (cold sores). Even the government's expert would concede that herpes type 1 can be contracted from kissing. The record is devoid of evidence that Faith suffered any harm in connection with Defendant's purported failure to disclose his herpes diagnosis to here. As such, a four-level enhancement under a fraud theory is non-sensical.

L. **Racketeering Act Thirteen: Forced Labor - (Faith)**

    Base Offense Level                                                 22

    **Adjusted Level Offense**                                        **22**

The forced labor offense involves a base offense level of 22. As argued in Defendant's Rule 29 motion, there simply is no evidence, even from Faith, that she was forced or threatened with physical harm to provide oral sex to the Defendant. Faith describes an episode in Los

Angeles where Defendant allegedly had a "serious" conversation with her and then directed her to give him oral sex. She does not describe Defendant using any force or threatening any force. As a reminder, Faith *never* alleged that she was a victim forced to engage in any sexual contact and denied that characterization of her relationship with Defendant. As such, Defendant objects to the government's contention that this conduct involved criminal sexual abuse and that a base offense level of 30 is appropriate pursuant to U.S.S.G. § 2A3.1.

That said, if this Court concludes that the evidence established an offense of criminal sexual abuse, the government's calculation would be correct.

**M.**     **Racketeering Act Fourteen: Mann Act Violation - (Faith)**

| | |
|---|---|
| Base Offense Level | 14 |
| **Adjusted Offense Level** | **14** |

For the reasons argued in connection with racketeering act twelve, no four-level enhancement is justified under the government's novel fraud theory.

**N.**     **Role Enhancement**

The government seeks a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) on the basis that defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . ." Defendant has argued extensively that the government failed to show the existence of an enterprise. The government's evidence showed that Defendant was a famous entertainer who employed many people over the years. Defendant was unquestionably the boss of his employees, but the government falls far short of establishing that he was a leader of criminal activity. Indeed, the government did not even attempt to prove criminal activity of the organization or other employees of the organization. A four-level enhancement is simply not warranted here.

**O.     Minor In Custody, Care, Supervisory Control of the Defendant**

Brazenly, the government seeks to enhance Defendant's guidelines range under a theory that Jane's parents entrusted Defendant to her supervision when she was a minor "purportedly to assist her with her musical career" after which Jane lived with the defendant. The record shows that Jane's parents directed Jane to lie to Defendant about her age and then encouraged her to seduce him in April 2015 when she was 17 years old. The real-time text messages between Jane and her mother reveal that Jane's mother wanted Defendant to promote Jane's music career by commencing a romantic relationship with him. Again, the government seeks to sanitize the facts of this case which show that after Jane met Defendant for the first time, she immediately began traveling with Defendant and never returned home. Nothing in the record suggests that Jane's parents objected to this relationship. The evidence shows quite the opposite. Indeed, Jane's mother jokingly told her daughter weeks after Jane met Defendant that her son-in-law was going to be older than her. Jane's mother certainly knew Jane's age even if the Defendant did not.

The record does not show that Jane's parents "entrusted" Defendant with Jane's care, as much as, Jane was adamant that she wanted to live with Defendant in Chicago and Jane's parents were eager to support her relationship with the Defendant, presumably because they hoped financial riches would flow to them. It was *Defendant* who sent Jane home after Jane disclosed that she was 17 years old. Regardless, Jane was not a minor in the state of Illinois at the age of 17 when she returned to Chicago shortly before her 18th birthday as the government contends. As such, an enhancement under this theory cannot apply.

**P.     Adjusted Offense Level:**

The following chart summarizes Defendant's position regarding the offense level for each grouped count. Defendant contends that racketeering acts five, six, and seven should be grouped pursuant to U.S.S.G. §3D1.2(a), as should racketeering acts nine and ten. Probation agrees.

| Racketeering Act One | 12 |
|---|---|
| Racketeering Act Two | 32 |
| Racketeering Acts Five, Six, and Seven | 32 |
| Racketeering Act Eight | 13 |
| Racketeering Acts Nine and Ten (Counts Two, Three, Four, and Five) | 32 |
| Racketeering Act Eleven | 22 |
| Racketeering Act Twelve (Counts Six and Seven) | 14 |
| Racketeering Act Thirteen | 22 |
| Racketeering Act Fourteen (Counts Eight and Nine) | 14 |

Defendant contends that the combined offense level is 35. The offense level applicable to the group with the highest offense level is 32. Pursuant to U.S.S.G § 3D1.4, the number of Units that the remaining Groups represent. the offense level should be increased by 3 levels (three units) for a total 35. Because Defendant's criminal history score is one, the guidelines range properly calculated is 168-210 months.

## **CONCLUSION**

For the foregoing reasons, Defendant's sentencing range is 168-210 months. As will be set forth in Defendant's supplemental sentencing memorandum, Defendant should be sentenced to a below guidelines sentence.

Respectfully Submitted,


/s/JENNIFER BONJEAN

Jennifer Bonjean
Ashley Cohen
Bonjean Law Group, PLLC
750 Lexington Ave., 9th Fl.
New York, NY  10022
718-875-1850

## **CERTIFICATE OF SERVCE**

I, JENNIFER BONJEAN, an attorney at law, certify that I filed Defendant's Preliminary Sentencing Memorandum via ECF on May 27, 2022.

/s/JENNIFER BONJEAN