

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

|  |  |
|---|---|
| EAG/NIS/MCM | *271 Cadman Plaza East* |
| F. #2019R00029 | *Brooklyn, New York 11201* |

June 23, 2022

**== NOW PUBLIC FILING ==**

<u>TO BE FILED UNDER SEAL</u>

<u>By ECF</u>

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Robert Sylvester Kelly</u>
             <u>Criminal Docket No. 19-286 (S-3) (AMD)</u>

Dear Judge Donnelly:

        The government writes in brief reply to the defendant's sentencing submission, submitted under seal[1] on June 13, 2022. (<u>See</u> ECF Dkt. Entry No. 306). First, the defendant continues to avoid any acknowledgment of the seriousness of his conduct or the harm that he caused, further supporting the government's contention that the defendant has shown no acceptance of responsibility and is unlikely to be deterred from committing future crimes. Second, in his submission, the defendant perpetuates his version of events in a manner that is flagrantly false and contrary to the evidence adduced at trial.

        During several voluntary interviews with Dr. Park Dietz and Dr. Renee Sorrentino, two doctors retained by the defendant who prepared mitigation reports for the

---

[1] While the defendant filed the entirety of his June 13, 2022 submission under seal, there does not appear to be a basis for filing the entire submission in that manner, nor did the defendant include the basis for sealing in his submission. Nonetheless, because the defendant filed his submission under seal, the government, in an abundance of caution, has filed this reply under seal. The government does not believe any of information contained herein needs to remain under seal and has no objection to the Court unsealing this letter.

Court's consideration in connection with sentencing, and knowing that his statements would be shared with the Court and that his doctors would rely upon his statements in making mitigation arguments, the defendant repeatedly lied. Indeed, the reports prepared by Dr. Dietz and Dr. Sorrentino include a number of materially false statements by the defendant. For example, he falsely denied having sex with Aaliyah.[2] (Id., Ex. B at 10). He falsely stated that there was only one incident where he had a physical altercation with a woman and that was with the woman who testified using the pseudonym Anna and she initiated it.[3] (Id., Ex. B at 10). He falsely stated that the woman who testified using the pseudonym Jane did not tell the defendant her true age until "years" after she met him.[4] (Id., Ex. B at 10). He falsely stated that he fined "a woman named Diana," i.e., Diana Copeland, after she stole $150 from him and then left for two years (id., Ex. A at 20), and falsely stated he never required employees to write a letter falsely confessing to anything (id., Ex. A at 21).[5] He

---

[2] At trial, the woman who testified using the pseudonym Angela testified that she saw the defendant and Aaliyah engaged in a sex act in 1992 or 1993, when Aaliyah was 13 or 14 years old. (T. 3302-03, 3306). The defendant also had sexual intercourse with Angela in 1991, during the break between Angela's freshman and sophomore year in high school, when she was 14 or 15, in a room with two other high school girls with whom he also had sexual contact. (T. 3274-76, 3281-84).

[3] At trial, the women who testified at trial using the pseudonyms Jane and Anna testified about extensive physical abuse that they each experienced and saw others experience. (T. 901, 909-25, 931-38, 2840-44). One such example was captured on Government Exhibit 328(a), a video that was introduced as an exhibit at trial and upon which the defense mitigation specialists purportedly reviewed and relied.

[4] At trial, Jane testified that in or about August 2015, a few months after she first met the defendant, she told the defendant her true age. (T. 860-61). Jane's testimony was supported by other evidence introduced at trial, including Government Exhibit 475(a) and 476(a) (authorizing Juice's mother to serve as a guardian of Jane until she reached her eighteenth birthday). Moreover, the defendant's former assistant, Suzette Mayweather, testified that the defendant told her in or about October 2015—prior to Jane's 18th birthday—that Jane had previously told the defendant that she was, in fact, 17 years old. (T. 1979-80 (testifying that the defendant told Mayweather about the day that "[Jane] confessed to being 17" and initially became very upset, but then "once he learned that she was 17, he had a conversation with her parents and the parents gave him guardian -- signed guardianship.")).

[5] At trial, the government introduced in evidence 3500-DC2-8, a letter that was recovered from the defendant's storage facility, in which Diana Copeland apologized for stealing from the defendant, claimed it took her two years to admit it and commented that she ran away for two years; the righthand corner on each page was signed by Copeland. Copeland testified that she recognized the letter in the exhibit marked as 3500-DC2-8 as one

falsely stated that Anna introduced him to "scat sex," i.e., sex involving feces.[6] (Id., Ex. A at 23). He falsely denied requiring his guests to seek his permission before going to the bathroom, including when they were on the Sprinter van or bus.[7] (Id., Ex. A at 21-22). Each of the defendant's self-serving statements is contradicted by the trial evidence, including under oath witness testimony that the jury credited.

More generally, the defendant responded to 14 allegations that supported the government's theory at trial that the defendant engaged in several forms of coercive control over his sexual partners, including Jane. (Id., Ex. A at 19-24). The government relied heavily on this behavior in the government's sentencing submission where it sought a sentence in excess of 25 years' imprisonment. As a result of wholly misleading and sometimes outright false statements by the defendant, including the statements described above, the defendant's mitigation specialist "question[ed] whether [the characterization that the defendant exhibited behaviors known in the intimate partner violence literature as coercive control] may be grossly distorted." (Id., Ex. A at 19).

The defendant of course was not required to implicate himself in any of the charged conduct and he could have simply denied his guilt and provided information about his childhood and upbringing to the mitigation specialists for the Court's consideration at sentencing, but he went far beyond that when he made a series of false statements, which are contradicted by the trial evidence. To the extent the defendant's mitigation specialists relied on such statements, the Court should afford their conclusions little weight. Indeed, any suggestion that the defendant has no sexual attraction or fantasies about children is belied by the trial evidence, witness statements, and other materials.[8] And, the fact that the victims

---

that the defendant told her to write because his attorneys had told him to do so and that she had never in fact stolen from him. (T. 3198-3201).

[6] At trial, Anna testified that the defendant directed her to make a video being seductive with bodily fluids and that she did not want to be doing so (T. 2876-77); on cross-examination, Anna denied any knowledge about "scat sex" (T. 2963). Notably, having never reviewed relevant portions of the trial transcript (or closely reviewed the fact section of the government's response to the defendant's motion for judgment of acquittal, which included a detailed summary of the trial evidence with transcript and exhibit citations), the doctors appear to have simply accepted the defendant's version of events at face value.

[7] Several witnesses testified that the defendant required his female "guests" to obtain his permission before they got off the bus or Sprinter van to use a bathroom. (See, e.g., T. 821-22, 1439-40, 2003-04, 2244-47, 2826-33). This occurred even when the bus or Sprinter van was not traveling on the road for events or performances. Suzette Mayweather testified that the defendant became enraged when he learned that she had allowed Dominique off the bus without his permission. (T. 2029-31).

[8] For example, Jerhonda testified at trial that during sexual encounters with the defendant when she was 16, he "wanted [her] to put [her] hair up in pigtails and dress like a

3

who testified in this case were not "prepubescent" at the time the defendant had sex with them is not a mitigating factor. The existence of even more serious crimes in the criminal code does not mitigate the seriousness of the defendant's crimes.

   The defendant's deliberately false statements are an additional reason to impose a sentence in excess of 25 years as requested by the government.[9] Those statements

---

girl scout." (T. 215). Anna testified that during sexual activity, the defendant asked her to role play as "[a] young girl." (T. 2887-88). Faith testified that after her first sexual encounter with the defendant in Long Island, New York, having previously told the defendant she was 19, the defendant stated, "You know, if you're really like 16, you can tell Daddy." (T. 2174). In interviews with the government (produced to the defense as Section 3500 material), Jane stated that the defendant also "ma[d]e the girls talk like they were young, in childish voices, such as being 5-7 years old. [He] would also talk about having sex with little boys during sexual encounters." (See 3500-[Jane's initials]-3 at 6). In addition, as set forth in the government's motion in limine to admit certain uncharged acts, the defendant directed Jane to obtain child pornography involving boys. At the defendant's direction, Jane searched the internet for pornography involving younger-looking males and screen-recorded such pornography for his use. Jane believed the pornography that she found on the internet and downloaded for the defendant actually involved individuals who were 18 or older given the websites on which she found the videos, but the request for such videos, and the videos themselves, clearly indicates a sexual interest in children. A judicially-authorized search of digital media recovered from the defendant's residence corroborated Jane's account. Videos recovered from the device depict, inter alia, (1) two young males initially wearing children's underwear and kissing before engaging in sexual acts on and against a child's bunk bed; (2) a young Asian male tied to a bed with underwear on, while a man caresses his body and genitalia; and (3) a man engaging in sexual acts with a young male who is initially dressed in pajamas. (See ECF Dkt. Entry No. 133 at 27-28). Finally, the charges against the defendant currently pending in the Northern District of Illinois involve victims "who reported that the defendant sexually abused them hundreds of times as minors, beginning when they were in middle school." See United States v. Kelly, 19 CR 567 (N.D. Il.), ECF Dkt. Entry No. 14 (detention memorandum) at 7. In two of the videos at issue in that case, the defendant and the minor involved in the filmed sexual encounter with him repeatedly refer to the minor and her body parts as being "14 years old." Id. at 9.

[9] Notably, Section 3C1.1 of the Guidelines provide that a two-level enhancement for obstruction of justice is warranted where:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the . . . sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense[.]

4

make clear that the defendant takes no responsibility for his criminal conduct and is willing to lie to receive a more lenient sentence – conduct that further demonstrates the need for specific deterrence and to protect the public from further crimes of the defendant.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/
Elizabeth A. Geddes
Nadia I. Shihata
Maria Cruz Melendez
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (AMD) (by ECF)
       Jennifer Bonjean, Esq. (by e-mail)
       Frank Nikolaidis (by e-mail)

---

The enhancement is not warranted where a defendant continues to assert a constitutional right, including by denying guilt or refusing to provide information to a probation officer. U.S.S.G. § 3C1.1, App. Note 2. The enhancement is, however, appropriate where a defendant "provid[es] materially false information to a judge" or where he "provid[es] materially false information to a probation officer in respect to a presentence or other investigation for the court[.]" Id., App. Note 4. "'Material' evidence, fact, statement, or information . . . means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." Id., App. Note 6.