

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

*271 Cadman Plaza East
Brooklyn, New York 11201*

August 15, 2022

**BY ECF**

Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *United States of America v. Robert S. Kelly*,
     Docket No. CR-19-0286 (EDNY)

Dear Judge Donnelly:

  On August 4, 2022, the Government requested that the Court sign a proposed order directing the Bureau of Prisons (the "BOP") to turn over the restrained funds held in the inmate trust account of Defendant Robert S. Kelly (the "Defendant") to the Clerk of the Court for deposit into an interest-bearing account pending a determination as to the amount and applicability of a restitution judgment.[1]  *See* Dkt. No. 323.  On August 9, 2022, Defendant filed his opposition to the Government's August 4, 2022 request for a turnover order (the "Opposition").  *See* Dkt. No. 324.  As the Defendant raises a host of novel and unfounded issues in his opposition, the Government respectfully submits this letter to the Court in further support of its August 4, 2022 request.  In short, consistent with the statutory authority and case law, and contrary to the Defendant's assertions, the Court should authorize the turnover of the $27,828.24 currently restrained by the BOP to an interest-bearing account to satisfy the Defendant's restitution judgment, which is yet to be imposed, or to satisfy the Court-ordered fine, which has already been imposed.

  In his Opposition, the Defendant asserts that the Government has unlawfully confiscated the funds deposited into his trust account because the funds were seized without the Defendant's notice, without the filing a notice of lien, without the filing a notice of default, without providing a receipt, and "absent statutory authority to do so." *See* Opposition, Dkt. No. 325, p. 1. These arguments are entirely unavailing and factually inaccurate.

---

[1] The Defendant filed a notice of appeal on August 11, 2022. However, the enforcement of a judgment of fine or restitution is not automatically stayed by the filing of an appeal. *See* 18 U.S.C. § 3572(g)(the court shall require security for the payment of a fine if a stay is imposed; Rule 38 (c) of the Federal Rules of Criminal Procedure (if a defendant appeals, either the district court or the court of appeals may stay the sentence of fine on any terms considered appropriate).

First, it must be plainly stated that the Government has not "seized," "garnish[ed]," or "confiscated" any property of the Defendant. *See id.* at pp. 1, 3. The Government has merely frozen the funds on deposit in the Defendant's inmate trust account, in accordance with BOP policy, pending the resolution of this motion. *See United States v. Sabato,* No. 02-CR-236 (VLB), 2021 WL 826751, at *3 (D. Conn. Mar. 4, 2021). In *Sabato*, the Court rejected Mr. Sabato's objection to the seizure of funds on due process grounds, finding that the Government had not seized any funds but rather placed them on hold until the Court could adjudicate the pending motion. *Id.* The Court emphasized that "[t]he inmate trust account is just that a trust account, which is controlled by the BOP and can be encumbered at the Warden's discretion." *Id.* As noted in the Government's motion, the BOP Trust Fund/Deposit Fund Manual specifically authorizes the BOP to encumber funds held in an inmate trust account before the Government seeks Court intervention. *See Trust Fund/Deposit Fund Manual,* Federal Bureau of Prisons at § 8.8 (Apr. 9, 2015), http://www.bop.gov/policy/progstat/4500_011.pdf). This prevents "dissipation of the funds while the Court considers the government's [turnover] motion." *United States v. Brown,* No. 17-CR-00107 (BLW), 2022 WL 1486861, at *2 (D. Idaho May 11, 2022).

Further, as set forth in the Government's motion, the Government is not required to "file a notice of lien" in order for the lien to take effect. A judgment of fine or restitution is a lien in favor of the United States on all property and rights to property of the person fined. "The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated, under subsection (b)." *See* 18 U.S.C. § 3613(c).[2] In addition, the Mandatory Victims Restitution Act ("MVRA") provides specific statutory authority permitting the turnover of funds accumulated during a period of incarceration for application to outstanding fines and restitution. *See* 18 U.S.C. § 3664(n) (when a person "obligated to provide restitution, or pay a fine, receives substantial resources from any source […] during a period of incarceration," that person "*shall be required* to apply the value of such resources to any restitution or fine still owed.") (emphasis added).[3] While most of the cases that rely on Section 3664(n) to require the

---

[2] Section 3613(d) does contemplate the filing of a notice of lien, but that provision is concerned with providing notice to a specific subset of third parties. *See United States v. Smith*, 768 Fed. Appx. 926, 932 (11th Cir. 2019) ("Generally speaking, the MVRA does not require the government to record the lien for it to gain priority over third parties, but it does protect certain limited classed of third-party interest holders [enumerated in Section 3613(d)]"); *see also* 18 U.S.C. § 3613(d) ("Upon filing of a notice of lien…the lien shall be valid against any purchaser, holder of a security interest, mechanic's lienor or judgment lien creditor…") In other words, filing a notice of lien does not create the Government's lien—the lien is created by entry of the judgment. *See Smith,* 768 Fed. Appx. at 932 ("Upon entry of the criminal judgment, the government's restitution lien *arises automatically* and attaches to all property of the defendant…") (emphasis added).

[3] To the extent that Defendant is arguing that there is no specific statutory authority to turn over the funds to an interest-bearing account in anticipation of a future restitution judgment, the Government submits that, in accordance with the Crimes Victims Act (18 U.S.C. § 3771) and the MVRA, the Government is permitted to use "all [] available and reasonable means," to collect restitution judgments. *See* U.S.C. 3664(m)(1)(A)(ii). These statutes authorize the Government and the Court to take steps to protect funds which could be used for restitution, even in the prejudgment context. *See United States v. Garrett,* 13-cr-149 (Matsumoto, J.), Docket Entry No. 494, dated Nov. 20, 2015 (granting a restraining order, pursuant to the All Writs Act, prohibiting the defendant from receiving the funds of a civil settlement before a restitution judgment had been entered).

turnover of funds address unpaid restitution, the language of Section 3664(n) is clear: a person who accumulates substantial resources, while incarcerated, "shall be required to apply the value of such resources to any restitution or fine still owed." *Id; see, e.g., United States v. Kendrick*, No. 10-CR-6096 (FPG), 2022 WL 1819390, at *4 (W.D.N.Y. June 3, 2022) (authorizing, pursuant to Section 3664(n), the turnover of money in inmate account to *cover unpaid fine*) (emphasis added); *Sabato,* 2021 WL 826751, at *1 (same); *United States v. Brown*, No. 01-CR-30123 (MJR), 2017 WL 3493021, at *3 (S.D. Ill. Aug. 15, 2017) (same).

The Defendant also argues that the Court should deny the Government's turnover motion because the Government did not file a "notice of default." But the plain language of Section 3664(n) does not include any precondition of default. *Kendrick,* 2022 WL 1819390, at *4. On the contrary, "Section 3664(n) affirmatively mandates that an incarcerated defendant apply 'substantial resources' to any fine that is 'still owed'—that is, to any portion of the total fine that has yet to be satisfied." *Id.* This is true "regardless of a defendant's compliance with or default on a court-ordered payment schedule." *Id.* In this case, Defendant's fine is "still owed" because he has made no payments, and his debt was due immediately since the Court did not establish a payment plan. *See* 18 U.S.C. § 3572(d)(1) ("a person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments").

Defendant principally relies on *Hickman v. United States*, 330 F. Supp. 3d 921, 922 (W.D.N.Y.), where the Court denied, without prejudice, a turnover motion because the Government failed to present evidence that the defendant was in default. But *Hickman* is inapposite here. The defendant in *Hickman* argued that he was not in default because he had made a $25 payment in accordance with the payment plan set forth in the judgment. *Id.* Further, the defendant in *Hickman* owed only a fine and had only $3,467.32 in his inmate trust account. In this case, Exhibit A clearly shows that the Defendant has not made a single payment toward his criminal fine—which was due immediately—even though he has over $27,000 in his inmate trust account and is subject to a mandatory order of restitution. Accordingly, even assuming, *arguendo*, that the Government is required to show default before invoking Section 3664(n) (which it is not), this case is clearly distinguishable from *Hickman*. It is also worth noting that the Court in *Kendrick* explicitly declined to follow the analysis of *Hickman* after careful examination of the plain text of the statute. *See Kendrick*, 2022 WL 1819390 at *5 ("…if Congress had intended to limit Section 3664(n)'s application to defaulted or delinquent fines, it could have used the terms "default" or "delinquency," as it did in other sections of the legislation. Or Congress could have included Section 3664(n)'s mandate within the section of the statutory scheme dealing with the effect of a defendant's default. It did neither, suggesting that Congress intended for Section 3664(n) to operate as an independent collection mechanism against an incarcerated defendant, without reference to the defendant's compliance with or default on his court-ordered payment schedule.") (internal citations omitted).

In addition, the Government notes that the entry of the proposed turnover order will not unduly prejudice the Defendant insofar as he remains able to spend the $500 of unencumbered funds in his inmate trust account. Indeed, $500 is not insignificant amount of money to purchase goods inside a BOP facility where inmates are prohibited from spending more than $360 a month. *See Trust Fund/Deposit Fund Manual,* Federal Bureau of Prisons at § 3.2; *see also United States*

*v. Schwartz,* No. 20-CR-6033 (FPG), 2022 WL 537621, at *3 (W.D.N.Y. Feb. 23, 2022) (finding that Section 3664(n) does not require the Court to consider defendant's overall financial circumstances before compelling payment but, nonetheless, noting that government left defendant with over $600 in his inmate account); *United States v. Kieffer*, No. 14-CR-30051, 2021 WL 1758815, at *1 (S.D. Ill. May 4, 2021) (permitting government to collect funds in inmate trust account under Section 3664(n) despite defendant's claim of indigency, and reasoning that the government "encumbered only $1,856.30 of his money, leaving $850.80 in his account," which was "not an insignificant balance for an inmate to carry in his trust account").

Finally, the Defendant's request that the Government or BOP should be sanctioned for seeking to take lawful action here is wholly without any support and should be rejected in its entirety. Courts have inherent power to sanction parties for bad faith conduct. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991). However, to sanction a party under this authority a court must make an explicit showing, by clear evidence, that a party acted in bad faith. *See United States v. Seltzer,* 227 F.3d 36, 41–42 (2d Cir. 2000) ("When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in […] "conduct of the litigation," which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith.") (internal citations omitted). Bad faith occurs when a party engages in litigation that is "entirely without color" and taken for an "improper purpose." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). Here, the Government's request that the Court apply the funds in the Defendant's trust account to the either the unpaid fines he owes or the restitution he will owe cannot, in any sense, be characterized as bad faith. The Defendant points to no cases where a court has sanctioned the Government for similar conduct. And the Government's submissions on the matter are ripe with examples of cases where courts have approved identical requests.

Given the foregoing, the Government respectfully requests that the Court grant its turnover motion and authorize the transfer of the of the $27,828.24 currently restrained by the BOP to an interest-bearing account to satisfy the Defendant's restitution judgment, which is yet to be imposed, or to satisfy the Court-ordered fines. The Government thanks the Court for its consideration of this request.

Respectfully submitted,

BREON PEACE
United States Attorney

By: _____
DANIEL G. SAAVEDRA
Assistant U.S. Attorney
(718) 254-6360

Encl.

cc:   **BY ECF**
      All Counsel of Record