UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

                                      :

**UNITED STATES OF AMERICA**,

                                        :

          – against –           :   **MEMORANDUM DECISION AND ORDER**

                                        :

**ROBERT SYLVESTER KELLY**,       :   19-CR-286 (AMD)

                        Defendant.     :

                                          :

---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

Before the Court is the government's motion for an order authorizing the Bureau of Prisons (the "BOP") to turn over funds in the defendant's inmate trust account to the Clerk of Court. (ECF Nos. 323, 326.) The defendant opposes. (ECF No. 325.) The government's request for a turnover order is warranted and appropriate under the circumstances of this case pursuant to statutory authorities discussed below. Accordingly, the motion is granted.[1]

## BACKGROUND

Following a six-week trial, on September 27, 2021, a jury convicted the defendant of one count of racketeering in violation of 18 U.S.C. §§ 1962(c), 1963 and eight counts of sex trafficking in violation of the Mann Act, 18 U.S.C. §§ 2421, *et seq*. (ECF Nos. 43, 238.) On

---

[1] This Court has jurisdiction to consider the government's motion notwithstanding the defendant's pending appeal. *See United States v. Jenkins*, No. 15-CV-18, 2015 WL 5023731, at *3 (N.D.N.Y. Aug. 25, 2015) (finding that district court is not "automatically deprived of jurisdiction" over the government's application for a writ of garnishment "upon the filing of an appeal"). Courts have found that Fed. R. Crim. P. 38(c), which provides that a stay of a sentence to pay a fine or restitution may be obtained only in certain circumstances, "implicitly recognize[s]" "the ability to execute upon a monetary judgment notwithstanding a pending appeal." *United States v. Kieffer*, No. 08-CR-54, 2010 WL 2231806, at *4 (D.N.D. Apr. 28, 2010) (collecting cases), *report and recommendation adopted*, 2010 WL 2231804 (D.N.D. May 28, 2010). Furthermore, 18 U.S.C. § 3572(g) recognizes that even "[i]f a sentence imposing a fine is stayed," the court must nevertheless require security for the payment of the fine.

June 29, 2022, I sentenced the defendant to thirty years in prison and ordered him to pay a $100,000 fine, a $900 special assessment and an additional assessment of $40,000 pursuant to the Justice for Trafficking Victims Act of 2015 (the "JTVA"), 18 U.S.C. § 3014.  (ECF No. 319.) Those amounts were due and payable immediately.  18 U.S.C. § 3572(d)(1).  While the defendant's Mann Act convictions make restitution mandatory in this case, *see* 18 U.S.C. §§ 2429, 2259, the specific amount that he owes has not yet been determined.[2]

The government represents that the defendant has "accumulated substantial funds in his inmate trust account," totaling $28,328.24.  (ECF No. 323 at 2.)  On August 4, 2022, at the government's direction, the BOP restrained or "froze" $27,824.24 of the money in the defendant's trust account, leaving a balance of $500 for his use in MCC-Chicago, where he is currently incarcerated.  (*Id.*)  The government now seeks an order requiring the BOP to turn over the restrained funds to the Clerk of Court "for deposit into an interest-bearing account pending a determination as to the amount and applicability of a restitution judgment."  (*Id.* at 1.)

The defendant opposes the government's motion, asserting that BOP impermissibly "confiscated" the funds in the defendant's account.  According to the defendant, the government does not have statutory authority to seize the defendant's property "without filing a notice of default or a notice of lien on the property," or where restitution has not been finalized.  (ECF No. 325 at 1-3.)  The defendant urges the Court to order the "immediate return" of the defendant's funds, and to sanction the government and the BOP "for seizing funds without lawful authority."  (*Id.*)

---

[2] A hearing for the purpose of determining the defendant's restitution is currently set for September 28, 2022.  *See* 18 U.S.C. § 3664(d)(5) ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.").

**DISCUSSION**

Under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A *et seq.*, "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n). Furthermore, under 18 U.S.C. § 3613, which sets forth "Civil remedies for satisfaction of an unpaid fine," a fine, assessment or restitution order acts as a lien in favor of the government on "all property and rights to property" of the defendant. *Id.* § 3613(c); *see also United States v. Sayyed*, 862 F.3d 615, 618-19 (7th Cir. 2017) (noting that 18 U.S.C. § 3613(c) creates a lien, entitling the government to "step[] into the defendant's shoes" and acquire his rights to property).

Unless "the court provides for payment on a date certain or in installments," payment of a criminal fine or restitution is due "immediately," 18 U.S.C. § 3572(d)(1), and must be disbursed in the following order:

(1) A penalty assessment under section 3013 of title 18, United States Code [i.e., the mandatory special assessment of $100 per count of conviction].

(2) Restitution of all victims.

(3) All other fines, penalties, costs, and other payments required under the sentence.

*Id.* § 3612(c); *see also id.* § 3572(b) ("[T]he court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution."). Furthermore, a defendant must "satisf[y] all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation," before paying an assessment under the JTVA. *See* 18 U.S.C. § 3014(b).

Courts reviewing these provisions have issued orders "authorizing payment from a defendant's inmate trust account where the defendant had not paid an order of restitution either at all or in full." *United States v. Hickman*, 330 F. Supp. 3d 921, 923 (W.D.N.Y. 2018); *see, e.g.*, *United States v. Thornbrugh*, 764 F. App'x 655, 657 (10th Cir. 2019) (finding that the district court properly granted the government's motion to obtain funds from defendant's inmate trust account for unpaid restitution); *United States v. Hester*, 708 F. App'x 441, 443 (9th Cir. 2018) ("Because [defendant]'s Inmate Trust Account showed that he received 'substantial resources' during his period of incarceration . . . , he was required by law to apply those funds to . . . restitution he still owed."); *United States v. Lemberger*, 673 F. App'x 579, 579-80 (7th Cir. 2017) (finding that the "government's request for the court to order the Bureau to turn over the funds in [defendant's] trust account was lawful" pursuant to 18 U.S.C. § 3664(n)); *United States v. Schwartz*, No. 20-CR-6033, 2022 WL 537621, at *2-3 (W.D.N.Y. Feb. 23, 2022) (authorizing the government to remove funds from inmate trust account to satisfy restitution, as defendant's funds were "substantial resources" subject to 18 U.S.C. § 3664(n)).

Courts have also granted similar requests in cases where a defendant owes a fine. *See, e.g.*, *United States v. Kendrick*, No. 10-CR-6096, 2022 WL 1819390, at *5 (W.D.N.Y. June 3, 2022) ("[B]ecause Section 3664(n) affirmatively mandates that an incarcerated defendant apply 'substantial resources' to any fine that is 'still owed,'" government was justified in collecting defendant's economic stimulus checks to apply toward his $8,000 fine); *United States v. Sabato*, No. 02-CR-236, 2021 WL 826751, at *2 (D. Conn. Mar. 4, 2021) (requiring the BOP to turn over inmate trust account funds as payment toward unpaid fine). The court in *Kendrick* held that 18 U.S.C. § 3664(n) "triggers an automatic payment requirement." 2022 WL 1819390, at *4 (collecting cases).

At least two courts have held—in the context of an unpaid fine—that section 3664(n) does not require immediate payment absent proof that the defendant is in default on the fine.  *See Hickman*, 330 F. Supp. 3d at 924 ("[I]n order to seize funds from Defendant's inmate trust account to pay the outstanding fine, the Court must first conclude that Defendant has defaulted on his payment obligations."); *United States v. Woodard*, No. 08-CR-191, 2016 WL 9406086, at *2-3 (W.D. Mich. June 24, 2016) (denying government's request for an order to remove funds from defendant's inmate trust account absent evidence that the fine is unpaid or in default).

In this case, the government seeks the defendant's funds either "to satisfy the Defendant's restitution judgment, which is yet to be imposed, or to satisfy the Court-ordered fine, which has already been imposed" (ECF No. 326 at 1, 4); the defendant responds that "[t]he authority offered by the government is inapplicable here where there has been no restitution ordered." (ECF No. 325 at 2.)  As explained below, however, because the government can collect the funds as payment for the defendant's unpaid assessment and fines, it is not necessary to decide whether section 3664(n), read together with section 3613(c), authorizes the turnover of funds when restitution has not yet been quantified but is mandatory, and when fines have been imposed and are due immediately.

As it stands, the defendant has not paid his $900 special assessment, $100,000 fine or $40,000 JTVA assessment.  (ECF No. 326-1.)  There is no dispute that these amounts are outstanding; nor is there any dispute that the funds in the defendant's trust account, totaling $28,328.24, constitute "substantial resources" within the meaning of 18 U.S.C. § 3664(n).[3] Thus, the government's request is authorized by section 3664(n)'s plain terms, which

---

[3] *See United States v. Kieffer*, No. 14-CR-30051, 2021 WL 1758815, at *1 (S.D. Ill. May 4, 2021) (finding that $2,707.10 in defendant's inmate trust account was "substantial resource" requiring turnover).

"affirmatively mandate[] that an incarcerated defendant apply 'substantial resources' to any fine that is 'still owed'—that is, to any portion of the total fine that has yet to be satisfied." *Kendrick*, 2022 WL 1819390, at *4. Moreover, because the fines have already been ordered, section 3613(c) gives the government a lien on the defendant's inmate trust funds. *Sayyed*, 862 F.3d at 618-19.

Because a lien "arises on the entry of judgment" under 18 U.S.C. § 3613(c), the government was not required to file either a notice of lien or default, as the defendant claims. *See United States v. Smith*, 768 F. App'x 926, 932 (11th Cir. 2019) (government lien "arises automatically and attaches to all property of the defendant . . . ." (citing 18 U.S.C. § 3613(c))). Moreover, the government's lien does not need to be recorded unless it is asserting priority over specific classes of third-party interest holders identified in 18 U.S.C. § 3613(d). *See id.* ("Generally speaking, the MVRA does not require the government to record the lien . . . ," but it must record one "to be valid against" specific third parties) (internal citations omitted).

The Honorable Frank P. Geraci Jr. rejected a similar claim in *Kendrick*. Citing 18 U.S.C. § 3664(n), which provides that a defendant must apply a windfall to "any restitution or fine still owed," Judge Geraci explained that the provision "does not, by its terms, expressly include any [] precondition" of default. *See Kendrick*, 2022 WL 1819390, at *4 (reasoning that the "phrase 'still owed' must refer to the total restitution or fine balance that has yet to be satisfied, regardless of a defendant's compliance with or default on a court-ordered payment schedule," and that "if Congress had intended to limit Section 3664(n)'s application to defaulted or delinquent fines, it could have used the terms 'default' or 'delinquency,' as it did in other

sections of the legislation").[4]  Applying that sound rationale to the facts of this case, the government is entitled to the defendant's funds because he owes substantial fines.  *See id.* at *3-5 (rejecting defendant's arguments that the government could not seize his funds without first providing notice or showing he was in default).

In granting the government's request because the defendant has not paid the fines, I am also mindful of victims' rights "to full and timely restitution," 18 U.S.C. § 3771(a)(6), as well as Congress's directive that restitution obligations must be satisfied before other court-ordered fines.  *Id.* § 3612(c).  Furthermore, the MVRA provides that "[a] restitution order 'may be enforced by the United States in the manner provided for' in 18 U.S.C. §§ 3571-3574, and §§ 3611–3615 or 'by all other available and reasonable means.'"  *Lemberger*, 673 F. App'x at 580 (quoting 18 U.S.C. § 3664(m)).  The government's request—to hold the defendant's funds in an "interest-bearing account pending a determination" on restitution (ECF No. 323 at 1)—is an appropriate measure under the circumstances of this case, where the defendant owes unpaid fines and is also subject to mandatory restitution that has not yet been quantified.  Indeed, courts have issued restraining orders to secure funds in anticipation of restitution.  *See United States v. Catoggio*, 698 F.3d 64, 68 (2d Cir. 2012) ("[D]istrict court properly exercised its authority under the All Writs Act to restrain [defendant's] assets," where restitution was mandatory and

---

[4] The cases the defendant cites in support of his position that a finding of default is required are distinguishable.  *See Woodard*, 2016 WL 9406086; *Hickman*, 330 F. Supp. 3d 921.  In *Woodard*, although the court denied the government's turnover request, the defendant had already paid the $100 special assessment and $3,173.83 toward his fine in accordance with the payment plan ordered by the court, and there was no evidence that the defendant was in default on the outstanding sum he owed.  *See* 2016 WL 9406086, at *1-3.  Similarly, in *Hickman*, the defendant had begun making payments toward his outstanding fine.  *See* 330 F. Supp. 3d at 921.  Here, by contrast, the defendant has not made any payments toward the assessment or fine.  (*See* ECF No. 326-1.)  In any event, I decline to follow *Woodard* and *Hickman* because I agree with Judge Geraci that Congress intended 18 U.S.C. § 3664(n) "to operate as an independent collection mechanism against an incarcerated defendant, without reference to the defendant's compliance with or default on his court-ordered payment schedule."  *See Kendrick*, 2022 WL 1819390, at *5.

restitution amount was likely to exceed the amount sought to be restrained); *see also, e.g.*, *United States v. Hatfield*, No. 06-CR-550, 2010 WL 4235815, at *1 (E.D.N.Y. Sept. 27, 2010) (finding that district court had authority to restrain defendant's funds as collateral for future restitution order); *United States v. Garrett*, No. 13-CR-149 (Matsumoto, J.), ECF No. 494 (granting order, pursuant to the All Writs Act, prohibiting defendant from receiving the funds of a civil settlement before a restitution judgment had been entered).

The defendant's remaining claims—that the BOP unlawfully "encumbered Mr. Kelly's funds" and that the BOP and the government should be sanctioned—have no merit.  (*See* ECF No. 325.)  The BOP acted properly and in accordance with its policies when it placed the defendant's funds "in hold until this Court could adjudicate the pending motion."  *See United States v. Sabato*, No. 02-CR-236, 2021 WL 826751, at *2 (D. Conn. Mar. 4, 2021) (rejecting defendant's argument that the government inappropriately seized his inmate trust funds on due process grounds, and explaining that "[t]he inmate trust account is just that a trust account, which is controlled by the BOP and can be encumbered at the Warden's discretion" (citing *Trust Fund/Deposit Fund Manual*, Federal Bureau of Prisons at § 8.8 (Apr. 9, 2015), http://www.bop.gov/policy/progstat/4500_011.pdf)).[5]

---

[5] Even if the BOP and the government had acted improperly—and they did not—the imposition of sanctions would be excessive.  The Court has inherent authority to impose sanctions only if an attorney has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Smith v. Westchester Cty. Dep't of Corr.*, 577 F. App'x 17 (2d Cir. 2014) (summary order) (quoting *United States v. Int'l Bhd. of Teamsters*, 948 F.3d 1338, 1345 (2d Cir. 1991)).  The Second Circuit has held that "bad faith is a prerequisite for imposing sanctions under a court's inherent authority where the behavior at issue was conduct that led to the lawsuit or took place during litigation and was taken on behalf of the client[.]"  *Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2019 WL 4696434, at *5 (E.D.N.Y. Sept. 26, 2019) (citing *United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000).  The defendant's further allegation that he is "the repeated victim of BOP criminality" is not properly before the Court and is, in any event, irrelevant.

**CONCLUSION**

For these reasons, the government's motion is granted.  Within ten days of the date of this order, the BOP must issue a check to the Clerk of the Court for the Eastern District of New York for $27,828.24.  The check should be made payable to the "Clerk of the Court, EDNY" and reference "U.S. v. Kelly, No. 19-cr-286."  The check should be mailed to:

> Clerk of the Court
> Eastern District of New York
> United States Courthouse
> 225 Cadman Plaza East
> Brooklyn, New York 11201

The Clerk of the Court should deposit this money into an interest-bearing account pending the determination by the Court as to the amount and applicability of restitution.

Once restitution is determined by the Court, the Clerk of Court should apply the monies held in the interest-bearing account first to the $900 special assessment and then to the restitution judgment, as set forth in 18 U.S.C. § 3612(c).

If the amount held in the interest-bearing account exceeds the amount of restitution and special assessments imposed, the remaining balance in the interest-bearing account should be applied first to the $100,000 fine and then to the $40,000 JTVA assessment, as required by 18 U.S.C. §§ 3612(c) and 3014.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
　　　　September 9, 2022

9