

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NS
F. #2019R00029

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 9, 2022

**TO BE FILED UNDER SEAL**

By ECF and E-Mail

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Robert Sylvester Kelly
                 Criminal Docket No. 19-286 (S-3) (AMD)

Dear Judge Donnelly:

      As the Court is aware, on June 17, 2022, the government submitted a letter, under seal, regarding restitution in connection with the defendant's sentencing. On June 27, 2022, the defendant filed an under seal response to the government's letter ("Def. Ltr."). The government respectfully submits this letter in reply to the defendant's June 27, 2022 response and to address additional restitution claims that were made following the parties' previous submissions.

I.    Jane

      With respect to Jane, the government respectfully submits that she is entitled to the future medical expenses, including medical bills and prescription costs, psychological treatment expenses and lost income set forth in the government's June 17, 2022 letter. Jane intends to continue to seek therapy in the future related to the offenses of conviction[1] and

---

[1] Jane has received some therapy relating to the offenses of conviction through organizations providing victim services on a pro bono basis. She should not be limited, however, to searching for and seeking services only through service providers who provide such therapy for free. As a result, she remains entitled to restitution to cover a reasonable estimate of her future losses in this regard.

will be afflicted with genital herpes for the rest of her life, requiring medical treatment and gynecological visits for the remainder of her life. Jane has also confirmed that she does not have medical insurance and currently pays out-of-pocket for medical expenses. With respect to future losses, the law does not require precise certainty, as the defendant appears to suggest. Indeed, "[a] restitution award need only to be a reasonable estimate of the victim's actual losses." United States v. Donaghy, 570 F. Supp. 411, 423 (E.D.N.Y. 2008) (citing United States v. Germosen, 139 F.3d 120, 129–30 (2d Cir. 1998); United States v. Burdi, 414F.3d 216, 221 (1st Cir. 2005); United States v. Futrell, 209 F.3d 1286, 1292 (11th Cir. 2000); United States v. Sapoznik, 161 F.3d 1117, 1121–22 (7th Cir. 1998) (district judge's estimate of 25% of the defendant's salary not an abuse of discretion where no more precise number could be easily determined)). And, any uncertainties in this regard "should be resolved in favor of the victim in accord with the statutory focus on making the victim whole." Donaghy, 570 F. Supp. at 423 (citing United States v. Boccagna, 450 F.3d 107, 119 (2d Cir. 2006) ("[R]estitution attempts to compensate for loss by restoring the victim to a position he occupied before the injurious event." (internal quotations and alterations omitted)); United States v. Coriaty, 300 F.3d 244, 253 (2d Cir. 2002) (observing "the statutory focus on the victim's losses and upon making victims whole")).

If anything, the government's estimates regarding Jane's future losses with respect to psychological treatment are conservative. As the six-week trial in this matter demonstrated, the defendant subjected Jane to serious abuse and trauma over the course of years, including while she was a young and impressionable minor. As the evidence at trial, inter alia, demonstrated, the defendant established a pattern whereby he punished Jane if she violated any of his rules or otherwise interfered with his desires. She explained that beginning when she was 17 years old, the defendant spanked her if she violated a rule and that these spankings occurred every two to three days. (T. 909, 911). The spankings left her bruised and sometimes with broken skin. (T. 912). The defendant also otherwise physically abused Jane when he perceived that she violated one of his rules or desires. (T. 911-17). Jane also saw the defendant physically abuse his other live-in girlfriends and believed that he could do the same thing to her if she did not "listen even more." (T. 925). On other occasions, the defendant left Jane in a room or on a bus for days at a time if she violated a rule. (T. 909, 932, 3418-35; GX 935(b), 240(c), 240(f), 240(g)). The defendant also had Jane regularly write a series of letters containing embarrassing falsehoods and on occasion, make videos containing embarrassing falsehoods and other humiliating and degrading activity. (T. 985-99). Jane also testified that as a "punishment," the defendant directed Jane to have sexual contact with "Alex," also known as "Nephew." (T. 1035-48). Jane explained that she did not want to have sexual contact with Alex and only did so because if she did not, she believed the defendant would have spanked her. (T. 1050). Jane also had sexual contact with other women at the defendant's direction. (T. 955-62, 964-66). She further explained she did not want to have sex with any of these women and only complied with the defendant's directions because he "force[d] [her] to do so," including as a punishment, and that when she did not comply, he "usually chastised [i.e., spanked]" her. (T. 966-67).

An estimate that Jane will require therapy to deal with the effects of this repeated and continuous trauma and abuse for at least the time period over which it occurred

– 3.75 years – is likely well below the actual amount of therapy that Jane will need as a direct result of the defendant's conduct.  In addition, an estimate a cost of $100 per session is a reasonable one.  See "How Much Does Therapy Cost," available at https://www.goodtherapy.org/blog/faq/how-much-does-therapy-cost ("Therapy generally ranges from $65 per hour to $250 or more. In most areas of the country, a person can expect to pay $100-$200 per session.").

The evidence at trial also clearly provides a basis for the Court to conclude by a preponderance of the evidence that the defendant transmitted genital herpes to Jane by engaging in unprotected sexual intercourse with Jane without informing her that he had genital herpes and without obtaining her consent to sexual intercourse in these circumstances – as was his regular practice with multiple sexual partners.  (See, e.g.,T.851-55, GX 909).  The expert testimony at trial also established that genital herpes is an incurable, chronic life-long disease, with serious medical consequences for women throughout their lives, requiring regular gynecological visits and the consistent and continual use of Valtrex, a prescription medication (which by definition requires a doctor to prescribe the medication and, at a minimum, an annual doctor's visit).  (See generally T.3026-3110 (testimony of Dr. Iffath Hoskins)).  Given that Jane does not have medical insurance, the government's estimate of medical expenses using the average life expectancy for a female in the United States, the cost of a 30-day supply of Valtrex without insurance, and the cost of an annual visit to the gynecologist without insurance is a reasonable estimate.

Finally, the government's estimate of lost income is also a conservative one. The trial evidence demonstrated that the defendant established a pattern of almost total control over Jane and prevented her from obtaining outside employment for approximately 3.75 years.  He also required her to participate in the conduct underlying the forced labor charge in Racketeering Act Eleven.  See ECF Dkt. No. 278 at 100-102.  While the government noted in its June 17, 2022 letter that the defendant's requirement that Jane abide by his rules resulted in her not attending her senior year of high school in person and losing the opportunity to obtain a college scholarship based on her musical talent, the government did not, and does not, seek restitution based on that lost opportunity.  See Def. Ltr. at 2. Instead, the government based its estimate of lost income using the prevailing federal minimum wage of $7.25 per hour.  That estimate is a reasonable one.

II.   Faith, Kelly and Stephanie

Following the parties submissions, the individuals who testified at trial as Faith, Kelly and Stephanie submitted affidavits of loss in this matter.  Kelly has advised the government that she no longer seeks restitution in the above-captioned case, so the Court need not consider her restitution claims.  Faith has advised the government that her medical and therapy expenses are covered by her insurance without any copay.  As a result, the government does not seek restitution for those expenses.  With respect to the other expenses identified by Faith, the government has not received information sufficient to advocate for these past expenses.  As a result, the government does not seek restitution for Faith as to these amounts.

3

With respect to Stephanie, in further explanation of her affidavit of loss, the government has received the following information. The defendant transmitted genital herpes to Stephanie in 1999 by having unprotected sexual intercourse with her without informing her that he had genital herpes and without obtaining her consent to sexual intercourse in these circumstances. (See also 3500-S2-1 at 3). From 1999 to 2015, Stephanie did not have medical insurance and used Valtrex regimens to treat her herpes approximately 8 to 10 times per year. In August 2016, Stephanie began receiving health insurance coverage through her employer and began using Valtrex daily, continues to do so presently, and expects to do so for the remainder of her life. Stephanie's insurance covers most of the cost of her prescription medication, with the exception of a copay that Stephanie pays for out-of-pocket on a monthly basis in the amount of $35.74. Enclosed as Exhibit A is a copy of a receipt for this copay amount provided by Stephanie for her most recent prescription, as well as a photograph of a past prescription for the medication. As indicated in the government's June 17, 2022 letter, the average life expectancy for a female in the United States of 82 years old, see National Vital Statistics Report, U.S. State Life Tables, 2019, at 3, available at https://www.cdc.gov/nchs/data/nvsr/nvsr70/nvsr70-18.pdf, and the cost of a 30-day supply of 500-gram Valtrex oral tablets without insurance is $421.29. See "Valtrex Prices, Coupons and Patient Assistance Programs," available at https://www.drugs.com/priceguide/valtrex#:~:text=The%20cost%20for%20Valtrex%20oral,not%20valid%20with%20insurance%20plans. Using the low end of Stephanie's estimate of using Valtrex regimens approximately eight times per year before she was covered by insurance, a reasonable estimate of Stephanie's actual losses prior to obtaining insurance coverage is $3,370.32. Stephanie is currently 40 years old. Her past and future losses for prescription treatment of her genital herpes following insurance, based on the average life expectancy of a female in the United States, amount to $19,942.92. As a result, the total estimate of actual losses for Stephanie's past and future prescription treatment for herpes is $23,313.24.

In addition, Stephanie has advised that she went to therapy related to the defendant's conduct towards her for approximately four years at a cost of $75 per therapy session.[2] Stephanie went to therapy weekly for one full year, and approximately 20 to 25 times per year for three years. As a result, using a conservative estimate of 20 therapy sessions for three years and 52 sessions for one year, Stephanie is entitled to $8,400 for past therapy expenses.

As a result, Stephanie is entitled to a total of $31,713.24 in restitution.

---

[2] As the Court may recall, Stephanie testified at trial extensively about the defendant's demeaning treatment of her, including his creation of child pornography by producing a sexually explicit video of her as a minor and refusing to destroy or give her the video so she could do so. As Stephanie indicated near the conclusion of her testimony, her time with the defendant "was the lowest time in my life. I've never been treated like that before or since. He humiliated me, he degraded me, he scared me. I'll never forget the way he treated me." (T.1707).

III. <u>Request for Sealing</u>

   The government respectfully requests that (a) this letter be filed under seal and (b) any restitution order and any related documents be filed under seal or redacted in a manner to prevent public disclosure of the victims' identities or any other identifying information that would undermine their continued anonymity consistent with the Court's previous orders. Under these circumstances, the privacy interests of the victims outweigh the public's qualified right to access. As the facts set forth above provide ample support for the "specific, on the record findings" necessary to support sealing, <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110, 120 (2d Cir. 2006), the government respectfully requests that the Court record those findings and file this letter under seal.

               Respectfully submitted,

               BREON PEACE
               United States Attorney

         By:  /s/ Nadia I. Shihata
               Nadia I. Shihata
               Lauren Elbert
               Assistant U.S. Attorneys
               (718) 254-6295/7577

cc: Clerk of Court (by ECF)
   Defense counsel (by E-mail)